1  BRIAN D. BOYLE (S.B. #126576)
   bboyle@omm.com
2  RANDALL W. EDWARDS (S.B. #179053)
   redwards@omm.com
3  MEAGHAN VERGOW (admitted *pro hac vice*)
   mvergow@omm.com
4  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
5  San Francisco, California  94111-3823
   Telephone:     +1 415 984 8700
6  Facsimile:     +1 415 984 8701

7  Attorneys for Defendants
   BlackRock Institutional Trust Company, N.A.;
8  BlackRock, Inc.; the BlackRock, Inc. Retirement
   Committee;  Jason Herman; the Administrative
9  Committee of the Retirement Committee; and the
   Investment Committee of the Retirement Committee
10

11                   **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13

| 14 Charles Baird, individually, and on behalf of all | Case No. 17-cv-01892-HSG |
|---|---|
| 15 others similarly situated, and on behalf of the BlackRock Retirement Savings Plan, | **NOTICE OF MOTION AND MOTION** |
| 16 | **TO DISMISS PLAINTIFF'S CLASS** |
| Plaintiff, | **ACTION COMPLAINT;** |
| 17 | **MEMORANDUM OF POINTS AND** |
| v. | **AUTHORITIES** |
| 18 | |
| 19 BlackRock Institutional Trust Company, N.A.; BlackRock, Inc.; The BlackRock, Inc. | **[Declaration of Meaghan VerGow and Request for Judicial Notice Filed** |
| 20 Retirement Committee; Jason Herman, named Plan Sponsor; John and Jane Does 1-40, | **Concurrently Herewith]** |
| Members of the BlackRock Retirement | |
| 21 Committee; The Administrative Committee of | Hearing Date:  September 7, 2017 |
| the Retirement Committee; John and Jane Does | Time:  2:00 p.m. |
| 22 1-20, Members of the Administrative | Place:  Courtroom 2, Oakland Courthouse |
| Committee of the Retirement Committee; The | Judge:  Hon. Haywood S. Gilliam, Jr. |
| 23 Investment Committee of the Retirement Committee; John and Jane Does 21-40, | |
| 24 Members of the Investment Committee of the Retirement Committee; each an individual, and | |
| 25 John and Jane Does 41-60, each an individual, | |
| 26 Defendants. | |

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 7, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Haywood S. Gilliam, Jr., defendants BlackRock Institutional Trust Company, N.A., BlackRock, Inc., the BlackRock, Inc. Retirement Committee, Jason Herman, the Administrative Committee of the Retirement Committee, and the Investment Committee of the Retirement Committee (together, "BlackRock") will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for dismissal of the Class Action Complaint filed by plaintiff Charles Baird.

The motion is made on the grounds that plaintiff lacks Article III standing as to claims regarding funds in which he never invested, which are the primary focus of his Complaint.  The motion is also made on the grounds that plaintiff has failed to plausibly allege that defendants breached any fiduciary duties or caused the prohibited transaction violations he alleges, and that the Complaint is improperly brought against certain defendants.

The motion is made pursuant to the stipulated Order regarding timing entered by the Court on April 27, 2017 (ECF No. 28) and is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declaration of Meaghan VerGow with exhibits thereto and the request for judicial notice filed concurrently herewith, all records and pleadings on file with the Court, all further evidence and oral argument that may be presented at the hearing on this motion, and all other matters as the Court deems proper.

Dated:  June 1, 2017                                O'MELVENY & MYERS LLP


By:      */s/ Brian D. Boyle*
                                                    Brian D. Boyle

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND AND FACTUAL ALLEGATIONS .................................................. 3

LEGAL STANDARD .......................................................................................... 5

ARGUMENT ..................................................................................................... 7

I.   PLAINTIFF LACKS STANDING TO BRING CLAIMS CHALLENGING
     FUNDS HE NEVER SELECTED FOR HIS OWN PLAN ACCOUNT ............... 7

II.  THE COMPLAINT DOES NOT STATE A CLAIM FOR FIDUCIARY
     BREACH ................................................................................................ 9

     A.   Plaintiff Does Not Plausibly Allege Any Defect In The Fiduciaries'
          Process For Selecting And Monitoring The Plan's Collective Trust
          Options .......................................................................................... 10

     B.   Plaintiff Similarly Fails To Plausibly Allege Any Fiduciary Breach
          In The Selection And Monitoring Of The Mutual Fund Options He
          Attacks .......................................................................................... 14

     C.   Plaintiff's Remaining Allegations Do Not Support Any Inference
          Of Imprudence Or Disloyalty ........................................................... 16

III. PLAINTIFF'S PROHIBITED TRANSACTION CLAIMS SHOULD BE
     DISMISSED ............................................................................................ 18

     A.   Plaintiff's Prohibited Transaction Claims Are Untimely ..................... 18

     B.   The Complaint Does Not Plausibly Allege Non-Exempt Violations
          Of The Prohibited Transaction Provisions He Identifies ..................... 20

          1.   Plaintiff Has Not Plausibly Alleged A Prohibited
               Transaction With Respect To The Plan's Collective Trust
               Investments ........................................................................... 20

          2.   Exemptions Plainly Apply To The Plan's Affiliated
               Investments ........................................................................... 21

IV.  IMPROPER DEFENDANTS SHOULD BE DISMISSED FROM THIS
     ACTION ................................................................................................. 23

V.   PLAINTIFF'S DERIVATIVE MONITORING-FIDUCIARY AND
     CO-FIDUCIARY BREACH CLAIMS FAIL ................................................. 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016)................................................................ 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 6

*Barchock v. CVS Health Corp.*,
   C. A. No. 16-061-ML, 2017 WL 1382517 (D.R.I. Apr. 18, 2017)........................................ 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 5, 6

*Bendaoud v. Hodgson*,
   578 F. Supp. 2d 257 (D. Mass. 2008) ...................................................... 7

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009)............................................................... 21

*Brown v. Owens Corning Inv. Review Comm.*,
   622 F.3d 564 (6th Cir. 2010).............................................................. 18

*Bryant v. Tulare Cty.*,
   No. 1:16-CV-1542-LJO-SKO, 2016 WL 6996476 (E.D. Cal. Nov. 29, 2016) ...................... 23

*Caltagirone v. N.Y. Cty. Bancorp, Inc.*,
   257 F. App'x 470 (2d Cir. 2007)........................................................... 7

*Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*,
   No. CV 14-01480 (MMM), 2014 WL 6603761 (C.D. Cal. July 28, 2014) ...................... 6

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013)............................................................. 19

*Dupree v. Prudential Ins. Co. of Am.*,
   No. 99-8337-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) ...................... 12

*Fifth-Third Bancorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014) ................................................................. 5, 10

*Flores v. EMC Mortg. Co.*,
   997 F. Supp. 2d 1088 (E.D. Cal. 2014)..................................................... 23

*Gallagher v. Chipotle Mexican Grill, Inc.*,
   No. 15-CV-03952-HSG, 2016 WL 454083 (N.D. Cal. Feb. 5, 2016) ...................... 8

*Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*,
   465 F.3d 1123 (9th Cir. 2006)............................................................. 5, 7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ...................................................................... 24

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ................................................................................... 24

4

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...................................................................... 14

5

6

*IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*,
    No. CV 08-3949 AHM, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) .................... 23

7

*In re Disney ERISA Litig.*,
    No. CV 16-2251 PA (JCX), 2016 WL 8192945 (C.D. Cal. Nov. 14, 2016) ........... 10

8

9

*In re HP Erisa Litig.*,
    No. C-12-6199 CRB, 2014 WL 1339645 (N.D. Cal. Apr. 2, 2014) .................. 24, 25

10

*In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    917 F. Supp. 2d 231 (S.D.N.Y. 2013) ............................................................. 7

11

12

*In re UBS Erisa Litig.*,
    No. 08-CV-6696 (RJS), 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) ............ 7, 8

13

*In re Unisys Sav. Plan Litig.*,
    74 F.3d 420 (3d Cir. 1996) ............................................................................ 9

14

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) ............................................................. 8

15

16

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................. 6

17

*Jones v. Nutiva, Inc.*,
    No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) .......... 7, 8

18

19

*Kanawi v. Bechtel Corp.*,
    590 F. Supp. 2d 1213 (N.D. Cal. 2008) ...................................................... 9, 10

20

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ....................................................................... 6

21

22

*Koblentz v. UPS Flexible Emp. Benefit Plan*,
    No. 12-CV-0107-LAB, 2013 WL 4525432 (S.D. Cal. Aug. 23, 2013) ................ 6

23

*Larsen v. Trader Joe's Co.*,
    No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ..................... 9

24

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) .................................................................................. 7, 8

25

26

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ......................................................................... 5

27

*Leber v. Citigroup, Inc.*,
    No. 07 CIV. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ............... 22

28

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*Loomis v. Exelon Corp.*,
   658 F.3d 667 (7th Cir. 2011).............................................................................. 15, 16

4

*Lorenz v. Safeway, Inc.*,
5   No. 16-CV-04903-JST, 2017 WL 952883 (N.D. Cal. Mar. 13, 2017) ........................ 6, 18, 19

6
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................................. 7

7
*Mahtesian v. U.S. Office of Pers. Mgmt.*,
8   388 F. Supp. 2d 1047 (N.D. Cal. 2005) ................................................................... 5

9
*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988)................................................................................... 5

10
*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
11   722 F. Supp. 2d 1157 (C.D. Cal. 2010) ................................................................... 8

12
*Mehling v. N.Y. Life Ins. Co.*,
   163 F. Supp. 2d 502 (E.D. Pa. 2001) .................................................................... 21

13
*Meiners v. Wells Fargo & Co.*,
   No. 16-CV-3981, 2017 WL 2303968 (D. Minn. May 25, 2017)................................ 14

