Karen L. Handorf (*Admitted Pro Hac Vice*)
Michelle C. Yau (*Admitted Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| Charles Baird and Lauren Slayton, as individuals, and on behalf of all others similarly situated, and on behalf of the BlackRock Retirement Savings Plan,<br><br>       Plaintiffs,<br><br>       vs.<br><br>BlackRock Institutional Trust Company, N.A.; BlackRock, Inc.; The BlackRock, Inc. Retirement Committee; The Investment Committee of the Retirement Committee; The Administrative Committee of the Retirement Committee; The Management Development & Compensation Committee, Catherine Bolz, Chip Castille, Paige Dickow, Daniel A. Dunay, Jeffrey A. Smith; Anne Ackerley, Amy Engel, Nancy Everett, Joseph Feliciani Jr., Ann Marie Petach, Michael Fredericks, Corin Frost, Daniel Gamba, Kevin Holt, Chris Jones, Philippe Matsumoto, John Perlowski, Andy Phillips, Kurt Schansinger, Tom Skrobe; Kathleen Nedl, Marc Comerchero, Joel Davies, John Davis, Milan Lint, Laraine McKinnon, and Mercer Investment Consulting.<br><br>       Defendants. | **SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>No. 4:17:cv-01892-HSG |

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

I.    NATURE OF THE ACTION ................................................................................ 2

II.   JURISDICTION AND VENUE ......................................................................... 7

III.  PARTIES .......................................................................................................... 7
      A.    Plaintiffs ................................................................................................ 7
      B.    Defendants ............................................................................................. 8
            1.    Defendant BlackRock Institutional Trust Company, N.A. ("BTC") ............... 8
            2.    Defendant Management Development & Compensation Committee
                  ("MDCC") of the BlackRock Board of Directors .......................................... 9
            3.    Defendant BlackRock, Inc. ("BlackRock") ................................................. 10
            4.    Defendant BlackRock, Inc. Retirement Committee and its Members
                  (collectively, the "Retirement Committee Defendants") ............................... 12
            5.    Defendant Investment Committee and its Members ....................................... 16
            6.    Defendant Administrative Committee of the Retirement Committee
                  and its Members (collectively, the "Administrative Committee
                  Defendants") ................................................................................................. 20
            7.    Defendant Mercer Investment Consulting ("Mercer") ................................... 22

IV.   FACTS ............................................................................................................. 24
      A.    Facts Related to Claims of the BlackRock Plan Class .......................... 24
            1.    The BlackRock Plan .................................................................................... 24
            2.    By Routinely Favoring BlackRock Proprietary Funds, Defendants
                  Violated ERISA Duties Owed to the BlackRock Plan Class and
                  Engaged in Prohibited Transactions ........................................................... 26
                  a.    Defendants Improperly Favored BlackRock Proprietary Funds ......... 29
                  b.    Mercer Provided Investment Advice Tailored to Rubber Stamp
                        the Preferential Treatment the Committee Defendants Gave To
                        BlackRock Proprietary Funds. .......................................................... 31
                  c.    During the Class Period, the Majority of the BlackRock Plan's
                        Assets Have Been Invested in BTC-Sponsored CTIs Which
                        Engage in Securities Lending That is Highly Remunerative for
                        Black Rock ........................................................................................ 36
                  d.    The BlackRock Target Date Funds, the Default Investment
                        Option for the BlackRock Plan, Underperformed Alternatives
                        but Generated Significant Securities Lending Fees for
                        BlackRock ......................................................................................... 42
                  e.    BlackRock Used Plan Funds For Its Own Benefit and Harmed
                        Participants By Seeding the CTI Versions of the BlackRock
                        Global Allocation Fund and the Total Return Fund ......................... 50
                  f.    Failure to Remove Expensive and Underperforming BlackRock
                        Low Duration Bond Mutual Fund ..................................................... 54
                  g.    By Concentrating Investment Management Under BlackRock
                        Subsidiaries, Defendants Failed to Adequately Diversify Risk ......... 55
            3.    The Administrative Committee Defendants Failed to Properly Disclose
                  Fees Consistent with ERISA's Disclosure Rules ........................................ 57

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

B.    Facts Related to the Claims of the CTI Class ............................................... 61
     1.    BTC and BlackRock are Fiduciaries to the CTI Class ............................ 61
     2.    BTC was required to manage the assets of the BlackRock CTIs in
           accordance with ERISA's fiduciary requirements and the CTI Plan
           Documents ................................................................................................ 68
     3.    BTC Violated Its ERISA Fiduciary Duties to the Participants in Each
           of the Employee Benefit Plans Invested in the BlackRock CTIs .................. 72
           a.    BTC Charged/Charges Excessive Fees of 50% of all Securities
                 Lending Revenue. ............................................................................. 73
           b.    BTC Pays Itself Excessive, Undisclosed Management Fees for
                 the Investment of Securities Lending Cash Collateral for and
                 Passes All Risks of Securities Lending to the CTI Class................... 77
           c.    The Excessive Fee is Not Justified Because, Among Other
                 Things, All Risk is Allocated to the CTI Class................................. 80
           d.    BTC's Selection of Excessively Risky Synthetic STIFs for the
                 BlackRock CTI's Cash Collateral and in turn, BTC's Portfolio
                 Management of the STIFs, Increased BTC's Securities Lending
                 Revenue but Caused Significant Losses to the CTI Class. ................. 83

V.    CLASS ALLEGATIONS ............................................................................................ 98
     A.    The Class of BlackRock Plan Participants ("BlackRock Plan Class")...................... 98
     B.    The Class of Participants Invested in the CTIs ("the CTI Class")............................ 101

VI.   CAUSES OF ACTION ................................................................................................ 104
     Count I ................................................................................................................... 105
     Count II ................................................................................................................. 107
     Count III ................................................................................................................ 110
     Count IV ................................................................................................................ 111
     Count V ................................................................................................................. 114
     Count VI ................................................................................................................ 116
     Count VII ............................................................................................................... 117
     Count VIII .............................................................................................................. 120
     Count IX ................................................................................................................ 123
     Count X ................................................................................................................. 126

VII.  PRAYER FOR RELIEF ........................................................................................... 129

# I.    NATURE OF THE ACTION

1.    This is a civil enforcement action brought pursuant to Sections 502(a)(2) and (a)(3) of

the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

1132(a)(2) & (a)(3), for violations of ERISA's fiduciary duty and prohibited transactions provisions. It is brought by Charles Baird and Lauren Slayton on behalf of two classes: the "BlackRock Plan Class," which consists of all participants and beneficiaries in the BlackRock Retirement Savings Plan (the "BlackRock Plan" or the "Plan"); and the "CTI Class," which consists of all participants (and their beneficiaries), whose employee benefit plans were invested directly or indirectly in certain BlackRock proprietary collective trust investment funds ("collective trust investments" or "CTIs"),[1] each of which held ERISA plan assets and thus was governed by ERISA.[2]

---

[1] In this complaint, "mutual fund" refers to an investment fund governed by the Investment Company Act of 1940. A "Collective Trust Investment" refers to an investment vehicle, other than a mutual fund governed by the Investment Company Act of 1940, that is offered for investment to more than one investor. Such funds are typically offered by financial institutions such as banks, are usually cheaper than mutual funds, and are only available to high net worth investors such as institutional investors or retirement plans. See allegations *infra*. A "Separate Account" refers to a segregated account for the purpose of holding the invested assets of a retirement trust.

[2] As set forth in more detail below, the CTI Class involves the following ERISA-governed collective trust investments (collectively referred to herein as the "BlackRock CTIs"): Active Stock Fund E ; Asset-Backed Securities Fund B; Blackrock MSCI Canada Small Cap Equity Index Fund; Blackrock MSCI EAFE Small Cap Equity Index Fund; Blackrock MSCI US Real Estate Index Fund E; Commercial Mortgage-Backed Securities Index Fund B; Commodity Index Daily Fund E; Developed Ex-US Real Estate Index Fund; EAFE Equity Index Fund; EAFE Equity Index Fund F; Emerging Markets Equity Index Master Fund; Equity Index Fund; Extended Market Equity Index Fund; Intermediate Government Bond Index Fund; Intermediate Term Credit Bond Index Fund; Long Term Credit Bond Index Fund; Long Term Government Bond Index Fund; Mortgage-Backed Securities Index Fund; MSCI Equity Index Fund B-Brazil; MSCI Equity Index Fund B-Chile; MSCI Equity Index Fund B-China; MSCI Equity Index Fund B-Colombia; MSCI Equity Index Fund B-Czech Republic; MSCI Equity Index Fund B-Egypt; MSCI Equity Index Fund B-Hungary; MSCI Equity Index Fund B-India; MSCI Equity Index Fund B-Indonesia; MSCI Equity Index Fund B-Malaysia; MSCI Equity Index Fund B-Morocco; MSCI Equity Index Fund B-Peru; MSCI Equity Index Fund B-Poland; MSCI Equity Index Fund B-Russia; MSCI Equity Index Fund B-S Korea; MSCI Equity Index Fund B-South Africa; MSCI Equity Index Fund B-Taiwan; MSCI Equity Index Fund B-Thailand; MSCI Equity Index Fund-Canada; MSCI Equity Index Fund-Mexico; MSCI Equity Index Fund-Philippines; MSCI Equity Index Fund-Turkey; Russell 1000 Index Fund; Russell 2000 Index Fund; US Treasury Inflation Protected Securities Fund E; Cash Equivalent Fund II; Cash Equivalent Fund B; Euro Cash Collateral Fund; Money Market Fund A/B; Term Fund 11; and Term Fund 215.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

2.     ERISA fiduciaries are bound to act with an "eye single" to the interests of the plan participants and beneficiaries to whom they owe a duty. *Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982). Defendants violated that bedrock principle again and again by giving preferential treatment to BlackRock proprietary products and service providers for the retirement plan assets under their stewardship, and by using retirement plan assets for their own benefit rather than based on undivided loyalty to the retirement plan participants to whom Defendants owe fiduciary duties. This lawsuit seeks to remedy those violations.

3.     This lawsuit alleges two discrete schemes – corresponding to claims brought on behalf of two classes – whereby Defendants illegally profit off participants' investments in the BlackRock Plan and BlackRock proprietary funds[3] holding ERISA-governed retirement assets.

4.     These schemes reflect a common pattern and practice of self-dealing and other ERISA violations by the Defendants. As the allegations below demonstrate, the BlackRock Retirement Committee and Investment Committee Defendants, aided by Mercer, loaded the Plan with proprietary BlackRock collective trust investments and mutual funds. Once those assets were in the hands of BlackRock's subsidiary, BTC, through its control over those retirement assets, BTC charged the CTI Class excessive fees and put its own interest above theirs, in violation of its fiduciary duties. BlackRock and its subsidiaries profit handsomely from such arrangements, while members of the BlackRock Plan Class and the CTI Class are harmed.

5.     The BlackRock Plan Class asserts claims related to the BlackRock Plan, a 401(k) plan offered to BlackRock employees. Defendants treat the BlackRock Plan like a display case, loading the Plan menu with the proprietary investment funds that BlackRock markets to other institutional

---

[3] BlackRock proprietary funds are investments that were or are owned, operated or managed by BlackRock, BlackRock Institutional Trust Company ("BTC"), or other BlackRock subsidiaries.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

investors to help attract outside investors to those funds. At the same time, Defendants promote the BlackRock proprietary funds offered on the Plan menu to Plan participants as virtually fee free, yet these funds charged undisclosed, excessive fees related to securities lending that exposed the Plan to additional risk of loss.

6.      In connection with this scheme, Defendants imprudently and disloyally seed newly-launched proprietary funds with BlackRock Plan assets to make those funds desirable to outside investors; disloyally fail to disclose the true cost to Plan participants of the Plan's investment options; imprudently concentrate risk in the BlackRock Plan by choosing only funds managed by one company, BlackRock and its subsidiaries; use the BlackRock Plan for its own benefit; and engage in prohibited transactions and self-dealing. This conduct harms BlackRock Plan participants by eroding participants' investment earnings and diminishing their retirement savings.

7.      The CTI Class claims are based on BlackRock through its subsidiary, BTC, using the massive collective trust investment funds it controls to pay itself excessive securities lending fees. Because BlackRock's subsidiary, BTC, controls all facets of securities lending for the collective trust investment funds it manages, BTC is able to charge a **50% fee split** to the retirement plans invested in the funds, which is twice what it charges mutual funds for the same lending services, and **1000%** greater than is available in the outside market . These fees were largely hidden from view by the complex investment structure Defendants erected, and were not properly disclosed to the individual participants invested in these collective trust investment funds in accordance with the Department of Labor disclosure rules for retirement investments.

8.      The assets in these collective trust investments are ERISA-governed "plan assets" under ERISA's regulations because at all relevant times each collective trust investment was/is a "common or collective trust fund of a bank" whose assets consist of investments by ERISA-covered

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

employee benefit plans. 29 C.F.R. § 2510.3-101(h)(1)(ii). BTC manages the assets of all the collective trust investments, which are governed by ERISA, and BTC is thus a fiduciary to the participants and beneficiaries in all employee benefits plans who invest directly or indirectly in BlackRock collective trust investments (hereinafter, the "CTI Plans"). As a fiduciary, under ERISA, BTC has a duty to act prudently and with undivided loyalty to the participants in the CTI Plans.

9.      BTC breached its fiduciary duties by paying itself excessively high compensation for its securities lending services. These self-servingly high fees siphoned off hundreds of millions of dollars in profits for BlackRock and its subsidiary, BTC, but harmed investors in the BlackRock proprietary collective trust investments, including Plaintiffs, by eroding their retirement savings. ERISA prohibits such behavior. Had BTC acted in accordance with ERISA's fiduciary standard and rules, the CTI Class members would have larger retirement savings.

10.     Through these schemes, Defendants engage in a pattern of prohibited transactions, self-dealing, and breaches of their fiduciary duties under ERISA by paying BlackRock and its subsidiary BTC excessive and hidden fees rather than acting with an eye single to the participants' interests.

11.     Plaintiffs seek relief as set forth in the Prayer, including disgorgement of all fees and expenses paid to BlackRock and/or its subsidiaries from the plan assets held in the BlackRock collective trust investments and the Blackrock Plan, the losses caused to their retirement accounts from the many fiduciary breaches and prohibited transactions, and injunctive relief to prohibit future self-dealing by the fiduciaries of the BlackRock Plan and BlackRock Institutional Trust Company, the fiduciary to the CTI Plans.

12.     The allegations in this second amended complaint are based upon counsels' documents produced in discovery by Defendants, deposition testimony obtained in discovery, and public

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

documents, including filings with the U.S. Department of Labor and the U.S. Securities and Exchange Commission .

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

14.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because: (1) Defendant BTC, has its principal office in this District; (2) Defendant BlackRock, Inc. also maintains an office in this District; and/or (3) many of the breaches occurred in this District.

## III.     PARTIES

### A.     Plaintiffs

15.     Plaintiff Charles Baird was an employee of Barclays Global Investors ("BGI") from 2000 until 2009, when BGI was acquired by BlackRock, and an employee of BlackRock from 2009 until July 2016.

16.     Plaintiff Baird resides in San Francisco, California, within this District.

17.     Plaintiff Baird is a participant in the BlackRock Plan.

18.     Plaintiff Baird's individual account in the BlackRock Plan was invested in various investment options offered by the Plan during the Class Period.

19.     Plaintiff Baird's individual account in the Plan is currently or was invested in one or more of the BlackRock proprietary funds offered by the BlackRock Plan, including the following proprietary mutual funds: BlackRock Large Cap Core (MKLRX); BlackRock Global Allocation Fund (MALOX); and the BlackRock Total Return Bond Fund (MPHQX).  Plaintiff Baird is also invested in the following BlackRock collective trust investments: BlackRock Russell 1000 Class F; BlackRock Active Stock Fund Class F; BlackRock MSCI ACWI EX Fund Class F; BlackRock US TIPs Fund Class F; and BlackRock US Debt Index Fund Class F.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

20.     Plaintiff Lauren Slayton was an employee of BGI from 2006 until 2009, when BGI was acquired by BlackRock, and an employee of BlackRock from 2009 until March 2012.

21.     Plaintiff Slayton resides in Santa Clara, California, within this District.

22.     Plaintiff Slayton is a participant in the BlackRock Plan.

23.     During the Class Period, Plaintiff Slayton's individual account in the BlackRock Plan was invested in the BlackRock LifePath Index 2050 fund, a BlackRock proprietary collective trust investment offered under the Plan's investment menu.

24.     Plaintiff Slayton is currently invested in one or more of the BlackRock proprietary funds offered by the Plan.

25.     ERISA §§ 409(a), 502(a)(2) & (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) & (a)(3), authorize participants such as Plaintiffs to sue in a representative capacity for losses suffered by the Plan and the BlackRock collective trust investments as a result of breaches of fiduciary duties. Pursuant to that authority, Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23 on behalf of the BlackRock Plan Class and the CTI Class.

**B.     Defendants**

1.     Defendant BlackRock Institutional Trust Company, N.A. ("BTC")

26.     Defendant BlackRock Institutional Trust Company, N.A. is a national banking association organized under the laws of the United States that operates as a limited purpose trust company. BTC provides investment management services to institutional investors and collective investment vehicles, and it is a bank as defined by the Investment Advisors Act of 1940.

27.     Defendant BTC has its principal office in San Francisco, California.

28.     Defendant BTC was known as Barclays Global Investors, or "BGI," before it was acquired by BlackRock in 2009.

LAW OFFICES OF
**Feinberg, Jackson, Worthman & Wasow LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**Cohen Milstein Sellers & Toll PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

29.     Throughout the Class Period, BTC was and is a wholly owned subsidiary of BlackRock, Inc.

30.     BTC is a fiduciary of the BlackRock Plan, as defined in ERISA § 3(38), 29 U.S.C. § 1002(38), with full discretionary authority to manage and invest the BlackRock Plan's assets held in the BlackRock collective trust investments ("CTIs"), as alleged in further detail below.

31.     As a fiduciary of the BlackRock Plan, BTC was and continues to be a party-in-interest to the BlackRock Plan under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

32.     Because BTC provides services to the Plan, BTC was and continues to be a party-in-interest to the BlackRock Plan under ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

33.     As an employer of employees who participate in the Plan, BTC was and continues to be a party-in-interest to the BlackRock Plan under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C).

34.     As a wholly owned subsidiary of BlackRock (who is an employer of employees who participate in the Plan under ERISA § 3(14)(C), 29 U.S.C. § 1002(14)(C)), BTC was and continues to be a party-in-interest to the BlackRock Plan under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).

35.     Based on its status as a trustee to the BlackRock CTIs and its power to manage, and its actual management of, the ERISA-governed plan assets held in the BlackRock CTIs, Defendant BTC also is a fiduciary to the CTI Plans, because those plans directly or indirectly invest in the BlackRock CTIs, all of which hold ERISA-governed plan assets.

2.     Defendant Management Development & Compensation Committee ("MDCC") of the BlackRock Board of Directors

36.     The Management Development & Compensation Committee of the BlackRock, Inc. Board of Directors (the "MDCC") provides oversight of BlackRock's employee benefit plans.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

37.     Effective as of December 13, 2007, the MDCC created the Retirement Committee, and its two subcommittees of the Investment Committee and the Administrative Committee (the "Sub-Committees").

38.     The MDCC appointed the members of the Retirement Committee when it was initially constituted in or around 2007, including Defendant Petach and Defendant Feliciani.

39.     The members of the Retirement Committee and its Subcommittees serve at the pleasure of the MDCC and had and has the full discretionary authority to remove members of the Retirement Committee and its Subcommittees.

40.     The appointment of the original members of the Retirement Committee, who all were or are fiduciaries of the BlackRock Plan, as well as the ability to remove members of the Retirement Committee and the Subcommittees, confers fiduciary status on the MDCC.

41.     The MDCC had and has a duty to monitor the members of the Retirement Committee and the Subcommittees with respect to the BlackRock Plan.

3.     Defendant BlackRock, Inc. ("BlackRock")

42.     Defendant BlackRock, the Plan Sponsor, is a Delaware company with its principal place of business in New York, New York. BlackRock and its subsidiaries operate various investment-related businesses, including securities lending, investment banking, brokerage, and investment management.

43.     Defendant BlackRock is a Named Fiduciary under the terms of the Plan as set forth in the Plan Document for the BlackRock Retirement Savings Plan (hereinafter "BlackRock Plan Document").

44.     BlackRock, through its control of its subsidiary BTC, who is an undisputed 3(38) fiduciary to the Plan with full discretionary authority and control over the Plan assets invested in

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

collective trust funds managed by BTC, is a fiduciary to the Plan by virtue of its control over the Plan assets invested in collective trust funds managed by BTC pursuant to ERISA, § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

45.     BlackRock, through its control of its subsidiary BTC, who controls the management and disposition of the ERISA-governed plan assets held in the BlackRock CTIs, is a fiduciary to the BlackRock CTIs within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) and owes ERISA fiduciary duties to the participants and beneficiaries of the employee benefit plans that directly or indirectly invest in the BlackRock CTIs (the "CTI Class").

