MORGAN, LEWIS & BOCKIUS LLP
Spencer H. Wan (CA Bar No. 304329)
  spencer.wan@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:    415.442.1126; Fax:    415.442.1001

Brian T. Ortelere (*pro hac vice*)
  brian.ortelere@morganlewis.com
1701 Market Street
Philadelphia, PA  19103-2921
Tel:    215.963.5000; Fax:    215.963.5001

Matthew A. Russell (*pro hac vice*)
  matthew.russell@morganlewis.com
77 West Wacker Drive
Chicago, IL 60601
Tel:    312.324.1771; Fax:    312.324.1001

Attorneys for Defendant
Mercer Investment Consulting

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Charles Baird, et. al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BlackRock Institutional Trust Co., N.A., et al.,<br><br>    Defendants. | Case No. 4:17-cv-01892-HSG<br><br>**STIPULATION AND ~~(PROPOSED)~~ ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Charles Baird and Lauren Slayton, and Defendant Mercer Investment

Consulting ("Mercer") (collectively referred to herein as the "Parties"), HEREBY STIPULATE

AND AGREE, by and through their undersigned counsel, that the following specifications shall

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

**I.     General**

A.     The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.     This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

C.     To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

1.     Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.

2.     This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

3.     Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a binding Stipulated Protective Order filed with the Court ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the

2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

STIPULATION AND (~~PROPOSED~~) ORDER
REGARDING DISCOVERY OF ESI

attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

4.　The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5.　Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.　**Production Format – Hardcopy**

Hardcopy documents should be produced as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES," "CUSTODIAN," and "FULLTEXT." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color (including but not limited to documents that have charts, graphs, graphics other than in the header or footer of the document, redline changes from more than one person, and/or highlighting), the document should be produced as single-page, 300 DPI with a minimum

3

quality level of 75, 24-bit, color JPG images. OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**III.    Production Format – Electronically Stored Information**

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet- and database-type files, including, but not limited to, Microsoft Excel, CSV, PowerPoint and similar files, and Access/database files – which should be produced in native format.

To the extent that a party obtains through discovery a non-redacted file or document that it believes is not adequately represented in an image file format, the receiving party may request that files or documents by Bates number be produced as a Native File, the production of which may not unreasonably be withheld and thus produced within fourteen (14) days of the request unless the volume is too large at which time the producing party will notify the requesting party of the necessary turn-around time to complete the request.  However, for requests for all files of a certain type, from a certain custodian, or from a certain time period, the parties shall meet and confer regarding such request before the native files are produced.  If a producing party wishes to designate a Native File "Confidential" it shall do so by producing the Native File on media that is labeled "Confidential" or by branding the placeholder TIFF image.  If a producing party wishes to redact material from a file that it would otherwise produce as a Native File, it shall do so by converting that file to a TIFF image and producing it in redacted form along with OCR text that reflects such redactions, or if such conversion renders or will render the document reasonably unusable, by producing the file in such other reasonably usable form as may be agreed upon by the respective parties, including, but not limited to native file redaction.

All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist, is not reasonably accessible or available

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

for any documents produced, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data. If the Parties agree, certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with Section II. An .opt image cross-reference file should also be provided for all TIFF images.

To the extent a document is not produced natively, the TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line; PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image; and Word documents should reflect all "track changes" and comment bubbles present in the document. Color originals may be produced in B&W TIFF format, but the receiving party may subsequently request, by Bates number(s), a replacement set of images in color. When such request is made by the receiving party, the production of images in color when may not unreasonably be withheld and thus the producing party must re-produce the color images within fourteen (14) days of the request, unless the volume is too large at which time the producing party will notify the requesting party of the necessary turn-around time to complete the request. However categorical or wholesale requests are deemed invalid.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents

5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

## IV.     Previously Collected and Produced Data

The Parties agree that there is no obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation.  This includes not requiring either party to reproduce productions in the production format outlined in this ESI Stipulation.

## V.      Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents

In an effort to avoid unnecessary expense and burden, the parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive.  For all attachments withheld as non-responsive, the producing party agrees to produce as part of the metadata load files the ESI metadata listed in Appendix A (with the exception of text).  To the extent that the receiving party, acting in good faith after a reasonable review of the produced documents and withheld attachments, believes that the attachments withheld are in fact responsive, the receiving party may make a narrowly-tailored request for a non-excessive set of such documents, the production of which must be produced within fourteen (14) days of the request unless the producing party provides to the requesting party the basis for withholding each specific document selected as non-responsive within fourteen (14) days of the request.

When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

## VI. Production Format – Social Media

ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive

## VII. Production Format - Media

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter. Any document production that may contain "non-public personal information" (as defined in the Gramm-Leach-Bliley Act) or "Confidential Health Information" (as defined in the Protective Order that is protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., pts. 160 and 164, and/or other applicable state or federal law or regulation concerning confidential health information) shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## VIII. Processing and Other Specifications

A. <u>On-Site Inspections</u>: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

B.    <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document.  Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

C.    <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a consistent Time Zone for all data.  The Party shall share the Time Zone selected for processing of its data with the other Party.

