United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BAIRD, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., et al.,<br>　　　　Defendants. | Case No. 17-cv-01892-HSG (KAW)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER**<br>Re: Dkt. No. 241 |

Plaintiffs filed the instant putative class action against Defendants, alleging violations of the Employee Retirement Income Security Act's ("ERISA") fiduciary duty and prohibited transactions provisions. (Second Amended Compl. ("SAC") ¶ 1, Dkt. No. 154.) On February 1, 2019, the parties filed a joint discovery letter regarding BlackRock's[1] production in response to Plaintiffs' Requests for Production ("RFP") Nos. 34 and 35. (Discovery Letter at 1, Dkt. No. 241.) Upon consideration of the parties' filings, as well as the arguments presented at the February 21, 2019 hearing, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' request for relief.

## I.　BACKGROUND

Plaintiffs' RFP No. 34 seeks: "All Documents and Communications concerning the gross and net profits that BlackRock and affiliates . . . earns as a result of providing Securities Lending Services to the BlackRock CTIs, including but not limited to Documents and Communications concerning the costs of providing such services, if any." (Discovery Letter, Exh. A at 6.) RFP No. 35 concerns profits earned related to managing cash collateral involved in securities lending transactions.

---

[1] Like the parties, the Court refers to all the BlackRock-related Defendants as "BlackRock." (*See* Discovery Letter at 1 n.1, Dkt. No. 241.)

1          The parties previously filed a discovery letter regarding RFP No. 34. (Dkt. No. 115.)
2   There, BlackRock argued that information about the costs of services was irrelevant to whether the
3   fees charged for securities lending was reasonable. (*Id.* at 2, 4.) The Court disagreed with
4   BlackRock, "find[ing] that information regarding the cost of the securities lending services
5   provided by BTC is relevant to whether the fees are reasonable." (July 20, 2018 Ord. at 8, Dkt.
6   No. 136.) To the extent BlackRock asserted that they do not perform profitability analyses and
7   that calculations of gross and net profits did not exist, the Court found that BlackRock was "not
8   required to create or produce documents that do not already exist. Defendants are, however,
9   required to produce the information that does exist." (*Id.*)

## II.     DISCUSSION

The parties now dispute whether Defendant "BlackRock's existing production of cost and profitability information satisfies the Court's Order." (Discovery Letter at 1.) Plaintiffs point to four types of documents that they assert have not been produced.

### A.     Quarterly Business Reviews ("QBRs")

First, Plaintiffs state that they received three pages of Quarterly Business Reviews ("QBRs"), and that "each of the three pages was extracted from three separate, electronic, multi-page PDF files . . . ." (Discovery Letter at 2.) Plaintiff argues that this is improper because "[e]xtracting a single page from a larger document removes the important context of the document as a whole and makes the information more difficult to understand." (*Id.*) BlackRock responds that the PDF files were compilations of QBRs for all BlackRock business lines, and that each QBR was a discrete, integrated, and separately created document. (*Id.* at 4.)

Plaintiffs do not assert that it is entitled to QBRs for other BlackRock business lines; rather, they argue that "nothing substantiates BlackRock's statement below that the 3 pages produced constitute 'discrete, integrated, and separately created' documents." (Discovery Letter at 2.) BlackRock, however, has so stated in the discovery letter, and the Court will not presume that BlackRock would knowingly make a false representation to the Court. Thus, to the extent the three QBR pages are stand-alone documents that are part of a larger compilation of QBRs for all BlackRock business lines, the Court will not require production of the remaining QBRs. *See Evon*

*v. Law Offices of Sidney Mickell*, Civ. No. S-09-0760 JAM GGH, 2010 WL 455476, at *2 (E.D. Cal. Feb. 3, 2010) ("In regard to multi-volume manuals or large documents separated by express designations, if entire sections are clearly and convincingly irrelevant, they may be redacted."). BlackRock, however, must produce all QBRs for the relevant business line if it has not already done so.

