UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BAIRD, et al.<br>Plaintiffs,<br>v.<br>BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., et al.,<br>Defendants. | Case No. 17-cv-01892-HSG (KAW)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTERS**<br>Re: Dkt. Nos. 268, 269 |

Plaintiffs filed the instant putative class action against Defendants, alleging violations of the Employee Retirement Income Security Act's ("ERISA") fiduciary duty and prohibited transaction provisions. (Second Amended Compl. ("SAC") ¶ 1, Dkt. No. 154.) On March 9, 2019, the parties filed two discovery letters concerning Plaintiffs' responses to Defendants' First Set of Requests for Admission ("RFAs") and Second Set of Interrogatories to Plaintiffs. (Letter re RFAs, Dkt. No. 268; Letter re Interrogatories, Dkt. No. 269.)

Upon consideration of the parties' filings and the relevant legal authorities, the Court DENIES Defendants' request for relief.

## I. LEGAL STANDARD

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Discovery need not be admissible to be discoverable. *Id.*

Federal Rule of Civil Procedure 36 authorizes a party to serve "a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Requests for admission "are sought, first, to facilitate proof with respect to issues that cannot be determined

from the case, and second, to narrow the issues by eliminating those that can be." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). Requests for admission, however, "cannot be used to compel an admission of a conclusion of law." *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (internal citation omitted).

"The purpose of contention interrogatories . . . is not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable to propounding party to determine the proof required to rebut the respondent's position." *Lexington Ins. Co. v. Commonwealth Ins. Co.*, No. Case No. 98-cv-3477-CRB (JCS), 1999 U.S. Dist. LEXIS 23428, at *23 (N.D. Cal. Sept. 17, 1999). Properly timed contention interrogatories "may in certain cases be the most reliable and cost-effective discovery device, which would be less burdensome than depositions at which contention questions are propounded." *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) (citing *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991)). Thus, some courts have "prefer[red] to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment." *Id.*

## II. DISCUSSION[1]

### A. Investment Management Fees

RFA Nos. 142-155 and 171 and Interrogatory Nos. 1-2 concern whether BlackRock Institutional Trust Co. ("BTC")-sponsored collective trust investment funds ("CTIs") pay

---

[1] To the extent the parties dispute whether the RFAs and Interrogatories were harassing or burdensome, the Court does not address these arguments because Plaintiffs did not rely on such objections in refusing to respond. Rather, the disputes raised in the letters concern whether Plaintiffs' responses were sufficient. Thus, the Court will focus on such arguments, rather than both parties' complaints about the discovery tactics used throughout this case. The Court, however, observes that it is not clear how the disputed discovery requests advance the litigation. Further, the Court refers the parties to the Northern District of California's Guidelines for Professional Conduct, available at: https://www.cand.uscourts.gov/professional_conduct_guidelines.

2

investment management fees, as defined by Defendants. (Letter re RFAs at 2; Letter re Interrogatories at 2.) Specifically, Defendants define investment management fees as "the fees that plans agree to pay BTC for their investments in BTC Sponsored CTIs, exclusive of Securities Lending Fees and Cash Collateral Management Fees . . . ." (Letter re RFAs, Exh. 1 ¶ 14; Letter re Interrogatories, Exh. 1 ¶ 14.) Plaintiffs object to this definition as "contrary to the facts in the case" because Defendants themselves "understand[] that the fee for management of securities lending cash collateral is an 'investment management fee.'" (Letter re Interrogatories at 4.)

The Court agrees with Plaintiffs that Defendants' definition is improper because it requires Plaintiffs to rely on a premise that appears to be in dispute between the parties, *i.e.*, whether investment management fees include certain types of fees. In other words, Plaintiffs are being requested to provide information or admissions based on Defendants' hypothetical definition of what constitutes an investment management fee. The purpose of discovery, however, is to obtain facts, not opinions on hypotheticals. Indeed, several courts have rejected attempts to improperly narrow definitions when those definitions were premised on a dispute between the parties or were not supported by the facts of the case. *E.g.*, *Monsanto Co. v. Pioneer Hi-Bred Int'l, Inc.*, No. 4:12-cv-1090 (CEJ), 2014 U.S. Dist. LEXIS 38239, at \*20-21 (E.D. Mo. Mar. 24, 2014) ("DuPont clearly disputes and objects to Monsanto's definition of 'seed selection technology' and does not believe that LASS qualifies as such a technology. Thus, at this stage of the litigation, DuPont has appropriately declined to admit that LASS is 'seed selection technology' as defined by Monsanto."); *E3 Biofuels, LLC v. Biothane, LLC*, 8:11CV44, 2012 U.S. Dist. LEXIS 90340, at \*17-18 (D. Neb. June 29, 2012) (finding interrogatory responses sufficient where the plaintiff narrowed the definition of "you" and "your" because the defendant's definition included legal entities and people who had nothing to do with the facts of the case).

