MORGAN, LEWIS & BOCKIUS LLP
Rachael C. Chan (CA Bar No. 265002)
  rachael.chan@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000; Fax: 415.442.1001

Brian T. Ortelere (*pro hac vice*)
  brian.ortelere@morganlewis.com
1701 Market Street
Philadelphia, PA  19103-2921
Tel: 215.963.5000; Fax: 215.963.5001

Matthew A. Russell (*pro hac vice*)
  matthew.russell@morganlewis.com
77 West Wacker Drive
Chicago, IL 60601
Tel: 312.324.1771; Fax: 312.324.1001

Attorneys for Defendant
Mercer Investment Consulting

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| CHARLES BAIRD and LAUREN SLAYTON, individually, and on behalf of all others similarly situated, and on behalf of the BLACKROCK RETIREMENT SAVINGS PLAN,<br><br>Plaintiffs,<br><br>vs.<br><br>BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., *et al.*,<br><br>Defendants. | Case No. 4:17-cv-01892-HSG<br><br>**DEFENDANT MERCER INVESTMENT CONSULTING'S SUPPLEMENTAL FILING IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

MERCER'S SUPPL. FILING IN
SUPPORT OF MOT. TO DISMISS SAC
4:17-CV-01892-HSG

Pursuant to the Court's Order, *see* Dkt. 277, Mercer Investment Consulting addresses below the arguments raised in its Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 178, "Motion") that the Court may properly resolve with no or limited extrinsic evidence. In sum, all of Mercer's arguments fall within Tier 1 of the Court's Order (or, at worst, Tier 2), and the Court should dismiss the claims against it under Rule 12(b)(6).

Mercer had an indisputably limited and secondary role in the conduct underlying Plaintiffs' claims. As the Court is aware, Mercer provides advisory services to the BlackRock Investment Committee ("Committee"), which is responsible for selecting, evaluating, and removing investment options in the BlackRock Retirement Savings Plan ("Plan"). Plaintiffs filed this lawsuit over two years ago, claiming the BlackRock Defendants breached their fiduciary duties under ERISA by offering affiliated funds to Plan participants. Mercer had no fiduciary authority over those decisions, as Plaintiffs concede. *See* Mot. 6. Plaintiffs did not add Mercer as a defendant until August 2018, saying little about Mercer's advice yet taking the opportunity to subject Mercer to expansive discovery concerning their baseless allegations that BlackRock used the Plan to enrich itself at participants' expense. *See* Dkt. 154, Pls.' 2d Am. Compl. ("SAC").

Mercer's Motion and Reply (Dkt. 227) explained why Plaintiffs' sprawling theories fail as a matter of law. Mercer tailored its Motion to the SAC's pleading deficiencies, relying primarily on Plaintiffs' own allegations—facts that, *even if true*, are both insufficient to create a plausible inference that Mercer breached any duty under ERISA and rife with contradictions that disprove Plaintiffs' theories. Mercer attached only six documents, chiefly to establish basic characteristics of the Plan's investment options and fees. Although Mercer maintains each is appropriately considered at this stage, none is vital to recognizing the deficiencies in Plaintiffs' claims.

Regardless, the Court may consider facts about the Plan's investment options, as other courts do routinely. Here, those facts confirm Plaintiffs' claims are implausible, particularly that participants can invest in popular BlackRock collective investment trusts ("CITs") for a uniquely low expense ratio of 0.02% (none of which goes to BlackRock). The SAC itself reflects this fact, and Plaintiffs do not dispute it. Even so, reference to only three of Mercer's exhibits will

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

1

MERCER'S SUPPL. FILING IN
SUPPORT OF MOTION TO DISMISS SAC
4:17-CV-01892-HSG

establish the contextual "backdrop" to Plaintiffs' claims.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2009) ("[T]he range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts" in evaluating the plausibility of ERISA claims.).[1]

Mercer respectfully submits that Plaintiffs fail to state a plausible claim for relief as a matter of law, and this Court can and should dismiss the claims against Mercer on the pleadings.[2]

I.   **TIER 1:  Mercer's Entire Motion Can Be Resolved Without Extrinsic Evidence.**

The SAC's deficiencies are apparent even without resort to documents.  Even accepting Plaintiffs' non-conclusory allegations as true, the conduct they allege does not suggest Mercer breached whatever limited duty it may have owed the Plan.  The *absence* of facts sufficient to satisfy ERISA does not turn on extrinsic evidence or disproving any well-pled allegations.

