BRIAN D. BOYLE (S.B. #126576)
bboyle@omm.com
RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
MEAGHAN VERGOW (admitted *pro hac vice*)
mvergow@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:   +1 415 984 8700
Facsimile:   +1 415 984 8701

Attorneys for Defendants
BlackRock Institutional Trust Company, N.A.; BlackRock, Inc.; the BlackRock, Inc. Retirement Committee; the Investment Committee of the Retirement Committee; Catherine Bolz; Chip Castille; Paige Dickow; Daniel A. Dunay; Jeffrey A. Smith; Anne Ackerley; Nancy Everett; Joseph Feliciani, Jr.; Ann Marie Petach; Michael Fredericks; Corin Frost; Daniel Gamba; Kevin Holt; Chris Jones; Philippe Matsumoto; John Perlowski; Andy Phillips; Kurt Schansinger; Tom Skrobe; Amy Engel; Management Development & Compensation Committee of the BlackRock, Inc. Board of Directors; Kathleen Nedl; Marc Comerchero; Joel Davies; John Davis; Milan Lint; and Laraine McKinnon

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Charles Baird and Lauren Slayton, as individuals, and on behalf of all others similarly situated, and on behalf of the BlackRock Retirement Savings Plan,<br><br>            Plaintiffs,<br><br>        v.<br><br>BlackRock Institutional Trust Company, N.A., *et al.*,<br><br>            Defendants. | Case No. 17-cv-01892-HSG-KAW<br><br>**BLACKROCK'S SUPPLEMENTAL BRIEF ON PRIVILEGE LOG IN RESPONSE TO ORDER REQUIRING SUPPLEMENTAL BRIEFING (ECF NO. 282)** |

In response to Magistrate Judge Westmore's Order Requiring Supplemental Briefing and Provision of Documents for In Camera Review, BlackRock[1] below provides supplemental information and authority to support its assertion of attorney-client privilege with respect to five documents on its privilege log (Document Nos. 305, 346, 351, 535, and 536) by explaining why the fiduciary exception to the privilege does not apply to these documents.

In the ERISA context, a fiduciary exception exists to the attorney-client privilege for communications between an ERISA fiduciary and an attorney regarding fiduciary decisions for the fund, on the ground that the ultimate clients of the attorney in that context are the beneficiaries of the plan. *E.g.*, *In re Grand Jury Proceedings Grand Jury No. 97-11-8*, 162 F.3d 554, 556 (9th Cir. 1998). However, the fiduciary exception does not apply to communications where the party claiming privilege is not acting in a fiduciary capacity when seeking legal advice, such as when a fund manager is negotiating with clients over the terms of its retention or proposing to revise governing documentation subject to client approval. To be a "functional" fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), a person must "act[] in the capacity of a manager, administrator, or financial advisor to a 'plan.'" *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000). This type of fiduciary duty is contextual, and therefore "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interests, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to the complaint. *Id*. at 226.

Applying these principles, the Ninth Circuit held in *Santomenno v. Transamerica Life Ins. Co.* that a plan administrator is **not** an ERISA fiduciary when negotiating the terms of its services with plan trustees. 883 F.3d 833, 838 (9th Cir. 2018). The Ninth Circuit quoted the *John*

---

[1] "Blackrock" collectively refers to Defendants BlackRock Institutional Trust Company, N.A.; BlackRock, Inc.; the BlackRock, Inc. Retirement Committee; the Investment Committee of the Retirement Committee; Catherine Bolz; Chip Castille; Paige Dickow; Daniel A. Dunay; Jeffrey A. Smith; Anne Ackerley; Nancy Everett; Joseph Feliciani, Jr.; Ann Marie Petach; Michael Fredericks; Corin Frost; Daniel Gamba; Kevin Holt; Chris Jones; Philippe Matsumoto; John Perlowski; Andy Phillips; Kurt Schansinger; Tom Skrobe; Amy Engel; Management Development & Compensation Committee of the BlackRock, Inc. Board of Directors; Kathleen Nedl; Marc Comerchero; Joel Davies; John Davis; Milan Lint; and Laraine McKinnon.