14
*Mertens v. Hewitt Assocs.*,
15   508 U.S. 248 (1993)............................................................................................... 24

16
*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) .................................................................... 8

17
*Munns v. Kerry*,
18   782 F.3d 402 (9th Cir. 2015)................................................................................... 5

19
*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
   No. 15-CV-02938-HSG, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016).................... 6

20
*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
   944 F.2d 509 (9th Cir. 1991).............................................................................. 18, 19

21

*Romero v. HP, Inc.*,
22   No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ...................... 8

23
*Romero v. Nokia, Inc.*,
   No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ...................... 24, 25

24
*Siemers v. Wells Fargo & Co.*,
25   No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ...................... 8

26
*St. Vincent Catholic Med. Ctrs. ex rel. PBGC v. Morgan Stanley Inv. Mgmt., Inc.*,
   712 F.3d 705 (2d Cir. 2013)............................................................................. 10, 13

27
*Sulyma v. Intel Corp. Inv. Policy Comm.*,
28   No. 15-CV-04977 NC, 2017 WL 1217185 (N.D. Cal. Mar. 31, 2017) ................... 18, 25

**TABLE OF AUTHORITIES**
(continued)

Page

*Taylor v. United Techs. Corp.*,
No. 3:06cv1494 (WWE), 2009 WL 535779 (D. Conn. Mar. 3, 2009) .................................... 16

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
551 U.S. 308 (2007) ............................................................................................................. 6

*Terraza v. Safeway Inc.*,
No. 16-CV-03994-JST, 2017 WL 952896 (N.D. Cal. Mar. 13, 2017) ................................. 14

*Tibble v. Edison Int'l*,
135 S. Ct. 1823 (2015) ....................................................................................................... 19

*Tibble v. Edison Int'l*,
639 F. Supp. 2d 1074 (C.D. Cal. 2009) ................................................................................ 9

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013) ...................................................................................... 13, 16

*Turner v. City & Cty. of S.F.*,
788 F.3d 1206 (9th Cir. 2015) ......................................................................................... 5, 6

*Urakhchin v. Allianz Asset Mgmt. of Am. L.P.*,
No. SACV 15-1614-JLS, 2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ............................ 6, 8

*Watkins v. Citigroup Ret. Sys.*,
No. 15-CV-731-DMS, 2015 WL 9581838 (S.D. Cal. Dec. 30, 2015) ................................... 6

*White v. Chevron Corp.*,
No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016).................. 9, 10, 12, 16

*White v. Chevron Corp.*,
No. 16-CV-0793-PJH, 2017 U.S. Dist. LEXIS 83474 (N.D. Cal. May 31,
2017) ......................................................................................................................... 14, 15, 19

*Wright v. Or. Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ...................................................................................... 18, 19

*Yost v. First Horizon Nat'l Corp.*,
No. 08-2293-STA-CGC, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) .............................. 7

**STATUTES**

15 U.S.C. § 80a-3(a), (c)(11) ................................................................................................ 4

15 U.S.C. § 80a-4 ................................................................................................................ 17

15 U.S.C. § 80a-5 ................................................................................................................ 17

29 U.S.C. § 1104 ................................................................................................................. 17

29 U.S.C. § 1104(a)(1)(A) ..................................................................................................... 9

29 U.S.C. § 1104(a)(1)(B) ..................................................................................................... 9

1
2

**TABLE OF AUTHORITIES**
**(continued)**

3

**Page**

29 U.S.C. § 1105 .................................................................................................. 25

4

29 U.S.C. § 1106 .................................................................................................. 20

5

29 U.S.C. § 1106(a)(1)(A) ................................................................................... 18

6

29 U.S.C. § 1106(a)(1)(D) ................................................................................... 18

7

29 U.S.C. § 1106(b)(1) ........................................................................................ 18

8

29 U.S.C. § 1106(b)(2) ........................................................................................ 18

9

29 U.S.C. § 1108 ........................................................................................... 12, 20

10

29 U.S.C. § 1108(b)(8) ........................................................................................ 21

11

29 U.S.C. § 1113 .................................................................................................. 19

12

29 U.S.C. § 1113(1) ............................................................................................. 20

13

29 U.S.C. § 1113(2) ............................................................................................. 18

14

29 U.S.C. § 1132(a)(2) ...................................................................................... 8, 24

29 U.S.C. § 1132(a)(3) ........................................................................................ 23

15

**OTHER AUTHORITIES**

16

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
5038 ................................................................................................................ 12

17

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56
Fed. Reg. 10724 (Mar. 13, 1991) .................................................................. 12

18

PTE 77-3, Class Exemption Involving Mutual Fund In-House Plans Requested by
the Investment Company Institute, 42 Fed. Reg. 18,734 (Apr. 8, 1977) ......... 12, 22

19

20

SEC and DOL, Notice of Hearing, Hearing on Target Date Funds and Similar
Investment Options (May 19, 2009), https://www.sec.gov/rules/other/2009/ic-
28725.pdf ....................................................................................................... 13

21

22

SEC, *Investment Company Registration and Regulation Package*,
https://www.sec.gov/investment/fast-
answers/divisionsinvestmentinvcoreg121504htm.html (last visited May 30,
2017) .............................................................................................................. 17

23

24

**RULES**

25

Fed. R. Civ. P. 8 ................................................................................................... 23

26

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 5

27

Fed. R. Civ. P. 12(b)(6) .................................................................................. 5, 6, 8

28

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3

**Page**

**REGULATIONS**

4

29 C.F.R. § 2550.404a-1(b)(i) ..................................................................................... 15

5

29 C.F.R. § 2550.404c-1(b) ........................................................................................ 4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3          BlackRock, Inc. sponsors a 401(k) plan with extraordinarily low costs of participation.

4     BlackRock itself covers the plan-level administrative and recordkeeping expenses (which many

5     other plans charge to participants).  And the BlackRock-affiliated manager of the plan's collective

6     trust investments—constituting the substantial majority of investment options offered to plan

7     participants—has *waived* its investment management fees for the plan.  BlackRock collective

8     trusts are a leading choice for the fiduciaries of other large 401(k) plans; BlackRock plan

9     participants have access to those investment products for virtually nothing, substantially

10    enhancing their ability to grow their retirement savings.

11         Against this backdrop, plaintiff alleges—in the latest cookie-cutter pleading targeting the

12    offering of proprietary products in a 401(k) plan—that the fees paid by participants were

13    "excessive."  Plaintiff's misbegotten attack on the BlackRock 401(k) plan is built on a series of

14    factual errors (which are betrayed by the materials the Complaint relies upon), flawed

15    comparisons, and conclusory allegations that wither under scrutiny.  Plaintiff's misunderstanding

16    of the plan's fees is only the beginning of the Complaint's problems.

17         The threshold failing of the Complaint is that plaintiff lacks Article III standing to bring

18    any of the claims that dominate his pleading.  Plaintiff did not himself invest in the target date

19    funds or Low Duration Bond Fund that are his primary targets.  The plan's investment in these

20    funds thus caused plaintiff no injury in fact, and his challenges to those funds are constitutionally

21    deficient.  Equally clearly, plaintiff cannot link these deficient claims to the fund challenges he

22    does have standing to bring (were any to survive), as the claims are not substantially similar to

23    each other.

24         The Complaint fails to state any claim under the Employee Retirement Income Security

25    Act of 1974 ("ERISA") in any event.  Plaintiff contends that BlackRock disloyally and

26    imprudently selected the BlackRock-affiliated LifePath Funds to enlarge its own fees, but

27    plaintiff has his facts wrong.  As noted, the plan does not pay any investment management fees

28    for the LifePath Funds, or any other collective trusts in the investment lineup.  Plaintiff's

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1  allegation that the plan invests in a fee-bearing share class for these funds is explicitly

2  contradicted by the very documents he cites for that proposition.

3       Plaintiff's theory that the LifePath Funds were selected disloyally evaporates with the

4  failure of his fee allegations.  There is nothing inherently suspect about an asset manager offering

5  to its own 401(k) plan the investment products it makes available to other retirement plans, as

6  ERISA expressly authorizes it to do.  Nor can fiduciary imprudence be inferred from other

7  allegations in the Complaint—if anything, the fiduciaries' achievement in procuring these

8  enormously popular, successful investment options on a fee-free basis compels the opposite

9  inference.  The Complaint's conclusory jabs at the performance of the LifePath Funds add

10  nothing: plaintiff alleges no facts to question the prudence of the Funds' distinctive investment

11  strategy, and his performance comparison to other funds with different strategies fails because

12  ERISA does not judge fiduciary decisionmaking in hindsight, as courts consistently hold in

13  dismissing complaints that rest on similar grounds.

14       Likewise implausible are plaintiff's attacks on the handful of mutual funds included in the

15  plan during the class period (which have been reduced to one over time, in favor of the fee-free

16  collective trusts).  Plaintiff asserts that the fees and performance of the Low Duration Bond Fund

17  were inferior to those of a Vanguard fund.  A comparison to a single fund alternative could never

18  support an inference of fiduciary breach; it is well established that fiduciaries need not "scour the

19  market" to pick the cheapest possible fund, and prudence is not judged in hindsight.  But here the

20  comparison is literally meaningless because the Vanguard fund plaintiff highlights is a *different*

21  *type of fund*, as the face of the Complaint makes obvious.  Plaintiff does not allege that the

22  investment strategy pursued by the Low Duration Bond Fund had no place in the plan's diverse

23  investment lineup, and thus he offers no basis to question the fiduciary decision to include it.