46.     Defendant BlackRock was and continues to be a party-in-interest to the BlackRock Plan as defined in ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C), because it is an employer of employees covered by the Plan and because it is a named fiduciary to the Plan.

47.     Because BlackRock is at least a 50% owner of BTC (a fiduciary to the CTIs Plans), BlackRock is also a party-in-interest to the employee benefit plans which are invested in the BlackRock CTIs under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).

48.     Additionally, because many or most the individuals that acted on behalf of BTC were/are BlackRock employee and because BTC is BlackRock's subsidiary, has full knowledge of BTC's operations. As a result, BlackRock knew and knows that BTC acts/acted as a fiduciary to the retirement plans which are invested in the BlackRock CTIs.

49.     BlackRock, collects income and revenue in various forms from the BlackRock CTIs which hold ERISA plan assets, including income and revenue collected by its subsidiaries, such as BTC.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

50.     The revenue BTC collected from its securities lending services is traceable to BlackRock's possession because BlackRock has maintained accounting records of cash-flows through BlackRock and its subsidiaries, including BTC.

51.     Accountants have detailed work papers documenting BlackRock's revenue sources that will allow Plaintiffs to determine what BlackRock revenue was generated from securities lending fees paid to BTC by the BlackRock CTIs.

52.     The revenue BlackRock collected from BTC's cash management fees is traceable to BlackRock's possession because BlackRock has maintained accounting records of cash-flows through BlackRock and its subsidiaries, including BTC.

53.     Accountants have detailed work papers documenting BlackRock's revenue sources that will allow Plaintiffs to determine what BlackRock revenue was generated from cash management fees paid to BTC by the BlackRock CTIs.

>        4.     Defendant BlackRock, Inc. Retirement Committee and its Members
>               (collectively, the "Retirement Committee Defendants")

54.     ███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████.

55.     As such, during the Class Period, the Retirement Committee and its members were/are fiduciaries within the meaning of ERISA, § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) by exercising discretionary authority or discretionary control respecting management of the BlackRock Plan.

56.     The Retirement Committee Defendants were/are also fiduciaries within the meaning of ERISA, § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii) by virtue of their discretionary authority or discretionary responsibility in the administration of the BlackRock Plan.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

57.  ████████████████████████████████

████████████████████████████████████

████████

58.     Therefore, during the Class Period the Retirement Committee Defendants were and/or are fiduciaries within the meaning of ERISA, § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) due to their exercise of authority or control over the assets of the BlackRock Plan and their discretionary control over administration over the BlackRock Plan.

59.     The Retirement Committee Defendants had, at all times, the authority to appoint and remove members of two sub-committees, the Investment Committee and the Administrative Committee (collectively, the "Sub-Committees").

60.     The Retirement Committee Defendants at all times were fiduciaries responsible for the actions and decisions made by the Sub-Committees.

61.     The Retirement Committee Defendants have full discretionary powers and duties over administration of the BlackRock Plan. This includes the duty to monitor the Sub-Committees.

62.     The Retirement Committee has full discretionary authority to establish procedures for monitoring, and to regularly review, evaluate, and replace all service providers employed or retained by the Retirement Committee and the Sub-Committees.

63.     The Retirement Committee Defendants appointed and maintained BTC as an investment manager (as that term is defined in Section 3(38) of ERISA, 29 U.S.C. § 1002(38)) to invest and manage BlackRock Plan assets, during the Class Period.

64.     The Retirement Committee Defendants had a duty to monitor BTC as an investment manager (as that term is defined in Section 3(38) of ERISA, 29 U.S.C. § 1002(38)) to the BlackRock Plan during the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

65.     The individual members of the Retirement Committee during the Class Period include the following:

a)      ***Anne Ackerley.*** Defendant Ackerley is a Managing Director and head of BlackRock's U.S. & Canada Defined Contribution Group. Defendant Ackerley joined BlackRock in 2000. Defendant Ackerley served on the Retirement Committee and the Investment Committee during the Class Period.

b)      ***Catherine Bolz.*** Defendant Bolz served as a Managing Director in Human Resources at BlackRock from 2006 to 2011, when she left BlackRock. Defendant Bolz served on the Retirement Committee and the Administrative Committee during the Class Period; during this period, Defendant Bolz also served as the Secretary to the Retirement Committee.

c)      ***Chip Castille.*** Defendant Castille is a Managing Director at BlackRock, and is also the Chief Retirement Strategist heading the Global Retirement Strategy Group. Previously, Defendant Castille was head of BlackRock's U.S. Retirement Group, which included the U.S. & Canada Defined Contribution Group. Defendant Castille worked for Barclays Global Investors in 2009, when BlackRock acquired the company and renamed it BTC.  Defendant Castile served on the Retirement Committee, the Investment Committee, and the Administrative Committee during the Class Period. Prior to serving on the Retirement Committee, Defendant Castille sometimes attended Retirement Committee meetings in order to share his expertise in the Defined Contribution business, and specifically with regard to target date investments.

d)      ***Paige Dickow.*** Defendant Dickow is a Managing Director and the Global Head of Reward and Infrastructure at BlackRock. Defendant Dickow worked for Barclays Global Investors in 2009, when BlackRock acquired the company and renamed it BTC.  Defendant

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAM & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

Dickow served on the Retirement Committee and the Administrative Committee during the Class Period.

      e)    ***Daniel A. Dunay.*** Defendant Dunay joined BlackRock in 2013 and is currently a Managing Director, Global Head of Compensation and Benefits. Defendant Dunay served on the Retirement Committee and the Administrative Committee during the Class Period.

      f)    ***Joseph Feliciani Jr.*** Defendant Feliciani worked for BlackRock between 1998 and 2018, as a Managing Director, Global Finance Director and Chief Accounting Officer. During the Class Period, Defendant Feliciani served on the Retirement Committee. Defendant Feliciani also served on the Investment Committee and the Administrative Committee during the Class Period, and served as the Chair of each of the Committees.

      g)    ***Kevin Holt.*** Defendant Holt is a Managing Director, and Co-Head of the Americas Fixed Income. Defendant Holt currently serves as the Chair of the Retirement Committee and the Sub-Committees.

      h)    ***Ann Marie Petach.*** Defendant Petach served as BlackRock's Chief Financial Officer between 2007 and 2014. Defendant Petach served on the Retirement Committee, the Investment Committee, and the Administrative Committee during the Class Period.

      i)    ***Jeffrey A. Smith.*** Defendant Smith is BlackRock's Global Head of Human Resources and a member of the Global Executive Committee; in this capacity he oversees employee benefits and policies. Defendant Smith worked for BGI in 2009, when BlackRock acquired the company and renamed it BTC. Defendant Smith served on the Retirement Committee and the Administrative Committee during the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

5.     <u>Defendant Investment Committee and its Members</u>

66.     Defendant Investment Committee of the Retirement Committee ("Investment Committee") was established effective January 1, 2008. The Retirement Committee appoints the members of the Investment Committee. The Retirement Committee delegated fiduciary responsibility for the selection of Plan investment options to the Investment Committee.

67.     The Investment Committee Defendants exercised authority over the Plan's assets by selecting the investments for the Plan and thus were fiduciaries within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) by exercising authority or control respecting the management or disposition of the BlackRock Plan's assets.

68.     The individual, appointed members of the Investment Committee during the Class Period include the following:

a)     ***Anne Ackerley.*** Plaintiffs incorporate by reference the allegations set forth at ¶ 65(a). Defendant Ackerley served on the Investment Committee during the Class Period.

b)     ***Chip Castille.*** Plaintiffs incorporate by reference the allegations set forth at ¶ 65(c). Defendant Castille served on the Investment Committee during the Class Period.

c)     ***Amy Engel.*** Amy Engel was a Managing Director and Treasurer at BlackRock; Defendant Engel worked for BlackRock between 2008 and February 2014. Defendant Engel served on the Investment Committee during the Class Period.

d)     ***Nancy Everett.*** Nancy Everett was a Managing Director at BlackRock for three years between 2011 and 2014. Defendant Everett served on the Investment Committee during the Class Period.

e)     ***Joe Feliciani, Jr.*** Plaintiffs incorporate by reference the allegations set forth at ¶ 65(f). Defendant Feliciani served on the Investment Committee during the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

f)     ***Michael Fredericks.*** Defendant Fredericks joined BlackRock in 2011 and is a Lead Portfolio Manager for several BlackRock proprietary funds. Defendant Fredericks served on the Investment Committee during the Class Period.

g)     ***Corin Frost.*** Defendant Frost worked at BlackRock from 1998 to 2016 as a Senior Investment Strategist. Defendant Frost served on the Investment Committee during the Class Period.

h)     ***Daniel Gamba.*** Defendant Gamba began at Barclay's in 2000. He is currently the Global Head of Active Equity Product Strategy at BlackRock. Defendant Gamba served on the Investment Committee during the Class Period.

i)     ***Kevin Holt.*** Plaintiffs incorporate by reference the allegations set forth at ¶ 65(g). Defendant Holt served on the Investment Committee during the Class Period.

j)     ***Chris Jones.*** Defendant Jones is the Co-Head of BlackRock Global Active Equities. He joined BlackRock in 2014. Defendant Jones served on the Investment Committee during the Class Period.

k)     ***Philippe Matsumoto.*** Defendant Matsumoto is a Managing Director at BlackRock and Global Treasurer. He has worked at BlackRock since 2014.  Defendant Matsumoto served on the Investment Committee during the Class Period.

l)     ***John Perlowski.*** Defendant Perlowski is a Managing Director at BlackRock. Defendant Perlowski is a member of BlackRock's Global Operating Committee and he served on the Investment Committee during the Class Period.

m)     ***Ann Marie Petach.*** Plaintiffs incorporate by reference the allegations set forth at ¶ 65(h). Defendant Petach served on the Investment Committee during the Class Period.

n)     ***Andy Phillips.*** Defendant Phillips worked for BlackRock Advisors, LLC from 1991 to 2015. Defendant Phillips served on the Investment Committee during the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAM & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

o)      **Kurt Schansinger.** Defendant Schansinger worked for BlackRock from 1996 to 2011. He co-managed the BlackRock Basic Value Family of Funds and was the lead manager of the BlackRock Focus Value Fund. Defendant Schansinger served on the Investment Committee during the Class Period.

p)      **Tom Skrobe.** Defendant Skrobe worked for BlackRock between 2006 and 2016. Defendant Skrobe served on the Investment Committee during the Class Period.

69.     **Katie Nedl**. Defendant Kathleen ("Katie") Nedl is a Managing Director at BlackRock within the U.S. & Canada Defined Contribution Group. Defendant Nedl began working at BlackRock in November 2006 in the Human Resources group. She became Head of Global Benefits in January 2013, and Chief Operating Officer in the U.S. & Canada Defined Contribution Group in March 2016. Defendant Nedl served as Secretary to the Retirement Committee, to the Investment Committee, and to the Administrative Committee during the Class Period. From 2012 to 2016, ███████

███████████████████████████████████

███████████████████

70.     ███████████████████

███████████████████████████████████

███████████████████████.

71.     ███████████████████

████████████████████████████

72.     ████████████████████████

███████████████

73.     █████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

74. ████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████

75. ████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████ Defendant Nedl's actions and omissions ██████████
█████████████████████████████████████████████████
███████████████████████████████

76. ████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████

77.     Because Defendant Nedl exercised control respecting the management or disposition of BlackRock Plan assets and the management of the Plan, she was a de facto member of the Investment Committee and a fiduciary with respect to the BlackRock Plan pursuant to ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

78.     The Defendant members of the Investment Committees and the Investment Committee itself are collectively referred to as the "Investment Committee Defendants."

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

6.     <u>Defendant Administrative Committee of the Retirement Committee and its Members (collectively, the "Administrative Committee Defendants")</u>

79.     Defendant Administrative Committee of the Retirement Committee ("Administrative Committee") was established effective December 13, 2007, and on information and belief, the Retirement Committee appointed the members of the Administrative Committee. The Retirement Committee delegated discretionary authority or discretionary responsibility for the administration of the BlackRock Plan to the Administrative Committee.

80.     The Administrative Committee Defendants had and have full discretionary authority over the administration of the BlackRock Plan throughout the Class Period and thus were fiduciaries within the meaning of ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

81.     The individual members of the Administrative Committee during the Class Period include the following:

a)     *Catherine Bolz.* Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (b). Defendant Bolz served on the Administrative Committee during the Class Period.

b)     *Chip Castille.* Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (c). Defendant Castille served on the Administrative Committee during the Class Period.

c)     *Marc Comerchero*. Defendant Comerchero is the Chief Accounting Officer and a Managing Director at BlackRock. He has worked at BlackRock since 2006, and has held a variety of positions within the Company's Finance department, including as head of Global Corporate Accounting and head of External Reporting. Defendant Comerchero served on the Administrative Committee during the Class Period.

d)     *Joel Davies*. Defendant Davies worked for BlackRock from November 2010 to April 2014. At BlackRock, he was Head of Rewards for Europe, the Middle East, and Africa, until 2011,

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAM & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

and then Global Head of Rewards from 2011 until 2014. Defendant Davies served on the Administrative Committee during the Class Period.

e)      **John Davis.** Defendant Davis worked for BlackRock from 1988 to 2012, during which time he worked as a Managing Director. Defendant Davis served on the Administrative Committee during the Class Period.

f)      **Paige Dickow.** Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (d). Defendant Dickow served on the Administrative Committee during the Class Period.

g)      **Daniel A. Dunay.** Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (e). Defendant Dunay served on the Administrative Committee during the Class Period.

h)      **Joe Feliciani, Jr.** Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (f). Defendant Feliciani served on the Administrative Committee during the Class Period.

i)      **Kevin Holt.** Plaintiffs incorporate by reference the allegations set forth at ¶65(g). Defendant Holt served on the Administrative Committee during the Class Period.

j)      **Milan Lint.** Defendant Lint is a Managing Director at BlackRock. Defendant Lint served on the Administrative Committee during the Class Period.

k)      **Laraine McKinnon**. Defendant McKinnon worked for BlackRock from May 2013 to May 2017 as a Managing Director and Retirement Readiness Strategist. Defendant McKinnon served on the Administrative Committee during the Class Period.

l)      **Katie Nedl**. Plaintiffs incorporate by reference the allegations set forth at ¶ 69. Defendant Nedl served on the Administrative Committee during the Class Period.

m)      **Ann Marie Petach.** Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (h). Defendant Petach served on the Administrative Committee during the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

n)  **Jeffrey A. Smith.** Plaintiffs incorporate by reference the allegations set forth at ¶ 65 (i). Defendant Smith served on the Administrative Committee during the Class Period.

7.  Defendant Mercer Investment Consulting ("Mercer")

82.  Defendant Mercer Investment Consulting is a Kentucky company with its principal place of business in New York, New York. Mercer Investment Consulting provides advisory and investment consulting services to corporate clients. Mercer Investment Consulting ("Mercer") is a subsidiary of Mercer US Inc.; Mercer US Inc.is a subsidiary of Marsh & McClennan Companies.

83.  Defendant Mercer was retained to serve as the investment consultant to the BlackRock Plan during the Class Period.

84.  Mercer was and is the only investment consultant to the BlackRock Plan,

85.

86.

87.  Mercer also provided advice regarding

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

88. 

89.

90.

91.

92.     In connection with the investment advice for a fee that Mercer provided to the Investment Committee Defendants and to the Plan, it provided as the investment consultant, Defendant Mercer was, at all relevant times, a fiduciary to the BlackRock Plan, and the Plan's participants and beneficiaries, pursuant to ERISA § 3(21)(ii), 29 U.S.C. 1002(21)(ii).

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

## IV.    FACTS

**A.    Facts Related to Claims of the BlackRock Plan Class**

1.    The BlackRock Plan

93.    The BlackRock Plan is a tax-qualified defined contribution pension plan subject to the provisions of ERISA. At all relevant times, the Plan was an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

94.    BlackRock is the sponsor of the BlackRock Plan. As Plan sponsor, BlackRock intended for the BlackRock Plan to encourage savings and provide retirement income for BlackRock employees and former employees and their beneficiaries.

95.    The Plan covers eligible employees of BlackRock, Inc., including its domestic subsidiaries, such as BTC.

96.    The Plan's benefits are funded by participants' voluntary tax-deferred contributions and by employer matching contributions. The Plan is intended to qualify under Internal Revenue Code § 401(k).

97.    The Retirement Committee Defendants and the Investment Committee Defendants select a range of investment options for participants to direct the investment of their retirement savings. This is commonly referred to as the Plan "menu" or "line-up."

98.    Participants in the BlackRock Plan have the opportunity to direct the investment of all of the assets allocated to their individual accounts in the BlackRock Plan into the investment options offered on the Plan menu, and the returns on those investments are credited to each participant's account.

99.    The value of each participant's individual account in the BlackRock Plan depends on contributions made on behalf of each employee by his or her employer, deferrals of employee compensation and employer matching contributions, and on the performance of their investment

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

options net of fees and expenses. Participants pay fees and expenses (both direct and indirect) based on the fund options selected and maintained by the fiduciaries of the BlackRock Plan for inclusion on the Plan menu.

100. As of December 31, 2016, the BlackRock Plan had approximately $1.78 billion in assets and approximately 10,000 participants. Each year, thousands of BlackRock employees and former employees invest, on average and in the aggregate, $125 million in the BlackRock Plan.

101. The amount of assets in the BlackRock Plan, combined with the investment sophistication of the Plan fiduciaries, means that the Plan and its fiduciaries have enormous leverage to demand and receive superior investment products and services.

102. By investing BlackRock Plan assets in BTC-managed CTIs, the BlackRock Plan agreed to integrate the terms under which BTC holds, manages, administers, invests, and otherwise deals with the CTIs' assets into its own governing BlackRock Plan documents. The Investment Management Agreement entered into between BTC and the BlackRock Plan stated that the BlackRock Plan "shall be subject to all of the provisions of the instruments establishing such funds as they may be amended from time to time. Such instruments as they may be amended from time to time are hereby incorporated and made a part of this Agreement as if fully set forth herein and shall be adopted as part of the Plan to the extent required under Internal Revenue Service Rev. Rul. 81-100, as amended."

103. ██████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

104. █████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████

105. ████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████

106.     The CTI Plan Documents are therefore part of the BlackRock Plan document and under ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), the BlackRock Plan Fiduciaries were required to ensure that the Plan's assets invested in the BlackRock CTIs were managed in accordance with the CTI Plan Documents.

2.     <u>By Routinely Favoring BlackRock Proprietary Funds, Defendants Violated ERISA Duties Owed to the BlackRock Plan Class and Engaged in Prohibited Transactions</u>

107. ████████████████████████████████████████
████████████████████████████████████████████████
█████████████████

a)     ████████████████████████████████████████
████████████████████████████████

b)     ████████████████████████████████████████
███████████████████████████

c)     ████████████████████████████████████████
██████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

d) ████████████████████████████████████

108.   For some years of the Class Period, the Retirement Committee did not hold any meetings.

109.   The Investment Committee Defendants generally held quarterly meetings.

110.   The Retirement Committee Defendants and the Investment Committee Defendants were all fiduciaries to the BlackRock Plan and its participants because each had the authority, discretion, and responsibility to:

a)   select investment options/funds for the Plan;

b)   monitor and make decisions with respect to removing or replacing Plan investment options/funds that were underperforming, excessively expensive, imprudent, disloyal and/or non-diversified;

c)   avoid Prohibited Transactions and remove any investment options/funds that caused the Plan to engage in Prohibited Transactions.

111.   ERISA's duty of prudence required the Retirement Committee Defendants and the Investment Committee Defendants to follow reasonable standards of investment due diligence by giving appropriate consideration to those facts and circumstances that, given the scope of their fiduciary investment duties, they knew or should have known were relevant to the particular investments of the Plan, and then to act accordingly. 29 C.F.R. § 2550.404a-1.

112.   The duty of prudence and loyalty required the Retirement Committee Defendants and the Investment Committee Defendants to adequately consider non-proprietary funds that could be included on the BlackRock Plan investment menu, as well as to carefully avoid conflicts of interests arising from profiting from Plan investments.

113.   The Retirement Committee Defendants and the Investment Committee Defendants also had ongoing monitoring duties with respect to the BlackRock Plan's assets, which included/include

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

reviewing and re-evaluating the Plan's investment fund options on a regular and frequent basis (at least as frequently as every quarter) to ensure that they were/are prudent investments for the BlackRock Plan based on performance metrics and cost/fee structure, to not to give preferential treatment to BlackRock proprietary funds, and to remove investment options that either alone or in the context of the entire Plan portfolio were imprudent or non-diversified.

114.    As part of their monitoring duties, the Retirement Committee Defendants and the Investment Committee Defendants had a duty to remove imprudent or disloyal Plan menu options, such as options that underperformed and/or were more expensive relative to available alternative; options that constituted prohibited transactions by involving proscribed compensation to fiduciaries or parties in interest; and options that were selected based on preferential treatment for proprietary funds.