D.    <u>Global or Horizontal Deduplication</u>:  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

E.    <u>Email Thread Suppression</u>:  Each Party may also deduplicate e-mails in such a way as to eliminate earlier e-mails, and produce only the most complete iteration of an e-mail chain. However, any de-duplication tool used by a party must ensure that an e-mail will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more representative e-mail. The producing party will be using Brainspace's email thread suppression tool and workflow.

8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

F.    <u>Embedded Objects</u>:  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

G.    <u>Compressed Files</u>:  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

H.    <u>Redactions:</u>  The producing party can redact documents for privilege, personally identifiable information, and the names of Mercer clients other than BlackRock and/or the BlackRock Plan, as well other information that would render the client easily identifiable (such as, for example, employer identification numbers or email addresses, to the extent they contain the client's name).  If, during the course of discovery, the parties identify other kinds of information that any party has a reasonable basis for redacting, the parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the parties will seek resolution from the Court.

I.    <u>No Designation of Discovery Requests</u>:  Production of hard copy documents and ESI in the reasonably usable form set out in this Stipulation need not include any reference to the requests to which a document or ESI may be responsive.

J.    <u>Foreign Language Documents</u>: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

## IX. Identification and Collection of Documents

A. Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1. List of records custodians;

2. Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

3. Location of relevant data sources including custodial and non-custodial.

B. Search Methodology:

1. Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.

2. The Producing Party will run the initial search strings identified by the parties against the identified data sources and provide the requesting party with counts for number of hits yielded by each search string. After reviewing the search string hit report, the requesting party may propose to the producing party for its consideration additional search strings to be run based on the results received thus far. So long as the requesting party demonstrates that the additional proposed search strings is likely to return additional relevant information, the producing party will provide the requesting party with counts for the number of hits yielded by each of the requesting party's search string. The parties will then meet and confer to discuss the hit reports and to determine whether additional review of documents is likely to return additional relevant information.

3. The parties envision an iterative process whereby the parties evaluate the results of initial searches and, in good faith, tailor the use of search strings so as to effectively identify potentially responsive material and avoid the false identification of material which is not responsive. The producing party will identify to the requesting party any material changes to the

10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

search string lists. If the requesting party objects to the changes and proposes any modification of its own, the parties will meet and confer regarding the requesting party's proposal. If the parties cannot reach an agreement regarding the requesting party's proposed search terms or additional search terms, either party may present the dispute to Magistrate Judge Westmore pursuant to her dispute resolution procedures.

4. The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party, which shall make such determinations in accordance with its obligations under the Federal Rules of Civil Procedure.

**X. Preservation**

A. The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B. The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The Parties agree that the following ESI is not reasonably accessible:

1. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

2.     Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

3.     Data stored on photocopiers, scanners and fax machines.

4.     Server, system or network logs.

5.     Logs of calls made from cellular or land-line phones.

6.     Legacy data or data remaining from systems no longer in use so long as the legacy data is unintelligible on the systems in use.

7.     Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

## XI.     Privilege and Privilege Logs

A.     The Parties agree that they need not initially exchange the text of litigation hold/retention instructions issued in this litigation.

B.     The parties agree that certain privileged communications or documents (excluding those subject to the fiduciary exception to the attorney-client privilege, if any exist) need not be included in a privilege log: (a) any privileged communications or documents involving trial counsel for Mercer that post-date the filing of the complaint, (b) any internal communications within a law firm, and (c) any communications regarding litigation holds or preservation, collection, or review in this or any Litigation.

C.     In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document (except those exempted above) claimed as privileged, an export of all or a subset of the metadata fields listed below (as agreed upon by the Parties) to the extent such information exists and has not been suppressed or redacted for privilege.  The summary log of documents redacted or withheld from production shall be

12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

provided by the Producing Party within fourteen (14) days of substantially completing its

productions. The export should include the following information from the top line email:

- BEGNO (if not produced) or BEGBATES (if produced)
- ENDNO (if not produced) or ENDBATES (if produced)
- BEGATTACH (if not produced) or BEGBATESATTACH (if produced)
- ENDATTACH (if not produced) or ENDBATESATTACH (if produced)
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- AUTHOR
- CREATEDDATE
- MD5 HASH
- PRIV_TYPE

D.      If the requesting party requires further information, it shall explain in writing the

need for such information and identify, by Bates number or other unique identifier, each

document for which it seeks this information.  Within fourteen (14) days of such a request, the

Producing Party must provide the requested information.

## XII.    Production of Privileged or Otherwise Protected Material

A.      No Waiver by Disclosure.  This order is entered pursuant to Rule 502(d) of the

Federal Rules of Evidence.  Subject to the provisions of this Order, if a party or subpoenaed

nonparty (the "Disclosing Party") discloses information in connection with the pending litigation

that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client

privilege or work product protection ("Protected Information"), the disclosure of that Protected

Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal

or state action – of any claim of privilege or work product protection that the Disclosing Party

13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

B.  Notification Requirements; Best Efforts of Receiving Party.  A Disclosing Party must promptly notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure.  Upon such notification, the Receiving Party must – unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Protected Information and any reasonably accessible copies it has and (ii) provide a certification that it will cease further review, dissemination, and use of the Protected Information.  Within five business days of receipt of the notification from the Receiving Party, the Disclosing Party must explain as specifically as possible why the Protected Information is privileged.