### B. Native Files for the QBRs

Plaintiffs also seek the native, unaltered versions of the three QBRs. (Discovery Letter at 2.) Plaintiffs assert that BlackRock refused to search for and produce the native files, and instead generated spreadsheets with some -- but not all -- of the information included. Plaintiffs further state that these spreadsheets did not match the information in the three QBRs, including missing several years of data and having different numbers. Additionally, Plaintiffs contend that the metadata on several of the spreadsheets showed creation and/or last modified dates after the Court's prior order requiring the production of this information. (*Id.*)

BlackRock states that they were unable to find the native Excel files for the three QBRs. (Discovery Letter at 5.) As to the spreadsheet metadata, BlackRock asserts that the discrepancies were due to how the files were collected. After Plaintiffs raised these issues, BlackRock re-collected and re-produced the files with the correct metadata, which show that the produced files predate the Court's prior order and were not altered. (*Id.*)

With respect to the native files, it does not appear that BlackRock refused to search for the native files; instead, BlackRock states that they were unable to find them. At the hearing, BlackRock agreed to again check for the native files. If they cannot be found, however, the Court cannot require BlackRock to produce native files that they cannot find. As to the other spreadsheets that were provided, it appears BlackRock has now produced the correct documents, and that the metadata was a technical error that has been rectified. While these spreadsheets do not match the QBRs, the parties seem to agree that they are not the native files of the QBRs because BlackRock cannot locate the native files; thus, the fact that they are different does not necessarily mean they were improperly altered prior to production.

**C. Database**

Next, Plaintiffs assert that BlackRock has not produced all of the responsive cost and profitability information. (Discovery Letter at 3.) Plaintiffs point to notes used by Mr. Jason Strofs during his deposition, which referred to cost data for securities lending and cash management that has not been produced in BlackRock's document production. (*Id.*) Plaintiffs believe this information is contained in a single electronic database, from which BlackRock exports relevant responsive cost information. (*Id.*)

BlackRock does not deny that there is a database that contains its financial information. (Discovery Letter at 4.) Instead, BlackRock states that it uses the enterprise planning platform Cognos TM1 to maintain its financial planning data. (*Id.*) The TM1 database "contains a massive amount of data that requires specialized software to access; there is no discrete 'entire database file' that could be produced." (*Id.*) BlackRock also states there is no archive of TM1 data, apart from the Excel files that were contemporaneously saved, which show the TM1 data as it existed at the time. BlackRock also states that it cannot produce new reports because designing a template for a report "would take considerable time to develop." (*Id.*)

At this point, it is not clear what information is available from what sources, and what can be produced. Accordingly, the Court ORDERS the parties to meet and confer as to further production. BlackRock shall confirm the scope of the data available in the TM1 database, including responsive information from years prior to BlackRock starting to use the TM1 database. BlackRock shall also inform Plaintiffs what other underlying data was imported to the TM1 database and/or is available from other sources, including any databases that were used prior to the TM1 database.

**D. E-Mail Communications**

Finally, Plaintiffs "seek an order requiring BlackRock to perform a narrowly-tailored search for custodial ESI responsive to RFPs 34 and 35 . . . ." (Discovery Letter at 3.) BlackRock responds that this demand for e-mail communications is "a new demand above and beyond the request already resolved by the Court." (*Id.* at 5.) In support, BlackRock contends that the prior joint letter regarding RFP No. 34 focused exclusively on cost data and did not mention e-mails.

(*Id.*)

The Court already resolved this matter in favor of Plaintiffs when it ordered BlackRock to produce "**[a]ll** responsive documents to Plaintiffs' Request for Production No. 34." (July 20, 2018 Ord. at 14 (emphasis added).) RFP No. 34 clearly states that it seeks "Documents *and Communications* concerning the costs of providing such services, if any." (Discovery Letter at 1 (emphasis added).) The fact that the prior discovery letter did not mention e-mails did not reflect a narrowing of the request. The prior discovery letter focused on whether the cost of securities lending services was relevant to the case; thus, there was no need to discuss e-mails separately when BlackRock contended that no information about the cost of security lending needed to be produced. (Dkt. No. 115 at 3-5.) BlackRock did not challenge the request for communications in its prior letter; it is not permitted to challenge the request now, after the Court has already ordered production of all responsive documents. The Court therefore ORDERS the BlackRock to conduct a search for communications responsive to RFP Nos. 34 and 35; the parties shall meet and confer on search strings and custodians to narrow the search as appropriate.[2]

### III. CONCLUSION

Accordingly, the Court ORDERS BlackRock to:

(1) Meet and confer with Plaintiffs as to what responsive information exists in the TM1 database, and what responsive information exists from other sources; and

(2) Produce communications responsive to RFP Nos. 34 and 35, after meeting and conferring with Plaintiffs regarding a narrowed search.

IT IS SO ORDERED.

Dated: February 25, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] The parties agree that the Court's ruling on RFP No. 34 applies equally to RFP No. 35. (Discovery Letter at 1.)

5