Additionally, the Court agrees with Plaintiffs' contention that RFA Nos. 142-154 (even) seek an improper legal conclusion. These RFAs do not ask whether the agreements between BTC and BlockRock *state* that CTIs pay no investment fees, but whether the agreements *entitle* the CTIs to pay no investment fees. Thus, rather than asking what is written in the agreement, the RFAs would require Plaintiffs to interpret the agreements and determine what they allow.

3

1    Accordingly, the Court finds Plaintiffs' responses sufficient, and will not require further
2    responses.

### B. Lowest-Cost Shares

RFA Nos. 508-542 (even) seek admissions that the Plan invested in the "lowest-cost share class" of certain mutual funds. (Letter re RFAs, Exh. 1 at 151-59.) Plaintiffs admitted that based on the public filings, the Plan was invested in the share classes with the lowest Total Annual Fund Operating Expenses, but that "[i]n all other regards, after making reasonable inquiry Plaintiffs can neither Admit nor Deny the truth of this Request." (*E.g.*, Letter re RFAs, Exh. 2 at 338.) Defendants contend that the Requests do not ask for any other information. Plaintiffs respond that they relied on Defendants' disclosures, but that they cannot confirm the veracity of such disclosures because Plaintiffs had identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Letter re RFAs at 5.)

Defendants argue that such a qualification is improper, relying on *Pecover v. Electronic Arts, Inc.*, Case No. 08-cv-2820-CW (NC), 2012 WL 12921363 (N.D. Cal. Mar. 23, 2012). (Letter re RFAs at 3.) In *Pecover*, the district court required the plaintiffs to remove a qualification from their responses to RFAs. 2012 WL 12921363, at *7. The RFA asked the plaintiffs to admit that a company's "$19.99 retail release price for its league-licensed sports titles was only offered for video games released on the Xbox and PlayStation 2 platforms, and was not at any time offered for videogames released for play on Xbox 360 or PlayStation 3." *Id.* In response, the plaintiffs "admitted" that as a result of the defendant's anticompetitive conduct, the company "was forced to abandon pro-consumer pricing and did not release league-licensed sports titles for the Xbox 360 or PlayStation 3 at a suggested retail price of $19.99." *Id.* The district court found that the response was "insufficient under Rule 36, because their 'qualification' contains unnecessary allegations that cannot be construed as having been made in good faith." *Id.*

Here, in contrast, Plaintiffs' qualification is directly related to their response because it concerns whether the documents that Plaintiffs rely on for their admission are accurate. Notably, Defendants do not explain why Plaintiffs' concern about ▮▮▮▮▮▮▮▮▮▮ lacks merit, or contend that the ▮▮▮▮▮▮▮▮▮ are minor or relatively meaningless. (*See* Discovery Letter

4

re RFAs at 3.) As such, the Court will not require Plaintiffs to strike their qualification, which appears to concern an ongoing dispute between the parties that should be resolved at trial, rather than in discovery responses.

### C. Outside Investor Terms

RFA Nos. 509-543 (odd) and Interrogatory No. 3 seek admissions that outside investors who invested in certain mutual funds were not given more favorable terms than those afforded to the Plan during the same period. (Letter re RFAS, Exh. 1 at 151-60; Letter re Interrogatories, Exh. 2 at 366.) These requests concern Defendants' affirmative defense regarding the prohibited transaction exemption ("PTE") 77-3.[2] (*See* Letter re Interrogatories at 3, 5.)

With respect to Interrogatory No. 3, Plaintiffs respond that they are not obligated to respond because the prohibited transaction exemption is an affirmative defense that Defendants must prove, not Plaintiffs. (Letter re Interrogatories at 5.) Even if Defendants have the burden of proof at trial, however, this does not negate Plaintiffs' obligation to respond to discovery. While Plaintiffs point to *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016), this case did not concern discovery, nor did it suggest that a plaintiff may refuse to respond to discovery regarding a defendant's affirmative defense.