- **Mercer's Fiduciary Duties, If Any, Were Limited To Its Investment Advice, Which The SAC Does Not Target.  (Motion Arg. § I; Reply § I.)**

Plaintiffs concede Mercer's fiduciary role, if any, was limited to its advice only.  ¶ 92.  They also concede the Committee "made all final decisions related to the selection, retention and removal of investment options for the Plan."  ¶ 139; *see also* ¶¶ 97, 107, 110, 533.  Plaintiffs thus must allege facts suggesting Mercer's *advice*—not the Committee's final decisions—violated ERISA.  The SAC does not do so.  Mercer cited no extrinsic evidence, as this argument turns as much on the importance of what Plaintiffs *did not* allege as what they did.  *See* Mot. 8-9; Reply 3.

- **Plaintiffs Do Not Plausibly Allege Mercer Acted Imprudently Under ERISA.  (Motion Arg. § II; Reply § II.A.)**

Mercer explained why Plaintiffs' scattershot allegations, *even if true*, do not satisfy ERISA's objective, process-focused standard for establishing a fiduciary breach.  Mot. 10-20.  Plaintiffs concede that scores of institutional investors (including other ERISA fiduciaries) select

---

[1] Exhibits E and F to Mercer's Motion are Form 5500 annual reports filed by two other plans (the Federal Thrift Savings Plan and Vanguard's 401(k) plan) with the U.S. Dept. of Labor ("DOL").  Dkts. 178-6, -7.  Mercer is confident the Court may consider these, but the points for which it cited them are peripheral.  Mercer will withdraw its request for judicial notice of these exhibits.

[2] *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (Rule 12 motions are an "important mechanism for weeding out meritless" ERISA fiduciary breach claims, and lower courts must engage in "careful, context-sensitive scrutiny of a complaint's allegations").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

2

MERCER'S SUPPL. FILING IN
SUPPORT OF MOTION TO DISMISS SAC
4:17-CV-01892-HSG

BlackRock's lending CITs, even while paying *more* than the Plan. *See* Reply 4, 6. Plaintiffs' allegations that BlackRock "preferred" its own funds, that the CITs' securities lending terms might have been improved, and that certain funds "underperformed"—even if true—do not give rise to a plausible challenge to Mercer's advice, about which the SAC says very little. Mot. 10-17; Reply 4-6. Plaintiffs' attempt to compare Mercer to itself, rather than a prudent fiduciary in similar circumstances, ignores the applicable ERISA standard and is thus wrong as a matter of law. *See* 29 U.S.C. § 1104(a); Mot. 17-20; Reply 6-9. And Plaintiffs' *own* allegations belie their theories. Mot. 19-21; Reply 11-13. None of these arguments depend on extrinsic evidence.

That said, Mercer did cite four documents to establish certain characteristics of the Plan's investment lineup. *See* Mot. 4-5 (citing Exs. A-D). The most important is the (undisputed) fact that the expense ratio for the CITs offered in the Plan is capped at just 0.02%, which covers only third-party administrative costs. *Id.* But this fact also is apparent from the SAC itself. Though Plaintiffs avoid the phrase "fee waiver," the SAC expressly alleges that Plan disclosures told participants "the total annual operating expenses for the BlackRock CTIs offered in the Plan is 2 bps." ¶ 296; *see also* ¶¶ 295, 297. This admission alone allows the Court to consider this fact.[3]

- **Plaintiffs Do Not Plausibly Allege Mercer Acted Disloyally Under ERISA. (Motion Arg. § II.B; Reply § II.B.)**

Likewise, dismissing Plaintiffs' claim that Mercer breached ERISA's duty of loyalty requires no extrinsic evidence. Plaintiffs must allege plausible facts suggesting Mercer acted with the subjective intent to benefit itself at participants' expense. Mot. 17-20; Reply 9-11. They have not done so, and Mercer presents purely legal arguments based on flaws in the SAC alone: Plaintiffs rely on conclusory accusations the Court should ignore; they offer no legitimate motive for Mercer to skew its advice; and their own allegations, even if true, refute their theories. *Id.*

- **Plaintiffs' Own Allegations, If True, Prove Mercer Caused No Loss to the Plan. (Motion Arg. § II.C; Reply § II.C.)**

No extrinsic evidence is needed to find that Plaintiffs' own allegations, if true, preclude them from proving loss causation, a necessary element of their claims. Mot. 20-21; Reply 11-13.