*Hancock* decision and explained that "only discretionary acts of plan management trigger fiduciary duties," and that when service providers and plan trustees negotiate the terms of service, "discretionary control over plan management lies with the trustee, who decides whether to agree to the service provider's terms." *Id*. The Ninth Circuit reasoned that a service provider thus owes no fiduciary duty to a plan in that context. *Id*. In so holding, the Ninth Circuit joined other circuit courts on this point. *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016); *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293–95, 297 (3d Cir. 2014) ("*John Hancock*"); *Hecker v. Deere & Co.*, 556 F.3d 575, 583–84 (7th Cir. 2009).

      As the Court's order noted, the five challenged documents as to which BlackRock asserts privilege all "concern revisions to guidelines, such as the STIF Guidelines or investment guidelines," that govern BlackRock's services. ECF No. 282 at 1. As the revisions became operative only upon client approval, BlackRock did not have fiduciary control over the contents of (or proposed changes to) these guidelines.[2] The STIF Guidelines and the investment guidelines in CTF Plan Documents are incorporated into the service agreements that BlackRock Institutional Trust Company, N.A. entered into with plan trustees. When BlackRock provides notice that it wishes to change these guidelines, the changes become effective only after the client has had the opportunity to approve or disapprove through negative consent, i.e., by continuing or terminating their investments.[3] *See, e.g.*, Exhibit A (notifying clients of revisions to various documents, including the STIF Guidelines, and stating that any client who does not object to the revisions "is presumed to have consented to them under applicable law"). And because clients retain discretionary control over the decisions to invest pursuant to the guidelines, BlackRock is

---

[2] In contrast, BlackRock would be a fiduciary with respect to guideline *interpretations* that are not subject to client approval. Pursuant to the fiduciary exception, BlackRock produced to plaintiffs privileged communications concerning guideline interpretation, including the non-redacted portions of Document No. 305.

[3] Negative consent is recognized by the Department of Labor ("DOL") as a legitimate form of consent. *See, e.g.*, DOL Adv. Op. 97-16A (May 22, 1997) (failure of fiduciary to object to proposed modification to Plan contract, on 60 days' notice, "will be treated as consent to the proposed change").

not acting in a fiduciary capacity when communicating with counsel regarding *amendments* of these guidelines.  *See Santomenno*, 883 F.3d at 838.

      Analogously, it is well-established that plan design and the amendment of a plan are within the settlor function and therefore communications with counsel in aid of such functions are not subject to the fiduciary exception, even if those seeking legal advice may act as fiduciaries to the plan in other contexts.  *See, e.g.*, *King v. Nat'l. Human Resource Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000) ("It is also clear that the defined functions of a fiduciary do not include plan design, the amendment of a plan, or the termination of a plan.").  Here, the parties wearing fiduciary hats with respect to proposed revisions to the STIF Guidelines and other documentation governing BlackRock's services are the plans' own trustees (who retain discretionary control to reject BlackRock's proposed amendments).  BlackRock did not act as a fiduciary in forming these proposed revisions, and thus the fiduciary exception does not apply to its communications with counsel on that subject.

Dated:  May 8, 2019                                      O'MELVENY & MYERS LLP

By:    */s/ Brian D. Boyle*
           Brian D. Boyle

Attorneys for BlackRock

# EXHIBIT A

**BLACKROCK**

400 Howard Street
P.O.Box 7101
San Francisco, CA 94105
Tel +1 415 670 2000

June 30, 2010

Dear Client,

BlackRock Institutional Trust Company, N.A. ("BTC") makes available on an annual basis certain disclosure documents relating to client accounts ("Accounts"), bank-maintained common trust funds and group trusts (together, "Collective Funds") and other unregistered investment vehicles managed by BTC.

Enclosed please find a copy of "Information About BTC: 16 Things You Should Know" ("16 Things") and "Managing ERISA Assets: A Comprehensive Guide to ERISA Exemptions Used by BlackRock Institutional Trust Company, N.A." ("Managing ERISA Assets").

The 16 Things brochure is updated annually to reflect any material changes to, or provide further clarification regarding the business practices of BTC and the processes related to the administration and oversight of our investment management and fiduciary services, including with respect to Accounts and our Collective Funds. The document also contains important information and updates regarding our risk management procedures, proxy voting and securities lending activities. The Managing ERISA Assets document is updated periodically to reflect changes in our investment management services and related transactions, as well as any changes or updates to certain ERISA exemptions we use. We recently updated Managing ERISA Assets to include a description of a proposed ERISA exemption for transactions and services involving certain minority shareholders of BlackRock, Inc. ("BlackRock") as well as other transactions with affiliates. These documents provide disclosure of material facts regarding pertinent practices of BTC, and any client who does not object to the practices described is presumed to have consented to them under applicable law.