24       The fatal defects in plaintiff's challenge to the Global Allocation Fund likewise leap out

25  from the face of the Complaint.  Plaintiff asserts that this mutual fund was more expensive than

26  two comparable funds to which a BlackRock affiliate provided sub-advisory services.  Once

27  again, plaintiff's conclusory comparison does not establish that the Global Allocation Fund bore

28  an excessive expense ratio for this type of strategy (the Fund's success with investors suggests

1    just the opposite).  Worse, the funds to which plaintiff compares the Global Allocation Fund *were*

2    *more expensive*.  It hardly requires explanation that plaintiff thus fails to plausibly allege a claim

3    that the fiduciaries failed to pay proper attention to the fees for this fund.

4         Plaintiff's final set of claims asserts that the plan's inclusion of affiliated investment

5    products violated ERISA's prohibited transaction provisions.  Every fund in which plaintiff

6    himself invested was added more than six years before this lawsuit was filed, however, and the

7    features plaintiff now challenges—the funds' fees and affiliation with BlackRock—were always

8    openly disclosed.  Plaintiff's claims are accordingly untimely both under ERISA's three-year

9    statute of limitations (barring claims brought more than three years after a plaintiff acquired

10   actual knowledge of them) and under ERISA's six-year statute of repose (barring claims brought

11   more than six years after the challenged fiduciary decision occurred).  Even if plaintiff's

12   prohibited transaction claims were not time-barred, they still would have to be dismissed.

13   Plaintiff cannot even articulate a prohibited transaction as to the fee-free collective trusts, and the

14   Complaint establishes that all of the plan's affiliated offerings are expressly exempted from the

15   prohibited transaction provisions.

16        Plaintiff's Complaint is meritless and its many defects cannot be cured by amendment.

17   This action should be dismissed with prejudice.

18                          **BACKGROUND AND FACTUAL ALLEGATIONS**

19        Blackrock, Inc. is the world's largest asset manager, with over $5 trillion in assets under

20   management.  Class Action Complaint ("Compl.") ¶ 5 (ECF No. 1).  BlackRock sponsors a

21   defined contribution retirement plan (the BlackRock Retirement Savings Plan, or the "Plan"), to

22   help employees save for retirement, funded by salary deferments and contributions from

23   BlackRock.  *Id.* ¶¶ 3, 5.  While most plans pay operational costs out of plan assets (as ERISA

24   permits), BlackRock bears virtually all of the Plan's costs itself: most of the Plan's assets are

25   invested in collective trusts for which BlackRock's investment management fees are waived (*see*

26   *infra* at 11), and BlackRock pays for the Plan's administrative services out of its own assets, *see*

27   Declaration of Meaghan VerGow in Support of BlackRock's Motion to Dismiss ("VerGow

28

1  Decl."), Ex. D ("2015 RSP Form 5500"), at 90.[1]  These extraordinary concessions substantially

2  lower the cost of participation in the Plan.  Approximately 9,700 current and former employees

3  participate in the Plan.  Compl. ¶ 5.  As of 2015, the Plan had roughly $1.56 billion in assets.  *Id.*

4       The Plan's administrator is the BlackRock, Inc. Retirement Committee.  *Id.* ¶ 46.  The

5  BlackRock, Inc. Investment Committee, a subcommittee of the Retirement Committee, is

6  responsible for selecting and monitoring the investment options that are made available to

7  participants for the investment of their individual accounts.  *Id.* ¶¶ 50, 62, 67.  The BlackRock,

8  Inc. Administrative Committee, another subcommittee of the Retirement Committee, is

9  responsible for issues of plan administration.  *Id.* ¶ 52.

10      During the class period, the Plan lineup included more than two dozen core investment

11  options, some managed by BlackRock affiliates and others managed by independent asset

12  managers.  The options have consistently reflected a broad range of asset classes, risk profiles,

13  and investment strategies.  *See id.* ¶ 66; VerGow Decl., Ex. C ("2011 RSP Form 5500"), at 56–

14  57; 2015 RSP Form 5500, at 77–79.[2]  The vast majority of those options are the no-fee collective

15  trusts managed by BlackRock Institutional Trust Company ("BTC").  *See, e.g.*, 2015 RSP Form

16  5500 at 91.  The Plan currently offers one mutual fund managed by a BlackRock affiliate, the

17  Low Duration Bond Fund.  VerGow Decl., Ex. O ("Mar. 2017 Participant Fee Disclosure").

18  Earlier in the class period, the Plan offered two other BlackRock-affiliated mutual funds—the

19  Total Return Fund and the Global Allocation Fund—but the Plan now offers those strategies

20  through collective trusts.  *Compare id.* at 266–67, *with* 2011 RSP Form 5500, at 69.[3]  During the

21  class period the Plan also offered several mutual funds managed by unaffiliated third parties.  *See,*

23  [1] As explained more fully *infra* at 6 and in the accompanying Request for Judicial Notice, the
24  Court may properly consider the documents that are incorporated into the Complaint or otherwise
   judicially noticeable.

25  [2] The Plan's investment lineup meets the regulatory specifications for an "ERISA section 404(c)
   plan," as it offers a broad range of investment alternatives with at least three diversified options
26  that have materially different risk and return characteristics.  *See* 29 C.F.R. § 2550.404c-1(b).

27  [3] Mutual funds are pooled investment vehicles that are overseen by registered investment
   companies and subject to the regulatory supervision of the Securities and Exchange Commission
28  ("SEC"); collective trusts are also pooled investment vehicles, but they are administered by a
   bank or trust company and are not regulated by the SEC.  *E.g.*, 15 U.S.C. § 80a-3(a), (c)(11).

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1    *e.g.*, 2015 RSP Form 5500, at 91.

2            Plaintiff Charles Baird is a former BlackRock employee who continues to participate in

3    the Plan.  Compl. ¶¶ 28, 30.  He filed this putative class action on April 5, 2017, alleging that the

4    Plan's fiduciaries breached their fiduciary duties of loyalty and prudence in selecting and

5    monitoring investment options managed by BlackRock affiliates in the Plan's investment lineup.

6    *Id.* ¶¶ 191–212.  In particular, plaintiff alleges that the BlackRock LifePath target date funds in

7    the lineup charged excessive fees, and that they underperformed other target date options during

8    this period.  *See, e.g.*, *id.* ¶¶ 110, 201.  Plaintiff also challenges the Plan's Low Duration Bond

9    Fund and Global Allocation Fund options as unduly costly, *see id.* ¶¶ 156, 143–51, and makes

10   cursory complaints about the fees of other Plan options, *see id.* ¶¶ 130–38, 165–70.  The

11   Complaint asserts claims for fiduciary breach, prohibited transactions, failure to monitor other

12   fiduciaries, and co-fiduciary liability.  *See generally id.* ¶¶ 191–249.

13                                  **LEGAL STANDARD**

14           At the threshold, a plaintiff must establish that he has Article III standing to seek relief in

15   federal court.  *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d

16   1123, 1126 (9th Cir. 2006).  If the plaintiff does not carry his burden of establishing standing with

17   respect to a claim, that claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  *Munns v.*

18   *Kerry*, 782 F.3d 402, 409 (9th Cir. 2015).  When "considering a motion to dismiss pursuant to

19   Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any

20   evidence . . . to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v.*

21   *United States*, 850 F.2d 558, 560 (9th Cir. 1988); *accord Mahtesian v. U.S. Office of Pers. Mgmt.*,

22   388 F. Supp. 2d 1047, 1047 (N.D. Cal. 2005).

23           In the ERISA context, a motion to dismiss for failure to state a claim pursuant to Fed. R.

24   Civ. P. 12(b)(6) is an "important mechanism for weeding out meritless claims."  *Fifth-Third*

25   *Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).  "To survive a Rule 12(b)(6) motion to

26   dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face."

27   *Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Lazy Y Ranch Ltd. v.*

28   *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

1   (2007).  The court need not accept conclusory allegations, unreasonable inferences, or legal

2   conclusions set out in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681

3   (2009); *see also Twombly*, 550 U.S. at 555 ("plaintiff's obligation to provide the 'grounds' of his

4   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

5   the elements of a cause of action will not do" (citation omitted)).  Plausibility requires "more than

6   a sheer possibility that a defendant has acted unlawfully." *Turner*, 788 F.3d at 1210 (quoting

7   *Iqbal*, 556 U.S. at 678).

8         When resolving "a Rule 12(b)(6) motion to dismiss," the Court "must consider the

9   complaint in its entirety, as well as . . . documents incorporated . . . by reference, and matters of

10  which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S.

11  308, 322 (2007); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing that

12  the "incorporation by reference" doctrine extends to situations "in which the plaintiff's claim

13  depends on the contents of a document, the defendant attaches the document to its motion to

14  dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff

15  does not explicitly allege the contents of that document in the complaint").  Here, documents

16  relating to the Plan may be considered in connection with BlackRock's arguments under Fed. R.

17  Civ. P. 12(b)(6) because they are incorporated into, and centrally related to, plaintiff's allegations

18  about the Plan's investment options and expenses.  *See Lorenz v. Safeway, Inc.*, No. 16-CV-

19  04903-JST, 2017 WL 952883, at *3 (N.D. Cal. Mar. 13, 2017) (taking judicial notice of plan

20  document, summary plan descriptions, Form 5500 filings submitted to the Department of Labor,

21  participant fee disclosure notices, and a master services agreement, noting that "[c]ourts routinely

22  take judicial notice of ERISA plan documents like those").[4]

---

23  [4] *See also, e.g.*, *Watkins v. Citigroup Ret. Sys.*, No. 15-CV-731-DMS, 2015 WL 9581838, at *2

24  (S.D. Cal. Dec. 30, 2015) (taking judicial notice of ERISA plan document on motion to dismiss);
    *Urakhchin v. Allianz Asset Mgmt. of Am. L.P.*, No. SACV 15-1614-JLS, 2016 WL 4507117, at

25  *3–4 (C.D. Cal. Aug. 5, 2016) (same); *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No.
    CV 14-01480 (MMM), 2014 WL 6603761, at *4 (C.D. Cal. July 28, 2014) (same); *Koblentz v.*

26  *UPS Flexible Emp. Benefit Plan*, No. 12-CV-0107-LAB, 2013 WL 4525432, at *1–2 (S.D. Cal.
    Aug. 23, 2013) (same); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1025 (N.D. Cal. 2014)

27  (taking judicial notice of "aspects of a publicly accessible website"); *Norfolk Cty. Ret. Sys. v.*
    *Solazyme, Inc.*, No. 15-CV-02938-HSG, 2016 WL 7475555, at *1 n.1 (N.D. Cal. Dec. 29, 2016)

28  (taking judicial notice of filings with the U.S. Securities and Exchange Commission).