115.    However, the Retirement Committee Defendants and the Investment Committee Defendants selected and maintained investments for the Plan in a manner that benefited BlackRock (and its subsidiaries and executives) rather than selecting and maintaining investments with an eye single to the interests of the  Plan and its participants and beneficiaries, in dereliction of their ERISA fiduciary duties. This pattern and practice violated ERISA in a number of ways, and constituted prohibited transactions, as described in further detail below.

116.    Defendant Mercer, as the BlackRock Plan's investment consultant and a fiduciary under ERISA § 3(21)(ii), 29 U.S.C. 1002(21)(ii), owed duties of prudence and loyalty to the Plan and its participants. Pursuant to those duties, Mercer was obliged to act independently in its role as the investment consultant with only the interest of the participants in mind, and to not favor BlackRock proprietary funds at BlackRock's behest.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

117.    Mercer was also required to avoid causing the BlackRock Plan to engage in prohibited transactions for the Plan.

          a.      *Defendants Improperly Favored BlackRock Proprietary Funds*

118.    The Retirement Committee Defendants and the Investment Committee Defendants violated their fiduciary duties by employing disloyal and imprudent selection and monitoring processes.

119.    This resulted in a pattern and practice of giving preferential treatment to BlackRock-proprietary funds, which are investments that were or are owned, operated, or managed by BlackRock, BTC or other BlackRock subsidiaries.

120.    On numerous occasions, the Investment Committee Defendants ignored years of poor performance and other warning signs in their proprietary BlackRock products, which should have caused them to consider removing those funds. At the same time the Investment Committee Defendants were quick to use similar warning signs with non-proprietary funds as support for replacing those non-proprietary investments with proprietary BlackRock funds.

121.    ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

122.    ██████████████████████████████████████████████
████████████████████████████████████████

123.    The Investment Committee Defendants treated BlackRock proprietary funds that were ███████ more favorably than non-propriety funds that were ███████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

124. For instance, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

125. By contrast, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

126. In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

127. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

128. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

129. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

130. The fact that the Retirement Committee Defendants and the Investment Committee Defendants failed to adequately consider non-BlackRock affiliated funds is apparent from the fact that from at least 2010 to the present, *not a single non-affiliated fund has been added to the BlackRock Plan*.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

131.    Comparing the concentration of BlackRock products in the BlackRock Plan to BlackRock's footprint in the broader retirement market makes this failure more apparent. BlackRock's retirement related products account for only 15% of the $26.1 trillion retirement market. Yet, BlackRock proprietary funds account for nearly all of the BlackRock Plan's investments.

132.    Defendant BlackRock, Inc. knew or should have known that BlackRock proprietary funds were given preferential treatment for inclusion on the BlackRock Plan menu because its officers and directors served as Retirement, Administrative, Investment Committee members (collectively, "Committee Defendants") and/or have access to the deliberations of the Committee Defendants' meetings.

133.    The proprietary investments in the Plan lineup include: BlackRock Active Stock Fund; BlackRock Emerging Market Index; BlackRock Equity Dividend; BlackRock Global Allocation Collective Trust Fund; the BlackRock LifePath series of Index funds (including LifePath 2020-2060 funds); BlackRock LifePath Retirement Index; BlackRock Low Duration Bond Fund; BlackRock MSCI ACWI Ex. US CL F; BlackRock Russell 1000 Fund; BlackRock Russell 2000 Alpha Fund; BlackRock Short Term Investment Fund; BlackRock Total Return Fund; BlackRock US Debt Index Fund; BlackRock US TIPS Fund; BlackRock Strategic Income Opportunities Fund, BlackRock, Inc. Common Stock; and the PNC Financial Services Group, Inc. Common Stock.[4]

        b.    *Mercer Provided Investment Advice Tailored to Rubber Stamp the Preferential Treatment the Committee Defendants Gave To BlackRock Proprietary Funds.*

---

[4] During the Class Period, the Plan held positions in other BlackRock proprietary funds including the BlackRock LifePath 2015 Index Fund, the BlackRock Large Cap Core Fund, the BlackRock Equity Index Trust, the FFI Premier Institutional Fund, the FFI Government Fund, and the BlackRock Retirement Preservation Trust.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

134.    The Investment Committee Defendants, through Defendant BlackRock, selected and maintained Defendant Mercer as the only investment consultant to the BlackRock Plan throughout the Class Period.

135.    █████████████████████████████████████████████████████████████████████████████

136.    ███████████████████████████████████████████████████████████████████████████████

137.    ████████████████████████████████████████

138.    ███████████████████████████████████████████████████████████████████████████████

139.    The Investment Committee Defendants made all final decisions related to selection, retention and removal of investment options for the Plan.

140.    ███████████████████████████████████████████████████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

141. ███████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████

142. The Investment Committee Defendants knew or should have known that ████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████

143. ███████████████████████████████████████████
███████████████████████████████████████████████████
███

144. ███████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████

145. For example, █████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████

146. During the Class Period, █████████████████████████
███████████████████████████████████████████████████
████████████████████████████

147. Thus, █████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

148. ██████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

149.   The Investment Committee Defendants knew ███████████████
████████████████████████████████████████████████████████
███████████████████████████████████

150.   For example, ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████

151.   In another example, ███████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████

152.   ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

153. ████████████████████████████████████████
████████████████████████

154. ████████████████████████████████████████
██████████████████████

155. For instance, ████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

156. Mercer Investment Consulting and BlackRock, Inc. are both significant players in the retirement investment business.

157. Defendant Mercer advises numerous institutional investors – like the BlackRock Plan's Investment Committee – about which investment options to include in their plans.

158. At the same time, Defendant BlackRock, Inc. operates a substantial business that offers investment products to such institutional investors. BlackRock, Inc. was an important partner for Mercer Investment Consulting; likewise, the Investment Committee Defendants and Defendant BlackRock understood that Mercer Investment Consulting is very influential in the institutional investment industry, and thus a powerful ally for BlackRock, Inc. as it markets its investment products to institutional investors.

159. ████████████████████████████████████████
██████████████████████████████████████

160. As a result of this reciprocal relationship, Mercer cooperated in the Investment Committee Defendants' fiduciary breaches with respect to the preferential treatment of BlackRock proprietary products as Plan investment options.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

161. The Investment Committee Defendants, responsible for monitoring and evaluating the performance of the Investment Consultant, never meaningfully considered removing Defendant Mercer Investment Consulting in favor of an investment consultant that would provide prudent and loyal advice, not influenced by BlackRock's self-interest.

    c.    *During the Class Period, the Majority of the BlackRock Plan's Assets Have Been Invested in BTC-Sponsored CTIs Which Engage in Securities Lending That is Highly Remunerative for Black Rock*

162. The preference for proprietary funds in the BlackRock Plan accelerated following BlackRock's 2009 acquisition of Barclays Global Investors ("BGI"), the asset management arm of Barclays Bank. BGI was then renamed BlackRock Institutional Trust Company, N.A. or BTC.

163. Among other things, BTC (formerly BGI) sponsored collective trust investments, or CTIs, that are created subject to the requirements of 12 CFR 9.18.

164. A CTI is a specific type of pooled investment vehicle that is only available to high net worth investors such as institutional investors or retirement plans and is maintained by a bank.

165. Unlike mutual funds, which are also pooled investment vehicles, CTIs are generally exempt from securities laws, such as the Securities Act of 1933 and the Investment Company Act of 1940, and the associated disclosure regime. CTIs are instead subject to rules and regulations promulgated by the Department of Labor and the Office of the Comptroller of the Currency.

166. After BlackRock acquired BGI and renamed it BTC, the Investment Committee began to invest extensively in BTC-sponsored CTIs, which are BlackRock proprietary funds. The Investment Committee selected the BTC-sponsored CTIs by entering into an Investment Management Agreement ("IMA"), dated November 23, 2010, which appointed BTC as the investment manager for each such CTI in which the BlackRock Plan invested.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

167.    As the investment manager, BTC sponsors, manages and controls the assets of all of the CTIs offered through the Plan.

168.    Through its control over the BlackRock CTI assets, BTC caused the direct or indirect payment of fees from the assets of the BlackRock Plan to BTC, including but not limited to securities lending and cash management fees.

169.    Having appointed BTC, the Retirement Committee Defendants and Investment Committee Defendants had an ongoing duty to monitor BTC's investment and management of the BlackRock Plan's assets and ensure that BTC was acting in accordance with ERISA's fiduciary duties. The Retirement Committee Defendants and Investment Committee Defendants also had an ongoing duty to monitor BTC to ensure that BTC was not engaged in transactions prohibited by ERISA.

170.    BTC accepted this appointment as an investment manager and acknowledged that it was a fiduciary of the BlackRock Plan with respect to the Plan assets invested in BTC-sponsored CTIs.

171.    The IMA granted BTC "full discretionary authority to invest the [BTC-sponsored CTIs] subject to ERISA's fiduciary standards, in investments of any kind[.]"

172.    Prior to the BTC acquisition, on December 31, 2009, only five of the eleven investment options on the BlackRock Plan menu were BlackRock proprietary funds, and only 63% of the total Plan assets were invested in BlackRock proprietary vehicles.

173.    By December 31, 2016, the percentage of the BlackRock Plan's assets invested in BlackRock proprietary funds had increased dramatically. Specifically, as of December 31, 2016, the BlackRock Plan's investments had a reported value of $1,715,897,774, with approximately 94.2%, or $1,615,491,867, of assets invested in BlackRock proprietary funds.

174.    In particular, the Retirement Committee and Investment Committee favored BTC-sponsored CTIs which engaged in securities lending with participants' Plan assets, and which

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

generated substantial revenue for BlackRock and BTC through excessive fees that were not disclosed to Plan participants.

175.    Securities lending is the practice by which securities owned by a lender are temporarily transferred to a borrower through a lending agent in order to generate additional income for the lender.

176.    The borrower, typically banking institutions or hedge funds, uses the borrowed securities for various investment activities like facilitating a short-sale. In exchange for the securities, the borrower posts cash collateral generally exceeding the value of the loaned securities and may pay the lending agent an additional fee. The cash collateral posted by the borrower is typically reinvested in a short term investment vehicle that generates a return on the collateral; this is the primary source of the income for the party lending securities. Once the loan ends, the borrower returns the securities to the lender and the lender returns to the borrower collateral, plus any agreed upon reimbursement from the collateral reinvestment vehicle (referred to as a "rebate").

177.    When a lending agent is used to facilitate this process, a portion of the lender's revenue generated through the lending process is shared with the lending agent.

178.    Here, the BlackRock Plan owns an undivided interest in the assets lent in securities lending transactions, by operation of ERISA's Plan Asset Regulation, 29 C.F.R. § 2510.3-101(h)(1)(ii).

179.    BTC, in its fiduciary capacity as the investment manager for each of the BlackRock CTIs held by BlackRock Plan, selected and maintained itself as lending agent for all securities lending done with BlackRock Plan assets.

180.    As a result, BTC served and serves as the lending agent responsible for conducting securities lending transactions on behalf of the BlackRock Plan throughout the Class Period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

181.   As alleged in greater detail in section IV(B)(3) below, BTC – in its role as lending agent – takes as a fee 50% of all securities lending income generated by the loan of the BlackRock Plan's assets, after paying itself fees for managing cash collateral and rebates to the borrower. This diminished Plan participants' returns on investment.

182.   The BlackRock Plan's investment options and all the BlackRock CTIs hold a substantial amount of cash collateral as part of their participation in securities lending transactions. Reinvestment of cash collateral creates income for the lender, and is the reason why lenders loan securities. As with all investors, a prudent investment provides the BlackRock Plan with the highest return on the cash collateral without subjecting the Plan to excessive risk of loss to the principal investment (i.e., loss to the cash collateral).

183.   However, in contravention of its fiduciary duties, BTC invested the BlackRock CTIs' cash collateral in overly risky BTC-sponsored "synthetic" short term investment funds ("STIF"), such as CEF II and CEF B . The investment of the cash collateral in CEF II and CEF B, violated ERISA (as discussed further in Section IV.B.3.c) and diminished Plan participants' returns on investment while provided significant revenue to BlackRock from those risky proprietary investment vehicles.

184.   BTC retained absolute and unfettered discretion over the investment of cash collateral it received in connection with securities lending for the BlackRock CTIs. Specifically, the IMA authorized BTC, on behalf of the BlackRock Plan "to perform any act necessary or proper to enable [BTC] to hold, invest and manage the [CTIs], including but not limited to … ***invest any collateral provided by any borrower in any security or other asset***[.]" (emphasis added).

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

185.    BTC used this discretion to put a substantial amount of the Plan's cash in the synthetic STIFs that charged up to 5.6 basis points ("bps")[5] and exposed the BlackRock Plan to additional risk of loss to principal (i.e., the principal investment of cash collateral). This 5.6 bps fee is substantially higher than cash collateral management funds used by other market participants such as the Vanguard cash fund, which charges just 1.0 basis point as a cash management fee.

186.    As a result, BTC is paid significant fees from Plan assets, which were not disclosed to participants nor reported in the expense ratio[6] of the BlackRock proprietary funds.

187.    During the Class Period, most of the Plan's assets were held in BTC-sponsored CTIs which indirectly engaged in securities lending (as alleged *infra*, most of the investment options on the Plan's menu had a master-feeder structure where the menu option owned an interest in a larger, master fund, and the master fund held the lent securities).[7]

188.    The Retirement Committee Defendants and the Investment Committee Defendants failed to adequately consider the fees and risks associated with securities lending, including the specific funds in which the BlackRock CTI cash collateral was and is invested.

---

[5] Basis points are a common unit of measurement in finance, often used to disclose the fee as a percentage of the asset base. One (1.0) basis point is equal to .01%, such that 100 basis points is equal to 1.0%.

[6] The expense ratio is a measure of the fees and expenses associated with a particular fund. Generally, it is calculated by dividing the total fees and expenses associated with a fund by the amount of assets invested in that fund.

[7] These include: BlackRock Total Return Bond Fund F; BlackRock Global Allocation Collective Fund F; BlackRock US Debt Index Fund F; BlackRock US Treasury Inflation Protected Securities Fund F; BlackRock LifePath Index Retirement Fund F; BlackRock LifePath Index 2015 Fund F; BlackRock LifePath Index 2020 Fund F; BlackRock LifePath Index 2025 Fund F; BlackRock LifePath Index 2030 Fund F; BlackRock LifePath Index 2035 Fund F; BlackRock LifePath Index 2040 Fund F; BlackRock LifePath Index 2045 Fund F; BlackRock LifePath Index 2050 Fund F; BlackRock LifePath Index 2055 Fund F; BlackRock LifePath Index 2060 Fund F; BlackRock Russell 1000 Index Fund F; BlackRock Active Stock Fund F; BlackRock MSCI ACWI ex-US Index Fund F; BlackRock MSCI ACWI ex-US IMI Index Fund F; BlackRock Equity Dividend Fund F; BlackRock Russell 2000 Alpha Tilts Fund F.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

189.     In the investment advice Mercer provided to the Retirement Committee Defendants and the Investment Committee Defendants regarding the BTC-sponsored CTIs that engaged in securities lending, Mercer failed to adequately consider or disclose the fees and risks associated with securities lending, ███████████████████████████████████████████████
██████

190.     Instead, during the Class Period, the Retirement Committee Defendants and the Investment Committee Defendants moved all investments in certain non-proprietary investment options in the BlackRock Plan to BlackRock proprietary CTIs that engaged in securities lending, and thus generated revenue for BlackRock.

191.     For instance, the Plan assets in the Tamro Small Cap Collective Fund were moved to the BlackRock Russell 2000 Alpha Tilts Fund, a BTC-sponsored CTI that engaged in securities lending. The Retirement Committee Defendants and the Investment Committee Defendants selected the BlackRock proprietary Russell 2000 product even though small-cap indices like the S&P 600 had a history of outperforming the Russell 2000. ████████████████████████
████████████████████████████████████████████████████████████
██████████

192.     By selecting and maintaining virtually all BlackRock proprietary funds in the Plan, and by favoring proprietary funds which participated in BTC's securities lending program, the Retirement Committee Defendants and the Investment Committee Defendants ensured that BlackRock would receive the substantial securities lending fees and expenses paid with Plan assets and would increase BlackRock subsidiaries' assets under management.

193.     This strategy also improved the marketability of BlackRock products and portrayed confidence to the public in BlackRock's ability to manage assets.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

194.   Blackrock and its subsidiaries also earned other types of compensation from the BlackRock Plan's investments in BlackRock proprietary funds, including securities lending fees and cash collateral management fees. All of these types of compensation paid by the Plan to BlackRock and its subsidiaries constitute prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106.

195.   But for these conflicts of interest, and manifest preferential treatment of BlackRock proprietary funds, a prudent and loyal fiduciary to the BlackRock Plan could have and would have: selected Plan menu options based purely on merit; gotten a more favorable securities lending revenue split; and paid lower cash collateral management fees for less risky investments, all of which would have resulted in greater retirement savings for the Plan participants.

        *d.*     *The BlackRock Target Date Funds, the Default Investment Option for the BlackRock Plan, Underperformed Alternatives but Generated Significant Securities Lending Fees for BlackRock*

196.   The default investment option for BlackRock Plan participants is the BlackRock LifePath Funds, a set of target-date funds. Thus, if a participant enrolls in the Plan but does not select specific investments for her account, her contributions will be automatically invested in a BlackRock proprietary LifePath Fund that maps to the participant's expected retirement age.

197.   The LifePath Funds are a series of collective trust investments (CTIs) sponsored and managed by BTC. Each of the LifePath Funds engages in securities lending with BTC collecting a fee as the securities lending agent and a management fee of the cash collateral investments from that securities lending in BlackRock proprietary funds that are unduly expensive and risky.

198.   Each of the LifePath Funds, like all of the BTC-sponsored CTIs, employ a master-feeder structure. In a master-feeder structure, investors direct their money into one fund—the feeder—and then the manager of the feeder fund will use the invested money to purchase an interest in one or

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

more master funds or other feeder funds (that will, in turn, invest in master funds). The master funds purchase securities, like stocks or bonds.

199.     Through this master-feeder structure, all of the underlying funds in which the LifePath Funds invest are also BlackRock proprietary funds. Thus, each LifePath Fund invests in 27-51 additional BlackRock proprietary funds. In other words, with each investment into a single LifePath Fund, employee retirement assets were funneled into a total of 28-52 distinct BlackRock funds (including the feeder fund layer). Before any income earned in the master fund is remitted to a feeder fund, BlackRock nets fees and expenses from that income.

200.     The LifePath Funds are offered as a suite. Each fund in the suite is tailored to the expected retirement dates of the investors (the "target dates"). For instance, there is a LifePath 2050 Fund and a LifePath 2030 Fund that are tailored for investors that expect retire in 2050 and 2030, respectively. Each fund in the suite invests in the same underlying BlackRock funds, however at different proportions based on how far from the target date they are. Generally, investors whose retirement in further away have more money allocated to stock funds than bond funds; the inverse is true for investors expecting to retire soon.

201.     As of December 31, 2016, the BlackRock LifePath Funds made up $589,721,132.00, or 34.19%, of the Plan's total assets.

202.     The master-feeder structure obscures the true cost of the BlackRock LifePath Funds and other BTC-sponsored CTIs offered in the Plan menu because the fees associated with securities lending are charged against the master fund and, investors in the feeder fund, such as Plan participants, receive little to no information about fees paid by the master fund. Through this structure, BlackRock and BTC take substantial compensation for themselves and other BlackRock subsidiaries, and impose

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

indirect fees and expenses on participants in the BlackRock Plan, thereby diminishing the participants' retirement savings while enriching BlackRock.

203.   The BTC-sponsored CTIs were advertised to participants in the BlackRock Plan as having very low fees. But, as alleged in greater detail below, the disclosures sent to Plan participants omitted substantial and hidden fees that BlackRock and BTC took from the CTIs for managing the securities lending activities of each CTI through the various master funds.

204.   The indirect nature of this expense structure enables the Committee Defendants to avoid reporting the true costs of the BlackRock LifePath Funds to BlackRock Plan participants in the expense ratio[8] disclosed in the DOL mandated participant disclosures, while also enabling BlackRock to make substantial undisclosed revenue.

205.   An exemplar structure of the LifePath Funds is illustrated below. [9]

---

[8] As noted *supra*, the expense ratio is a measure of the fees and expenses associated with a particular fund. Generally, it is calculated by dividing the total fees and expenses associated with a fund by the amount of assets invested in that fund.