C.  Contesting Claim of Privilege or Work Product Protection.  If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must – within seven business days of receipt of the notice of disclosure – move the Court for an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure.  Pending resolution of the Disclosure Motion, the Receiving Party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

D.  Stipulated Time Periods.  The parties may stipulate to extend the time periods set forth in paragraphs (b) and (c).

E.  Attorney's Ethical Responsibilities.  Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows

14

or reasonably should know to be privileged and to inform the Disclosing Party that such materials have been produced.

F. Burden of Proving Privilege or Work-Product Protection. The Disclosing Party retains the burden – upon challenge pursuant to paragraph (c) – of establishing the privileged or protected nature of the Protected Information.

G. *In camera* Review. Nothing in this Order limits the right of any party to petition the Court for an *in camera* review of the Protected Information.

H. Voluntary and Subject Matter Waiver. This Order does not preclude a party from voluntarily waiving the attorney-client privilege or work product protection. The provisions of Federal Rule of Evidence 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

I. Review. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for responsiveness and/or segregation of privileged and/or protected information before production. Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete their review should they choose to do so.

J. Proportionality. Nothing contained herein is intended to limit a party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for responsiveness and/or segregation of privileged and/or protected information before production.

K. Rule 502(b)(2). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order.

## XIII. Discovery Liaisons

Each party shall designate one or more individuals as Designated ESI Liaison(s) for purposes of meeting and conferring with the other parties and of attending Court hearings on the subject of relevant ESI. The Designated ESI Liaison shall be reasonably prepared to speak about

15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

and explain the party's relevant electronic systems and capabilities and the technical aspects of the manner in which the party has responded to eDiscovery, including (as appropriate) relevant ESI retrieval technology and search methodology.

## XIV. Cooperation & Good Faith

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within seven (7) days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## XV. No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests. Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable. Nothing in this Stipulation shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

## XVI. Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

## XVII. Modification

This Stipulation may be modified by Stipulation of the Parties or by Order of the Court.

Dated: December 18, 2018

**COHEN MILSTEIN SELLERS & TOLL, PLLC**

*/s/ Mary J. Bortscheller* .
Michelle C. Yau

Michelle C. Yau (admitted *Pro Hac Vice*)
Mary J. Bortscheller (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
dsutter@cohenmilstein.com

**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
Nina Wasow (Cal. Bar No. 242047)
Todd Jackson (Cal. Bar No. 202598)
2030 Addison Street
Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
nina@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiffs*

**MORGAN, LEWIS & BOCKIUS, LLP**

 */s/ Matthew A. Russell*

Brian T. Ortelere (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5150
Fax: (215) 963-5001
brian.ortelere@morganlewis.com

Matthew A. Russell (*pro hac vice*)
77 West Wacker Drive
Chicago, IL 60601
Tel: (312) 324-1771
Fax: (312) 324-1001
matthew.russell@morganlewis.com

Spencer H. Wan (CA Bar No. 304329)
specner.wan@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:    415.442.1126
Fax:    415.442.1001

*Attorneys for Mercer Investment Consulting*

17

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

STIPULATION AND ~~(PROPOSED)~~ ORDER
REGARDING DISCOVERY OF ESI

**ATTESTATION**

I attest that for all conformed signatures indicated by an "/s/," the signatory has concurred in the filing of this document.

Dated: December 18, 2018          By:      _/s/ Matthew A. Russell_____

                                                        Matthew A. Russell

**[~~PROPOSED~~] ORDER**

PURSUANT TO THE STIPULATION, IT IS SO ORDERED: the above Stipulation and Proposed Order Regarding Discovery of Electronically Stored Information is approved and all parties shall comply with its provisions.

Dated: _____12/19/2018_____          *Haywood S. Gill Jr.*

                                                        U.S. District Court for the
                                                        Northern District of California

18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

DB1/ 101148692.1

**APPENDIX 1: METADATA FIELDS**

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |

STIPULATION AND (PROPOSED) ORDER
REGARDING DISCOVERY OF ESI

DB1/ 101148692.1

| Field | Example | Description |
|---|---|---|
| CREATETIME | HH:MM | The time the document was created. *Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |
| LASTMODDDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| TIMEZONE PROCESSED | PST, CST, EST, etc. | The time zone the document was processed in. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source should be the start of the relative path. |
| AUTHOR | Jsmith | The author of a document from extracted metadata. *Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| IMPORTANCE | 0 or 1 or 2 | E-mail Importance Flag (0 = Normal, 1 = Low Importance, 2 = High Importance) |

STIPULATION AND (~~PROPOSED~~) ORDER
REGARDING DISCOVERY OF ESI

| Field | Example | Description |
|---|---|---|
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. |
| | | If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.