Plaintiffs then "interpret[ed]" Interrogatory No. 3 "as requiring Plaintiffs to identify all Documents that support the contention that all other dealings between the Plan and BlackRock or any affiliate of BlackRock were on a basis, or multiple bases, less favorable to the Plan than such dealings are with other shareholders of the BlackRock-sponsored mutual fund throughout the entirety of the Relevant Time Period." (Letter re Interrogatories, Exh. 2 at 366.) Thus, they pointed to documents showing that "shareholders of the BlackRock sponsored mutual funds received more favorable economic terms for securities lending and investment management of cash collateral funds." (*Id.* at 367.) Defendants argue that this response "did not address whether

---

[2] In general, ERISA § 406(b) prohibits certain forms of self-dealing. Under PTE 773, however, "§ 406 does not apply when an investment company offers its own mutual funds to its employee profit-sharing plan if there are no commissions or extraneous fees and all other dealings between the plan and the investment company are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company." *Acosta v. City Nat'l Corp.*, No. 17-55421, 2019 U.S. App. LEXIS 11718, at *22 (9th Cir. Apr. 23, 2019).

5

other investors had better terms *for the mutual funds* in which the Plan invested," but rather that it concerned whether "'the shareholders of the BlackRock sponsored mutual funds received more favorable economic terms for securities lending and investment management of cash collateral funds' than the *CTIs* did." (Letter re Interrogatories at 3.)  It is not clear to the Court how Plaintiffs' response is limited to the CTIs, rather than being responsive to the Interrogatory, and Defendants fail to explain.

Moreover, Plaintiffs also objected to both Interrogatory No. 3 and the RFAs on the grounds that Plaintiffs are not able to identify the economic or other terms of all other investors in the BlackRock-sponsored mutual funds.  (Letter re Interrogatories at 5; Letter re RFAs at 5.)  As Plaintiffs point out, they "have no personal knowledge regarding the economic arrangements BlackRock has with all mutual fund investors."  (Letter re RFAs at 5.)  Defendants do not respond to this point, or explain why Plaintiffs would have information about its terms with third-party investors other than pointing to publicly available mutual-fund prospectuses.  (*See* Letter re Interrogatories at 3.)  As Plaintiffs do not have the personal knowledge to respond further to Interrogatory No. 3 and the RFAs, no supplemental response is required.

### D. Mutual Fund Prospectuses

RFA Nos. 552-568 seek admissions that Defendants' "mutual fund prospectuses do not include Securities Lending Fees or Cash Collateral Management Fees in their descriptions of annual fund operating expenses."  (Letter re RFAs, Exh. 1 at 162-67.)  The parties dispute whether Plaintiffs may respond based on other portions of the prospectuses, or can only rely on a specific page with the heading "annual fund operating expenses."  (Letter re RFAs at 3, 5.)  Plaintiffs argue that the phrase "description of the annual fund operating expenses for the fund" is vague and ambiguous, and that they interpreted it to mean "information contained within the cited document that describes and quantifies fees and/or expenses paid."  (*Id.* at 5.)

The Court agrees that the term is vague, and that Plaintiff could fairly interpret the RFAs as referring to any description of annual fund operating expenses, rather than one specific page with the heading "annual fund operating expenses."  Accordingly, Plaintiffs are not required to provide any further response.

### E. Asset-Backed Securities

RFA Nos. 272 and 276-384 seek admissions that certain asset-backed securities were added to the Short-Term Investment Fund ("STIF") portfolios before December 31, 2010. (Letter re RFAs, Exh. 1 at 98-123.) Plaintiffs responded that the RFAs asked whether *issuers* of securities were added to particular funds, and that they could not "admit these Requests because an issuer (as opposed to a security) cannot be added to a portfolio." (*E.g.*, Letter re RFAs, Exh. 2 at 184-85.) Additionally, Plaintiffs argued that they could not admit or deny the dates particular securities were added because the trade date information ███████████████████████████████ ███████████████████████████████████████████████████████████████. (*Id.* at 185.)

Defendants do not address either of these points; rather, Defendants only argue that Plaintiffs should be able to admit or deny the requests based on Plaintiffs' possession of the relevant transaction data. (Letter re RFAs at 3.) Defendants do not dispute that, as worded, the RFAs ask when *issuers* of securities were added to particular funds rather than the securities, and that issuers cannot be added to a portfolio. Defendants also do not address Plaintiff's argument that because of the ███████████████████ they have received, they are unable to meaningfully admit or deny the RFAs. Under these circumstances, Plaintiffs are not required to provide any further response.

### III. CONCLUSION

For the reasons stated above, Plaintiffs are not required to provide further responses to the disputed RFAs and interrogatories.

IT IS SO ORDERED.

Dated: April 29, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge

7