---

[3] Although Plaintiffs purport to challenge the *completeness* of this disclosure—itself a purely legal question as to ERISA's disclosure obligations—they do not dispute its *accuracy*, insofar as only the 0.02% expense ratio is deducted from participants' accounts for investing in the CITs.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

3

MERCER'S SUPPL. FILING IN
SUPPORT OF MOTION TO DISMISS SAC
4:17-CV-01892-HSG

Contrary to Plaintiffs' response, Mercer is not arguing that an advisor is immune from liability any time someone else has final decision-making authority. Rather, under their *own* theory of *this* case, Plaintiffs' conspiracy-theory allegations against BlackRock collide irreconcilably with their position that Mercer harmed the Plan—arguments again based solely on the SAC. *See* Reply 12.

- **Plaintiffs Do Not State A Prohibited Transaction Claim Under ERISA § 406(b)(3). (Motion Arg. § III; Reply § III.)**

Mercer cited no extrinsic evidence in arguing that Plaintiffs fail to state a "prohibited transaction" claim under ERISA § 406(b), a purely legal question. Mot. 22-23; Reply 13-14.

- **Plaintiffs Do Not State A Co-Fiduciary Breach Claim Under ERISA § 405(a). (Motion Arg. § IV; Reply § IV.)**

Mercer also cited no extrinsic evidence in arguing the SAC fails to state a plausible "co-fiduciary breach" claim under ERISA § 405(a), 29 U.S.C. § 1105(a). Mot. 23-25; Reply 15.

II.     **TIER 2:**   **Considering Only Three Documents—To Which Courts Routinely Refer In Similar ERISA Cases—Confirms Plaintiffs' Claims Are Implausible.**

Although the deficiencies in Plaintiffs' claims are clear from the SAC alone, they become obvious when viewed alongside basic characteristics of the Plan's investment menu. Three exhibits establish those basic facts, including the number of funds, their expense ratios, and the range of asset categories, investment strategies, and risk/return profiles. Mot. 4-5.[4] One exhibit is a Form 5500 annual report the Plan filed publicly with the DOL; the other two are DOL-mandated fee disclosures to participants, *see* 29 C.F.R. § 2550.404a-5. Dkts. 178-2, -3, -5.[5]

The "mix and range" of the Plan's investment options are important—and arguably dispositive—facts in evaluating the plausibility of Plaintiffs' claims. *See* Mot. 12; Reply 4-6. However, the most important fact gleaned from these documents is that Plan participants could invest in all but a handful of funds for an expense ratio of 0.02%—or just *$2.00* for every $10,000

---

[4] Exhibit C to Mercer's Motion is a Guideline and Fee Agreement ("GLFA") dated October 17, 2016. Dkt. 178-4. Although Mercer believes the Court can properly consider the GLFA, *see* Dkt. 179 at 5-6, the only fact the GLFA supports—that BlackRock waived its typical fees for the CITs, meaning the expense ratio was capped at 0.02%—also is ascertainable from Exhibits B and D. If the Court agrees, Mercer will withdraw its request for judicial notice of Exhibit C as well.

[5] Mercer also cited the Form 5500 (Ex. A) to show BlackRock generously pays for Plan record-keeping costs rather than charge participants, as ERISA would allow, saving the Plan more than *$500,000 annually*. Mot. 4. Although this fact can be considered and belies Plaintiffs' theory that BlackRock sought to enrich itself using the Plan, it is not critical to Mercer's core arguments.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

4

MERCER'S SUPPL. FILING IN
SUPPORT OF MOTION TO DISMISS SAC
4:17-CV-01892-HSG

invested. Mot. 4-5. This fact is a large part of the "forest" that Plaintiffs' more granular allegations lose for the "trees." *See id.* 13-15; Reply 4-6. Although Mercer believes the Court may dismiss the SAC even without considering this fact, doing so should all but seal the deal.