BTC also makes other documents available to clients related to our investment management services, including:

- The trust instruments or "Plan Documents" for our collective investment funds;
- Collective investment fund financial statements;
- Investment Procedures and Contacts;
- Collective investment fund profiles, which seek to provide certain basic information about collective investment funds including key risk factors, grouped by types of funds with similar investment characteristics; and
- Short-Term Investment Funds Overview and Guidelines (the "STIF Guidelines") relating to certain short-term investment funds (the "STIFs") maintained and managed by BTC.

BTC recently updated the STIF Guidelines to include changes to the credit and market risk management process that reflect BTC's position within the structure of the BlackRock group and to adapt to other changes in the fixed income securities markets. Key modifications to the STIF Guidelines include more explicitly defining liquidity targets and further limiting credit exposures in the STIFs.

Copies of all of the documents listed above are available on www.blackrockinstitutional.com with a client password which is available from your account manager.  Copies of any of these documents are also available in paper copy upon request.

We hope you find our updated documents useful in providing you with an understanding of our current management of the Funds.  Please feel free to contact your account manager if you have any questions or would like any further information.  As always, we welcome any comments you may have on our investment activities.

Sincerely,

*[signature]*

Robert Capaldi
Managing Director
Global Client Group

CONFIDENTIAL
BAIRD_0203588

**BLACKROCK**

400 Howard Street
P.O.Box 7101
San Francisco, CA 94105
Tel +1 415 670 2000

June 30, 2010

Dear Client,

BlackRock Institutional Trust Company, N.A. ("BTC") makes available on an annual basis certain disclosure documents relating to client accounts ("Accounts"), bank-maintained common trust funds and group trusts (together, "Collective Funds") and other unregistered investment vehicles managed by BTC.

Enclosed please find a copy of "Information About BTC: 16 Things You Should Know" ("16 Things") and "Managing ERISA Assets: A Comprehensive Guide to ERISA Exemptions Used by BlackRock Institutional Trust Company, N.A." ("Managing ERISA Assets").

The 16 Things brochure is updated annually to reflect any material changes to, or provide further clarification regarding the business practices of BTC and the processes related to the administration and oversight of our investment management and fiduciary services, including with respect to Accounts and our Collective Funds. The document also contains important information and updates regarding our risk management procedures, proxy voting and securities lending activities. The Managing ERISA Assets document is updated periodically to reflect changes in our investment management services and related transactions, as well as any changes or updates to certain ERISA exemptions we use. We recently updated Managing ERISA Assets to include a description of a proposed ERISA exemption for transactions and services involving certain minority shareholders of BlackRock, Inc. ("BlackRock") as well as other transactions with affiliates. These documents provide disclosure of material facts regarding pertinent practices of BTC, and any client who does not object to the practices described is presumed to have consented to them under applicable law.

BTC also makes other documents available to clients related to our investment management services, including:

- The trust instruments or "Plan Documents" for our collective investment funds;
- Collective investment fund financial statements;
- Investment Procedures and Contacts;
- Collective investment fund profiles, which seek to provide certain basic information about collective investment funds including key risk factors, grouped by types of funds with similar investment characteristics; and
- Short-Term Investment Funds Overview and Guidelines (the "STIF Guidelines") relating to certain short-term investment funds (the "STIFs") maintained and managed by BTC.

BTC recently updated the STIF Guidelines to include changes to the credit and market risk management process that reflect BTC's position within the structure of the BlackRock group and to adapt to other changes in the fixed income securities markets. Key modifications to the STIF Guidelines include more explicitly defining liquidity targets and further limiting credit exposures in the STIFs.

Copies of all of the documents listed above are available on www.blackrockinstitutional.com with a client password which is available from your account manager.  Copies of any of these documents are also available in paper copy upon request.

We hope you find our updated documents useful in providing you with an understanding of our current management of the Funds.  Please feel free to contact your account manager if you have any questions or would like any further information.  As always, we welcome any comments you may have on our investment activities.

Sincerely,

Robert Capaldi
Managing Director
Global Client Group

CONFIDENTIAL                                                                                                              BAIRD_0203588