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1

**ARGUMENT**

2

**I.    PLAINTIFF LACKS STANDING TO BRING CLAIMS CHALLENGING FUNDS
HE NEVER SELECTED FOR HIS OWN PLAN ACCOUNT**

3

4

Plaintiff lacks Article III standing to attack the BlackRock-affiliated Plan investment

5

options in which he did not personally invest, including the funds that are the primary focus of his

6

Complaint: the LifePath Funds and the Low Duration Bond Fund.

7

Article III standing requires a plaintiff to show he has been personally injured by the

8

challenged conduct.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992) (a

9

constitutionally sufficient injury in fact must "affect the plaintiff in a personal and individual

10

way"); *Glanton*, 465 F.3d at 1126 (affirming dismissal of ERISA suit for lack of standing); *see

11

also Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *5 (N.D. Cal. Sept. 22,

12

2016) (Gilliam, J.) (dismissing deceptive labeling claims with respect to products the plaintiff did

13

not purchase because he lacked standing as to them).  In a defined contribution plan, a participant

14

can be personally injured by conduct regarding a fund in the plan's investment lineup only if he

15

selected that fund for his own plan account.  *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*,

16

552 U.S. 248, 250 & n.1 (2008) (explaining individual nature of defined contribution accounts);

17

*Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 264 (D. Mass. 2008) ("[I]f an asset in a defined

18

contribution plan is harmed, the loss is not spread.  It is visited entirely on the participant or

19

participants who hold the impaired asset.").  Courts thus routinely dismiss claims relating to the

20

selection or management of funds in which the plaintiff did not herself invest.  *See, e.g.*,

21

*Caltagirone v. N.Y. Cty. Bancorp, Inc.*, 257 F. App'x 470, 473 (2d Cir. 2007) (holding that the

22

plaintiff lacked standing to challenge shares she never held because she "is not within the group

23

she defines as injured as a result of the alleged fiduciary breaches"); *In re UBS Erisa Litig.*, No.

24

08-CV-6696 (RJS), 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras

25

v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) (similar).[5]

26

---

[5] *See also, e.g.*, *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 917

27

F. Supp. 2d 231, 235 (S.D.N.Y. 2013) (dismissing ERISA claims as to funds plaintiff did not
invest in); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293-STA-CGC, 2011 WL 2182262, at *6

28

(W.D. Tenn. June 3, 2011) (noting it is "axiomatic" that a plaintiff lacks standing to sue for
breach of fiduciary duty with respect to a fund in which he "never had any holdings"); *compare

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

Plaintiff complains at length that the LifePath Funds and Low Duration Bond Fund were imprudent options for the Plan.  Compl. ¶¶ 17, 19–21, 82–129, 154–68.  But plaintiff's participant statements establish that he did not invest in those funds, or in others that he challenges in passing (*see, e.g.*, *id.* ¶¶ 134-36).  *See* VerGow Decl., Ex. A ("Plan Participant Statements").  The Plan fiduciaries' decisions to select and retain these investment options necessarily caused plaintiff no injury.  Plaintiff accordingly lacks Article III standing to challenge those funds and claims respecting them must be dismissed.[6]  Plaintiff's Complaint can survive at all only if plaintiff is able to state plausible claims with respect to the few funds in which he actually did invest.  *See In re UBS Erisa Litig.*, 2014 WL 4812387, at *6 ("Plaintiff can only demonstrate a constitutionally sufficient injury by pointing to her individual account's specific losses during the class period." (emphasis omitted)).[7]  As explained in the following sections, plaintiff cannot come close to doing so.

Plaintiff's lack of constitutional standing is not excused because he filed a putative class complaint, because the defective claims are not "substantially similar" to claims as to which plaintiff has a demonstrated personal stake.  *Jones*, 2016 WL 5210935, at *5; *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 15-CV-03952-HSG, 2016 WL 454083, at *3 (N.D. Cal. Feb. 5, 2016) (Gilliam, J.) (dismissing claims for lack of standing).[8]  Plaintiff's claims with respect to

---

*Urakhchin*, 2016 WL 4507117 (holding that the plaintiff had standing to challenge planwide practices).  Courts likewise recognize in the securities context that plaintiffs bringing fraud claims lack standing to challenge funds in which they did not invest.  *See, e.g.*, *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *7 (N.D. Cal. Oct. 24, 2006) (collecting cases); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010).

[6] Statutory standing principles apply similarly here.  As explained in *LaRue*, an ERISA plaintiff is not authorized to bring a claim under 29 U.S.C. § 1132(a)(2) if her individual account has not been affected by the challenged conduct.  *See LaRue*, 552 U.S. at 256 ("§ 502(a)(2) . . . authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account").

[7] The only fund to which plaintiff actually allocated his account that receives more than a passing reference in the Complaint is the Global Allocation Fund, and his claim with respect to that fund fails under Fed. R. Civ. P. 12(b)(6) for reasons discussed *infra* at 15–16.

[8] *See also, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869–70 (N.D. Cal. 2012); *Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *7–8 (N.D. Cal.

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1  each fund in the Complaint turn on distinct features of each fund, distinct fiduciary decisions, and

2  distinct alleged breaches.  Plaintiff's own Complaint makes that clear, by separately alleging

3  unique fiduciary breaches based on the particular characteristics of each of the funds he

4  challenges.  *See* Compl. ¶¶ 82–138 (BlackRock LifePath Funds), 139–53 (Blackrock Global

5  Allocation Fund), 154–64 (BlackRock Low Duration Bond Fund), 165 (BlackRock Total Return

6  Fund), 167–68 (US Debt Index Fund).  The question whether the fiduciaries prudently monitored

7  the performance of the LifePath Funds, for example, is different from (and would turn on a

8  different factual record from) the question whether the fiduciaries prudently decided the Global

9  Allocation Fund was an appropriate choice for the Plan in view of its expense ratio.  *Cf.*, *e.g.*,

10  *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *15–18 (N.D. Cal.

11  Aug. 29, 2016) ("*White I*") (separately analyzing distinct challenges to different funds); *Tibble v.*

12  *Edison Int'l*, 639 F. Supp. 2d 1074, 1115–19 (C.D. Cal. 2009) (same), *vacated and remanded on*

13  *other grounds*, 843 F.3d 1187 (9th Cir. 2016).  Plaintiff will not be able to establish that he is an

14  appropriate class representative with respect to the funds he never had a stake in, including the

15  LifePath and Low Duration Bond Funds, and thus his purported claims as to such funds should be

16  dismissed.

17  **II.      THE COMPLAINT DOES NOT STATE A CLAIM FOR FIDUCIARY BREACH**

18         ERISA's fiduciary standard is process-driven: fiduciaries must carry out their functions

19  loyally and "with the care, skill, prudence, and diligence under the circumstances then prevailing"

20  that a prudent fiduciary would use.  29 U.S.C. § 1104(a)(1)(A), (B).[9]  The Complaint permits no

21  inference of a deficient fiduciary process here.  Plaintiff's primary basis for claiming a lapse in

22  fiduciary process is that the Plan bears excessive fees, but his allegations are both demonstrably

23  wrong and legally insufficient: the Plan is not charged *any* investment management fees for its

24  investments in affiliated collective trusts, and it offered the lowest-cost share class of affiliated

25  Jan. 27, 2017); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D.

26  Cal. June 14, 2012).

27  [9] *See also*, *e.g.*, *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1221, 1229–30 (N.D. Cal. 2008) (key to prudence is "the thoroughness of the fiduciary's decision making process"); *In re Unisys*

28  *Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996) (the ERISA prudence standard "focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results").

1   mutual funds that have been the first choice of many other retirement fiduciaries.  And while

2   plaintiff also attempts to allege an imprudent fiduciary process by comparing the performance of

3   some of the funds to that of other funds in the market, courts consistently recognize that hindsight

4   critiques cannot sustain a claim for fiduciary breach under the ERISA § 404(a) standard, which

5   focuses on the fiduciary's conduct, not its results.  *See, e.g.*, *Kanawi*, 590 F. Supp. 2d at 1229–30

6   ("20/20 hindsight musings are not sufficient to maintain a cause of action alleging a breach of

7   fiduciary duty"); *St. Vincent Catholic Med. Ctrs. ex rel. PBGC v. Morgan Stanley Inv. Mgmt.,*

8   *Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("We judge a fiduciary's actions based upon information

9   available to the fiduciary at the time of each investment decision and not from the vantage point

10  of hindsight." (alteration and citation omitted)).  Because plaintiff's Complaint includes not a

11  single allegation that calls the fiduciaries' decisionmaking process into question, his claims for

12  fiduciary breach should be dismissed.  *See Dudenhoeffer*, 134 S. Ct. at 2473 (explaining that

13  claims for fiduciary breach under ERISA should be dismissed if the plaintiff does not plausibly

14  allege that a prudent fiduciary "could not have concluded" that the challenged decision was

15  appropriate).[10]

16        A.    **Plaintiff Does Not Plausibly Allege Any Defect In The Fiduciaries' Process**
             **For Selecting And Monitoring The Plan's Collective Trust Options**
17

18        The Complaint's central claim concerns the BlackRock LifePath Funds, the target date

19  collective trusts offered to Plan participants during the class period.  Plaintiff never personally

20  invested in these funds, as noted earlier, but nevertheless alleges that the LifePath Funds charged

21  the Plan excessive fees by investing in multiple layers of BlackRock-affiliated funds, *see* Compl.