[9] BTC modified the composition of the LifePath Funds during the relevant period. A number of country-specific CTIs, including the following, were removed from the composition and thus are not reflected on the illustration: Asset-Backed Securities Fund B; Commercial Mortgage-Backed Securities Index Fund B; EAFE Equity Index Fund; MSCI Equity Index Fund B-Brazil; MSCI Equity Index Fund B-Chile; MSCI Equity Index Fund B-China; MSCI Equity Index Fund B-Colombia; MSCI Equity Index Fund B-Czech Republic; MSCI Equity Index Fund B-Egypt; MSCI Equity Index Fund B-Hungary; MSCI Equity Index Fund B-India; MSCI Equity Index Fund B-Indonesia; MSCI Equity Index Fund B-Malaysia; MSCI Equity Index Fund B-Morocco; MSCI Equity Index Fund B-Poland; MSCI Equity Index Fund B-Peru; MSCI Equity Index Fund B-Russia; MSCI Equity Index Fund B-S Korea; MSCI Equity Index Fund B-South Africa; MSCI Equity Index Fund B-Taiwan; MSCI Equity Index Fund B-Thailand; MSCI Equity Index Fund-Mexico; MSCI Equity Index Fund-Philippines; and MSCI Equity Index Fund-Turkey. In sum, prior to the removal of the country-specific funds, there were 51 BlackRock proprietary funds underlying a single LifePath fund and after the removal, there were 27 BlackRock proprietary funds underlying a single LifePath fund.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

BlackRock LifePath Funds

206.   BlackRock Plan assets are invested through the F class layer of the LifePath Fund.

207.   The F class of the LifePath Funds then feeds into seven other BlackRock proprietary funds: the MSCI ACWI Ex-US IMI Index Fund E; the Commodity Daily Index Fund E; the Developed Real Estate Index Fund E; the Equity Index Fund E; the Extended Equity Market Fund E; the US Debt Index Fund E; and the US TIPS Fund E.

208.   From there, as shown in the chart above, five of those seven underlying funds each feed into yet other BlackRock proprietary fund.

209.   For example, the BlackRock MSCI ACWI Ex-US IMI Index Fund E, then feeds into five more BlackRock proprietary funds: the MSCI Canada IMI Index Fund; the MSCI EAFE Small

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

Cap Equity Index Fund E; the EAFE Equity Fund F; the Emerging Markets Equity Index Master Fund; and the Emerging Markets Small Capitalization Equity Index NL Fund.

210.    Another example is the US Debt Index Fund E, which feeds six other BlackRock proprietary funds: the Intermediate Government Bond Index Fund; the Intermediate Term Credit Bond Index Fund; the Long Term Credit Bond Index Fund; the Long Term Government Bond Index Fund; MBS Index Fund; and the US Sec Credit Ex-MBS Index NL Fund E.

211.    Through this complex layered structure, BTC charges excessive, undisclosed fees and expenses, all of which generates large profits for BTC and BlackRock.

212.    The complex layered structure creates unnecessary opacity which makes it difficult to impossible for BTC, as the fiduciary manager of the entry level CTI, to properly monitor all investments in the master-feeder structure.

213.    Nearly all of the costs imposed by the master funds are deducted from each fund's assets and are not captured by the expense ratio reported to BlackRock Plan participants. Thus, they are not properly disclosed in accordance with ERISA regulations, as alleged in greater detail below in Section IV(A)(3).

214.    Moreover, all costs imposed through this structure lower the investments' performance and therefore diminish the retirement savings of the BlackRock Plan's participants.

215.    The LifePath Funds selected and maintained for the Plan by the Committee Defendants and BTC also underperformed comparable investments.

216.    Despite this, the LifePath Funds have remained the Plan's default options since at least 2010. Similar investments offered by non-BlackRock entities exhibit significantly less layering (if any), and as a result, outperformed the LifePath Funds.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

217.     The Vanguard Group ("Vanguard") is a reputable, low-cost asset manager that offers comparable alternative investments to the LifePath Funds in terms of risk and return.

218.     For instance, Vanguard manages the Vanguard Target Retirement Income Trust I target date funds (the "Vanguard Target Date funds"), which are comparable in investment strategy to the BlackRock LifePath Funds.

219.     The LifePath funds underperformed the Vanguard Target Date funds by approximately 8.5% on average for the period between December 31, 2010 and December 31, 2015 (after taking into account the compounding of returns realized every year).

220.     The LifePath funds performed even worse compared to the Dow Jones Target Date benchmark indices. Specifically, after taking into account the compounding of returns realized every year, the LifePath funds underperformed the Dow Jones Target Date indices by almost 20% during this period.

221.     The Vanguard Target Date funds do not have extensive fund layering like the LifePath Funds.

222.     Underlying each Vanguard fund investment are only six additional funds: a master trust and five index funds. This comes in stark contrast to the 27 additional funds underlying each LifePath investment.

223.     The underperformance of the LifePath funds is stark even when compared to the nearly identical BlackRock funds offered in the Thrift Savings Plan ("TSP"), a benefit plan for federal government employees. BlackRock was hired to manage the assets underlying the TSP funds; specifically, the C, F, G, I and S Funds.

224.     Like the BlackRock Plan, the TSP offers a suite of target date funds that, like the Vanguard target date funds and the LifePath funds, strategically shift their asset allocation from risky

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

to conservative as the target date approaches. However, the BlackRock-managed target date funds offered in the TSP do not have the same undisclosed fees and layering structure that make the LifePath funds disadvantageous for BlackRock Plan participants and highly profitable for BlackRock. As a result, the LifePath funds and its components underperformed the TSP funds and the TSP target date suite.

225.    BlackRock applied many of the same strategies in the C, F, G, I and S Funds as it did for the funds underlying the LifePath funds.

226.    For instance, the BlackRock Equity Index Fund E, which directly underlies the LifePath funds, and the C Fund, which underlies the TSP funds, were both indexed to the S&P 500, so that both funds' portfolios mirrored the S&P 500's index.

227.    Similarly, both the BlackRock US Debt Index Fund E, underlying the LifePath Funds, and the F Fund, underlying the TSP funds, were indexed to the Barclays Capital US Aggregate Bond Total Return USD Index so that both funds' portfolios mirrored this index fund.

228.    The TSP target date funds are therefore a proper benchmark against which to compare the performance and structure of LifePath Funds available to Plan participants.

229.    Specifically, the TSP target date funds and LifePath Funds that were indexed to the exact same underlying assets and managed by the same company should have performed almost exactly the same.

230.    However, the LifePath Funds and its components underperformed the TSP funds and its components.

231.    After taking into account the compounding of returns realized every year, the LifePath funds underperformed the TSP funds by 5.6% on average during this period.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

232.    Investment documents provided by TSP indicate that BlackRock invests the C, F, G, I and S Funds in Separate Accounts which directly purchase the securities making up the indices, thereby avoiding the excessive fund layering utilized by the BlackRock LifePath Funds.

233.    Thus, government employees participating in the TSP are spared obscured and excessive fees that BlackRock's own employees who invested in the LifePath Funds are charged.

234.    At no point during the Class Period did the Investment Committee Defendants consider removing the LifePath Funds as the Plan's default investment option or consider a non-proprietary target date alternative.

235.    By selecting and maintaining the LifePath Funds and designating them as the default for participants, the Investment Committee Defendants enabled all the proprietary BTC-sponsored BlackRock CTIs layered within the LifePath Funds to report large institutional participation and growing assets under management.

236.    By selecting and maintaining the LifePath Funds and designating them as the default investment option, the Investment Committee Defendants expose the BlackRock Plan and participants to unnecessary layering. Such layering obscures the excessive securities lending fees charged at the master level, which erode the returns on participants' savings, and it also makes it virtually impossible to monitor the LifePath Funds to ensure that all underlying funds are invested prudently, loyally and without excessive fees.

237.    As a result of the Committee Defendants' and BTC's actions, the BlackRock Plan's investment in BTC-sponsored trusts with excessive, undisclosed fees has dramatically increased.

238.    The master-feeder structure of the LifePath Funds described above is present in the majority of the BlackRock proprietary funds offered in the BlackRock Plan. This includes the BlackRock MSCI ACWI Ex. US IMI Index Fund, the Equity Dividend Fund, the Global Allocation

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

Fund, the Active Stock Fund, the Russell 1000 Index Fund, the U.S. Debt Index Fund, the U.S. Treasury Inflation Fund, and the Russell 2000 Alpha Fund.

239.    Each of these investment options also engages in securities lending, and the complex master-feeder structure utilized by the BlackRock Plan fiduciaries facilitates the failure to disclose fees and expenses associated with the securities lending activities.

240.    In total, these master-feeder funds and the BlackRock proprietary LifePath Funds comprise $1.5 billion, or 77%, of the BlackRock Plan's assets. All of these funds are administered and sponsored by BTC.

241.    █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

242.    For instance, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

243.    ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

     e.    *BlackRock Used Plan Funds For Its Own Benefit and Harmed Participants By Seeding the CTI Versions of the BlackRock Global Allocation Fund and the Total Return Fund*

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

244.     The Retirement Committee Defendants and the Investment Committee Defendants used BlackRock Plan assets to seed newly-launched BlackRock CTIs. Seeding occurs when a company uses the assets of a large investor – here, the BlackRock Plan – to make initial investments in new investment funds and thereby convince the market that those funds are robust and stable due to the existing investments in the fund.

245.     In at least two specific instances, the Retirement Committee Defendants and the Investment Committee Defendants maintained excessively expensive and underperforming BlackRock-proprietary mutual funds on the BlackRock Plan menu. Defendants only replaced those imprudent and disloyal proprietary investment options in order to seed newly-launched proprietary CTIs.

246.     The first example is the Global Allocation Fund. Until mid-2014, the Plan held the BlackRock proprietary Global Allocation Fund mutual fund, which has the ticker symbol "MALOX."

247.     The Retirement Committee Defendants and the Investment Committee Defendants exhibited preferential treatment for BlackRock proprietary funds when they selected and retained MALOX even though it subjected the Plan to excessive fees and expenses.

248.     MALOX had a gross expense ratio ranging from 99 bps in 2009 to 87 bps in 2014.

249.     By investing in MALOX, the BlackRock Plan was subjected to excessive fees for the services rendered, when it could have sought a non-BlackRock-affiliated fund or Separate Account that used the same strategy, such as the American Funds Capital Income Builder fund (ticker RIRGX) and the DFA Global Allocation 60/40 Portfolio (ticker DGSIX). Both these non-proprietary funds were moderate-risk global allocation funds and charged 36 bps and 30 bps, respectively.

250.     Between 2009 and mid-2014, the Plan paid approximately $4.8 million in fees and expenses for MALOX.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAM & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

251.    The Retirement Committee Defendants and the Investment Committee Defendants only removed MALOX from the Plan in 2014 when BlackRock launched its new proprietary Global Allocation CTI in 2014. The Retirement Committee and Investment Committee Defendants chose to help seed it with BlackRock Plan participants' investments.

252.    Even though the Global Allocation CTI had only existed for a few months at the time, BlackRock moved nearly $200 million of BlackRock Plan assets into this proprietary Global Allocation CTI.

253.    As of December 31, 2014, the BlackRock Plan's assets constituted over 25% of the Global Allocation CTI's assets. The BlackRock Plan's massive investment in the CTI was essential for BTC to market this new, untested investment to other investors, because it portrayed confidence in the product to unaffiliated plan sponsors and provided BTC with economies of scale.

254.    As of December 31, 2015, the Plan's position in this trust was worth $179,472,599.

255.    The Global Allocation CTI has underperformed its benchmark since it was added to the BlackRock Plan. Between January 1, 2016 and January 1, 2017, the Global Allocation CTI underperformed its benchmark by 82 bps.

256.    Similar to MALOX, Retirement Committee Defendants and the Investment Committee Defendants selected and retained the BlackRock Total Return Fund, a mutual fund managed by BlackRock Advisors, LLC ("BRAL") as a Plan menu option. The proprietary Total Return Fund is more expensive than similar alternative non-proprietary funds.

257.    The Retirement Committee Defendants and the Investment Committee Defendants did not seek a cheaper alternative non-proprietary fund to the BlackRock Total Return Fund for the BlackRock Plan until *after* BTC had created a new CTI option for the total return strategy in 2016.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

258. ███████████████████████████████████████████

█████████████████████████████████████████████████

██████████████

259. ███████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████

260.     In October 2016, the Retirement Committee Defendants and the Investment Committee Defendants replaced the BlackRock Total Return mutual fund with the BlackRock Total Return CTI, a collective fund managed by BTC that was created two months before it was added to the BlackRock Plan line-up.

261. ███████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████

262.     Further, the Retirement Committee Defendants and the Investment Committee Defendants selected for the Plan menu several other proprietary funds that likewise lacked a three-year track record, including the BlackRock Equity Dividend Fund F, the Russell 2000 Alpha Tilts Fund F, the BlackRock Strategic Income Opportunities Bond Fund F, BlackRock MSCI ACWI Ex US IMI Index Fund F, and the Emerging Markets Index Non-Lendable Fund F.

263.     The selection of the proprietary Global Allocation CTI and the Total Return CTI and the other newly-launched funds named above constitute breaches of fiduciary duty pursuant to ERISA § 404(a)(1)(A), (a)(1)(B), and (a)(1)(D); 29 U.S.C. § 1104(a)(1)(A), (a)(1)(B), and (a)(1)(D). These acts also constitute prohibited transactions in violation of ERISA § 406(a)(1)(A), 29 U.S.C.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

§1106(a)(1)(A); ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D); and ERISA § 406(b)(1), 29 U.S.C. §1106(B)(1).

> f.    *Failure to Remove Expensive and Underperforming BlackRock Low Duration Bond Mutual Fund*

264.    In 2013, the Retirement Committee Defendants and the Investment Committee Defendants added the BlackRock Low Duration Bond Fund, a mutual fund, to the BlackRock Plan. As of December 31, 2015, the Plan held a position in this fund worth $6,951,559.38.

265.    ████████████████████████████████████████████████████████████████████████████████████████████████████████

266.    The Retirement Committee Defendants and the Investment Committee Defendants selected and failed to remove the BlackRock Low Duration Bond Fund despite a substantially higher expense ratio than comparable investments and a history of underperformance.

267.    The BlackRock Low Duration Bond Fund charged between 61 and 36 bps throughout the Class Period. Vanguard offers a similar bond fund[10] that charges only 7 bps. In other words, employees are paying 500% - 871% more than necessary for the Low Duration Bond Fund.

268.    The investment manager for the BlackRock Low Duration Bond Fund is the BlackRock subsidiary BRAL.

269.    The BlackRock Low Duration Bond Fund uses the following strategy:

> "The Low Duration Fund invests primarily in investment grade bonds and maintains an average portfolio duration that is between 0 and 3 years. The Low Duration Fund normally invests at least 80% of its assets in debt securities. The Low Duration Fund may invest up to 20% of its assets in non-investment grade bonds (commonly called

---

[10] The BlackRock Low Duration Bond Fund invests 80% of its assets in investment-grade short- to intermediate-term bonds. Vanguard offers the Short-Term Investment Grade Fund, which is similar to the BlackRock Low Duration Bond Fund in that it also invests 80% of its assets in investment-grade short- to intermediate-term bonds.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

"high yield" or "junk bonds"). The Low Duration Fund may also invest up to 25% of its assets in assets of foreign issuers, of which 10% (as a percentage of the Fund's assets) may be invested in emerging markets issuers."

270.   The Vanguard Short-Term Investment-Grade Fund implements a similar strategy:

"The Fund invests in a variety of high-quality and, to a lesser extent, medium-quality fixed income securities, at least 80% of which will be short- and intermediate-term investment-grade securities. … The Fund is expected to maintain a dollar weighted average maturity of 1 to 4 years."

271.   The effective duration of Vanguard's Short-Term Investment-Grade Fund falls within the guidelines set forth by BlackRock's Low Duration Bond Fund.

272.   Despite the similar strategies, the BlackRock Low Duration Bond Fund has an expense ratio that is over 400% greater than the Vanguard alternative.

273.   After fee waivers, the K Shares of the BlackRock Low Duration Bond Fund have an expense ratio of 0.36%.

274.   The comparable institutional class of the Vanguard Short-Term Investment-Grade Fund has an expense ratio of 0.07%.

275.   The substantially higher fee has not come with a commensurate performance improvement.

276.   Rather, the BlackRock Low Duration Bond Fund has consistently underperformed Vanguard and other alternative investments.

g.   *By Concentrating Investment Management Under BlackRock Subsidiaries, Defendants Failed to Adequately Diversify Risk*

277.   The Retirement Committee Defendants and the Investment Committee Defendants have concentrated over 90% of the BlackRock Plan's assets under the management and/or administration of BlackRock subsidiaries, including BTC and BRAL.

278.   The Retirement Committee Defendants' and the Investment Committee Defendants' decision to concentrate investment management of the Plan's assets in this way subjects the

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

BlackRock Plan to risks, such as those described below, that could be avoided by diversifying investments outside the BlackRock umbrella.

279.    The following risks, among others, are discussed in the prospectus and statement of additional information provided for the BlackRock Low Duration Bond Fund (a mutual fund). BRAL manages and administers the BlackRock Low Duration Bond Fund.

a)      ***Cyber Security Issues***. With the increased use of technologies such as the Internet to conduct business, each Fund is susceptible to operational, information security and related risks related to cyber-attacks, which have the ability to cause disruptions and impact business operations, potentially resulting in financial losses, interference with a Fund's ability to calculate its net asset value ("NAV"), impediments to trading, the inability of Fund shareholders to transact business, violations of applicable privacy and other laws, regulatory fines, penalties, reputational damage, reimbursement or other compensation costs, or additional compliance costs. In addition, substantial costs may be incurred in order to prevent any cyber incidents in the future.

b)      ***Operational Risk***. The Fund is exposed to operational risk arising from a number of factors, including but not limited to human error, processing and communication errors, errors of the Fund's service providers, counterparties or other third-parties, failed or inadequate processes and technology or systems failures.

280.    There are also risks stemming from the securities lending program used by the BTC-sponsored CTIs offered on the BlackRock Plan menu. Nearly all CTI options available to participants engage in securities lending, which, as alleged in further detail *infra* at IV(B)(3)(b), adds unique risks to participants' investments, including cash collateral management risks and counterparty risks.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

281.     Finally, Statements of Additional Information filed by various registered BlackRock products disclose that these risks are largely overseen by a single entity within BlackRock: the Risk and Quantitative Analysis Group (the "RQA"). The RQA is responsible for overseeing funds' fiduciary and corporate risks, including investment, operational, counterparty credit and enterprise risk. Moreover, the RQA is responsible for overseeing risks pertinent to funds' securities lending programs.

282.     CTIs do not have the same risk disclosure requirements as registered investment companies like the Low Duration Bond Fund, so Defendants were not required to disclose these risks to their employees with respect to the CTIs—including the LifePath Funds, which are the default investment for the BlackRock Plan.

283.     On information and belief, the RQA oversees the risks associated with BTC, its operations, and its lending programs.

284.     Diversification would minimize these known risks by preventing the failures at one entity from impacting a substantial portion of the BlackRock Plan's assets. Any lapse in controls over the RQA or failures by the RQA will result in a systemic failure that would affect all funds overseen by the RQA.

285.     By failing to diversify the Plan's assets beyond BlackRock subsidiaries, the Retirement Committee Defendants and the Investment Committee Defendants and BTC subject the BlackRock Plan to greater than necessary and avoidable risk.

        3.     <u>The Administrative Committee Defendants Failed to Properly Disclose Fees Consistent with ERISA's Disclosure Rules.</u>

286.     The Retirement Committee delegated to the Administrative Committee several duties, including (a) the duty to comply with reporting and disclosure requirements of ERISA and other

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

applicable laws; and (b) the duty to prepare and distribute participant communications, disclosure and investment materials pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c).

287.    In accordance with their duty of loyalty and prudence, and applicable regulations, the Administrative Committee Defendants were required to disclose to Plan participants investment information, including all fees and expenses that reduce the rate of return of each of the investments offered by the Plan.

288.    According to applicable regulations, 29 C.F.R. § 2550.404a-5(a), "Fiduciary requirements for disclosure in participant-directed individual account plans" (the "Disclosure Regulation"), the administrator of a participant-directed retirement plan must disclose several types of information to participants in such a plan, both prior to the initial investment and also on an ongoing basis, if there are material changes to the plan's investment options.

289.    Under the Disclosure Regulation, the plan administrator must ensure that participants "are made aware of their rights and responsibilities with respect to the investment of assets held in, or contributed to, their accounts and are provided sufficient information regarding the plan, including fees and expenses, and regarding designated investment alternatives, including fees and expenses attendant thereto, to make informed decisions with regard to the management of their individual accounts." 29 C.F.R. § 2550.404a-5(a).

290.    Pursuant to 29 C.F.R. § 2550.404a-5(d)(1)(iv)(A)(2), the Administrative Committee Defendants should have disclosed to participants, among other things, "the total annual operating expenses of the investment expressed as a percentage (i.e., expense ratio), calculated in accordance with paragraph (h)(5) of this section."

291.    Pursuant to 29 C.F.R. § 2550.404a-5(h)(5)(ii)(C), for investment options that are not registered under the Investment Company Act of 1940, the Administrative Committee Defendants

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

were required to include in the aforementioned "total annual operating expenses" expense ratio "[a]ny other fees or expenses not included in paragraphs (h)(5)(ii)(A) or (B) of this section that reduce the alternative's rate of return (e.g., externally negotiated fees, custodial expenses, legal expenses, accounting expenses, transfer agent expenses, recordkeeping fees, administrative fees, separate account expenses, mortality and expense risk fees), excluding brokerage costs described in Item 21 of Securities and Exchange Commission Form N-1A."