There also can be little question the Court may properly consider this fact and other information about Plan investments using the Form 5500 and fee disclosures. For one, the SAC expressly refers to both.[6] More importantly, this information is the foundation of Plaintiffs' claims. It would be extraordinary to allow a plaintiff to challenge a plan's fees as "excessive," yet bar a defendant from relying on the very documents disclosing those fees to the plaintiff.[7] As such, courts routinely consider these documents in resolving motions to dismiss similar claims.[8]

That the Court may consider the Plan's diverse array of funds and their uniquely low expense ratios should not be controversial, and the Court need only refer to Exhibits A, B, and D.

III. **TIER 3: No Extrinsic Evidence is Necessary to Resolve Mercer's Arguments.**

Mercer maintains that the Court may, and should, resolve its Motion without resort to any extrinsic evidence that even arguably strays beyond the type of information courts routinely consider in similar cases. As such, none of Mercer's arguments fall within Tier 3.

---

[6] *See, e.g.*, ¶ 12 (the SAC was based in part on "filings with the U.S. [DOL]"); ¶ 204 (referring to the "expense ratio disclosed in the DOL mandated participant disclosures"); ¶¶ 288-92 (citing specific DOL regulations); ¶ 296 (referring to the "2 bps" expense ratio for Plan CITs); ¶ 303 ("participant disclosures"). Plaintiffs' prior complaints also cited these documents explicitly. Dkt. 1, Compl. ¶¶ 90, 167, 241, 245; Dkt. 75, Am. Compl. ¶¶ 9, 78-81, 139, 143, 145, 205.

[7] In fact, some courts *require* a plaintiff to use "data about the selected funds"—available "because of ERISA's disclosure obligations"—to allege plausible facts creating an inference of a fiduciary breach. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

[8] *See* Dkt. 179 at 2-4 (collecting cases); Dkt. 233 at 3, 7 (same); *see also, e.g.*, *In re Disney ERISA Litig.*, 2017 WL 1505129, at *6 (C.D. Cal. Apr. 21, 2017) (considering various disclosures, including Form 5500 and summary plan description ("SPD")), *aff'd sub nom. Wilson v. Fidelity Mgmt. Tr. Co.*, 755 F. App'x 697 (9th Cir. 2019); *White v. Chevron Corp.*, 2017 WL 2352137, at *6 (N.D. Cal. May 31, 2017) (various "Plan-related documents," including Form 5500s and Plan "newsletters"), *aff'd*, 725 F. App'x 453 (9th Cir. 2018); *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *3 (N.D. Cal. Feb. 8, 2019) (Form 5500, fee disclosures, SPD); *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1012 (N.D. Cal. 2017) ("[c]ourts routinely take judicial notice of ERISA plan documents," including SPD, Form 5500s, and "participant fee disclosure"); *Rodrigues v. Bank of Am.*, 2016 WL 3566950, at *1, n.1 (N.D. Cal. July 1, 2016) (ERISA disclosures); *Almont Ambulatory Surgery Ctr., LLC v. United Health Grp., Inc.* 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015) (Form 5500s, fee disclosure); *Davis v. Wash. Univ.*, 2018 WL 4684244, at *2 (E.D. Mo. Sept. 28, 2018) (fee disclosures, Form 5500s, fund "prospectuses, fact sheets, and the like"); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 794 (D. Minn. 2018) (considering "the plan structure" and "disclosures made to participants").

|  |  |
|---|---|
| Dated: April 30, 2019 | Respectfully submitted, |
|  | MORGAN, LEWIS & BOCKIUS LLP |
|  | By: /s/ *Matthew A. Russell* |
|  | Brian T. Ortelere<br>Matthew A. Russell<br>Rachael C. Chan |
|  | Attorneys for Defendant<br>Mercer Investment Consulting |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PHILADELPHIA

6

MERCER'S SUPPL. FILING IN
SUPPORT OF MOTION TO DISMISS SAC
4:17-CV-01892-HSG