22  ¶¶ 83–105, 134, and that the LifePath Funds underperformed certain target date fund alternatives,

23  *see id.* ¶¶ 86, 106–29.  These allegations do not plausibly support a claim that the fiduciaries

24  ---

[10] *See also, e.g.*, *White I*, 2016 WL 4502808, at *19 (granting motion to dismiss where "[t]he facts
25  as pled do not raise a plausible inference that defendants breached their fiduciary duties and/or
    duties of loyalty and prudence"); *In re Disney ERISA Litig.*, No. CV 16-2251 PA (JCX), 2016
26  WL 8192945, at *4 (C.D. Cal. Nov. 14, 2016) (granting motion to dismiss where "[p]laintiffs
    have alleged no facts plausibly suggesting any sort of self-dealing or other disloyal conduct by the
27  Plan or the individual members of the Plan's committee"); *Barchock v. CVS Health Corp.*, C. A.
    No. 16-061-ML, 2017 WL 1382517, at *5 (D.R.I. Apr. 18, 2017) (dismissing complaint alleging
28  breach of fiduciary duties based on a "hindsight" comparison of investment option to industry
    averages), *appeal filed*, No. 17-1515 (1st Cir. May 23, 2017).

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1    followed defective processes in selecting and retaining these funds.

2           To begin, plaintiff's attempt to rely on the fees charged by the affiliated collective trusts to

3    question the motives of the fiduciaries in including the investments fails for the simple reason that

4    no such fees are paid to BlackRock entities for these investments.  VerGow Decl., Ex. J

5    (Guideline and Fee Agreement ("GLFA")), at 197–98 (reflecting agreement that investment

6    management services will be provided on a "[g]ross of [f]ee" basis); *id.* Ex. K (Investment

7    Management Agreement ("IMA")), at 201–02 (incorporating the GLFA); *see also, e.g.*, 2015 RSP

8    Form 5500, at 73–76 (confirming that no BlackRock entity received direct or indirect

9    compensation for services to the Plan).[11]  Plaintiff contends that the Plan invests in share classes

10   of the affiliated collective trusts that do pay investment management fees to BlackRock, citing as

11   support the Plan's publicly filed Form 5500s, *see* Compl. ¶¶ 90, 167, but those annual reports

12   flatly refute the contention.  The Complaint alleges that the Plan was invested in the "M Class" of

13   the LifePath Funds, for example, but the Plan's Form 5500s show that the Plan invests in the fee-

14   free F Class.  *Compare* Compl. ¶ 90, *with* 2015 RSP Form 5500, at 77, 79 (identifying the Plan's

15   investment in the F Class of the LifePath Funds).  The Plan's Form 5500s likewise refute

16   plaintiff's allegation that the Plan was invested in the "W Class" of the U.S. Debt Index Fund.

17   *Compare* Compl. ¶ 167, *with* 2015 RSP Form 5500, at 78 (identifying the Plan's investment in

18   the F Class of the U.S. Debt Index Fund).  Given that *plaintiff himself* cites these forms as the

19   *source* of his fee allegations, he does not and in good faith could not allege that they are

20   incorrect.[12]

21          Plaintiff implies that the mere fact that the collective trusts are managed by a BlackRock

22   _____

23   [11] The Plan pays only pass-through administrative costs, such as custodial fees; those fees are
     remitted to third-party service providers, not BlackRock, and were capped at 2 basis points or less
24   (*i.e.*, two-hundredths of one percent) during the entire class period.  *See* GLFA at 198.  The Form
     5500s and annual financial reports for the individual collective trusts confirm that total
25   administrative expenses for each collective trust remained under this cap.  *See, e.g.*, VerGow
     Decl., Ex. E ("2015 LifePath Index 2035 Fund Form 5500 Filings"), at 102–04; *id.* Ex. L
26   (financial reporting for F-Class funds).

27   [12] The Complaint offers conclusory attacks on other collective trusts in the Plan lineup.  *See*
     Compl. ¶¶ 130–38.  These attacks focus entirely on the collective trusts' alleged investment
28   management fees and founder because no such fees were paid to BlackRock affiliates, as
     explained in the text.

                                              NOTICE OF MOTION AND MOTION TO
                                              DISMISS PLAINTIFF'S CLASS ACTION
                                              COMPLAINT; 17-CV-01892-HSG

1   affiliate is sufficient to infer a disloyal fiduciary process.  But shorn of plaintiff's deficient fee

2   allegation, the suggestion makes no sense.  ERISA explicitly permits financial services

3   companies to make their own products available for investment in their retirement accounts—

4   even when they actually charge fees for doing so, *see* 29 U.S.C. § 1108—because Congress

5   recognized that "it would be contrary to normal business practice for a company whose business

6   is financial management to seek financial management services from a competitor."  Notice of

7   Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724, 10730

8   (Mar. 13, 1991); H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.

9   5038, 5094 (same); *see also, e.g.*, PTE 77-3, Class Exemption Involving Mutual Fund In-House

10  Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734, 18,734–35 (Apr. 8,

11  1977).  Fiduciaries may wish to offer proprietary products in their employee retirement plans for

12  a variety of good reasons, including their familiarity with the investment managers and

13  confidence in "their abilities and responsiveness."  *Dupree v. Prudential Ins. Co. of Am.*, No. 99-

14  8337-Civ.-JORDAN, 2007 WL 2263892, at *10 (S.D. Fla. Aug. 10, 2007).  Moreover, as the

15  Complaint itself acknowledges, BlackRock is the largest and most popular asset manager in the

16  world, attracting trillions of dollars in investment.  Compl. ¶ 5.  Much of that is from Fortune 500

17  retirement plans whose fiduciaries each likewise have concluded that BlackRock LifePath Funds

18  are a prudent choice for their plans.  *See, e.g.*, 2015 LifePath Index 2035 Fund Form 5500 Filings,

19  at 96, 97, 136 (reflecting investments by plans sponsored by Delta Airlines, Barclays Bank,

20  CitiGroup, Burger King, and others).  Here, the Plan fiduciaries obtained these high-quality funds

21  for the Plan on extraordinarily favorable terms.  No inference of disloyal or imprudent

22  decisionmaking is possible from the Plan's selection of the proprietary collective trust investment

23  choices.

24       What is left in the Complaint is the allegation that the LifePath Funds "underperformed"

25  various alternatives over the class period.  Compl. ¶ 110.  But this impermissible hindsight

26  critique does not support any inference that the Plan fiduciaries, "*at the time they engaged in the*

27  *challenged transactions*, [failed to] employ[] the appropriate methods to investigate the merits of

28  the investment."  *White I*, 2016 WL 4502808, at *6 (emphasis added; citing *Tibble v. Edison Int'l*,

1    729 F.3d 1110, 1136 (9th Cir. 2013) ("*Tibble I*"), *vacated on other grounds*, 135 S. Ct. 1823

2    (2015)); *see supra* at 10.  Even accepting at face value plaintiff's allegation that the LifePath

3    Funds have not, in retrospect, produced returns matching those of some other target date offerings

4    over the past six years, that allegation does not support the conclusion that the Investment

5    Committee used imprudent methods to select these funds for the BlackRock Plan.  *St. Vincent*,

6    712 F.3d at 721–24 (dismissing claims based on a backward-looking critique of performance).

7    Target date funds do not follow a single common investment strategy for allocating risk over the

8    life of the funds, which may be as long as 45 years (covering a variety of market environments,

9    from bull to bear); rather, they vary in their "glide paths."  *See* SEC and DOL, Notice of Hearing,

10   Hearing on Target Date Funds and Similar Investment Options, at 1–2 (May 19, 2009),

11   https://www.sec.gov/rules/other/2009/ic-28725.pdf ("'Target date' or 'lifecycle' funds and other

12   similar investment options . . . are investment products that allocate their investments among

13   various asset classes and automatically shift that allocation to more conservative investments as a

14   'target' date approaches.  This shift in asset allocation, often referred to as a fund's 'glide path,'

15   may differ significantly among funds with the same target date."); Compl. ¶ 66.  As it happens,

16   the LifePath Funds, with their distinctive risk-management approach, are a popular choice for

17   401(k) plan fiduciaries—several hundred plans offer the funds as their target-date strategies.  *See*

18   *generally* 2015 LifePath Index 2035 Fund Form 5500 Filings (excerpts from 2015 LifePath Index

19   2035 Fund 5500s for all share classes, showing all invested plans).  This presumably explains

20   why plaintiff is unable to offer any critique of how the LifePath glide paths allocate risk over the

21   life of the fund, except to point out after-the-fact performance differences in the short term.[13]  It

22   follows that he has offered no basis to question the soundness of the fiduciaries' processes for

23   maintaining these funds in the Plan.

24         Just last month, the District of Minnesota dismissed with prejudice a similar complaint

25   challenging the offering of proprietary target date funds in Wells Fargo's 401(k) plan, on account

26
     _____

27   [13] The different strategic asset allocations reflected in the glide paths are the only conceivable
     sources of divergent performance, as the LifePath target date funds rely on passive
28   management—or "indexing"—for the underlying assets.  *See, e.g.*, 2015 RSP Form 5500, at 77–
     79.