292.    All CTIs included in the BlackRock Plan are not registered under the Investment Company Act of 1940 and therefore the Administrative Committee Defendants (through power and responsibility delegated to them) are required to comply with 29 C.F.R. § 2550.404a-5(h)(5)(ii)(C).

293.    Securities lending fees and expenses reduce net investment income and the higher the securities lending fees and other expenses charged by the underlying funds, the lower the rate of return earned by participants.

294.    In addition, the audited financial statements for the BlackRock Plan's CTIs disclose that "the expenses incurred by underlying funds in which the fund [BlackRock proprietary CTI] invests are not included in this [expense] ratio. The collective fund income allocated to the fund [BlackRock proprietary CTI] from underlying funds is net of those expenses."

295.    While the audited financial statements state that certain administrative expenses have been capped at 2 basis points, or "bps," that cap does not apply to all the expenses that are netted out of the income of the underlying funds.  The audited financial statements state that the 2 bps cap is "reflected in the statement of operations as operating expenses borne by BTC." Yet the statement of operations expressly notes that certain other "expenses incurred by underlying funds in which the fund invests are not included in this [expense] ratio. The collective fund income allocated to the fund from

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

underlying funds is net of those expenses." These non-capped expenses include payments to BTC such as management fees for underlying CTIs and securities lending fees.

296.    The Plan's disclosures to participants state that the total annual operating expenses for the BlackRock CTIs offered in the Plan is 2 bps. However, this 2 bps disclosed fee does not include several fees and expenses, such as BTC's 50% securities lending fee, which reduced the income generated from underlying fund.

297.    The 2 bps total annual operating expense also does not capture other indirect costs incurred by the BlackRock CTIs, such as fees and expenses associated with STIFs.

298.    BTC used STIFs to manage cash held in the layered funds underlying the BlackRock proprietary funds in the Plan, which charge fees and expenses upwards of 5 bps.

299.    The STIFs BTC used to manage BlackRock Plan assets are not registered under the Investment Company Act of 1940 and are subject to ERISA; they therefore also are subject to 29 C.F.R. § 2550.404a-5(h)(5)(ii).

300.    STIF fees and expenses are a component of net investment income and, thus, the higher the STIF fees, the lower the rate of return earned by participants.

301.    Even though securities lending fees and other expenses discussed above which are embedded in the layered fund structure have a material impact on rate of return of the BlackRock and BTC managed investments offered in the Plan, the Administrative Committee Defendants do not disclose these fees and expenses to participants. ██████████████████████████████

██████████████████████████████████████████████

302.    In short, the funds managed by BlackRock and BTC in the Plan charged hidden fees and expenses which are not reported in the expense ratios for the funds and are thus not properly disclosed to participants in accordance with ERISA's Disclosure Regulation set forth above.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

303.    Because the Administrative Committee Defendants failed to disclose to participants all fees, expenses and compensation paid from the assets of the CTIs – which are the BlackRock Plan's assets – in the expense ratios disseminated in the participant disclosures, participants are not given adequate and accurate disclosures regarding the fees and expenses they are being charged for investment in the BlackRock proprietary funds.

**B.      Facts Related to the Claims of the CTI Class**

      1.      BTC and BlackRock are Fiduciaries to the CTI Class

304.    As alleged above, the BlackRock Plan invests, directly and indirectly, in a number of BlackRock proprietary CTIs. Other employee benefit plans across the country also invest, directly or indirectly, in these BlackRock CTIs; Plaintiffs bring the claims of the CTI Class on behalf of all participants (and their beneficiaries) in the ERISA-governed employee benefit plans whose plan assets are invested in the BlackRock CTIs.

305.    As alleged above, Plaintiff Slayton elected to invest a portion of her individual account of the BlackRock Plan in the BlackRock LifePath Index 2050 Fund ("LifePath 2050 Fund"). As alleged above, the LifePath 2050 Fund employs a master-feeder structure, where the LifePath 2050 Fund option on the BlackRock Plan is an "entry level" fund which feeds other CTIs and ultimately is invested in the "master" fund, which holds securities.

306.    BTC, as investment manager to the LifePath 2050 Fund, invested the Fund in numerous other BTC-sponsored and -managed CTIs. Thus, through her investment in the LifePath 2050 Fund, Plaintiff Slayton's retirement account was indirectly invested in the following BlackRock CTIs:

- Blackrock MSCI Canada Small Cap Equity Index Fund
- Blackrock MSCI EAFE Small Cap Equity Index Fund
- Blackrock MSCI US Real Estate Index Fund E
- Commercial Mortgage-Backed Securities Index Fund B
- Commodity Index Daily Fund E
- Developed Ex-US Real Estate Index Fund

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

- EAFE Equity Index Fund
- EAFE Equity Index Fund F
- Emerging Markets Equity Index Master Fund
- Equity Index Fund
- Extended Equity Market Fund
- Intermediate Government Bond Index Fund
- Intermediate Term Credit Bond Index Fund
- Long Term Credit Bond Index Fund
- Long Term Government Bond Index Fund
- Mortgage-Backed Securities Index Fund
- Asset-Backed Securities Fund B
- MSCI Equity Index Fund B-Brazil
- MSCI Equity Index Fund B-Chile
- MSCI Equity Index Fund B-China
- MSCI Equity Index Fund B-Colombia
- MSCI Equity Index Fund B-Egypt
- MSCI Equity Index Fund B-Czech Republic
- MSCI Equity Index Fund B-Hungary
- MSCI Equity Index Fund B-India
- MSCI Equity Index Fund B-Indonesia
- MSCI Equity Index Fund B-Malaysia
- MSCI Equity Index Fund B-Morocco
- MSCI Equity Index Fund B-Peru
- MSCI Equity Index Fund B-Poland
- MSCI Equity Index Fund B-Russia
- MSCI Equity Index Fund B-S Korea
- MSCI Equity Index Fund B-South Africa
- MSCI Equity Index Fund B-Taiwan
- MSCI Equity Index Fund B-Thailand
- MSCI Equity Index Fund-Canada
- MSCI Equity Index Fund-Mexico
- MSCI Equity Index Fund-Philippines
- MSCI Equity Index Fund-Turkey
- Russell 1000 Index Fund
- Russell 2000 Index Fund
- Cash Equivalent Fund II
- Cash Equivalent Fund B
- Euro Cash Collateral Fund
- Money Market Fund A/B
- Term Fund 11
- Term Fund 215

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

307.    Plaintiff Baird selected the following investment options – all of which are CTIs managed and sponsored by BTC – for his retirement account in the BlackRock Retirement Savings Plan: BlackRock Russell 1000 Class F; BlackRock Active Stock Fund Class F; BlackRock MSCI ACWI Ex-US Fund Class F; BlackRock US TIPs Fund Class F; and BlackRock US Debt Index Fund Class F.

308.    BTC, as investment manager to the CTIs listed in the preceding paragraph, invested those CTIs in numerous other BTC-sponsored and -managed CTIs which all used a master-feeder structure.

309.    Thus, through his investments in the BlackRock Russell 1000 Class F; BlackRock Active Stock Fund Class F; BlackRock MSCI ACWI Ex-US Fund Class F; BlackRock US TIPs Fund Class F; and BlackRock US Debt Index Fund Class F, Plaintiff Baird's retirement account was directly or indirectly invested in the following BlackRock CTIs:

- Russell 1000 Index Fund
- US Treasury Inflation Protected Securities Fund E
- Active Stock Fund E
- Intermediate Government Bond Index Fund
- Intermediate Term Credit Bond Index Fund
- Long Term Credit Bond Index Fund
- Long Term Government Bond Index Fund
- Mortgage-Backed Securities Index Fund
- Asset-Backed Securities Fund B
- Commercial MBS Index Fund B
- Cash Equivalent Fund II
- Term Fund 11

310.    Together, Plaintiffs' individual accounts were invested directly or indirectly in the following proprietary CTIs:

- Active Stock Fund E
- Blackrock MSCI Canada Small Cap Equity Index Fund
- Blackrock MSCI EAFE Small Cap Equity Index Fund
- Blackrock MSCI US Real Estate Index Fund E

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

- Commercial Mortgage-Backed Securities Index Fund B
- Commodity Index Daily Fund E
- Developed Ex-US Real Estate Index Fund
- EAFE Equity Index Fund
- EAFE Equity Index Fund F
- Emerging Markets Equity Index Master Fund
- Equity Index Fund
- Extended Equity Market Fund
- Intermediate Government Bond Index Fund
- Intermediate Term Credit Bond Index Fund
- Long Term Credit Bond Index Fund
- Long Term Government Bond Index Fund
- Mortgage-Backed Securities Index Fund
- Asset-Backed Securities Fund B
- MSCI Equity Index Fund B-Brazil
- MSCI Equity Index Fund B-Chile
- MSCI Equity Index Fund B-China
- MSCI Equity Index Fund B-Colombia
- MSCI Equity Index Fund B-Egypt
- MSCI Equity Index Fund B-Czech Republic
- MSCI Equity Index Fund B-Hungary
- MSCI Equity Index Fund B-India
- MSCI Equity Index Fund B-Indonesia
- MSCI Equity Index Fund B-Malaysia
- MSCI Equity Index Fund B-Morocco
- MSCI Equity Index Fund B-Peru
- MSCI Equity Index Fund B-Poland
- MSCI Equity Index Fund B-Russia
- MSCI Equity Index Fund B-S Korea
- MSCI Equity Index Fund B-South Africa
- MSCI Equity Index Fund B-Taiwan
- MSCI Equity Index Fund B-Thailand
- MSCI Equity Index Fund-Canada
- MSCI Equity Index Fund-Mexico
- MSCI Equity Index Fund-Philippines
- MSCI Equity Index Fund-Turkey
- Russell 1000 Index Fund
- Russell 2000 Index Fund
- US Treasury Inflation Protected Securities Fund E
- Cash Equivalent Fund II
- Cash Equivalent Fund B
- Euro Cash Collateral Fund
- Money Market Fund A/B

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

- Term Fund 11
- Term Fund 215

311.    Each of the CTIs in the preceding paragraph – collectively, the "BlackRock CTIs" – is organized as a trust and the trust beneficiaries of each CTI are the participants whose employee benefit plans are invested directly or indirectly in that CTI.

312.    Each of the CTIs listed in paragraph 310 holds the BlackRock Plan's assets and is subject to ERISA's fiduciary requirements pursuant to 29 C.F.R. § 2510.3-101(h)(1)(ii) because the BlackRock Plan is invested in each of these CTIs.

313.    BTC is the trustee for each of the BlackRock CTIs and therefore holds legal title to the assets of each of the BlackRock CTIs.

314.    Because BTC acted/acts as the investment manager to each of the BlackRock CTIs listed in paragraph 310, it exercised/exercises authority or control respecting the management or disposition of the ERISA-governed plan assets held in the CTIs listed in paragraph 310.

315.    BTC therefore is a fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) to the participants and beneficiaries of the employee benefit plans that directly or indirectly invest in the BlackRock CTIs (the "CTI Class"), including the BlackRock Plan.

316.    BTC was also a fiduciary to the employee benefit plans which are invested in the BlackRock CTIs within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because it managed the operations of each of the BlackRock CTIs and thus exercised discretionary authority or discretionary control respecting management of plan assets held in each BlackRock CTI.

317.    As a fiduciary of each of the employee benefit plans which are invested in the BlackRock CTIs, BTC was and continues to be a party-in-interest to each of those plans under ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

318.    BlackRock, through its control of its subsidiary BTC (who controls the management and disposition of the ERISA-governed plan assets held in the BlackRock CTIs) is a fiduciary to the BlackRock CTIs within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) and owes ERISA fiduciary duties to the participants and beneficiaries of the employee benefit plans that directly or indirectly invest in the BlackRock CTIs (the "CTI Class").

319.    Additionally, many of the employees of BTC who carried out the actions to control and manage the BlackRock CTIs' assets were/are dual employees of both BlackRock and BTC.

320.    Each of the BlackRock CTIs engage in securities lending.

321.    The BlackRock CTIs own the securities that are lent through securities lending and thus are the lenders.

322.    The BlackRock Plan owns an undivided interest in the BlackRock CTI assets by operation of the Plan Asset Regulation, 29 C.F.R. § 2510.3-101(h)(1)(ii).

323.    For each BlackRock CTI, BTC alone has the power to determine who the lending agent will be.

324.    For each BlackRock CTI, BTC or its parent BlackRock controls the assets and the percentage of assets that are lendable through BTC's securities lending program.

325.    For each BlackRock CTI, BTC or its parent BlackRock controls what percentage of the assets are on loan at any given time.

326.    For each BlackRock CTI, BTC or its parent BlackRock controls the type of collateral it will accept from a borrower when a security is lent to that borrower.

327.    For each BlackRock CTI, BTC or its parent BlackRock controls how the securities lending cash collateral will be reinvested.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

328.   For each BlackRock CTI, BTC or its parent BlackRock controls and/or negotiates with the borrower the amount of rebate that will be paid to the borrower at the close of each securities lending transaction.

329.   For each BlackRock CTI, BTC and/or its parent BlackRock, control how much it will compensate itself from the BlackRock CTIs in connection with its securities lending services.

330.   ██████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████

331.   The duty of loyalty BTC and BlackRock owed to the participants whose ERISA-governed plan assets were held in the BlackRock CTIs included a duty to avoid conflicts of interest and thus avoid giving itself or its subsidiaries preferential treatment when selecting and maintaining service providers and investments for the BlackRock CTIs, including entities providing securities lending services and the investments for the cash collateral of the BlackRock CTIs.

332.   ERISA's duty of prudence required BTC and BlackRock to follow reasonable standards of investment due diligence by giving appropriate consideration to those facts and circumstances that, given the scope of its fiduciary investment duties, it knew or should have known were relevant to the investment decisions related to the BlackRock CTIs, and then to act accordingly. 29 C.F.R. § 2550.404a-1.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

333. The duty of prudence required BTC and BlackRock to give adequate consideration to outside (i.e. non-affiliated) service providers for the BlackRock CTIs and to avoid conflicts of interests, including the conflict associated with selecting and maintaining itself as the securities lending agent for each BlackRock CTI.

334. As a fiduciary to the retirement plans which are invested in the BlackRock CTIs, BTC also had an ongoing duty to monitor the plan assets held in each of the BlackRock CTIs on a regular and frequent basis (at least as frequent as every quarter), which included re-evaluating the securities lending agent and the cash collateral funds used by the BlackRock CTIs to ensure that they were/are prudent options for the BlackRock CTIs including a review of the cost/fees charged by the securities lending agent and/or the cash collateral funds.

335. Based on its monitoring duty, BTC had an ongoing duty to replace the securities lending agent and the cash collateral funds used by the BlackRock CTIs if there were cheaper and otherwise comparable alternatives available.

      2. <u>BTC was required to manage the assets of the BlackRock CTIs in accordance with ERISA's fiduciary requirements and the CTI Plan Documents</u>

336. The OCC mandates that, for each of the BlackRock CTIs, "The bank [BTC] shall establish and maintain each collective investment fund in accordance with a written plan (Plan) approved by a resolution of the bank's board of directors or by a committee authorized by the board." 12 CFR 9.18(b). Consistent with 12 CFR 9.18(b), ███████████████████████████████████████████████████████████

███████████████████████████████

337. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

1    338.    ███████████████████████████████████████████

2    ████████████████████████████████████████████████████

3    █████████████

4    339.    ███████████████████████████████████████████

5

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    █████████████████████████████████

10   340.    ███████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████

14

15   341.    ███████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████

22

23   342.    ███████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27

28

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

343.     As such, BTC had and has the full discretionary authority to appoint a securities lending agent other than itself in order to obtain better securities lending fee splits for the BlackRock CTI investors and to avoid violations of ERISA § 406, 29 U.S.C. § 1106.

344.     At all relevant times,

345.

346.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

347.    Specifically, starting in 2013, ███████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████

348.    Prior to 2013, ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

349.    Thus, █████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

350.     ████████████████████████████████████████████████████

████████████████████████████████████████████████████

351.     Additionally, to treat some plan investors in the BlackRock CTIs better than others violates BTC's duty of loyalty owed to all the ERISA plans invested in the BlackRock CTIs.

### 3.     BTC Violated Its ERISA Fiduciary Duties to the Participants in Each of the Employee Benefit Plans Invested in the BlackRock CTIs

352.     BTC has a duty to act prudently and with undivided loyalty to the participants whose retirement accounts were directly or indirectly invested in the CTIs. However, in contravention of its fiduciary duties, BTC self-servingly gives/gave itself and other BlackRock subsidiaries preferential treatment with respect to receiving compensation paid by the BlackRock CTIs.

353.     The compensation paid to BTC or BlackRock through improper preferential treatment includes, but is not limited to, securities lending fees and cash management fees.

354.     BTC, through its fiduciary power to control the BlackRock CTIs, selected and/or maintained itself as lending agent for the BlackRock CTIs.

355.     As a result, BTC served and serves as the lending agent responsible for conducting securities lending programs for all the BlackRock CTIs throughout the Class Period.

356.     By selecting and/or maintaining itself as the securities lending agent for the BlackRock CTIs, BTC engaged in and continues to engage in self-dealing. Thus, BTC and BlackRock earned significant fees and expenses from multiple sources, including the excessive share of the BlackRock CTIs' profits from securities lending that it retains as the lending agent, and the excessive fee BTC charges to manage the cash collateral it receives from lending the BlackRock CTI's securities by investing that cash collateral in a BlackRock proprietary vehicle.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAM & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

a.      *BTC Charged/Charges Excessive Fees of 50% of all Securities Lending Revenue.*

357.    BTC, as lending agent, takes as a fee 50% of all securities lending income generated from the BlackRock CTIs' assets, net of fees for managing cash collateral and rebates to the borrower. Through its management and control over the BlackRock CTI assets, BTC and its parent caused and continue to cause the transfer of the 50% of securities lending revenue from the BlackRock CTIs to BTC and/or BlackRock as a fee for BTC's securities lending services.

358.    ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████

359.    ███████████████████████████████████████████
███████████████████████████████████████████████
███████

360.    ███████████████████████████████████████████
███████████████████████████████████████████████
██████████████

361.    A survey of retirement plan sponsors reports that in 2011, over 50% of respondents paid 15% of securities lending income to the lending agent (an 85/15 split).

362.    As reported in the Wall Street Journal, certain firms that provide securities lending services, like "T. Rowe Price Group and Vanguard Group, rebate all securities-lending income (net of expenses) back to the funds that generated it. The total cost of Vanguard's securities-lending program is well under 1% [which] suggests that most of the 30%-to-50% toll charged by other fund managers

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

is pure profit in effect, money for nothing." Jason Zweig, *Is Your Fund Pawning Shares at Your Expense?* Wall Street Journal, May 30, 2009, available at https://www.wsj.com/articles/SB124363555788367705 (last accessed June 22, 2018).

363.    SSgA, a competitor to BTC for securities lending services, began reducing its securities lending fees and expenses in 2010, cutting SSgA's fees to 30% (from 50%).

364.    SSgA fund documents for 2014 show SSgA fund investors now receive 85%, and SSgA receives only a 15% fee for its securities lending services.

365.    A vice-president at Citibank commented that "anyone [with] over $1 billion in assets still at 60/40 should be talking to agent lenders … and any large [investors] ($10 billion and better) not at 80/20 should likewise be talking to lenders." Charles Ruffel, *Lending Logic*, PLANSPONSOR (2002).

366.    Collectively the BlackRock CTIs for which BTC operated as securities lending agent held over a *quarter trillion* dollars in assets.

367.    Yet BlackRock CTI did not get the benefit of this massive bargaining power to obtain securities lending services for a reasonable fee because BTC was conflicted and maintained an excessive fee of 50% for the BlackRock CTIs despite its power as a fiduciary to seek a different lending agent for a cheaper fee or to pay itself less than the 50% fee which was excessive.

368.    ███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

369. ████████████████████████████████████

370.   The reason BTC receives far less compensation for the securities lending services it provides to BlackRock mutual funds is because the mutual fund investors are represented by independent fiduciaries.

371. ████████████████████████████████████

372. ████████████████████████████████████

373. ████████████████████████████████████

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

374. Since 2014, BlackRock continued to cut its securities lending fee for BlackRock mutual funds and BlackRock iShares exchange-traded funds.

375. For example, since then, BlackRock officials dropped a "one-size-fits all" policy — under which it retained a uniform 35% of the profits — and began keeping between 15% and 30%, depending on the fund.

376. BTC and/or BlackRock knew that competitors in the market offered lower securities lending fees that allowed employee benefit plans to retain more of the profits from securities lending done with plan assets.