1    of deficiencies similar to those here: The plaintiff could not plausibly allege excessive fees

2    merely by comparing the affiliated options' expenses to two alternatives, nor could the plaintiff

3    plausibly allege a fiduciary breach by pointing out performance differences between two different

4    target date funds. *Meiners v. Wells Fargo & Co.*, No. 16-CV-3981, 2017 WL 2303968, at *2–4

5    (D. Minn. May 25, 2017) ("Taken as a whole, the complaint merely supports an inference that

6    Wells Fargo continued to invest in affiliated target date funds when its rate of return was lower

7    than Vanguard, which had a different investment strategy, and that was more expensive than

8    Vanguard and Fidelity funds. These allegations do not give rise to an inference of a breach of

9    fiduciary duty."). Plaintiff does not even allege that much here. These claims fail.

10       **B.    Plaintiff Similarly Fails To Plausibly Allege Any Fiduciary Breach In The
             Selection And Monitoring Of The Mutual Fund Options He Attacks**

11
12       The Complaint challenges two BlackRock-affiliated mutual funds included in the

13   investment lineup during the class period, on distinct but equally meritless grounds.

14       First, plaintiff alleges that the Low Duration Bond Fund was an imprudent selection

15   because the fund allegedly charged higher fees than and underperformed an allegedly comparable

16   Vanguard fund. Compl. ¶¶ 154–64. Because plaintiff never personally invested in this fund, he

17   once again lacks standing to bring this challenge. And even if he had standing, plaintiff's

18   performance critique would not support his claims because it is based on impermissible hindsight,

19   and plaintiff cannot support a fee critique based on a comparison to a single cheaper fund. *Supra*

20   at 10; *Terraza v. Safeway Inc.*, No. 16-CV-03994-JST, 2017 WL 952896, at *12–13 (N.D. Cal.

21   Mar. 13, 2017) ("The fact that it is possible that some other funds might have had even lower

22   [expense] ratios is beside the point; nothing in ERISA requires every fiduciary to scour the

23   market to find and offer the cheapest possible fund (which might, of course, be plagued by other

24   problems)." (alteration omitted; quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir.

25   2009))); *White v. Chevron Corp.* ("*White II*"), No. 16-CV-0793-PJH, 2017, 2017 U.S. Dist.

26   LEXIS 83474, *44–45 (N.D. Cal. May 31, 2017) (similar); *Meiners*, 2017 WL 2303968, at *3–4

27   & n.4 (similar).

28       More generally, this claim is self-defeating, because plaintiff's own allegations show that

he is comparing apples to oranges: the two funds pursue different strategies, and the Vanguard fund invests in securities with longer duration, which carry higher risk along with potentially higher reward.  Compl. ¶¶ 158–59 (reflecting that the Vanguard fund maintains a duration of between 1 and 4 years, and that the BlackRock fund maintains a duration of between 0 and 3 years); *see also White II*, 2017 U.S. Dist. LEXIS 83474, *29–32 (explaining risks associated with longer duration funds).  Plaintiff's comparison of the two funds' fees and performance is thus meaningless.  Plaintiff offers nothing by which to conclude that a fiduciary could not reasonably select an option with the risk profile and expense ratio of the Low Duration Bond Fund for inclusion in a diversified investment lineup.[14]  *See, e.g.*, 29 C.F.R. § 2550.404a-1(b)(i) ("[A] fiduciary shall . . . give[] appropriate consideration to those facts and circumstances . . . relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio."); *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011) (dismissing challenges to mutual funds with fees as high as 96 basis points, noting that the expense ratios for these publicly offered funds "necessarily were set against the backdrop of market competition").

Second, plaintiff alleges that the Investment Committee imprudently included the Global Allocation Fund (in which plaintiff *did* actually invest) in the Plan lineup because its expense ratio was allegedly higher than the expense ratio for two similar third party funds, managed by two insurance companies to which a BlackRock affiliate provided sub-advisory services.  Compl. ¶¶ 139–53.  In fact, the overall fees for the Global Allocation Fund were *lower* than the fees for the third party funds.  *See* VerGow Decl., Ex. G ("Feb. 2013 BlackRock Global Allocation Fund prospectus"), at 171 (showing "Total Annual Fund Operating Expenses" of 88 basis points for Institutional Shares); *id.* Ex. H (Apr. 2013 Allianz Global Allocation Fund prospectus), at 176 (showing "Total Annual Fund Operating Expenses" of 115 basis points); *id.* Ex. I (Apr. 2013 Jackson Global Allocation Fund prospectus), at 186 (showing "Total Annual Fund Operating Expenses" of 91 to 111 basis points, depending on share class).  Plaintiff is therefore simply

---

[14] Notably, the Plan *also* included the U.S. Debt Index Fund, a fixed income option that offered higher duration (and, with it, the opportunity for higher returns).  Compl. ¶ 167.

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1    incorrect when he contends that the Plan "could have paid less for the exact same fund and

2    services by including [the third party funds] in the Plan rather than the BlackRock affiliate," *see*

3    Compl. ¶ 152, and this claim collapses accordingly.

4        Plaintiff also suggests that the Investment Committee acted imprudently by failing to

5    switch the Plan into a collective trust version of the Global Allocation strategy earlier than it

6    actually did, in 2014.  Compl. ¶¶ 140–44.  But plaintiff does not allege that BlackRock even

7    offered a collective trust for this strategy before that date, much less one with a track record that

8    would have supported a switch.  *Cf. White I*, 2016 WL 4502808, at *12 ("It is inappropriate to

9    compare distinct investment vehicles solely by cost, since their essential features differ so

10   significantly.  In particular, mutual funds have unique regulatory and transparency features, which

11   make any attempt to compare them to investment vehicles such as collective trusts and separate

12   accounts an 'apples-to-oranges comparison.'" (citing *Tibble I*, 729 F.3d at 1134)).  This theory,

13   too, fails.

14       C.    **Plaintiff's Remaining Allegations Do Not Support Any Inference Of
               Imprudence Or Disloyalty**

15

16       Plaintiff offers a few additional attacks, none of which advance his Complaint across the

17   plausibility threshold.  Plaintiff faults BlackRock for failing to include more "passively managed"

18   investment options.  Compl. ¶¶ 169–70.  But there is no requirement under ERISA that fiduciaries

19   offer some particular portion of passive options (or, indeed, any such options)—on the contrary,

20   courts recognize that fiduciaries may in their judgment select the mix they determine is

21   appropriate.  *Loomis*, 658 F.3d at 673–74 (dismissing claims challenging a fiduciary's selection

22   of a mix of higher-cost actively managed funds and lower-cost passively managed funds); *Taylor*

23   *v. United Techs. Corp.*, No. 3:06cv1494 (WWE), 2009 WL 535779, at *10 (D. Conn. Mar. 3,

24   2009) (fiduciaries are not required to choose index funds over actively managed funds "so long as

25   the fiduciary's decision meets the prudent person standard"), *aff'd*, 354 F. App'x 525 (2d Cir.

26   2009).  Plaintiff offers no basis for second-guessing the mix selected by the fiduciaries here, apart

27   from the implausible "excessive fee" allegations already addressed.  And, in any event, plaintiff

28   apparently overlooks that the LifePath Funds are composed of passive funds, such that more than

1  half of the options in the Plan lineup follow that investment style.  *See, e.g.*, 2015 RSP Form

2  5500, at 77–79 (reflecting "index" style).

3         Plaintiff also contends that the density of proprietary options in the Plan lineup had the

4  effect of concentrating systemic risk, citing disclosures in the prospectus for one of the mutual

5  funds in the Plan lineup.  Compl. ¶¶ 171–80.  Yet plaintiff offers no reason to believe that this

6  "systemic risk" somehow injured anyone in the Plan, including himself, and thus the allegation

7  cannot support any claims for monetary relief.  The risk analysis in the Complaint is frivolous in

8  any event.  For one thing, plaintiff muddles the distinct structures housing these investment

9  strategies—the assets in the mutual funds and collective trusts challenged here are not

10  commingled together, but rather are invested in independent entities, separated from the assets of

11  the trustee or management company.  *See* Compl. ¶ 83; 15 U.S.C. §§ 80a-4, 80a-5; SEC,

12  *Investment Company Registration and Regulation Package*, https://www.sec.gov/investment/fast-

13  answers/divisionsinvestmentinvcoreg121504htm.html (last visited May 30, 2017).  An investor

14  thus does not face additional financial risk by investing in multiple funds overseen by a common

15  investment management company or trustee.  For another, it is not plausible that diversifying

16  across investment management companies or trustees would necessarily have reduced cyber risk,

17  as opposed to *enlarging* it, by increasing the Plan's counterparties and thus the odds that one of

18  them would be subject to a cyber attack compromising sensitive information.

19         Even accepting the Complaint's characterization of systemic risks affecting 401(k) plans,

20  plaintiff identifies no reason why the fiduciaries should have prioritized diversification of these

21  types of risk (though they may be a *permissible* consideration under ERISA) over other

22  considerations, such as expenses and potential returns, which ERISA expressly *directs* fiduciaries

23  to consider.  *See, e.g.*, 29 U.S.C. § 1104 (stating that fiduciaries must act "for the exclusive

24  purpose of providing benefits to participants and their beneficiaries and defraying reasonable

25  expenses").  Ultimately, plaintiff identifies no defect in the fiduciaries' process for evaluating

26  these types of risk and no reason to conclude they did not reach their lineup decisions using a

27

28

- 17 -

1   prudent process.  This claim also fails.[15]

2   **III.   PLAINTIFF'S PROHIBITED TRANSACTION CLAIMS SHOULD BE DISMISSED**

3   Plaintiff alleges that the Plan's investment in affiliated funds constituted prohibited

4   transactions in violation of ERISA § 406(a)(1)(A), (a)(1)(D), (b)(1), and (b)(2), 29 U.S.C.