377. A 50% fee split of the securities lending revenue for BTC is excessive.

378. ███████████████████████████████████████████████████

███████████████████████████████████████████

379. A 50% fee split of the securities lending revenue for BTC is not commensurate ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

380. A prudent and non-conflicted fiduciary negotiating on behalf of a trust to which it owes ERISA fiduciary duties (like each of the BlackRock CTIs here) could have and would have obtained a more favorable securities lending split to allow the ERISA covered participants invested in each BlackRock CTI to retain a larger share of the securities lending revenue generated with their retirement assets. BlackRock and BTC knew and knows that BTC was and is the most expensive lending agent in the market.

381. The BlackRock CTIs that were paying the 50% fee split should have been able to obtain the end of the market range, i.e., 5% fee to the lending agent and retaining 95% of the sec lending

LAW OFFICES OF
**Feinberg, Jackson, Worthman & Wasow LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**Cohen Milstein Sellers & Toll PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

revenue because the BlackRock CTIs collectively held hundreds of billions of dollars of lendable securities.

382.    The BlackRock CTI participant investors thus get the worst deal on securities lending of any BlackRock clients and pay 1000% greater than what they could have obtained in the market.

383.    ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████[11]

384.    ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████

385.    As discussed *infra,* BTC charges a fee in connection with the management of cash collateral before any rebate is paid, meaning the compensation BTC withdraws from the CTIs in connection with securities lending activities is incrementally ***more than*** 50% of net income.

      b.     *BTC Pays Itself Excessive, Undisclosed Management Fees for the Investment of Securities Lending Cash Collateral for and Passes All Risks of Securities Lending to the CTI Class.*

386.    The 50% fee BTC pays itself from the securities lending profits of the BlackRock CTIs is paid after, ***and in addition to***, a management fee BTC pays itself for acting as the investment manager to the proprietary STIFs, in which the cash collateral of the BlackRock CTIs is invested.

387.    BTC invested all cash collateral it received for the BlackRock CTIs' loaned securities in its own proprietary STIFs whose fees and expenses ranged from 5.0 to 5.6 bps.

---

[11] Rebates are explained in paragraph 176 above.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

388.    Through its management and control over the proprietary STIFs, BTC causes the transfer of between 5 to 5.6 bps of total assets from the STIFs to BTC and/or BlackRock as an investment management fee for the STIFs on a regular basis.

389.    BlackRock's audited financial statements referred to these fees as "investment management fees" as of December 31, 2011.

390.    Pursuant to BTC's broad discretionary authority to direct the investment of CTI assets, as set forth in the IMA, BTC selected the STIFs into which the BlackRock CTIs' collateral was invested. No other person or entity, besides BTC, was granted the authority to direct the investment of the BlackRock CTIs' assets.

391.    The proprietary STIFs that BTC selected and continues to select for the BlackRock CTIs are substantially more expensive than similar funds used by other securities lending agents.

392.    For instance, Vanguard uses the Market Liquidity Fund for cash management, which charges only 1 bp. The 400-500% premiums that the STIFs charge are profit for BTC generated with BlackRock CTIs' assets and reduce the value of the cash collateral.

393.    Moreover, BTC offers other investors a STIF with no embedded investment management fee and charges the LifePath mutual funds (as opposed to the LifePath CTIs) only 4 bps for the STIF used in the mutual funds' securities lending program.

394.    ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

395. During the Class Period, BTC withdrew approximately $170 million in management fees from its largest, synthetic STIF named the Cash Equivalent Fund II ("CEF II"). This fee represents 5.6 bps of this STIF's net assets throughout the Class Period.

396. The CTI Class would have retained approximately $50 million more of their securities lending revenue if BTC charged the CTIs 4 bps, which is what BTC charges the BlackRock mutual funds and ETFs.

397. If BTC charged the 1.0 bp that Vanguard charges its investors, the CTI Class would have retained nearly $140 million more of their securities lending revenue.

398. If BTC charged the 0.0 bps that was available in the market for large investors such as the BlackRock CTIs, the CTI Class would have retained approximately $170 million more of their securities lending revenue.

399. In addition to the excessive management fee BTC imposed on the CTI Class, BTC's management of CEF II ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

400. There is a cost associated with every purchase and sale of a security or debt instrument. These transaction costs, typically paid to brokers or dealers, reduce returns on investment. The magnitude of these costs can be approximated by observing how frequently securities within a portfolio are purchased or sold. When all the securities in a portfolio are purchased and sold within a given year, the portfolio is said to have "turned over." Turnover can be measured by dividing the value of securities purchased or sold within a year by the average net assets within the portfolio.

401.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

402.

403.

### c.    The Excessive Fee is Not Justified Because, Among Other Things, All Risk is Allocated to the CTI Class.

404.    The BlackRock CTIs face a number of risks associated with the BTC-managed securities lending program, including: (1) the risk that the borrower is unable to timely return the securities or provide additional collateral; (2) the risk that the vehicle used to reinvest collateral loses value or restricts redemptions; (3) the risk that non-cash collateral accepted by the lending agent loses value; and (4) operational risks.

405.    BTC, in its capacity as lending agent, has (1) significantly reduced the returns the CTI Class earns through investing activities, (2) passed all securities lending risks to the CTI Class, and (3) utilized proprietary collateral reinvestment vehicles that exposed the CTI Class to excessive risk and deteriorated collateral value with undisclosed high fees.

406.    All revenue generated by this lending process that is not taken by fees and expenses is reinvested back into the BlackRock CTIs, thereby increasing the value of the CTIs. As a result, the

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

less income that is reinvested, the lower the value of the BlackRock CTIs and the lower the value of the participant accounts that are directly or indirectly invested in the BlackRock CTIs.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

407. 

408.     This lending arrangement that BTC has imposed upon the CTI Class through its self-dealing has generated hundreds of millions of dollars in risk-free profits for BTC. These profits came at the expense of the CTI Class's returns and through the exposure of the CTI Class to additional risks.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

409.     The excessive management fee BTC takes from the BTC managed STIFs and the excessive securities lending fees BTC takes from the BlackRock CTIs have significantly reduced the retirement income of the ERISA plan assets belonging to the CTI Class.

410.     The CTI Class bears all risks associated with the securities lending programs. For instance, should any of the STIFs selected by BTC lose value, the CTIs would be responsible for providing to the borrower any short-fall in collateral owed to the borrower upon return of loaned securities. BTC, despite taking a large management fee from the STIFs and 50% of all income generated through the process, would bear none of the loss.

        *d.*     *BTC's Selection of Excessively Risky Synthetic STIFs for the BlackRock CTI's Cash Collateral and in turn, BTC's Portfolio Management of the STIFs, Increased BTC's Securities Lending Revenue but Caused Significant Losses to the CTI Class.*

411.     BTC manages the BlackRock CTIs in a manner that encourages excessive risk taking to maximize BlackRock's profits. In particular, ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████ These Synthetic STIFs are more expensive than a traditional STIF, and exposed investors to more risk than was/is prudent for short-term investment funds than was permitted by the STIF Guidelines.

412.     ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

413.     Investing in higher risk debt obligations provides higher interest income to the investor. However, it also comes with a heightened risk that the principal of the investment is lost. This principal is needed to repay borrowers of the lent securities.

414.     Because BTC takes 50% of the interest income generated by the cash collateral investments (including the high-risk debt obligations), but does not bear the risk of loss to principal if

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

the issuer does not repay the debt at maturity, BTC had an incentive to invest in higher risk securities because BTC benefits from higher interest income without bearing principal losses.

415.    As one commentator at the Federal Reserve Bank of New York observed, "[o]ne might view the securities-lending agent's incentives as akin to a free long option position, in which securities-lending agents participate proportionally in higher cash reinvestment returns but are not exposed to net losses from this activity." Frank M. Keane, *Securities Loans Collateralized by Cash: Reinvestment Risk, Run Risk and Incentive Issues,* 19 No. 3, Current Issues in Econ. and Fin., 1,6 (2013). This risk-seeking behavior was a "problem in the lead-up to the financial crisis." *Id.*

416.    Not surprisingly, BTC, used its full discretionary power and authority over the assets of the BlackRock CTI ███████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████

417.    ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████

418.    BTC also had and has full power and authority to invest the assets of ███████████
████████████████████████████████████████████████████████████

419.    On the flip side, the investors in CEF II and/or CEF B (here the BlackRock CTIs) alone bear the risk of loss should the high risk debt obligations/investment in CEF II and/or CEF B lose principal/value, but the investors in the BlackRock CTIs have no control over how BTC invests their collateral as BTC retains all the management authority and control over the BlackRock CTIs, CEF II and CEF B.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

420.    BTC was incentivized to invest CEF II and CEF B in debt obligations that paid high interest rates even if these high risk/high reward debt obligations were imprudent investments for a money market fund whose goal is to preserve principal.

421.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████

422.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

423.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

424.    During 2011 and 2012, the BTC-managed STIFs, including CEF II and CEF B, were also subject to Investment Guidelines, namely the Guidelines for Short-Term Investment Funds (hereinafter "STIF Guidelines").[14]

425.    The STIF Guidelines state that the objective of CEF II is "to seek as high a level of current income as is consistent with liquidity and stability of principal."

---

[12]"Generally, bonds with maturity between 1 and 5 years are considered 'short-term.' Bonds with a maturity between 5 and 12 years are viewed as 'intermediate-term.' And 'long-term' bonds are those with a maturity of more than 12 years." Frank J. Fabozzi, Fixed Income Securities, (Wiley Finance, 2002, Second Edition), p.2.

[13]"Dollar-weighted average portfolio maturity" is a measure of the average length of time until the assets in the portfolio mature. Maturity is the date by which all the principal of a debt obligation must be repaid.

[14] ███████████████████████████████████████████████████████████

██████████████████████████████████████████

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

426. The STIF Guidelines state that the objective of CEF B is "to seek as high a level of current income as is consistent with liquidity and stability of principal."

427. The STIF Guidelines for CEF II and CEF B mandated that the funds maintain a dollar-weighted average portfolio maturity of 90 days or less, and mandated that the maximum expected maturity for a security shall be three years.

428. 

429. 

430. ████████████████████, Medium Term Notes can have long-term maturities of more than 30 or even 50 years. 

431. For instance, 

15

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

1

2

3

4

5

6

7

8    432.  ███████████████████████████████████████

9

10

11    433.  ███████████████████████████████████████

12

13

14

15    434.  ███████████████████████████████████████

16

17

18

19

20

21

22

23

24

25    435.   As of December 31, 2011, in total, ██████████████████ CEF II had

26   suffered unrealized losses of over $659 million in value.

27

28

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

436.    The following investments in CEF II violated the ERISA 404(a)(1)(A), (B), (C) and/or (D), 29 U.S.C. § 1104(a)(1)(A), (B), (C), and/or (D):

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS



LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699



437. ███████████████████████████████████████████████████████████████

███████████████████████████████

438.    The following investments in CEF B violated the ERISA 404(a)(1)(A), (B), (C) and/or (D), 29 U.S.C. § 1104(a)(1)(A), (B), (C), and/or (D):

| Issuer | | Expected Maturity | Maturity | Loss as of 12/31/2011 |
|---|---|---|---|---|
| ████████ | | ████ | █ | ████ |
| ████████ | | ████ | █ | ████ |
| ███████████ | | ████ | █ | ████ |
| ███████████ | | ████ | █ | ████ |
| ████████ | | ████ | █ | ████ |
| ███████████ | | ████ | █ | ████ |

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS



439.

These losses eroded the retirement savings of the CTI Class as described in greater detail below.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

440.   Thus, ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████

441.   ██████████████████████████████████████████
████████

442.   ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████

443.   ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████

444.   The audited financial statements for CEF II disclose that, as of December 31, 2011,
BTC had withheld over $300 million in investment income generated by assets of CEF II that should
have been remitted to the CTI Class.

445.   ██████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████

446.   In 2012, BTC used the income it withheld from the CTI Class to offset losses that were
caused by BTC's investment in the securities in paragraphs 436 and 438. CEF II's audited financial
statements from 2012 indicate that $290,124,356 of the withheld income was used to offset losses.
████████████████████████████████████████████████████████████
████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

447.    The Office of the Comptroller of the Currency ("OCC") has promulgated regulations pertaining to CTIs like CEF II and CEF B. OCC regulations, at 12 CFR § 9.18(b)(1)(vii), required the CTI Plan Document to "contain appropriate provisions" regarding the "expected frequency for income distribution to participating accounts."

448.    █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████

449.    Following BTC's improper off-set of losses in 2012, ████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

450.    As of 2011, █████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████

451.    ██████████████████████████████████████████

█████████████████████████████████████████████

████████████████

452.    ██████████████████████████████████████████

█████████████████████████████████████████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

453.

454.

455.

456.

_____

[16] Net Asset Value or NAV is a measure of a portfolio's value, calculated by subtracting the value of assets in a portfolio by the value of liabilities within that portfolio. Changes of NAV per unit over a period of time influence the total return produced by a portfolio.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

457. ██████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████

458. ████████████████████████████████████████████
██████████████

459. ████████████████████████████████████████████
████████████████████████████ ████████████████████████
██████████████████████████████████████████████████
████████████████████████████████

460. ████████████████████████████████████████████
██████████████████████████

461. ████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████

462. ████████████████████████████████████████████
████████████████████████████████████

463.     The value of withheld income that the CTI Class paid for did not remit to the benefit of the CTI Class. Rather, BTC used it to offset losses ███████████████████████████

---

[17] "Discount" is a term used to describe a situation in which a financial instrument, like a bond, is priced at less than its face or par value.

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

464.  ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

465.  ███████████████████████████████████████████
███████████████████████

466.     The American Institute of Certified Public Accountants advises that the hallmark of fiduciary accounting is ensuring compliance with governing instruments. As such, reading and understanding the instruments governing the CTIs is the initial step for preparing a fiduciary accounting. ██████████████████████████████████

467.  ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

468.  ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████

469.  ███████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████

470.  ███████████████████████████████████████████
███████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

471. ██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

472. ████████████████████████████████████████.

473. ██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████

474. ██████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████

475. ██████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████

476.     BTC, through its management and control over the BlackRock CTIs, and/or through

its role as lending agent to the BlackRock CTI, continued to ████████████████████████

██████████████████████████████████████████████

████████████████████

477.     A prudent and loyal fiduciary would not have ████████████████████████

████████████████████████████████ for the BlackRock CTIs.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

478. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

479. This ongoing ███████████████████████████ which was imprudent and disloyal, have significantly reduced the retirement income of the ERISA plan assets belonging to the CTI Class.

480. BTC violated ERISA 404(a)(1)(A), (B), (C), and (D), 29 U.S.C. § 1104(a)(1)(A), (B), (C), and/or (D): by

- investing the BlackRock CTI cash collateral in ██████████ and maintaining those investments which were imprudent, disloyal, non-diversified and ███████ ████████████████

- selecting and maintaining investments for the ███████████ portfolios that were imprudent, disloyal ████████████████████████ ████████

## V.  CLASS ALLEGATIONS

481. Plaintiffs bring this action on behalf of two related classes: the BlackRock Plan Class and the CTI Class.

**A.    The Class of BlackRock Plan Participants ("BlackRock Plan Class")**

482. The BlackRock Plan Class consists of:

> All participants and beneficiaries in the BlackRock Retirement Savings Plan from April 5, 2011 through the date of judgment.  Any individual Defendants are excluded from the class.

483. Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(3).

484. **Numerosity.** The BlackRock Plan Class satisfies the numerosity requirement because it is composed of thousands of persons. The Plan currently has more than 10,000 participants. The number of BlackRock Plan Class members is so large that joinder of all its members is impracticable.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

485.   **Commonality.**  As to the members of the BlackRock Plan Class, this case presents numerous common questions of law and fact, including but not limited to:

(a)   Whether all the Retirement Committee Defendants and Investment Committee Defendants were/are ERISA fiduciaries responsible for selecting, retaining, removing and monitoring the BlackRock Plan investments;

(b)   Whether Defendant BlackRock, Inc. was and is an ERISA fiduciary to the BlackRock Plan;

(c)   Whether Mercer was/is a fiduciary to the BlackRock Plan based on the investment advice it provided for a fee regarding the Plan;

(d)   Whether the Retirement Committee Defendants and the Investment Committee Defendants breached their ERISA fiduciary duty to monitor the investment options in the BlackRock Plan during the Class Period;

(e)   Whether the Retirement Committee Defendants and Investment Committee Defendants breached their ERISA fiduciary duties in selecting only BlackRock proprietary funds for addition to the BlackRock Plan menu during the Class Period;

(f)   Whether the Retirement Committee Defendants and the Investment Committee Defendants caused the BlackRock Plan to engage in multiple prohibited transactions in violation of ERISA § 406, 29 U.S.C. 1106, throughout the Class Period;

(g)   Whether Mercer breached its fiduciary duties to the BlackRock Plan by providing imprudent and disloyal investment advice regarding the BlackRock proprietary funds for the BlackRock Plan menu;

(h)   Whether the BlackRock Plan and its participants suffered losses as a result of Defendants' ERISA violations.

486.   **Typicality.**  Plaintiffs' claims are typical of the claims of the BlackRock Plan Class because (a) to the extent that Plaintiffs seek relief on behalf of the BlackRock Plan pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2) their claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member; (b) to the extent that Plaintiffs seek equitable relief, such relief would affect all Class members equally; and (c) all of the BlackRock Plan Class members were injured and continue to be injured in the same manner by Defendants' breaches of

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

fiduciary duty. Plaintiffs have no interests that are antagonistic to the claims of the Class. They understand that this matter cannot be settled without the Court's approval.

487.   **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the BlackRock Plan Class and they are committed to the vigorous representation of that Class. Plaintiffs' retained counsel, Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein") and Feinberg, Jackson, Worthman & Wasow ("Feinberg Jackson"), are experienced in class action and ERISA litigation.

488.   Plaintiffs' counsel have agreed to advance the costs of the litigation contingent upon the outcome. Counsel are aware that no fee can be awarded without the Court's approval.

489.   A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the BlackRock Plan Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.

490.   Moreover, Defendants, as fiduciaries to the BlackRock Plan, were and are obligated to treat all BlackRock Plan Class members similarly because ERISA imposes uniform standards of conduct on fiduciaries. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

491.   The BlackRock Plan Class may be certified under Rule 23(b).

A.   **Rule 23(b)(1) requirements.**  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action. Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendants, or (B) adjudications with respect to individual Class members would, as a practical matter, be

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.      **Rule 23(b)(2) requirements**.  Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, the challenged conduct at issue—Defendants' investment of plan assets and improper use thereof—not only can be, but must be enjoined or declared unlawful only as to all of the Class members or as to none of them.

C.      **Rule 23(b)(3) requirements**.  This action is suitable to proceed as a class action under Rule 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter.

B.      **The Class of Participants Invested in the CTIs ("the CTI Class")**

492.    Plaintiffs also bring this action on behalf of the second class, which consists of:

> All participants, and their beneficiaries, whose employee benefit plans were invested directly or indirectly in the following BlackRock CTIs, each of which held ERISA plan assets and thus was governed by ERISA: Active Stock Fund E; Blackrock MSCI Canada Small Cap Equity Index Fund; Blackrock MSCI EAFE Small Cap Equity Index Fund; Blackrock MSCI US Real Estate Index Fund E; Commercial Mortgage-Backed Securities Index Fund B; Commodity Index Daily Fund E; Developed Ex-US Real Estate Index Fund; EAFE Equity Index Fund; EAFE Equity Index Fund F; Emerging Markets Equity Index Master Fund; Equity Index Fund; Extended Equity Market Fund; Intermediate Government Bond Index Fund; Intermediate Term Credit Bond Index Fund; Long Term Credit Bond Index Fund; Long Term Government Bond Index Fund; Mortgage-Backed Securities Index Fund; MSCI Equity Index Fund B-Brazil; MSCI Equity Index Fund B-Chile; MSCI Equity Index Fund B-China; MSCI Equity Index Fund B-Colombia; MSCI Equity Index Fund B-Egypt; MSCI Equity Index Fund B-Czech Republic; MSCI Equity

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

Index Fund B-Hungary; MSCI Equity Index Fund B-India; MSCI Equity Index Fund B-Indonesia; MSCI Equity Index Fund B-Malaysia; MSCI Equity Index Fund B-Morocco; MSCI Equity Index Fund B-Peru; MSCI Equity Index Fund B-Poland; MSCI Equity Index Fund B-Russia; MSCI Equity Index Fund B-S Korea; MSCI Equity Index Fund B-South Africa; MSCI Equity Index Fund B-Taiwan; MSCI Equity Index Fund B-Thailand; MSCI Equity Index Fund-Canada; MSCI Equity Index Fund-Mexico; MSCI Equity Index Fund-Philippines; MSCI Equity Index Fund-Turkey; Russell 1000 Index Fund; Russell 2000 Index Fund; US Treasury Inflation Protected Securities Fund E; Cash Equivalent Fund II; Cash Equivalent Fund B; Euro Cash Collateral Fund; Money Market Fund A/B; Term Fund 11; and Term Fund 215, from April 5, 2011 through the date of judgment.  Any individual Defendants are excluded from the class.

493.    Class certification is appropriate under Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(3).

494.    **Numerosity.** The CTI Class satisfies the numerosity requirement because it is composed of hundreds of thousands of persons.  The number of CTI Class members is so large that joinder of all its members is impracticable.