5   § 1106(a)(1)(A), (a)(1)(D), (b)(1), and (b)(2).  *See* Compl. ¶¶ 214–23.  This claim is time-barred,

6   and it is implausibly alleged.

7   **A.   Plaintiff's Prohibited Transaction Claims Are Untimely**

8   Plaintiff's prohibited transaction claims are barred under ERISA's three-year statute of

9   limitations and six-year statute of repose.  29 U.S.C. § 1113(2).

10   ERISA claims must be brought within three years of the "earliest date on which the

11   plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2); *see Phillips v.*

12   *Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991) ("The earliest date

13   on which a plaintiff became aware of any breach . . . start[s] the limitation period of § 1113[](2)

14   running.").  A plaintiff is charged with knowledge of information provided in plan disclosures

15   and other participant communications.  *See, e.g.*, *Lorenz*, 2017 WL 952883, at *7 (plaintiff had

16   actual knowledge "when the [relevant] Participant Disclosure Notice was available to him . . .

17   regardless of whether [he] actually read the Participant Disclosure Notice" (citing *Brown v.*

18   *Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010))); *Sulyma v. Intel Corp.*

19   *Inv. Policy Comm.*, No. 15-CV-04977 NC, 2017 WL 1217185, at *11 (N.D. Cal. Mar. 31, 2017),

20   *appeal filed*, No. 17-15864 (9th Cir. Apr. 27, 2017) (claims are time-barred when "disclosures

21   gave [plaintiff] 'actual knowledge' of the transactions constituting the alleged violations, and the

22   disclosures were made more than three years before").

23   The allegations on which plaintiff builds his prohibited transaction claims—the fees for

24   the challenged funds, and their affiliation with BlackRock—were all known to plaintiff more than

---

[15] Plaintiff offers one other barely articulated attack on the Plan's investment options, which is entirely conclusory and easily dismissed.  He alleges that the Total Return Fund in the Plan "is more expensive than similar alternative non-proprietary options."  Compl. ¶ 165.  Plaintiff does not identify those options, permitting no meaningful analysis of his claim, and ERISA does not require fiduciaries to "scour the market" for the cheapest possible fund anyway.  *Supra* at 14.

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

three years before he filed this action, as the participant disclosures to him make clear. *See*

VerGow Decl., Ex. M ("Aug. 2013 Participant Fee Disclosure"), at 246–47. In a participant-

directed plan such as this one, the only "transaction" attributable to the fiduciaries (as opposed to

the plan participants) is the initial inclusion of a fund in the Plan lineup. *See Wright v. Or.*

*Metallurgical Corp*., 360 F.3d 1090, 1101 (9th Cir. 2004) (explaining that the decision to

"continue to hold" a particular investment is "not a transaction" for § 406 purposes); *David v.*

*Alphin*, 704 F.3d 327, 340–41 (4th Cir. 2013) (the "only action that can support an alleged

prohibited transaction is the initial selection of the affiliated funds").[16] Every single fund in

which plaintiff himself invested was added to the Plan lineup more than three years before this

lawsuit, as the disclosures to plaintiff showed.[17] That the funds remain in the Plan "impart[s]

nothing materially new" for statute of limitations purposes, because the limitations clock began

ticking on the date plaintiff learned his claims existed. *Phillips*, 944 F.2d at 520; *Lorenz*, 2017

WL 952883, at *7 ("This claim is time-barred regardless of whether the . . . Defendants had a

continuing duty not to engage in prohibited transactions. . . . [T]he three-year statute of

limitations requires the plaintiff's knowledge to be measured from *the earliest date on which he*

---

[16] In this way, a prohibited transaction claim is different from a fiduciary duty to monitor claim, the subject of the Supreme Court's decision in *Tibble v. Edison International*, 135 S. Ct. 1823 (2015). A fiduciary has a continuous duty to monitor plan investments, but a transaction occurs at a particular point in time, as the Ninth Circuit recognized in *Wright*. *White II*, 2017 U.S. Dist. LEXIS 83474, *69 ("[T]here is no such thing as a 'continuing' prohibited transaction – as the plain meaning of 'transaction' is that it is a point-in-time event." (citing *Wright*, 360 F.3d at 1101)). Either way, a plaintiff may challenge only distinct breaches or distinct transactions occurring within the time permitted under 29 U.S.C. § 1113, as the Supreme Court has confirmed. *Tibble*, 135 S. Ct. at 1829 (recognizing, as to a claim of breach of the duty to monitor, that "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely").

[17] Four BlackRock-affiliated funds were added to the Plan lineup within the past three years: the Short-Term Investment Fund, Strategic Income Opportunities Fund, Russell 2000 Alpha Tilts Fund, and Lifepath 2060 Fund. *Compare* Aug. 2013 Participant Fee Disclosure, at 246–47, *with* 2015 RSP Form 5500, at 77–79. Plaintiff did not allocate his account to any of these funds. *See* Plan Participant Statements. The Complaint also alleges nothing about the first two but their names, Compl. ¶ 66, and plaintiff's conclusory challenges to the other two funds fail for the reasons discussed *supra* at 10–17. Similarly, while the fiduciaries switched the vehicles for two investment strategies (Global Allocation and Total Return) from mutual funds to collective trusts within the past three years, *supra* at 4, plaintiff's only complaint about those collective trusts is the fee allegation that fails for the reasons discussed above, *supra* at 11.

1  *or she knew of the breach*." (quotations omitted and emphasis in original)).  His claims are

2  therefore untimely under ERISA's statute of limitations.

3  Plaintiff's prohibited transaction claims are also untimely under ERISA's statute of

4  repose.  ERISA requires plaintiffs to file suit within six years of the date of the alleged prohibited

5  transaction.  29 U.S.C. § 1113(1).  Every investment option in which plaintiff personally invested

6  was added to the Plan lineup more than six years before this suit was brought.  VerGow Decl.,

7  Ex. B (2010 RSP Form 5500), at 39; *see* Plan Participant Statements.[18]

### B. The Complaint Does Not Plausibly Allege Non-Exempt Violations Of The Prohibited Transaction Provisions He Identifies

9  ERISA § 406 prohibits certain transactions involving a plan and either a fiduciary or a

10  party in interest, subject to explicit authorization in § 408 and its implementing regulations of

11  transactions that meet certain conditions.  *See* 29 U.S.C. §§ 1106, 1108.  Count II of the

12  Complaint fails both because plaintiff does not allege that the Plan's investment in proprietary

13  funds come within the § 406 prohibitions he cites, and, to the extent § 406 applies at all, because

14  the investments qualified for the applicable exemptions under § 408.

### 1. Plaintiff Has Not Plausibly Alleged A Prohibited Transaction With Respect To The Plan's Collective Trust Investments

17  The deficiency of plaintiff's collective trust fee allegations spells the end of his attempt

18  even to allege prohibited transaction violations with respect to the Plan's collective trust

19  investments.

20  The Complaint alleges that the Plan's investment in affiliated funds violated four

21  subsections of the prohibited transaction statute: § 406(a)(1)(A), (a)(1)(D), (b)(1), and (b)(2).  The

22  collective trust allegations in the Complaint do not describe violations of any of these provisions.

23  Because the Plan does not pay any investment management fees to BlackRock in connection with

24  the affiliated collective trust investments, *supra* at 11, the selection of those investments for the

25  Plan necessarily does not involve "deal[ing] with the assets of the plan in [its] own interest or for

---

[18] Two other BlackRock-affiliated funds were added within the past six years, beyond the funds discussed at *supra* n.17—the Low Duration Bond Fund and the Equity Dividend Fund.  *Compare* 2011 RSP Form 5500, 56–57, *with* Aug. 2013 Participant Fee Disclosure, at 246–47.  Plaintiff's conclusory allegations with respect to those funds fail for the reasons discussed *supra* at 10–17.

NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFF'S CLASS ACTION
COMPLAINT; 17-CV-01892-HSG

1    [its] own account" (§ 406(b)(1)), nor does it entail the fiduciaries taking an adverse position to

2    Plan participants in a transaction (§ 406(b)(2)).  Insofar as plaintiff alleges (in wholly conclusory

3    terms) that the Plan fiduciaries stood to personally gain when they acted to increase revenues for

4    BlackRock, Inc. (Compl. ¶ 222), it follows that the Plan fiduciaries acted *against* their own

5    interests in selecting these collective trusts, which generated no investment management fees for

6    BlackRock entities whatsoever.[19]  Similarly, the inclusion of the fee-free collective trust

7    investments does not transfer to or afford the collective trust manager the use of Plan assets for its

8    own benefit (§ 406(a)(1)(D)), nor does it involve the sale or exchange of any property to the

9    collective trust manager (§ 406(a)(1)(A))—the manager simply *holds* Plan assets and invests

10   them pursuant to the terms of the IMA.  *See* IMA at 201; Compl. ¶ 83.  The Plan's actual fee

11   arrangement dooms any effort to cast the collective trust investments as prohibited transactions

12   within the meaning of these provisions.

13                    **2.      Exemptions Plainly Apply To The Plan's Affiliated Investments**

14              ERISA and its implementing regulations expressly permit the offering of affiliated

15   investment products in a plan lineup, where a transaction otherwise comes within the prohibitions

16   of § 406 (for example, where an affiliated investment fiduciary collects fees from plan assets), if

17   certain conditions are met.  *See, e.g.*, 29 U.S.C. § 1108(b)(8).  The conditions for these

18   exemptions are met here.[20]

19              To begin, the Plan's investment in the collective trusts comports with § 408(b)(8), which

20   permits transactions between a plan and a collective trust maintained by a party in interest

---

[19] The Plan fiduciaries moved from mutual funds to collective trusts for two strategies during the class period.  *Compare, e.g.*, Aug. 2013 Participant Fee Disclosure, at 246–47, *with* Mar. 2017 Participant Fee Disclosure, at 266–67 (reflecting changes from mutual fund to collective trust fees).