495.    **Commonality.**  As to the members of the CTI Class, this case presents numerous common questions of law and fact, including but not limited to:

- Whether BTC is an ERISA fiduciary to the CTI Plans because those plans directly or indirectly invest in the BlackRock CTIs;

- Whether BTC appropriately and prudently considered outside service providers for the BlackRock CTIs, including an outside securities lending agent;

- Whether BTC gave itself preferential treatment when selecting and maintaining a securities lending agent for the BlackRock CTIs;

- Whether BTC received compensation, directly or indirectly, from the ERISA-governed employee benefit plan assets of the BlackRock CTIs including but not limited to compensation paid in connection with securities lending transactions and cash collateral management services;

- Whether BTC paid itself excessive fees for securities lending services and cash collateral management services for the BlackRock CTIs; and

- Whether BTC gave itself preferential treatment when selecting and maintaining BTC-managed funds for cash collateral management for the BlackRock CTIs.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

496. **Typicality.** Plaintiffs' claims are typical of the claims of the CTI Class because (a) to the extent that Plaintiff seeks relief on behalf of the CTI Class pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2) their claims are not only typical of, but the same as a claim under § 502(a)(2) brought by any other Class member; (b) to the extent that Plaintiffs seek equitable relief, that relief would affect all Class members equally; and (c) all of the CTI Class members were injured and continue to be injured in the same manner by Defendants' breaches of fiduciary duty. They have no interests that are antagonistic to the claims of the Class. They understand that this matter cannot be settled without the Court's approval.

497. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the CTI Class. Plaintiffs are committed to the vigorous representation of the CTI Class. Plaintiffs' counsel, Cohen Milstein and Feinberg Jackson, have agreed to advance the costs of the litigation contingent upon the outcome. Counsel are aware that no fee can be awarded without the Court's approval.

498. Proceeding as a class action is particularly appropriate here because the BlackRock CTIs' assets were held in commingled funds, or Collective Trusts. BTC's actions affected all employee benefit plans invested in the BlackRock CTIs in exactly the same manner.

499. A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the CTI Class is impracticable. The losses suffered by some of the individual members of the CTI Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.

500. Moreover, BTC, as a fiduciary to the participants whose individual accounts were invested directly or indirectly in the BlackRock CTIs, was obligated to treat all CTI Class members similarly because ERISA imposes uniform standards of conduct on fiduciaries. Individual

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiffs are unaware of any difficulty in the management of this action as a class action.

501.    The CTI Class may be certified under Rule 23(b).

A.    **Rule 23(b)(1) requirements**.  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants, or (B) adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

B.    **Rule 23(b)(2) requirements**.  Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, the challenged conduct at issue—Defendants' investment of plan assets and improper use thereof—not only can be, but must be enjoined or declared unlawful only as to all of the class members or as to none of them. The requirements for Rule 23(b)(2) certification are plainly met.

C.    **Rule 23(b)(3) requirements**.  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the Class predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter.

## VI.    CAUSES OF ACTION

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

## Count I

Breach of Fiduciary Duties for Failing to Prudently and Loyally Monitor, Select, and Diversify Investments for the Plan in Violation of ERISA § 404, 29 U.S.C. § 1104
(BlackRock Plan Class Against Retirement Committee Defendants, and Investment Committee Defendants)

502.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

503.    At all relevant times, the Retirement Committee Defendants and Investment Committee Defendants were fiduciaries within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) by exercising authority or control respecting the management or disposition of the BlackRock Plan's assets.

504.    As fiduciaries, the Defendants named in this Count had a duty to act solely in the interest of the participants and beneficiaries of the Plan they served and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A). This duty included avoiding preferential treatment for BlackRock proprietary products.

505.    The Defendants named in this Count further had the duty to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," in accordance with ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).   These fiduciary duties include the ongoing duty to monitor the BlackRock Plan investments.

506.    The Defendants named in this Count were required to diversify the investments of the BlackRock Plan to minimize the risk of large losses unless it was clearly prudent not to do so in

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

accordance with ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C).  This obligation includes a duty to avoid the risk of manager concentration: the systemic risks stemming from a single institution.

507.    The Defendants named in this Count were required to ensure that the terms of the BlackRock Plan Document were followed unless it was clearly imprudent to do so, in accordance with ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  This obligation includes the duty to ensure that the terms of the CTI Plan Document were followed.

508.    As set forth in detail above, the Defendants named in this Count breached these fiduciary duties by, inter alia:

a.    Giving preferential treatment to BlackRock proprietary funds when monitoring the investment options in the BlackRock Plan and when deciding which funds to add, maintain or remove from the BlackRock Plan;

b.    Using the BlackRock Plan to seed new BlackRock proprietary funds in response to BlackRock marketing initiatives, rather than based on undivided loyalty to the Plan participants;

c.    Failing to adequately consider non-proprietary (non-BlackRock) funds when selecting, and monitoring the investment options for the BlackRock Plan;

d.    Failing to consider the hidden fees and expenses of the BlackRock proprietary CTIs, including but not limited to the securities lending fees and the fees embedded in the layered fund structure for managing cash collateral of the CTIs;

e.    Failing to monitor the investments underlying each of the BlackRock proprietary funds including the maze of master-feeder funds which were fed by each BlackRock proprietary fund in the BlackRock Plan;

f.    Failing to avoid conflict of interests when considering and monitoring the BlackRock proprietary funds for the Plan;

g.    Failing to avoid violations of ERISA 406(a) and 406(b) when selecting and maintaining BlackRock proprietary funds for the Plan and when transferring fees to BlackRock and BTC related to the BlackRock proprietary funds as investment options in the Plan;

h.    Failing to diversify the assets of the Plan in order to avoid unnecessary and unlawful operational and manager concentration risk; and

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

i. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

509.     As a direct and proximate result of the above breaches of fiduciary duties, the BlackRock Plan and its participants have lost hundreds of millions of dollars in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

510.     Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## Count II

Violations of ERISA §406(a), 29 U.S.C. § 1106(a) for
Engaging in Party-in-Interest Transactions
(BlackRock Plan Class Against the Retirement Committee Defendants, Investment Committee
Defendants, BlackRock, and BTC)

511.     Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

512.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits transactions that constitute direct or indirect sale or exchange of property between a plan and any parties-in-interest and prohibits fiduciaries from causing the plan to engage in such transactions.

513.     The Retirement and Investment Committee Defendants caused the Plan to engage in multiple party-in-interest transactions, namely causing the BlackRock Plan to repeatedly purchase property (i.e., interests in BlackRock proprietary funds) from BlackRock (who holds legal title to the BlackRock mutual fund assets) and/or BTC (who holds legal title to the BlackRock CTI assets).  Each purchase by the Plan of an interest in the BlackRock proprietary collective trust funds managed by

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

BTC and each purchase by the Plan of an interest in the BlackRock mutual funds during the Class Period constituted a separate violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).

514.    Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Committee Defendants (1) to restore all losses to the BlackRock Plan caused by their repeated violations of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A) throughout the class period and (2) to disgorge all ill-gotten gains they received from their repeated violations of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A) to the Plan and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

515.    Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), BTC and BlackRock are liable as parties-in-interest to disgorge to the Plan the ill-gotten profits and/or assets they received as a result of the repeated violations of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), and the Plan participants are entitled to equitable restitution, surcharge, an accounting for profits from BTC and BlackRock, equitable lien on the ill-gotten profits, and any other relief set forth in the Prayer for Relief or that is just and proper.

516.    These ill-gotten fees can be traced to particular funds in BTC's and BlackRock's possession, as Plaintiffs can obtain to financial documents, including audited financial statements for each fund, as well as detailed cash flow statements, that can identify the flow of assets from the Plan into BlackRock proprietary funds during the Class Period.

517.    These ill-gotten fees have not been dissipated by BlackRock's or BTC's purchase of untraceable items, but rather have remained in BlackRock's and BTC's accounts.

518.    At all times, BlackRock, by virtue of the fact that it is the Plan sponsor and the legal title holder of the BlackRock proprietary mutual fund assets, had actual or constructive knowledge of each of these prohibited transactions.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

519.    At all times, BTC, by virtue of the fact that it is a subsidiary of the Plan sponsor and the legal title holder of the BlackRock proprietary CTI assets, had actual or constructive knowledge of each of these prohibited transactions.

520.    To the extent that BTC and BlackRock made further profits as a result of their prohibited use of the Plan's assets, the participants are entitled to disgorge those profits.

521.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits transactions that constitute direct or indirect transfers of a plan assets to, or use of a plan's assets by or for the benefit of, parties-in-interest, and prohibits fiduciaries from causing a plan to engage in such transactions.

522.    The Retirement and Investment Committee Defendants and Defendant BTC caused the BlackRock Plan to engage in multiple party-in-interest transactions, namely the repeated transfer of BlackRock Plan assets directly and/or indirectly to BlackRock and BTC (both parties-in-interest), in the form of various direct or indirect fees paid to BlackRock, BTC, their subsidiaries, and/or their subsidiaries, including but not limited to securities lending fees.

523.    Each direct or indirect transfer of assets from the BlackRock Plan to BTC or BlackRock during the Class Period constituted a separate violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

524.    Under § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Retirement and Investment Committee Defendants and BTC as fiduciaries to the BlackRock Plan (1) to restore all losses to the BlackRock Plan caused by their repeated violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) throughout the class period and (2) to disgorge all ill-gotten gains they received from their repeated violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) to the Plan, and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

525.    Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), BTC and BlackRock are liable as parties-in-interest to disgorge to the Plan the ill-gotten profits and/or assets they received as a result of the repeated violations of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), including but not limited to securities lending related fees, and the Plan is entitled to equitable restitution, surcharge, an accounting for profits from BTC and BlackRock, equitable lien on the ill-gotten profits, and any other relief set forth in the Prayer for Relief or that is just and proper.

526.    These ill-gotten fees can be traced to particular funds in BTC's and BlackRock's possession, as Plaintiffs can identify the flow of fees from the Plan to BlackRock and BTC during the Class Period through their access to financial documents, including audited financial statements and statements of cash flow.

527.    These ill-gotten fees have not been dissipated by BlackRock's or BTC's purchase of untraceable items, but rather have remained in BlackRock's and BTC's accounts.

528.    At all times, BlackRock, by virtue of the fact that it is the Plan sponsor and a recipient of the ill-gotten fees, had actual or constructive knowledge of each of these prohibited transactions.

529.    At all times, BTC, by virtue of the fact that it is a subsidiary of the Plan sponsor and a recipient of the ill-gotten fees, had actual or constructive knowledge of each of these prohibited transactions.

530.    To the extent that BTC and BlackRock made further profits as a result of their prohibited use of the Plan's assets, the participants are entitled to disgorge those profits.

## Count III
Violations of ERISA § 406(b), 29 U.S.C. § 1106(b) for Engaging in Prohibited Transactions
(BlackRock Plan Class Against the Retirement Committee Defendants, Investment
Committee Defendants, and BTC)

531.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

532.    ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account" ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

533.    By virtue of their positions as fiduciaries of the BlackRock Plan, the Retirement and Investment Committee Defendants made decisions about the investment of the Plan's assets in ways that benefitted themselves or were in their own self-interest because the Retirement and Investment Committee Defendants were all BlackRock executives whose compensation and promotion levels increased when they acted to increase revenues for BlackRock or otherwise benefit BlackRock or any of its subsidiaries, including BTC.  These actions violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

534.    Through its fiduciary power and control over the BlackRock Plan assets held in the BlackRock CTIs, BTC dealt with those assets in its own interest by paying itself excessive securities lending fees from the assets of the BlackRock CTIs.

535.    As a direct and proximate result of the above prohibited transactions, the Plan and its participants have suffered hundreds of millions of dollars of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

536.    Under ERISA § 502(a)(2) and 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this count (1) to restore all losses to the BlackRock Plan caused by their repeated violations of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), throughout the class period and (2) to disgorge all ill-gotten gains they received from their repeated violations of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), to the Plan and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

### Count IV

Breach of Fiduciary Duties for Failing to Prudently and Loyally Provide Investment Advice with respect to the BlackRock Funds as investment options for the Plan in Violation of ERISA § 404, 29 U.S.C. § 1104 and §406, 29 U.S.C. § 1106

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

(BlackRock Plan Class Against Mercer)

537.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

538.    At all relevant times Defendant Mercer was a fiduciary to the BlackRock Plan, and the Plan's participants and beneficiaries, with respect to the investment advice it provided regarding the BlackRock Plan, pursuant to ERISA § 3(21)(A)(ii), 29 U.S.C. 1002(21)(A)(ii).

539.    As a fiduciary, Mercer had a duty to act solely in the interest of the participants and beneficiaries of the Plan they served and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A). This duty includes providing independent investment advice, without regard to BlackRock's and the Retirement and Investment Committees' preference for proprietary funds for the BlackRock Plan.

540.    Mercer further had the duty to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," in accordance with ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). These fiduciary duties include the ongoing duty to monitor the BlackRock Plan investment options, and to recommend the addition of the best possible option for the Plan, regardless of whether the fund is a BlackRock proprietary product, as well as to recommend the removal of imprudent or disloyal fund options.

541.    Mercer also was required to provide advice that would allow the Retirement and Investment Committee Defendants to diversify the investments of the BlackRock Plan to minimize the risk of large losses unless it was clearly prudent not to do so in accordance with ERISA

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

§ 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C).  This obligation includes a duty to consider the risk of manager concentration.

542.    As set forth in detail above, Mercer breached these fiduciary duties by, *inter alia*:

   a.  When conducting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for the BlackRock Plan and when recommending ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Mercer provided investment advice that it knew or should have known facilitated the preferential treatment of BlackRock proprietary funds;

   b.  Failing to adequately consider and advise against the conflict of interests of the Investment Committee and Retirement Committee when advising them regarding BlackRock proprietary funds for the Plan menu;

   c.  Failing to adequately consider and advise against the excessive fees and expenses of the BlackRock proprietary CTIs, including but not limited to the securities lending fees and the fees embedded in the layered fund structure of the CTIs;

   d.  Failing to monitor the investments underlying each of the BlackRock proprietary funds including the maze of master-feeder funds which were fed by each BlackRock proprietary fund in the BlackRock Plan; and

   e.  Failing to recommend a diversified set of investment managers, and thereby diversify the assets of the Plan, in order to avoid unnecessary and unlawful operational and manager concentration risk.

543.    As a direct and proximate result of the above breaches of fiduciary duties, the BlackRock Plan and its participants have lost hundreds of millions of dollars in retirement assets, for Mercer which is jointly and severally liable with its co-fiduciaries.

544.    Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring Mercer to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

**ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3)**

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

545.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a fiduciary with respect to a plan from receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of that plan.

546.     By providing investment advice that facilitated the Retirement Committee and Investment Committee Defendants' imprudent and disloyal preferential treatment of BlackRock proprietary funds for the BlackRock Plan, and receiving compensation for such services from BlackRock, Inc., Defendant Mercer violated its fiduciary duties under ERISA by receiving consideration for its own personal account from parties dealing with the BlackRock Plan in connection with a transaction involving the assets of the BlackRock Plan, in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

547.     Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring Mercer as a fiduciary to the BlackRock Plan to restore all losses to the BlackRock Plan caused by its violations of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) throughout the class period, to disgorge to the Plan all ill-gotten gains it received from the repeated violations of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

548.     Specifically, the Plan is entitled to an accounting for profits from Mercer. To the extent that Mercer made further profits as a result of its use of the ill-gotten fees, the Plan is entitled to recover those profits.

## **Count V**
Breach of Fiduciary Duties for Failing to Prudently and Loyally Disclose the Fees for the Investments for the Plan in Violation of ERISA § 404, 29 U.S.C. § 1104
(BlackRock Plan Class Against Administrative Committee Defendants)

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

549. Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

550. At all relevant times, the Administrative Committee Defendants were fiduciaries within the meaning of ERISA § 3(21)(A)(iii) 29 U.S.C. § 1002(21)(A)(iii) because they exercised discretionary authority over the management of the BlackRock Plan.

551. As fiduciaries, they had a duty to act solely in the interest of the participants and beneficiaries of the Plan they served and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A).

552. The Administrative Committee Defendants were required to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," in accordance with ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

553. These fiduciary duties include being truthful and accurate in communications with Plan participants.

554. The Administrative Committee Defendants violated their duties under ERISA 404(a)(1)(A) and (B) because they failed to provide proper, complete, and accurate disclosures as required by applicable regulations, 29 C.F.R. §§ 2550.404a-5(a), 2550.404a-5(d)(1)(iv)(A)(2), and 2550.404a-5(h)(5)(ii)(C).

555. As a direct and proximate result of the above breaches of fiduciary duties, the BlackRock Plan and its participants have suffered significant losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

556.     Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

### Count VI
Failure to Monitor Other Fiduciaries in Violation of ERISA §404, 29 U.S.C. § 1104
(BlackRock Plan Class Against Retirement Committee Defendants, Investment Committee Defendants, BlackRock and the MDCC)

557.     Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

558.     As alleged above, the Retirement Committee Defendants, Investment Committee Defendants, and BlackRock and the MDCC (collectively, "the Monitoring Fiduciaries") were and continue to be Plan fiduciaries under ERISA § 3(21), 29 U.S.C. § 1002(21).

559.     Under ERISA, a fiduciary charged in a plan document with the authority to select and remove other fiduciaries has an ongoing duty to monitor the performance of such other fiduciaries at reasonable intervals to ensure that their performance has been in compliance with statutory standards.

560.     The Monitoring Fiduciaries had a duty to ensure that their appointees were at all times acting in conformance with ERISA's fiduciary standards set forth at ERISA § 404(a)(l)(A)-(D), 29 U.S.C. § 1104(a)(l)(A)-(D).

561.     The Monitoring Fiduciaries breached the fiduciary duties listed above by, *inter alia*, failing to monitor their appointees, failing to monitor their appointees' fiduciary process, failing to ensure that the monitored fiduciaries considered the ready availability of comparable non-proprietary fund options to a plan of the size of the BlackRock Plan, failing to monitor BTC as the securities lending agent, failing to monitor the Plan's investments in the BlackRock CTIs and avoid Plan participants paying excessive fees including securities lending fees, failing to monitor the investment

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

of the BlackRock CTIs' cash collateral and restoring losses caused by fiduciary breaches by BTC therein, and failing to remove appointees who made imprudent and disloyal decisions about the investment of Plan assets.

562.     The MDCC and the Retirement Committee Defendants failed to properly monitor the Administrative Committee Defendants to ensure that the participant disclosures they prepared and disseminated were truthful and accurate in accordance with ERISA's duty of loyalty and prudence and DOL's Disclosure Regulations, 29 C.F.R. §§ 2550.404a-5(a), 2550.404a-5(d)(1)(iv)(A)(2), and 2550.404a-5(h)(5)(ii)(C)).

563.     As a direct and proximate result of the above breaches of fiduciary duties, the Plan and its participants have suffered hundreds of millions of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

564.     Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## **Count VII**
Co-Fiduciary Liability, Violation of ERISA § 405, 29 U.S.C. § 1105
(BlackRock Plan Class Against BlackRock, BTC, the MDCC, Retirement Committee Defendants, Investment Committee Defendants, Administrative Committee Defendants, and Mercer)

565.     Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

566.     Section 405 of ERISA, 29 U.S.C. § 1105 imposes co-fiduciary liability, in addition to any other liability a fiduciary may have under any other provision of ERISA.   Specifically, Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1) imposes liability for the knowing participation in a breach of fiduciary duty by a co-fiduciary.   Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2),

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

imposes liability if a fiduciary, in the administration of his fiduciary responsibilities, enables another fiduciary to commit a breach.  Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3), imposes liability on a fiduciary if he knows of a breach by a co-fiduciary and fails to make reasonable efforts to remedy it.

567.  As alleged above, BTC enabled and was a knowing participant in the seeding of new BlackRock CTFs with Plan assets █████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████

568.  As alleged above, BlackRock, Inc. knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. Defendant BlackRock is therefore liable as a co-fiduciary because it was aware of, participated in, enabled, concealed, and failed to remedy the Committee Defendants', Mercer's, the MDCC's and BTC's breaches of fiduciary duty and the many prohibited transactions committed during the Class Period related to the Plan's selection of, and failure to remove, the BlackRock proprietary funds from the Plan.

569.  As alleged above, the MDCC knew or should have known that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. Defendant MDCC is therefore liable as a co-fiduciary because it was aware of, participated in, enabled, concealed, and failed to remedy BlackRock's, the Committee Defendants', Mercer's, and BTC's breaches of fiduciary duty and the many prohibited transactions committed during the Class Period related to the Plan's selection of, and failure to remove, the BlackRock proprietary funds from the Plan.

570.  As alleged above, the Retirement Committee Defendants knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. The

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

Retirement Committee Defendants are all liable as co-fiduciaries because they were aware of, participated in, enabled, concealed, and failed to remedy BlackRock's, the Investment Committee Defendants', Administrative Committee Defendants', Mercer's, the MDCC's and BTC's breaches of fiduciary duty and the many prohibited transactions committed during the Class Period, related to the selection of, and failure to remove, the BlackRock proprietary funds from the BlackRock Plan.