[20] Some courts have held that plaintiffs do not have to allege the non-application of prohibited transaction exemptions. *Compare Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001) (dismissing complaint failing to allege exemption 77-3 did not apply), *with Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) ("[A]n ERISA plaintiff need not plead the absence of exemptions to prohibited transactions."), *and Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) (similar).  But where, as here, the Complaint itself establishes the *application* of the relevant prohibited transaction exemptions, it fails for basic lack of plausibility. *See, e.g.*, *Allen*, 835 F.3d at 677 (recognizing that prohibited transaction claims are subject to *Twombly*/*Iqbal* pleading requirements).

1    provided that (1) the transaction is a "sale or purchase of an interest in the fund"; (2) the

2    transaction is expressly permitted by the plan document or by a fiduciary with authority to

3    manage and control the assets of the plan; and (3) the manager "receives not more than

4    reasonable compensation." Plaintiff himself alleges the first two conditions. *See* Compl. ¶¶ 72,

5    82–86 (alleging that the investment fiduciaries caused the Plan to offer interests in the collective

6    trusts). And given that the Plan pays no investment management fees for its collective trust

7    investments, those (nonexistent) fees necessarily constitute "not more than reasonable

8    compensation." *See supra* at 11. Plaintiff's prohibited transaction challenge to the collective

9    trusts is thus implausible under this exemption.

10          Plaintiff's challenge to the mutual funds is likewise foreclosed by Prohibited Transaction

11   Exemption ("PTE") 77-3, promulgated by the Department of Labor. PTE 77-3 permits a plan to

12   offer affiliated mutual funds, provided that the "dealings between the plan and the affiliated fund

13   [is] 'on a basis no less favorable to the plan than such dealings are with other shareholders," the

14   plan does not pay redemption fees or sales commissions in connection with the sale or acquisition

15   of its shares, and the plan pays no distinct investment advisory fee to the mutual fund (though the

16   mutual fund may pay such fees to its managers). *Leber v. Citigroup, Inc.*, No. 07 CIV. 9329

17   (SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (quoting PTE 77-3, 42 Fed. Reg.

18   18,734–35). Here, the Plan paid no fees to the mutual fund beyond the mutual fund's expense

19   ratio,[21] and because the Plan selected the lowest-cost share class for the challenged mutual

20   funds,[22] it necessarily received terms no less favorable than other shareholders did. Plaintiff's

21   prohibited transaction challenge to the mutual funds is thus also implausible.

22

23

---

24   [21] *Compare, e.g.*, Aug. 2013 Participant Fee Disclosure at 247 (noting Global Allocation Fund fee
     of 88 basis points), *with* Feb. 2013 BlackRock Global Allocation Fund prospectus at 171 (noting
25   fee of 88 basis points); *and* Ex. N (Oct. 2016 Participant Fee Disclosure), at 256 (noting Low
     Duration Bond fee of 42 basis points), *with* Ex. F ("2016 Low Duration Bond Fund Prospectus")
26   at 166 (noting fee of 42 basis points).
27   [22] *See* Feb. 2013 BlackRock Global Allocation Fund prospectus (BlackRock participant fee
     associated with lowest share class); 2016 Low Duration Bond Fund Prospectus (BlackRock
28   participant fee associated with lowest-expense share class).

**IV.    IMPROPER DEFENDANTS SHOULD BE DISMISSED FROM THIS ACTION**

The Complaint names two defendants who do not belong in this case.  The first is Jason Herman, an employee in BlackRock, Inc.'s human resources department.  The caption in the Complaint identifies Mr. Herman as the "plan sponsor"; the body of the Complaint alleges, in contrast, that Mr. Herman simply served on the Retirement Committee during the putative class period.  *Compare* Compl. at 1, *with id.* ¶ 48(a).  Either way, neither allegation supports retaining Mr. Herman in this suit, because no claims are asserted against either the "plan sponsor" or the Retirement Committee.  While the Complaint does expressly assert claims against two *subcommittees* of the Retirement Committee, it does not allege that Mr. Herman served on either of those subcommittees (he did not), or that he otherwise had any role in the decisions challenged in this lawsuit.  "A plaintiff suing multiple defendants must allege the basis of his claim against each defendant" to satisfy Fed. R. Civ. P. 8 pleading standards.  *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quotation omitted); *see, e.g.*, *IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*, No. CV 08-3949 AHM, 2008 WL 4838490, at *3 (C.D. Cal. Nov. 5, 2008) (rejecting ERISA claims that "lump[ed] together the various defendants as if all were culpable for every supposed ERISA violation"); *Bryant v. Tulare Cty.*, No. 1:16-CV-1542-LJO-SKO, 2016 WL 6996476, at *2 (E.D. Cal. Nov. 29, 2016) (dismissing claims where the plaintiff failed to allege "the specific wrongful acts that each Defendant performed and how each Defendant either caused Plaintiff harm or is responsible for Plaintiff's harm").  Because Mr. Herman is not named on any count in the Complaint and the allegations against him do not support extending plaintiff's claims to him, he should be dismissed from this case.

The Complaint also does not support claims against BTC, which is named as a defendant to plaintiff's prohibited transactions claim in Count II.  *See* Compl. ¶¶ 39, 215–220, 224.  Plaintiff does not allege that BTC had any role in the composition and monitoring of the Plan's investment lineup, as a fiduciary or otherwise.  Compl. ¶ 40.  Plaintiff simply alleges that BTC manages the collective trusts in the Plan, and that as a party in interest to the Plan it should be required under 29 U.S.C. § 1132(a)(3) to disgorge any fees received from the Plan and to restore the Plan's alleged losses.  Compl. ¶¶ 39, 40, 224.  In addition to the deficiency of plaintiff's prohibited

1    transaction claims generally and the fact that BTC was *paid no investment management fees* for

2    the Plan's collective trust investments—obstacles that are discussed at length above—plaintiff's

3    claims against BTC fail for two additional reasons.  First, plaintiff does not allege (even in

4    conclusory terms, much less plausible ones) that BTC "knowingly participated" in the Plan

5    fiduciaries' alleged violations; he accordingly cannot subject BTC to suit as a party in interest.

6    *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248 (2000)

7    (recognizing that ERISA permits suits against parties in interest who *knowingly participate* in

8    fiduciary breaches).  Second, plaintiff is not seeking "appropriate equitable relief" from BTC

9    within the compass of 29 U.S.C. § 1132(a)(2).  A claim for restitution under that provision must

10   be "traced to particular funds or property in the defendant's possession."  *Great-West Life &

11   Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002).  In seeking the recovery of plan losses

12   and the disgorgement of fees that, if they had been paid at all, would have been commingled with

13   BTC's general assets, plaintiff is effectively seeking money damages, a "classic form of legal

14   relief" that is not available against nonfiduciaries under ERISA.  *Mertens v. Hewitt Assocs.*, 508

15   U.S. 248, 255 (1993).

16   **V.    PLAINTIFF'S DERIVATIVE MONITORING-FIDUCIARY AND
             CO-FIDUCIARY BREACH CLAIMS FAIL**

17

18           The derivative claims in Counts III and IV of the Complaint depend entirely upon

     plaintiff's fiduciary breach claims, and they fail along with those underlying claims.

19

20           In Count III, plaintiff alleges that BlackRock, Inc. failed to monitor the fiduciary

21   committees' exercise of their duties.  Compl. ¶¶ 226–32.  This monitoring-fiduciary claim derives

22   from plaintiff's allegation that the fiduciary committees did not prudently and loyally select and

     monitor the options in the Plan's investment lineup.  *See id.* ¶ 232 (asserting that BlackRock, Inc.

23   failed to intervene to address the committees' alleged fiduciary breaches).  Because plaintiff has

24   not plausibly alleged any underlying breach by the fiduciary committees, as established above, his

25   challenge to the supervision of those committees is likewise implausible and must be dismissed.

26   *See, e.g.*, *In re HP Erisa Litig.*, No. C-12-6199 CRB, 2014 WL 1339645, at *8 (N.D. Cal. Apr. 2,

27   2014) (dismissing derivative failure-to-monitor and co-fiduciary breach claims along with

28

1  underlying prudence and disclosure claims); *Romero v. Nokia, Inc.*, No. C 12-6260 PJH, 2013
2  WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (same).

3      Plaintiff's co-fiduciary breach claim must be dismissed for similar reasons.  Plaintiff
4  alleges in Count IV that BlackRock, Inc. and the Administrative Committee were co-fiduciaries
5  of the Investment Committee, and that they are liable under 29 U.S.C. § 1105 for the Investment
6  Committee's alleged breaches in composing and monitoring the Plan's investment lineup.
7  Compl. ¶¶ 242, 246.  But "[c]o-fiduciary liability can only attach to live primary liability."
8  *Sulyma*, 2017 WL 1217185, at *11; *accord In re HP Erisa Litig.*, 2014 WL 1339645, at *8;
9  *Romero*, 2013 WL 5692324, at *5.  With no plausible allegation of a breach by the Investment
10 Committee, plaintiff's effort to derive co-fiduciary liability from such a breach founders.

11 **CONCLUSION**

12     The Court should dismiss the Complaint with prejudice.

13     Dated:  June 1, 2017           O'MELVENY & MYERS LLP

15                     By:   */s/ Brian D. Boyle*
16                         Brian D. Boyle

17                   Attorneys for Defendants