571. As alleged above, the Investment Committee Defendants knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. The Investment Committee Defendants are all liable as co-fiduciaries because they were aware of, participated in, enabled, and failed to remedy BlackRock's, the Retirement Committee Defendants', Administrative Committee Defendants', the MDCC's, Mercer's, and BTC's breaches of fiduciary duty and the many prohibited transactions committed during the Class Period, related to the selection of, and failure to remove, the BlackRock proprietary funds from the BlackRock Plan.

572. As alleged above, Defendant BTC knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. BTC is liable as a co-fiduciary because it was aware of, participated in, enabled, and failed to remedy BlackRock's, and the Retirement Committee Defendants', Administrative Committee Defendants' and Investment Committee Defendants' breaches of fiduciary duty and the many prohibited transactions committed during the Class Period, related to the selection of, and failure to remove, the BlackRock proprietary funds from the BlackRock Plan.

573. As alleged above, the Administrative Committee Defendants knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. The Administrative Committee Defendants are all liable as co-fiduciaries because they were aware of, participated in, enabled, and failed to remedy the Retirement Committee Defendants', the Investment

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

Committee Defendants, Mercer's, the MDCC's and BTC's breaches of fiduciary duty and the many prohibited transactions committed during the Class Period, related to the selection of, and failure to remove, the BlackRock proprietary funds from the BlackRock Plan.

574.    As alleged above, Mercer knew that the BlackRock proprietary funds were given preferential treatment for inclusion in the BlackRock Plan. Mercer is liable as a co-fiduciary because it was aware of, participated in, enabled, and failed to remedy BlackRock's, and the Retirement Committee Defendants' and Investment Committee Defendants' breaches of fiduciary duty and the many prohibited transactions committed during the Class Period, related to the selection of, and failure to remove, the BlackRock proprietary funds from the BlackRock Plan.

575.    As a direct and proximate result of the above breaches of fiduciary duties, the Plan and its participants have suffered hundreds of millions of losses in retirement assets, for which all Defendants named in this Count are jointly and severally liable.

576.    Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

**Count VIII**
Violations of ERISA § 404, 29 U.S.C. § 1104 Relating to the Management of the BlackRock CTIs
(CTI Class Against BTC and BlackRock)

577.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

578.    As alleged in more detail above, each of the BlackRock CTIs holds ERISA plan assets. The investment of the plan assets in the BlackRock CTIs are thus governed by ERISA, including

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

ERISA's fiduciary duties of prudence and loyalty, and all applicable regulations. *See* ERISA §§ 404(a)(l)(A)-(C); 29 U.S.C. §§ 1104(a)(l)(A)-(C).

579.    At all relevant times, BTC was a fiduciary to each of the CTI Plans because those plans directly or indirectly invest in the BlackRock CTIs within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because it managed and/or manages the assets of each BlackRock CTI and thus exercised and/or exercises authority or control over the assets of each of the CTI Plans.

580.    At all relevant times, BlackRock was a fiduciary to each of the CTI Plans within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) through BlackRock's control of its subsidiary BTC, who controls the management and disposition of the ERISA-governed plan assets held in the BlackRock CTIs.

581.    Additionally, many of the employees of BTC who carried out the actions to control and manage the BlackRock CTIs' assets were/are dual employees of both BlackRock and BTC.

582.    BTC and BlackRock have a duty to act solely in the interest of the participants and beneficiaries of the CTI Plans and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan" in accordance with ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A). This duty includes avoiding conflicts of interest.

583.    BTC and BlackRock have the duty to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," in accordance with ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). This includes the ongoing duty to monitor the investments and assets of the BlackRock CTIs.

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

584.  BTC was required to diversify the investments of the BlackRock CTIs to minimize the risk of large losses unless it was clearly prudent not to do so in accordance with ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C).

585.  BTC was required to ensure that the terms of all plan documents governing the BlackRock CTIs (including the CTI Plan Document and the STIF Guidelines) were followed unless it was clearly imprudent to do so, in accordance with ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

586.  As set forth in detail above, BTC breached its above stated fiduciary duties by, inter alia:

(i)  self-servingly giving itself and its subsidiaries preferential treatment with respect to receiving compensation paid by the BlackRock CTIs, including but not limited to securities lending compensation and fees paid to BTC for investing securities lending collateral in the BTC managed STIFs.

(j)  failing to exercise its full discretionary authority over the BlackRock CTIs to re-evaluate and consider outside lending agents who would provide securities lending services for lesser fees and/or obtain a more favorable securities lending split for the BlackRock CTIs (i.e. payment of lower non-excessive securities lending fee);

(k)  failing to exercise its full discretionary authority over the BlackRock CTIs to consider STIFs not affiliated with Blackrock for the investment of securities lending cash collateral;

(l)  failing to invest and monitor the cash collateral of the BlackRock CTIs prudently, loyally, and in conformance with the CTI Plan Documents and STIF Guidelines;

(m)  failing to invest and monitor the investments of CEF II and CEF B prudently, loyally and in conformance with the CTI Plan Documents and STIF Guidelines; and

(n)  failing to disclose and account to participants for the losses to principal on investments of ████████

(o)  failing to follow the requirements of the CTI Plan Document with respect to fees, expenses or compensation paid from the assets of the BlackRock CTIs and the BlackRock STIFs (including ████████

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

587.    BlackRock breached its fiduciary duties to CTI Class, to the extent BlackRock or its employees acted on BTC's behalf or controlled BTC's actions with respect to any of the facts alleged above, including but not limited the allegations in the preceding paragraph.

588.    As a direct and proximate result of these breaches of fiduciary duties, the participants in the CTI Class have suffered hundreds of millions of dollars in lost retirement assets, for which BTC and BlackRock are jointly and severally liable.

589.    Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock CTIs and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief to Plaintiffs that is just and proper.

## Count IX
### Violations of ERISA § 406 Relating to the Management of the BlackRock CTIs
### (CTI Class Against BTC and BlackRock)

590.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

591.    As alleged above, each of the BlackRock CTIs holds ERISA plan assets and thus governed by ERISA, including ERISA's prohibited transaction rules and all applicable regulations. *See* ERISA §§ 406(a)(1)(C) & (D), 406(b)(1); 29 U.S.C. §§ 1106(a)(1)(C) & (D), 1106(b)(1).

592.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibits the "furnishing of goods, services, or facilities between the plan and a party in interest."

593.    Every time BTC provided services to BlackRock CTIs, such as execution services, brokerage services, research services, securities lending services or other services for the BlackRock CTIs, it acted as a party in interest furnishing services to the CTI Plans, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

594.     Every time BlackRock provided services to the BlackRock CTIs, such as brokerage services, research services, BlackRock acted as a party in interest furnishing services to the CTI Plans in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).

595.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits transactions that constitute direct or indirect transfers of the BlackRock CTIs' plan assets to parties in interest and prohibits fiduciaries from causing such prohibited transactions.

596.     By virtue of its management and/or control over the BlackRock CTI assets, BTC caused the payment of indirect or direct fees from the BlackRock CTIs' assets to BTC or BlackRock for services, including but not limited to the fees paid to BTC for investing securities lending collateral in the BTC managed STIFs and the 50% revenue split BTC took from the securities lending income of the BlackRock CTIs.

597.     Through its control over the BlackRock CTIs, BTC caused multiple and repeated payments of indirect or direct fees, as set forth in the preceding paragraph, each of which constituted a separate prohibited transfer of the BlackRock CTIs' plan assets to parties in interest (including BTC and BlackRock), in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

598.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."

599.     Thorough its management and control over the BlackRock CTIs and the assets held therein, BTC dealt with those assets in its own interest by paying itself fees including securities lending fees from the assets of the BlackRock CTIs. The repeated payment of fees to itself from the assets of the BlackRock CTIs violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

600.     By virtue of its position as a fiduciary to the CTI Plans, BTC made decisions regarding the selection and maintenance of itself and its subsidiaries for various services provided to the

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

BlackRock CTIs such as securities lending services and the selection of BTC funds (such as the STIF investments) for the investment of the cash collateral of the BlackRock CTIs in ways that benefitted BTC or BTC's corporate parent BlackRock, Inc.  These actions violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

601.    BTC and BlackRock received direct and indirect fees and other compensation from BTC acting as securities lending agent to the BlackRock CTIs and using BTC managed funds (such as the BTC STIFs) to hold the plan assets of the BlackRock CTIs.  These actions violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

602.    To the extent BlackRock or its employees acted on BTC's behalf or controlled BTC's actions which caused the violations of ERISA § 406, 29 U.S.C. § 1106, alleged in this Count, BlackRock is liable as a fiduciary for causing the violations of ERISA § 406, 29 U.S.C. § 1106 alleged herein.

603.    As a result of the violations of ERISA § 406, 29 U.S.C. § 1106, alleged in this Count, the BlackRock CTIs and the participants whose individual retirement accounts were invested in them suffered hundreds of millions of dollars in losses, for which all Defendants named in this Count are jointly and severally liable.

604.    Under ERISA § 502(a)(2) and § 409, 29 U.S.C. § 1132(a)(2) and § 1109, Plaintiffs seek an order requiring the Defendants named in this Count to restore all losses to the BlackRock Plan and to disgorge any ill-gotten profits caused by their violations of ERISA § 404, 29 U.S.C. § 1104 and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

605.    Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), BTC and BlackRock are liable as parties-in-interest to disgorge to the Plan the ill-gotten profits and/or assets they received as a result the violations of ERISA § 406, 29 U.S.C. § 1106 set forth in this count, including but not limited to

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

securities lending related fees, and the BlackRock CTIs are entitled to equitable restitution, surcharge, an accounting for profits from BTC and BlackRock, equitable lien on the ill-gotten profits, and any other relief set forth in the Prayer for Relief or that is just and proper.

606.    BTC and BlackRock at the very least knowingly participated in or enabled the violations of ERISA § 406, 29 U.S.C. § 1106, and failed to make any reasonable effort under the circumstances to remedy the violations.

607.    These ill-gotten fees can be traced to particular funds in BTC's and BlackRock's possession, as Plaintiffs can identify the flow of fees from the Plan to BlackRock and BTC during the Class Period through access to financial documents, including audited financial statements and statements of cash flow.

608.    Accountants have prepared detailed statements that will allow Plaintiffs to determine what income was generated by BlackRock from the securities lending services provided by BTC to the BlackRock CTIs.

609.    These ill-gotten fees have not been dissipated by BlackRock's or BTC's purchase of untraceable items, but rather have remained in BlackRock's and BTC's accounts.

610.    At all times, BlackRock, by virtue of the fact that it is the Plan sponsor and a recipient of the ill-gotten fees, had actual or constructive knowledge of each of these prohibited transactions.

611.    At all times, BTC, by virtue of the fact that it is a subsidiary of the Plan sponsor and a recipient of the ill-gotten fees, had actual or constructive knowledge of each of these prohibited transactions.

612.    To the extent that BTC and BlackRock made further profits as a result of their prohibited use of the Plan's assets, the participants are entitled to disgorge those profits.

## **Count X**

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

Co-Fiduciary Liability Under ERISA § 405, 29 U.S.C. § 1105 Relating to Mismanagement of
BlackRock CTIs as alleged in Counts VIII and IX
(CTI Class Against BTC and BlackRock)

613.    Plaintiffs restate and incorporate the allegations of the preceding paragraphs as if set forth fully herein.

614.    Section 405 of ERISA, 29 U.S.C. § 1105 imposes co-fiduciary liability, in addition to any other liability a fiduciary may have under any other provision of ERISA.  Specifically, Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1) imposes liability for the knowing participation in a breach of fiduciary duty by a co-fiduciary.  Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2), imposes liability if a fiduciary, in the administration of his fiduciary responsibilities, enables another fiduciary to commit a breach.  Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3), imposes liability on a fiduciary if he knows of a breach by a co-fiduciary and fails to make reasonable efforts to remedy it.

615.    If someone other than BTC or BlackRock determined, negotiated or exercised discretion with respect to the BTC's securities lending revenue fees and/or the investment management fees BTC was paid for managing the funds into which the collateral was invested (cash management fees), then BTC and BlackRock are nonetheless liable as co-fiduciaries for the excessive securities lending revenue fees and for the excessive cash management fees because:

1)  under Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1) BTC and/or BlackRock knowingly participated in the fiduciary breach committed by the fiduciaries who agreed to pay an excessive 50% fee because BTC and/or BlackRock set all the terms upon which an investing plan could invest in the CTIs as reflected in BTC's own document, 16 Things, which states that the default revenue split is 50%;

2)  under Section 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2), BTC and/or BlackRock enabled the fiduciary breach from the payment of excessive fees by setting all the terms upon which an investing plan could invest in the CTIs as reflected in BTC's own document, 16 Things;

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

3) under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3), BTC and BlackRock knew the amount BTC was paid for securities lending services (50%), and BTC could have accepted less given that it charges the BlackRock mutual fund investors significantly less than 50% for securities lending services.

616.    If someone other than BTC or BlackRock selected the funds into which the cash collateral belonging to the BlackRock CTIs was invested, namely ████████ or other BTC managed STIFs, then BTC is nonetheless liable as a co-fiduciary under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3) for the losses caused to the BlackRock CTIs from ████████ or other BTC managed STIFs because BTC knew the investments of the STIFs had suffered significant realized and unrealized losses and that the funds should have broken the buck[18] but for BTC's practice of withholding investment income to offset losses on the toxic investments.

617.    BTC could have remedied the breach by either restoring the losses to the STIFs caused by the improper investments or by not accepting new investors when there were such severe asset impairments in the portfolios of the STIFs.

618.    BlackRock could have remedied the breach by either restoring the losses to the STIFs caused by the improper investments or by causing BTC to refrain from accepting new investors when there were such severe asset impairments in the portfolios of the STIFs, given BlackRock's control over BTC.

619.    If someone other than BTC or BlackRock selected the funds into which the cash collateral belonging to the BlackRock CTIs was invested, namely ████████ or other BTC

---

[18] STIFs like ████████ are assigned a "net asset value per unit" or "NAV per unit." NAV per unit is measured by dividing the value of a STIF's net assets by the number of outstanding shares or units of the STIF. Typically, a STIF issues one unit for every dollar invested into it. For this reason, and because STIFs are supposed to be safe-haven investments, STIFs are generally sold and purchased at a stable value of $1 per unit ("one buck"). However, when a STIF losses money invested into it, there will be fewer net assets than units outstanding, such that the NAV per unit drops below $1. This is referred to as "breaking the buck."

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

managed STIFs, then BlackRock is also liable as a co-fiduciary under Section 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3) for the losses caused to the BlackRock CTIs from ▮▮▮▮▮▮▮ or other BTC managed STIFs because BlackRock knew the investments of the STIFs had suffered significant realized and unrealized losses and that the funds should have broken the buck but for BTC's practice of withholding investment income to offset losses on the toxic investments.  BlackRock knew all of these facts because most if not all of the individuals who had knowledge  of the facts regarding ▮▮ ▮▮▮▮▮▮ were BlackRock employees or dual-hatted Blackrock and BTC employees.

## VII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of the Plan and the BlackRock Plan Class, respectfully request that the Court award the following relief for Counts I through VII:

    a.   Declare that the Defendants have breached their fiduciary duties to the BlackRock Plan Class in the manner described herein;

    b.   Order each fiduciary found to have breached his/her/its fiduciary duty to the Plan to jointly and severally pay such amount or surcharge to the Plan as is necessary to make the Plan whole for any losses which resulted from said breaches or by virtue of liability pursuant to ERISA § 405, 29 U.S.C. § 1105, plus pre-judgment and post-judgment interest;

    c.   Order any fiduciaries or parties in interest to the Plan, including but not limited to BTC, BlackRock, the Retirement, Investment and Administrative Committee Defendants, MDCC and Mercer, to disgorge and pay to Plan participants any revenue or profits obtained from violations of ERISA § 404, 406 or 405, 29 U.S.C. § 1104, 1106, or 1105;

    d.   Equitable liens on all ill-gotten profits obtained by party in interest defendants named above;

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

e. Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the Plan under ERISA § 409(a), 29 U.S.C. § 1109(a), to restore losses and to disgorge any profits fiduciaries obtained from the use of plan assets or other violations of ERISA § 404, 406 or 405, 29 U.S.C. § 1104, 1106, or 1105;

f. To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the Plan and its participants and beneficiaries. This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA;

g. Issue an injunction removing the fiduciaries who have breached their fiduciary duties in their roles as fiduciaries for the Plan, and an order appointing an independent fiduciary to manage the assets of the Plan;

h. Issue an injunction preventing any defendant named herein that is found liable for fiduciary breach or violations of ERISA from acting as a fiduciary of retirement or employee benefit plan.

i. Issue an injunction requiring all fiduciaries to avoid all prohibited transactions and future ERISA violations, including but not limited to removing all BlackRock affiliated funds from the Plan;

j. Certify the BlackRock Plan Class, appoint Plaintiffs as class representatives, and appoint Cohen Milstein and Feinberg, Jackson as Class Counsel;

Plaintiffs, on behalf of the BlackRock CTIs and the CTI Class, respectfully request that the Court the following relief for Counts VIII-X:

LAW OFFICES OF
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
COHEN MILSTEIN SELLERS & TOLL PLLC.
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

a.  Declare that BTC and/or BlackRock has breached its fiduciary duties to the CTI Class in the manner described herein;

b.  Order BTC and/or BlackRock to pay such amount or surcharge to the BlackRock CTIs, the CTI Class and/or the CTI Plans as necessary to make the CTI Class whole for any losses which resulted from above alleged breaches or by virtue of liability pursuant to ERISA § 405, 29 U.S.C. § 1105, plus pre-judgement and post-judgment interest;

c.  Order BTC and/or BlackRock to provide all accountings necessary to determine the amounts Defendants must remit to the CTI Class under ERISA § 409, 29 U.S.C. § 1109(a), to restore losses and to disgorge any profits fiduciaries obtained from the use of plan assets held in the BlackRock CTIs or other violations of ERISA § 404, 406 or 406, 29 U.S.C. § 1104, 1106, or 1105;

d.  Order any fiduciaries or parties in interest to the CTI Plans or CTI Class, including but not limited to BTC and BlackRock, to disgorge and pay to BlackRock CTI or CTI Class participants directly, any revenue or profits obtained from violations of ERISA § 404, 406 or 405, 29 U.S.C. § 1104, 1106, or 1105;

e.  To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to BTC or BlackRock in violation of ERISA shall be placed for the sole benefit of the CTI Class. This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to BTC or BlackRock as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA.

f.  Equitable liens on all ill-gotten profits obtained by parties in interest defendants named above;

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC 20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

g.  Issue an injunction removing BTC from its role as a fiduciary to plan assets held in the BlackRock CTIs, and appointing an independent fiduciary to manage the plan assets held in the BlackRock CTIs;

h.  Issue an injunction preventing any defendant named herein that is found liable for fiduciary breach or violations of ERISA from acting as a fiduciary of retirement or employee benefit plan.

i.  Issue an injunction requiring BTC and/or BlackRock to avoid all prohibited transactions and future ERISA violations with respect to the management of the plan assets held in the BlackRock CTIs;

j.  Certify the CTI Class, appoint Plaintiffs as class representatives of the CTI Class, and appoint Cohen Milstein and Feinberg, Jackson as Class Counsel for the CTI Class;

Plaintiffs, on behalf of the BlackRock Plan Class and the CTI Class, respectfully request that the Court the following relief for all Counts:

a.  Award to the Plaintiffs and the BlackRock Plan Class and the CTI Class their attorneys' fees and costs under ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1), and/or the common fund doctrine;

b.  Order the payment of interest to the extent it is allowed by law; and

c.  Order other equitable or remedial relief as the Court deems appropriate.

Dated:  July 13, 2018                    **FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**

                                          /s/ Nina Wasow
                                         Nina Wasow (Cal. Bar No. 242047)
                                         Todd Jackson (Cal. Bar No. 202598)
                                         2030  Addison Street
                                         Suite 500
                                         Berkeley, CA 94704
                                         Tel: (510) 269-7998

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699

REDACTED VERSION OF SEALED DOCUMENTS

Fax: (510) 269-7994
nina@feinbergjackson.com
todd@feinbergjackson.com

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Karen L. Handorf (*Admitted Pro Hac Vice*)
Michelle C. Yau (*Admitted Pro Hac Vice*)
1100 New York Avenue, N.W. Suite 500
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
myau@cohenmilstein.com

***Counsel for Plaintiffs***

LAW OFFICES OF
**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
2030 Addison Street, Suite 500
BERKELEY, CA 94704
TELEPHONE: (510) 269-7998
FACSIMILE: (510) 269-7994

LAW OFFICES OF
**COHEN MILSTEIN SELLERS & TOLL PLLC.**
1100 New York Avenue, N.W. Suite 500
WASHINGTON, DC  20005
TELEPHONE: (202) 408-4600
FACSIMILE: (202) 408-4699