REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Michelle C. Yau (*Admitted Pro Hac Vice*)
Mary J. Bortscheller (*Admitted Pro Hac Vice*)
Daniel R. Sutter (*Admitted Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison St. ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| Charles Baird and Lauren Slayton, as individuals, and on behalf of all others similarly situated, and on behalf of the BlackRock Retirement Savings Plan,<br><br>Plaintiffs,<br><br>vs.<br><br>BlackRock Institutional Trust Company, N.A.; BlackRock, Inc.; The BlackRock, Inc. Retirement Committee; The Investment Committee of the Retirement Committee; The Administrative Committee of the Retirement Committee; The Management Development & Compensation Committee, Catherine Bolz, Chip Castille, Paige Dickow, Daniel A. Dunay, Jeffrey A. Smith; Anne Ackerley, Amy Engel, Nancy Everett, Joseph Feliciani Jr., Ann Marie Petach, Michael Fredericks, Corin Frost, Daniel Gamba, Kevin Holt, Chris Jones, Philippe Matsumoto, John Perlowski, Andy Phillips, Kurt Schansinger, Tom Skrobe; Kathleen Nedl, Marc Comerchero, Joel Davies, John Davis, Milan Lint, Laraine McKinnon, (collectively, "BlackRock Defendants") and Mercer Investment Consulting.<br><br>Defendants. | **PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CTI CLASS AND BLACKROCK PLAN CLASS**<br><br>No. 4:17:cv-01892-HSG/KAW<br><br>Date:     August 8, 2019<br>Time:     2:00 p.m.<br>Courtroom:  2, 4th Floor<br>Judge:     Honorable Haywood S. Gilliam |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that the following Motion will be heard at 2:00 p.m. on August 8, 2019, or as soon thereafter as the matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Haywood S. Gilliam, Jr.

Plaintiffs Charles Baird and Lauren Slayton will and hereby do move pursuant to Federal Rule of Civil Procedure 23 for certification of two classes of participants in ERISA[1]-protected retirement plans whose assets were held in BlackRock managed funds during the Class Period. Class certification is appropriate because Plaintiffs meet the Rule 23(a) perquisites, and also satisfy the standards for Rule 23(b)(1) certification, and alternatively, certification under Rule 23(b)(3). This Motion is made pursuant to the Stipulation and Order to Modify the Case Schedule, entered by the Court on February 29, 2019 (Dkt. 251), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the concurrently-filed declarations of Michelle C. Yau (with exhibits thereto), Daniel Sutter, and Nina Wasow, as well as all records and pleadings in this action, all further evidence and oral argument that may be presented at the hearing on this Motion, and all other matters as the Court deems proper.

Dated: June 3, 2019                    Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By: /s/ Michelle C. Yau

Michelle C. Yau (admitted *Pro Hac Vice*)
Mary J. Bortscheller (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC

Nina Wasow

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Todd Jackson
FEINBERG, JACKSON, WORTHMAN
& WASOW, LLP

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    PROPOSED CLASS DEFINITIONS .................................................................. 3

III.   FACTUAL & LEGAL BACKGROUND............................................................. 4
       A.   The BlackRock CTIs and BlackRock's Securities Lending Program Are
            Central to the Claims of Both Classes ................................................ 4
       B.   The CTI Class Claims Arise From BlackRock's Control of ERISA-Governed
            Trusts That Hold Retirement Plan Assets ............................................ 5
       C.   The BlackRock Plan Class Claims Relate to the Management of the
            BlackRock Plan............................................................................ 7

IV.    STANDARDS FOR CLASS CERTIFICATION .................................................. 8

V.     ARGUMENT .................................................................................................. 9
       A.   Both Proposed Classes Meet the Rule 23(a) Requirements........................ 10
            1.   The Proposed Classes Are So Numerous That Joinder is Impracticable........ 10
            2.   Plaintiffs' Claims Involve Common Questions of Law and Fact ................... 10
            3.   Plaintiffs' Claims Are Typical of Both Classes ................................. 13
            4.   Plaintiffs and Their Counsel Are Adequate .................................... 14
       B.   The CTI Class and BlackRock Plan Class Are Properly Certified Under Rule
            23(b) ....................................................................................... 16
            1.   The Proposed Classes Meet the Requirements of Rule 23(b)(1)................... 16
                 a.   Failure to Certify the Proposed Classes Would Risk
                      Incompatible Standards of Conduct for Defendants......................... 17
                 b.   Actions by Individual Class Members Would Risk
                      Adjudications that Would Be Dispositive of the Interests of
                      Other Class Members.................................................... 18
            2.   The Proposed Classes Also Meet, in the Alternative, the Rule 23(b)(3)
                 Requirements of Predominance and Superiority ................................ 20
                 a.   Predominance......................................................... 20
                      (1)   Common Issues Predominate for the CTI Class ................... 21
                      (2)   Common Issues Predominate for the BlackRock Plan
                            Class ............................................................ 23
                      (3)   Damages Are Calculable on a Class-Wide Basis ................. 23
                 b.   Superiority.......................................................... 24
       C.   Plaintiffs' Counsel Should Be Appointed Class Counsel Pursuant to Rule
            23(g) ...................................................................................... 25

VI.    CONCLUSION................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. City Nat'l Corp.*,
   922 F.3d 880 (9th Cir. 2019) ....................................................................17

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................26

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................15

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by Johnson v.
   California*, 546 U.S. 499 (2005) ...............................................................18

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ..............................................................20

*Breeden v. Benchmark Lending Grp., Inc.*,
   229 F.R.D. 623 (N.D. Cal. 2005)..............................................................21

*Civil Rights Educ. & Enforcement Ctr. v. Hospitality Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ..................................................................14

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)....................................................................................30

*Cryer v. Franklin Templeton Res. Inc.*,
   2017 WL 4023149 (N.D. Cal. July 26, 2017) ................................. *passim*

*Dickey v. Advanced Micro Devices, Inc.*,
   2019 WL 251488 (N.D. Cal. Jan. 17, 2019) (Gilliam, J.)................15, 16, 19

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................15

*Green v. Occidental Petroleum Corp.*,
   541 F.2d 1335 (9th Cir. 1976) ..................................................................22

*Haddock v. Nationwide Fin. Servs., Inc.*,
   293 F.R.D. 272 (D. Conn. 2013)...............................................................29

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................19, 21, 30, 31

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ....................................................................19

*Harris v. Amgen, Inc.*,
   573 F.3d 728 (9th Cir. 2009) ...........................................................................21

*Harris v. Koenig*,
   271 F.R.D. 383 (D.D.C. 2010)......................................................................24, 25

*Immigrant Assistance Project of Los Angeles Cty. Fed'n. of Labor (AFL-CIO) v.
I.N.S.*,
   306 F.3d 842 (9th Cir. 2002) ...........................................................................16

*Jones v. NovaStar Fin., Inc.*,
   257 F.R.D. 181 (W.D. Mo. 2009) .....................................................................24

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .........................................................................30

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008)................................................................. *passim*

*Kayes v. Pac. Lumber Co.*,
   51 F.3d 1449 (9th Cir. 1995) ...........................................................................14

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014)............................................................23, 24, 26

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y 2017) .......................................................................18

*Mass. Mut. Life Ins. Co v. Russell*,
   473 U.S. 134 (1985)..........................................................................14, 15, 20

*Moreno v. Deutsche Bank Americas Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y Sept. 5, 2017).........................................................25, 26

*In re Northrop Grumman Corp. ERISA Litig.*,
   2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ..............................................15, 18, 25

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999).........................................................................................25

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)..................................................................15, 23, 26

*In re: Schering Plough Corp. ERISA Litig.*,
   589 F.3d at604 ..............................................................................................25

*Sec'y U.S. Dep't of Labor v. Koresko*,
   646 F. App'x 230 (3d Cir. 2016) ..............................................................15, 19, 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)..................................................................................15

*Sims v. BB & T Corp.*,
    2017 WL 3730552 (M.D.N.C. Aug. 28, 2017)................................................24

*State Street Bank and Tr. Co. v. Salovaara*,
    326 F.3d 130 (2d Cir. 2003)........................................................................15

*In re Syncor ERISA Litig.*,
    227 F.R.D. 338 (C.D. Cal. 2005)..................................................................22

*Taylor v. United Techs. Corp.*,
    2008 WL 2333120 (D. Conn. Jun. 3, 2008)..................................................24

*Tibble v. Edison Int'l*,
    2009 WL 6764541 (C.D. Cal. Jun. 30, 2009)................................................24

*Troudt v. Oracle Corp.*,
    325 F.R.D. 373 (D. Colo. 2018) ..................................................................24

*Tussey v. ABB, Inc*,
    2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ............................................23, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)......................................................................7, 26, 27

*Urakhchin v. Allianz Asset Mgmt. of Am.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ........................................16, 21, 25, 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).............................................................................16, 18

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016)..................................................................30

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ....................................................................31

STATUTES

29 U.S.C. § 1106..............................................................................................17, 20

29 U.S.C. § 1002(7) ...............................................................................................21

29 U.S.C. § 1110......................................................................................................27

29 U.S.C. § 1109......................................................................................................19

29 U.S.C. § 1132(a)(2)..................................................................................... *passim*

iv

**OTHER AUTHORITIES**

12 C.F.R. § 9.18(b)(1).....................................................................................................12

29 C.F.R. § 2510.3-101..............................................................................................11, 12

BlackRock 2009 Annual Report, *available at* https://tinyurl.com/y33ruvtm.....................11

BlackRock 2018 Annual Report, *available at* https://tinyurl.com/y4nmzame...................11

Comptroller's Handbook: Collective Investment Funds, May 2014, at 3, *available at*
     https://tinyurl.com/y3jnj6md ................................................................................11

DOL Information Letter, P.W.B.A. Adv. Op. F-4602A, 1991 WL 1167952, at *1-*3
     (Nov. 14, 1991) ......................................................................................................11

16 George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees*
     § 869......................................................................................................................20

Fed. R. Civ. P. 23(a)(1)-(4).................................................................................... *passim*

Fed. R. Civ. P. 23(b)(1)(A)................................................................................... *passim*

Fed. R. Civ. P. 23(b)(1)(B) .................................................................................. *passim*

Fed. R. Civ. P. 23(b)(3)........................................................................................ *passim*

Fed. R. Civ. P. 23(g) .....................................................................................................31

7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1772 (3d ed.)......................................23

# I.    INTRODUCTION

Plaintiffs Charles Baird and Lauren Slayton seek certification of two classes of participants in ERISA[2]-protected retirement plans whose assets were held in BlackRock managed funds during the Class Period.[3] Certification of the proposed classes is appropriate in this case because the claims arise from a single set of core evidence that has identical legal import for all members of both classes. ERISA fiduciaries owe uniform duties of loyalty and care to all plan participants and must avoid causing prohibited transactions which apply to plan participants in the same way. The claims here stem from BlackRock's misuse of ERISA-protected retirement assets under its care for BlackRock's own benefit, including paying itself exorbitant fees from the retirement savings of class members. If Plaintiffs prove their claims, the participants in each respective class will prevail as one. Conversely, if BlackRock's contention that it did not violate its fiduciary duties or engage in prohibited transactions is credited, then the participants in each class fail as a whole. Here, the claims and core facts are the same for all members of each class, making this case the prototypical class action.[4]

**The CTI Class**

BlackRock[5] is the trustee charged with managing the ERISA-protected assets held in the thirty collective trust investment funds[6] that delineate the CTI Class (the "BlackRock CTIs")[7], all of which are governed by two virtually identical trust documents. As a result, BlackRock is undisputedly an ERISA fiduciary to the plans that invest in the BlackRock CTIs, and owes them the same ERISA fiduciary duties, including managing the BlackRock CTIs prudently, with undivided loyalty to plan participants, and in accordance with the governing trust documents. On behalf of the CTI Class, which consists of all participants whose ERISA plans invested in the BlackRock CTIs, Plaintiffs allege

---

[2] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. Hereinafter, Plaintiffs refer to all ERISA sections using the U.S. Code citation.

[3] The "Class Period" for both classes is April 5, 2011 through the date of judgment or settlement.

[4] Moreover, any possible differences among class members concerning the computation of damages do not defeat certification. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

[5] Plaintiffs refer to BlackRock and its subsidiary BlackRock Institutional Trust Company, N.A., as "BlackRock" unless greater specificity is required.

[6] A collective trust investment fund, or "CTI," pools the assets of several institutional investors into a single commingled trust fund; a fiduciary manages and invests the pooled assets.

[7] *See* Declaration of Michelle C. Yau in Support of Pltfs' Mot. for Class Cert. ("Yau Decl.") Ex. 1.

1    ERISA violations against BlackRock for its fiduciary misconduct while managing the BlackRock

2    CTIs. Specifically, the CTI Class alleges that: (a) BlackRock, as trustee of the BlackRock CTIs, paid

3    itself excessive securities lending fees from the collective trust assets by keeping 50% of the CTIs' net

4    securities lending income for itself as fees; (b) BlackRock used its fiduciary power to pay itself

5    excessive cash management fees from the assets of six short term investment funds ("STIFs") which

6    held collateral belonging to the BlackRock CTIs; and (c) BlackRock selected and maintained

7    imprudent, ███████████████████████████ it managed, which caused ████████

8    ██████████████████ to the STIFs when the ████████████████████████

9    ████████████████████████████. BlackRock's violations of ERISA's

10   fiduciary standards and prohibited transaction rules caused losses to all the ERISA plans invested in

11   the BlackRock CTIs (including the BlackRock 401(k) Plan), thereby injuring all the plans in the CTI

12   Class in the same manner.

13        **The BlackRock Plan Class**

14        The BlackRock Plan Class consists of all participants and beneficiaries in BlackRock's 401(k)

15   Plan (the "Plan") during the Class Period. On behalf of the Plan, Plaintiffs allege that the Plan

16   fiduciaries, including Mercer (the outside investment consultant which provided investment advice for

17   the Plan), violated their ERISA duties of prudence and loyalty when they: 1) selected only

18   BlackRock's own funds for the Plan without considering non-BlackRock funds; and 2) maintained the

19   BlackRock funds in the Plan even when they underperformed their benchmarks and comparator funds

20   for years.  Plaintiffs also allege that the Plan fiduciaries, including Mercer, breached their fiduciary

21   duties and caused numerous prohibited transactions when they selected BlackRock funds for the Plan

22   which paid excessive securities lending and cash management fees to BlackRock. In fact, ████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████

25   ████████████. Because the Plan fiduciaries always acted with respect to the Plan as a whole, the

26   BlackRock Plan Class claims are paradigmatic class claims.

27        Class certification is manifestly appropriate here because Plaintiffs raise the same key legal

28   questions arising from the same core, operative facts as all members of the proposed CTI Class and

the BlackRock Plan Class. For example, did BlackRock pay itself impermissible and excessive fees for securities lending and cash management from retirement assets, and engage in ERISA-prohibited self-dealing? Did the ███████████████ BlackRock selected and maintained for funds holding CTI lending collateral violate BlackRock's duties of prudence and loyalty, as well as the governing trust documents? Win or lose, the answers to these questions, based on the same class-wide evidence, resolve the majority of the claims of the CTI Class and the BlackRock Plan Class (together referred to as the "Classes").

Importantly, both Classes should be certified as mandatory non-opt out classes under Rule 23(b)(1). First, both Classes are quintessential Rule 23(b)(1)(A) classes because they seek injunctive relief such as the removal of conflicted fiduciaries, which absent certification, could lead to inconsistent standards of conduct for Defendants. Second, both Classes should be certified under Rule 23(b)(1)(B) because the BlackRock Plan and the BlackRock CTIs are organized as trusts, in which the members of each Class share undivided beneficial interests. As a result, adjudication of Plaintiffs' claims concerning their beneficial interest in the BlackRock Plan and the assets of the BlackRock CTIs would necessarily dispose of other class members' interest in the Plan and the BlackRock CTIs, respectively. Finally, and alternatively, class certification is appropriate under Rule 23(b)(3) because the predominant core claims are identical for the class members of each Class.

## II.    PROPOSED CLASS DEFINITIONS

Plaintiffs Baird and Slayton are each participants in BlackRock's 401(k) Plan, which allows current and former employees to save for retirement. Ex. 2[8] at 17:2–17:4; Ex. 3 at 118:23–120:14.[9] Both of Plaintiffs' accounts in the BlackRock Plan have, at various times, been allocated directly or indirectly into BlackRock CTIs. Ex. 2 at 73:1–73:6; Ex. 3 at 146:9–146:18.[10] Accordingly, Plaintiffs seek certification of the following two Classes:

> **CTI Plan Class**: All participants (and their beneficiaries) whose employee benefit plans were governed by Title I of ERISA and invested directly or indirectly in the BlackRock CTIs listed at Ex. 1 during the Class Period.

---

[8] Unless otherwise noted, all cited Exhibits are to the Yau Declaration.
[9] *See also* Ex. 4 at BAIRD_0000642; Ex. 5 at BRPL_000070.
[10] *See also* Ex. 6 at BRPL_000140; Ex. 7 at BAIRD_0000510.

**BlackRock Plan Class**: All participants (and their beneficiaries) in the BlackRock Retirement Savings Plan during the Class Period.

## III.    FACTUAL & LEGAL BACKGROUND

### A.    The BlackRock CTIs and BlackRock's Securities Lending Program Are Central to the Claims of Both Classes

The principal facts are the same for the claims of both the CTI Class and the BlackRock Plan Class: BTC paid itself excessive fees for securities lending and cash collateral management from the retirement assets held in the BlackRock CTIs. The BlackRock Plan is or was invested in each of the BlackRock CTIs that delineate the CTI Class, and each of the BlackRock CTIs engage in securities lending. *E.g.*, Ex. 8, BAIRD_0203646. Thus, the excessive fees BlackRock charged to ERISA-protected retirement plans for securities lending services and for managing the lending cash collateral are relevant to both proposed Classes.

Securities lending is the process whereby a lending agent arranges a loan between the owner of securities and a third-party borrower, such as a hedge fund. Ex. 9 at BAIRD 0001698, 1701; Ex. 10 at BAIRD_0003098. In exchange for use of the security, the borrower provides cash collateral worth approximately 102% of the of the borrowed securities; Ex. 9 at BAIRD 0001698, 1701. This cash collateral is then re-invested in interest-bearing, short-term investment funds, or STIFs, to generate income for the BlackRock CTIs that own the securities being lent. *Id.*

BlackRock's subsidiary BlackRock Institutional Trust Company ("BTC") has served as the trustee, lending agent, and collateral reinvestment manager, for all BlackRock CTIs throughout the Class Period. Ex. 11, BAIRD_32318-20, 32663. As a result, BTC not only takes an exorbitant share of the securities lending income generated by the reinvestment of retirement assets held in the BlackRock CTIs, it also charges excessive fees to manage the STIFs which hold the cash collateral belonging to the BlackRock CTIs. For acting as lending agent to the BlackRock CTIs, BTC paid itself 50% of the net securities lending income generated with CTI assets and returned the remaining 50% to the CTIs (a "50-50 split"). *E.g.*, Ex. 10 at BAIRD_0002863 ███████████████████ ████████████████████████████████████████. For managing the reinvested cash collateral, BTC is paid cash management fees of between 5.0-5.6 basis points (bps) from the trust

1   assets held in the STIFs.[11] ECF No. 154, SAC ¶ 185; *E.g.*, Ex. 13 at BAIRD_0036240; Ex. 14 at

2   BAIRD_0017511 (█████████████████████). Ultimately, BTC receives *more* money than just

3   the 50% of securities lending income retained by the BlackRock CTIs, because BTC also earns a cash

4   management fee – which is deducted from the trust assets in the STIFs – before the 50-50 split of

5   lending income is applied. *E.g.*, Ex. 13, BAIRD_0036224 at 6240; Ex. 14, BAIRD_0017500 at 7511

6   (████████████████████████████████████████████████████

7   ████████████████████). This is true for all BlackRock CTIs.

8   ███ ████ ███ ███ █████ ████ ███ ███ ████ ███ ██ ███ ████

9   ███████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████

13  █████████████████████████████████████ BlackRock's efforts were quite

14  successful, as its securities lending-related revenue has increased over 1640% since 2009.[12]

15       B.    <u>The CTI Class Claims Arise From BlackRock's Control of ERISA-Governed Trusts That Hold Retirement Plan Assets</u>

16  ███████████████████████████████████████████████████████

17  █████████████████████████████ When an ERISA-protected

18  plan invests in a collective trust investment,[13] the plan's assets include an undivided interest in all the

19  CTI's underlying assets. 29 C.F.R. § 2510.3-101(h)(1)(ii); DOL Information Letter, P.W.B.A. Adv.

20  Op. F-4602A, 1991 WL 1167952, at *1-*3 (Nov. 14, 1991). As a result, ERISA governs the

---

[11] Basis points are a unit of measurement in finance, often used to disclose fees as a percentage of the asset base. One basis point (1.0) is equal to .01%, and 100 basis points is equal to 1.0%.

[12] *Compare* BlackRock 2009 Annual Report at 55, *available at* https://tinyurl.com/y33ruvtm (reporting that in 2009 "securities lending revenue totaled $36 million") *with* BlackRock 2018 Annual Report at 49, *available at* https://tinyurl.com/y4nmzame (reporting "Securities lending revenue of $627 million in 2018").

[13] Unlike mutual funds, CTIs are not subject to federal securities laws, and thus not subject to any Securities and Exchange Commission rules. SAC ¶ 165, ECF No. 154. As a result, the primary safeguard for collective trust investors are the terms of the plan documents; state fiduciary laws; and ERISA. Comptroller's Handbook: Collective Investment Funds, May 2014, at 3, *available at* https://tinyurl.com/y3jnj6md (hereinafter, "OCC Handbook").

1   management of the CTI and "any person who exercises authority or control respecting the management

2   or disposition of [the CTI's] underlying assets, [] is a fiduciary of the investing plan." 29 C.F.R. §

3   2510.3-101(a). Here, because ERISA plans invested in the BlackRock CTIs throughout the Class

4   Period, ERISA's fiduciary standards and prohibited transaction rules apply to how BTC managed the

5   trust assets held in the BlackRock CTIs. Ex. 18, BlackRock's 2d Suppl. Objections & Responses to

6   Plaintiffs' First Set of Interrogs., No. 2.

7          The BlackRock CTIs were established pursuant to one of two trust documents that prescribe

8   how BTC is to operate the trusts: the *Plan of BTC Investment Funds for Employee Benefit Trusts*,

9   dated Dec. 31, 2011 ("A Plan Document"), and the *Plan of BTC Investment Funds for Tax Exempt*

10  *and Foreign Organizations "Group B"* dated Dec. 31, 2011 ("B Plan Document").[14] Ex. 19; Ex. 20.

11  The A Plan and B Plan Documents (collectively, the "CTI Plan Documents") contain virtually

12  identical provisions defining BTC's power and responsibilities with respect to the trust assets held in

13  the BlackRock CTIs.[15] ███████████████████████████████████████████████████

14  ████████████████████████████████████████████ ■ ████████████

15  ███████████████████████████████████████████████████████

16  ████████████████████████████████████

17      ████████████████████████████████████████████████████

18  ███████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████

20  ████████. BTC thus maintains complete control of all matters related to the trusts (i.e., the BlackRock

21  CTIs). Throughout the Class Period, BTC caused its securities lending fees to be taken from the trust

22  assets held in the BlackRock CTIs and caused its cash management fees to be taken from the trust

23  assets held in the STIFs. Ex. 22, ███████████████████████████████████

24  ███████████████████████████████████████████████████████

25  ──────────────────────────

[14] ███████████████████████████████████████████████████

26  ████████████████████████████████████████████████

[15] For example, BlackRock witness Norbert Schnadt, who is the signatory to the CTI Plan Documents,

27  testified ██████████████████████████████████████████████████

28  ████████████████████████████████████████

[16] Ex. 19 at BAIRD_0049092 (§ 4.3); Ex. 20 at BAIRD_0051841 (§ 6.5).

1   ████████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ██████████████████████ The CTI Class alleges that BTC used its power as trustee of the BlackRock

5   CTIs to benefit itself, while harming participants.

6          The CTI Class also alleges that, because BTC keeps 50% of net lending income while the CTI

7   Class bears all risk of loss from reinvestment of cash collateral[17], BTC invested the two STIFs holding

8   the majority of the cash collateral, Cash Equivalent Fund II ("CEF II") and Cash Equivalent Fund B

9   ("CEF B"), ██████████████████████████████████████████████

10  (hereinafter, ██████████████████). *E.g.*, Ex. 23, BAIRD_0175330 (detailing assets held in the

11  STIFs). In 2011 and 2012, these investments in ██████████████, which violated the CTI Plan

12  Documents, ███████████████████████

13  █████████████████████████████. The question of whether BTC's decisions to maintain

14  the ██████████████ in CEF II and CEF B violated ERISA and the CTI Plan Documents will turn

15  on ERISA's fiduciary requirements and the interpretation of the trust documents, which apply to the

16  CTI Class as a whole. Significantly, the CTI Plan Documents mandate that ████████████████

17  ████████████████████████████████████████████████████████

18  ██████████████████████. ERISA and the CTI Plan Documents therefore create a

19  common standard that must be applied to each of the BlackRock CTIs, and by extension, to all the

20  retirement plans that invest in the CTIs.

21          C.      The BlackRock Plan Class Claims Relate to the Management of the BlackRock Plan

22          The BlackRock Plan Class claims revolve around the actions taken by fiduciaries of the

23  BlackRock 401(k) Plan, including Mercer, with respect to the Plan as a whole. These claims allege

24  that the Plan fiduciaries acted in BlackRock's interest and harmed participants in the BlackRock Plan

25  by choosing BlackRock's proprietary funds that paid BlackRock excessive securities lending and cash

26

27  _____

28  [17] BlackRock bears no risk of loss associated with securities lending transactions. Ex. 9 at BAIRD
    0001699 (noting "cash collateral is invested at the risk of the Lending Fund").

1  management fees, without considering non-BlackRock funds, even though the BlackRock funds

2  underperformed their benchmarks and comparable alternative funds.

3          The Plan is an ERISA-governed 401(k) plan that allows participants to save for retirement by

4  investing contributions in the Plan's investment options, which are limited to those selected by Plan

5  fiduciaries. Ex. 24 at BAIRD_0000177; Ex. 25 at 84:11-17. In 2009, BlackRock, Inc. acquired BTC,

6  as well as several BTC-managed CTIs. Ex. 26 34:19-35:7. Since that acquisition, the Plan's fiduciaries

7  continually added BTC-managed CTIs which engaged in securities lending to the Plan's investment

8  menu to align the Plan with ████████████████████████████████████████████████

9  ████████. *E.g.* Ex. 27 at BAIRD_0087645 ████████████████████████████████

10 ████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████. To support such marketing efforts to

12 ████████████████████████████████, virtually all the funds selected for the Plan during the

13 Class Period were BlackRock collective trust investment funds which charged excessive fees for

14 securities lending and cash management services. *See* Sutter Decl. ¶ 5. ████████████████

15 ████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████

17 ████. Moreover, several of the BlackRock proprietary funds in the Plan underperformed comparator

18 funds for years but were imprudently and disloyally maintained by Plan fiduciaries. *E.g.*, Ex. 29 at

19 BAIRD_0040188-89; Ex. 30, at MERCER00003900-02.

20              **IV.     STANDARDS FOR CLASS CERTIFICATION**

21          ERISA claims brought by participants on behalf of an ERISA-covered plan for a breach of

22 fiduciary duty may be brought as class actions. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462 (9th

23 Cir. 1995); *see also Mass. Mut. Life Ins. Co v. Russell*, 473 U.S. 134, 139-48 (1985) (§1132(a)(2)

24 actions are primarily meant for relief on behalf of a plan as a whole rather than for a lone beneficiary).

25 Plaintiffs must demonstrate by a preponderance of the evidence that they have met the two conditions

26 of Rule 23: (1) satisfaction of Rule 23(a)'s requirements of numerosity, commonality, typicality, and

27 adequacy of representation; and (2) a showing that their action falls into at least one of the categories

28 set forth in Rule 23(b). *Civil Rights Educ. & Enforcement Ctr. v. Hospitality Props. Tr.*, 867 F.3d 1093

(9th Cir. 2017); *Dickey v. Advanced Micro Devices, Inc*., 2019 WL 251488 at *2 (N.D. Cal. Jan. 17, 2019) (Gilliam, J.). In considering these criteria, the Court may assess the merits of the case only if they are relevant to whether the moving party satisfies Rule 23. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). If the Court concludes that Rule 23's requirements are met, it does not have discretion to deny class certification. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

## V.     ARGUMENT

Class certification is plainly warranted here because Plaintiffs assert ERISA claims based on evidence that is the same for all members within each of the Classes they seek to represent. First, the Rule 23(a) prerequisites are easily met because the same core evidence will resolve all liability issues for all members in each respective Class in one stroke. Second, certification under Rule 23(b)(1) is appropriate here because the claims of both Classes are brought under ERISA's plan-wide enforcement regime, namely § 1132(a)(2) and (3).[18] "Under those provisions, any relief benefits the plan [or trust] as a whole, not individual plaintiffs." *In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264 at *16 (C.D. Cal. Mar. 29, 2011) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141–44 (1985)). For these reasons numerous courts have recognized that "ERISA [fiduciary] litigation ... presents a paradigmatic example of a [Rule 23](b)(1) class." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (internal quotation omitted); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009). ("claims brought under § 502(a)(2) are

---

[18] In fact, even without Rule 23 certification, Plaintiffs could restore plan-wide and trust-wide losses to remedy fiduciary violations under § 1132(a)(2). Because all investing ERISA plans have an undivided beneficial interest in all underlying assets of the BlackRock CTIs, the restoration of all losses to the CTIs is the appropriate remedy under § 1132(a)(2) *See State Street Bank and Tr. Co. v. Salovaara*, 326 F.3d 130, 141 (2d Cir. 2003) (citing the plan asset regulation and rejecting argument that fiduciary held liable for mismanaging funds holding ERISA and non-ERISA assets was only required to restore the pro rata share of losses attributable to ERISA plans). ███████████████████, and with court decisions interpreting the meaning of "undivided beneficial interests" in the context of ERISA remedies. *Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230 (3d Cir. 2016) (affirming *Solis v. Koresko*, 884 F. Supp. 2d 261, 287 (E.D. Pa. 2012) (finding "ERISA plans can have assets by virtue of holding an undivided beneficial interest in commingled trust funds, even if other plans also own an undivided beneficial interest therein.")).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous

2  courts have held."). Alternatively, both Classes may also be certified under Rule 23(b)(3) as common

3  issues predominate.

4         **A.**    <u>Both Proposed Classes Meet the Rule 23(a) Requirements</u>

5         The proposed Classes meet the Rule 23(a) requirements of (1) numerosity, (2) commonality,

6  (3) typicality, and (4) adequacy of representation, each of which must be demonstrated for class

7  certification. *Dickey*, 2019 WL 251488 at *2. The four requirements are addressed in turn below.

8         **1.**    <u>The Proposed Classes Are So Numerous That Joinder is Impracticable</u>

9         Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

10  impracticable." Fed. R. Civ. P. 23(a)(1). While there is no minimum number of class members that

11  automatically satisfies the rule, the Ninth Circuit generally presumes that classes which exceed forty

12  members are sufficiently numerous. *Immigrant Assistance Project of Los Angeles Cty. Fed'n. of Labor*

13  *(AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002); *Dickey*, 2019 WL 251488 at *3. Numerosity

14  is easily established for the CTI Class and the BlackRock Plan Class alike. At least ███ ERISA-

15  governed pension plans invest in the BlackRock CTIs. Ex. 31 at BAIRD_0096277; Ex. 32 at

16  BAIRD_00133599. The BlackRock Plan, which is just one of the plans that invests in the BlackRock

17  CTIs, has over ███ participants. Ex. 33 at MERCER00051317. Joinder of the members of the

18  proposed Classes therefore would be impracticable.

19         **2.**    <u>Plaintiffs' Claims Involve Common Questions of Law and Fact</u>

20         Under Rule 23(a)(2), there must be "questions of law or fact common to the class." A question

21  is common where "it is capable of class-wide resolution," and determination of its "truth or falsity will

22  resolve an issue that is central to each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

23  564 U.S. 338, 350 (2011). One single common question is sufficient to establish commonality. *Dickey*,

24  2019 WL 251488 at *3 (citing *Dukes*); *Urakhchin v. Allianz Asset Mgmt. of Am.*, 2017 WL 2655678

25  at *4 (C.D. Cal. June 15, 2017) (certifying class under Rule 23(b)(1) in ERISA § 1132(a)(2) action).

26         Both the CTI Class and the BlackRock Plan Class raise the common questions of whether

27  BlackRock's securities lending fee split of 50% and its cash management fee of over 5 basis points

28  are permitted under ERISA's highly protective legal regime. And BTC's actions as trustee of the

BlackRock CTIs are at the heart of the excessive fee claims because BTC caused the payment of these fees from the commingled trust assets in the BlackRock CTIs which BTC managed. *See, e.g.*, Ex. 34 at 44:22-45:9; *see also e.g.*, Ex. 10 at BAIRD_0002863; Ex. 13 at BAIRD_0036240; Ex. 14 at BAIRD_0017511. This means that the actions BTC took to cause the prohibited transfers of fees, which violated 29 U.S.C. §§ 1106(a)(1)(D) and (b)(1), were the same for all CTI Class members. As a result, both Classes raise common questions concerning whether BTC engaged in self-dealing and caused multiple, repeated prohibited transfers of fees from the BlackRock CTIs' assets to itself.[19] These questions will rely on the same evidence for all Class Members. To begin with, BlackRock has

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████. Ex. 22, BlackRock Responses to RFA Nos. 206-254. And a core set of documents establish that the 50-50 split BTC took for acting as the lending agent was excessive and thus not reasonable. ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████.

     Likewise, a core body of evidence establishes that BTC's cash management fees were unreasonable. Ex. 16 at BAIRD_0095052 (████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████); Ex. 17 (█████████████████████). Thus, these questions, which undergird all of Plaintiffs' claims on behalf of both Classes and are "central to the determination of liability"

---

[19] The Ninth Circuit recently re-affirmed that a fiduciary that engages in self-dealing under ERISA § 406(b) [29 U.S.C. 1106(b)] cannot earn reasonable compensation, even if the challenged compensation was taken for "actual and legitimate services rendered." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 886 (9th Cir. 2019). As such, the Court's determination whether BTC's transfer of cash management fees to itself constituted self-dealing prohibited by 29 U.S.C. 1106(b)(1) resolves a central, dispositive contention for all Class Members.

here, would generate common answers to drive resolution of this case. *Dukes* at 350, 359; *see also Glass Dimensions*, 285 F.R.D. at 177 (finding commonality regarding similar issues).

The claims of the BlackRock Plan Class raise additional common questions, based on one core set of documents and testimony,  about the management of the BlackRock Plan, including: (1) whether the Retirement and Investment Committee Defendants, Mercer, and BTC are ERISA fiduciaries to the BlackRock Plan; (2) whether those fiduciaries violated ERISA when they selected and maintained BlackRock funds for the Plan without considering the fees associated with securities lending and collateral management; (3) whether Defendants' selection and maintenance of the BlackRock funds in the Plan, without adequately considering non-BlackRock alternative funds that were better performing, charged lower fees, or both, was tainted by BlackRock's self-interest; and (4) whether Defendants have joint and several liability for the alleged prohibited transactions and breaches of fiduciary duty. *Supra* III.C. ERISA Plaintiffs asserting similar claims are routinely found to satisfy Rule 23(a)(2)'s requirements. *In re Northrop Grumman*, 2011 WL 3505264, at *8 (finding question of whether defendants in an ERISA case were plan fiduciaries, among others, sufficient to demonstrate commonality).[20] In ERISA breach of fiduciary duty cases, as here, the "common focus is on the conduct of Defendants" and how it injured the retirement plan as a whole. *Kanawi*, 254 F.R.D. at 109 ("Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the Defendants' conduct affected the pool of assets" in the 401(k) plan). Such plan-wide systematic conduct is particularly appropriate for adjudication on a class-wide basis. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 546 U.S. 499 (2005) (commonality satisfied where "lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

---

[20] *See also Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 108 (N.D. Cal. 2008) (similar questions of law and fact "sufficient to satisfy the permissive requirements of Rule 23(a)."); *Cryer v. Franklin Templeton Res. Inc.*, 2017 WL 4023149 at *5 (N.D. Cal. July 26, 2017) (commonality met where all class members participated in Plan, and participation "is governed by the same written document"); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y 2017) (commonality found where plaintiffs identified "at least two questions" capable of classwide resolution: whether defendants improperly favored proprietary funds and failed to prudently and loyally monitor plan investments).

3.      Plaintiffs' Claims Are Typical of Both Classes

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is satisfied where "the named plaintiff has the same or similar injury as the unnamed class members, [and] the action is based on conduct which is not unique to the named plaintiff." [21] *Cryer*, 2017 WL 4023149 at *5 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) and finding ERISA claims typical). Courts in the Ninth Circuit apply a "permissive" standard to Rule 23(a)(3), so that a plaintiff's claims need only be "reasonably co-extensive with those of absent class member," not "substantially identical." *Dickey*, 2019 WL 251488, at *4 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiffs easily clear this hurdle because they bring their claims under 29 U.S.C. § 1132(a)(2), which authorizes suits by ERISA participants to seek restore losses to a plan or trust as a whole.[22]

The representative nature of an ERISA participant suit brought on behalf of an entire plan or trust all but ensures that Plaintiffs' claims are typical of those of any other participant seeking redress for Defendants' actions. *See Kanawi*, 254 F.R.D. at 110; *Cryer*, 2017 WL 4023149, at *6. With respect to the CTI Class, Plaintiffs seek to restore losses to the ERISA plan assets held in the BlackRock CTIs that resulted from BTC's excessive securities lending and cash management fees. Courts have found the typicality requirement met for similar ERISA classes asserting similar claims. *E.g., Glass Dimensions*, 285 F.R.D. at 178 (finding typicality satisfied where plaintiff's injuries arose from the same 50% securities lending fee split paid by class members). This is not surprising given ERISA's fiduciary standards and prohibited transaction rules apply uniformly to all plans that invested in the BlackRock CTIs and thus held undivided beneficial interests in their assets. *Koresko*, 884 F. Supp. 2d at 287 (interpreting meaning of "beneficial interest" within the context of DOL's "plan asset" regulation and holding that "ERISA plans can have assets by virtue of holding an undivided beneficial interest in commingled trust funds, even if other plans also own an undivided beneficial interest

---

[21] When ERISA plaintiffs allege plan-wide misconduct, the typicality inquiry focuses on "defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Kanawi*, 254 F.R.D. at 110.
[22] Section 1132(a)(2) authorizes participants to obtain relief under § 1109, which in turn makes a fiduciary liable to the plan for all plan losses resulting from his or her fiduciary violations. 29 U.S.C. §§ 1132(a)(2) and 1109. This is likewise true for the BlackRock CTIs. *See* footnote 17, *supra*.

1    therein."); 29 C.F.R. § 2510.3-101(a). ████████████████████████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████. In short, because all ERISA plans invested

6    in the BlackRock CTIs have overlapping beneficial interests in the CTI assets held therein, their

7    overlapping interest should be adjudicated together. For this reason, courts have certified similar

8    claims involving fiduciary mismanagement of ERISA plan assets held in pooled investments. *In re*

9    *Beacon Assocs. Litig.*, 282 F.R.D. 315, 338–39 (S.D.N.Y. 2012) (certifying ERISA class of

10   participants and fiduciaries whose ERISA-covered plans invested in the Beacon Fund, and noting that

11   the legislative history showed Congressional intent to allow participants in covered plans to enforce

12   their rights under ERISA via the class action device).

13        Similarly, Plaintiffs' claims on behalf of the BlackRock Plan Class allege breaches of fiduciary

14   duties owed to the Plan as a whole. Plaintiffs, like all members of this Class, are participants in the

15   BlackRock Plan. *Supra* at III.C. When the BlackRock Plan fiduciaries selected and maintained funds

16   for the Plan, they did not and could not act in a manner unique to individual participants in the Plan.

17   Here, because the class claims are entirely predicated on actions that the BlackRock Defendants and

18   Mercer took with respect to the Plan as a whole, there are no unique claims or unique defenses. Thus,

19   the typicality requirement is plainly satisfied. *Kanawi*, 254 F.R.D. at 110 (typicality met in ERISA

20   case where claims and recovery related to plan as a whole; no facts or claims unique to plaintiffs).

21                 4.    Plaintiffs and Their Counsel Are Adequate

22        To conclude that "the representative parties will fairly and adequately protect the interests of

23   the class," as required by Rule 23(a)(4), the Court must find that Plaintiffs and their counsel (1) have

24   no serious conflicts of interest with other class members, and (2) will prosecute the action "vigorously

25   on behalf of the class." *Hanlon*, 150 F.3d at 1020. Plaintiffs and their counsel satisfy this test.

26        First, only "serious and irreconcilable" conflicts will demonstrate inadequacy. *Breeden v.*

27   *Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005). None exist here. As discussed

28   above, every class member in the CTI Class and the BlackRock Plan Class, respectively, is identically

situated. All members of the CTI Class, including Charles Baird and Lauren Slayton, are participants in ERISA plans that invested in one or more of the BlackRock CTIs. Ex. 2 at 86:16-87:2.[23] For the BlackRock Plan Class, all Class members are participants in or beneficiaries of the BlackRock Plan. ECF No. 154, SAC ¶ 482. Defendants owe the same fiduciary duties to Plaintiffs and all members of the proposed Classes, and Plaintiffs' ERISA § 1132(a)(2) claims are brought on behalf of the Plan as a whole. *See Russell*, 473 U.S. at 141, n. 9 (holding that § 1132(a)(2) claims are brought on behalf of the ERISA plan as a whole, not on behalf of individual beneficiaries of the plan). Where, as here, the ERISA breach of fiduciary duty claims of Plaintiffs and proposed Class members are "virtually coextensive," courts have easily concluded that representative plaintiffs have no conflicts with the proposed class. *See Urakhchin*, 2017 WL 2655678 at *6; *see also Kanawi*, 254 F.R.D. at 111 (noting, in a § 1132(a)(2) case seeking relief on behalf of a plan, plaintiffs had "incentive to maximize the recovery" of the plan because their assets would be affected by the outcome).

Second, Plaintiffs and their counsel have demonstrated that they will adequately protect the interests of the Classes they seek to represent. Plaintiffs Baird and Slayton were each deposed by Defendants, and "demonstrated familiarity with the underlying theory of the case[.]" *Kanawi*, 254 F.R.D. at 110; *see also e.g.*, Ex. 3 at 39:7-13; Ex. 2 at 21:7-17, 24:10-25:23; Yau Decl. ¶ 24. Plaintiffs are not required "to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained." *Id.*; *Cryer*, 2017 WL 4023149 at *6 (noting a class representative must only be "familiar with the basic elements of her claim"). And Plaintiffs' counsel, as "experienced attorneys dedicated to litigating ERISA class action cases of this scope and complexity," are likewise adequate under Rule 23(a)(4). *Kanawi*, 254 F.R.D. at 111; Yau Decl. ¶¶ 6-23; Decl. of Nina Wasow in Support of Plaintiffs' Motion for Class Certification, ¶¶ 3, 4, 7-12. Cohen, Milstein, Sellers & Toll and Feinberg, Jackson, Worthman, & Wasow have been appointed class counsel in many similar cases alleging fiduciary violations on behalf of plan participants. Yau Decl. ¶

---

[23] Though Plaintiff Baird took his assets out of the BlackRock Plan in 2018, he is a Plan participant because he has a colorable claim to benefits in the amount of the excessive fees paid. Ex. 3 at 163:12-16; *see Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009) (finding that "employees who cash out of a defined contribution ERISA plan are still 'participants' in that plan, as defined by 29 U.S.C. § 1002(7)" and concluding that former plan participant had standing to sue under § 502(a)(2)); *see also Cryer*, 2017 WL 4023149, at *4.

1  21, Wasow Decl. ¶¶ 3-4. Plaintiffs' counsel agrees to and has already advanced significant costs of

2  this litigation contingent on the outcome. Yau Decl. ¶ 26. The adequacy prong is satisfied.

3          B.      The CTI Class and BlackRock Plan Class Are Properly Certified Under Rule 23(b)

4          Because Plaintiffs have met the threshold requirements of Rule 23(a), the Court may next

5  consider whether the proposed Classes fall into one of the Rule 23(b) categories. Here, the proposed

6  Classes may be certified pursuant to Rule 23(b)(1)(A) and (B), or in the alternative, Rule 23(b)(3).

7  Importantly, when a class is eligible for certification under both Rules 23(b)(1) and 23(b)(3), "[Rule

8  23](b)(1) is held to govern to avoid the multiplicity of suits," and prevent separate litigation by

9  individual class members who may elect to opt out. *Green v. Occidental Petroleum Corp.*, 541 F.2d

10  1335, 1339–40 (9th Cir. 1976); *see also In re Syncor ERISA Litig.*, 227 F.R.D. 338, 347 (C.D. Cal.

11  2005) (declining to address certification under Rule 23(b)(3) after certifying ERISA class under Rule

12  23(b)(1)(B)). Thus, if the Court finds the Classes satisfy Rule 23(b)(1), it may end its inquiry there.

13          1.      The Proposed Classes Meet the Requirements of Rule 23(b)(1)

14          A class may be certified under Rule 23(b)(1) where separate individual actions by proposed

15  class members would create the risk of (A) "inconsistent or varying adjudications with respect to

16  individual class members that would establish incompatible standards of conduct for the party

17  opposing the class;" or (B) individual adjudications "that, as a practical matter, would be dispositive

18  of the interests of the other members not parties to the individual adjudications or would substantially

19  impair or impede their ability to protect their interests[.]" Rule 23(b)(1)(A) focuses on the need for

20  uniform standards of conduct for a defendant, while 23(b)(1)(B) considers potential prejudice to the

21  members of the putative class whose claims may be disposed of by claims brought in a previous action

22  where they were not represented. *Kanawi*, 254 F.R.D. at 111. Here, certification of the proposed

23  Classes is appropriate under both subdivisions of Rule 23(b)(1).[24]

24          Here, both proposed Classes should be certified as mandatory non-opt out classes because

25  ERISA claims "brought under § 502(a)(2) are paradigmatic examples of claims appropriate for

26  certification as a Rule 23(b)(1) class, as numerous courts have held." *See, e.g., In re Schering Plough*

27

28  ────────────────────
[24] "[I]t is quite common for suits brought under [Rule 23](b)(1) to meet both the test for clause (A) and for clause (B) of that provision." 7AA Wright & Miller, Fed. Prac. & Proc. Civ. § 1772 (3d ed.).

*Corp. ERISA Litig.*, 589 F.3d at 604. Courts have repeatedly recognized that "most ERISA class action cases are certified under Rule 23(b)(1)" and followed suit. *Cryer*, 2017 WL 4023149, at *6 (certifying under Rule 23(b)(1)) (internal citation omitted); *Kanawi*, 254 F.R.D. at 111-12 (same, and certifying class under Rule 23(b)(1)(A)); *Tussey v. ABB, Inc*, 2007 WL 4289694, *8 (W.D. Mo. Dec. 3, 2007) (certifying class under Rule 23(b)(1)(A)).

a.   *Failure to Certify the Proposed Classes Would Risk Incompatible Standards of Conduct for Defendants*

The proposed Classes should be certified under Rule 23(b)(1)(A) to prevent inconsistent standards of conduct for BTC, BlackRock and the other fiduciary defendants named. Here, Plaintiffs seek substantial equitable and injunctive relief on behalf of both proposed Classes, which creates a high risk of "incompatible standards of conduct" for the defendants, absent certification. *See Kanawi*, 254 F.R.D. at 111; ECF No. 154, SAC Prayer for Relief for both Classes. For example, because BTC is the trustee of all the BlackRock CTIs and an ERISA fiduciary to all the plans invested therein, absent certification, this Court could order removal of BTC as the Trustee of the BlackRock CTIs, while another court could allow BTC to remain Trustee but enjoin BTC from paying itself any fees from the BlackRock CTIs it manages as a fiduciary. Likewise, for the BlackRock Plan Class, this Court could order removal of some but not all the current individual fiduciaries of the BlackRock Plan, while another court could order removal of all current fiduciaries. *Id*; *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2014) (class certification appropriate where the removal of fiduciaries to an ERISA plan could conflict with another court's ruling on the same issue). Similarly, if this Court were to enter an injunction allowing BTC to remain as securities lending agent if it did not charge more than a 10% lending split for its fee, this could conflict with an injunction from another court requiring that the BlackRock CTIs use an outside (non-BlackRock) lending agent. Finally, an injunction requiring the defendants for either Class to create a constructive trust to hold disgorged gains, fees, and profits wrongly obtained through their conduct could conflict with a judgment in another case declining to grant such relief. *See Tibble v. Edison Int'l*, 2009 WL 6764541, at *8 (C.D. Cal. Jun. 30, 2009). Here, certification of both Classes under Rule 23(b)(1)(A) would prevent such undesirable results. *Cryer*, 2017 WL 4023149 at *6 (noting ERISA fiduciaries "must apply uniform

17

stands to a large number of beneficiaries," so a "significant risk of inconsistent judgments" existed without class certification).

Hundreds of retirement plans invest in the BlackRock CTIs, each with hundreds or thousands of participants – including the ▮▮▮▮ plus participants in the BlackRock Plan. Ex. 33 at MERCER00051317. And all are owed the exact same ERISA fiduciary duties by BTC. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. 16 George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 869, at 119 (when a beneficiary sues to vindicate the trust's interest, "[t]he beneficiary is not enforcing his own cause of action, but is acting as a temporary representative of the trust."). Thus, the prospect of a large number of suits concerning BTC's conduct as the trustee of the BlackRock CTIs and an ERISA fiduciary to all CTI Class members, and the concomitant risk of varying and inconsistent judgments, is high. *See Kanawi*, 254 F.R.D. at 111. To eliminate this risk, this Court should follow the numerous other courts which have granted certification under 23(b)(1)(A) in ERISA actions requesting relief similar to that sought by Plaintiffs. *Troudt v. Oracle Corp.*, 325 F.R.D. 373, 381 (D. Colo. 2018) (certifying 23(b)(1)(A) class where "fiduciary duties implicated are owed to all members of the various classes."); *see also Tibble*, 2009 WL 6764541 at *8-9; *Krueger*, 304 F.R.D. at 577; *Tussey*, 2007 WL 4289694 at *8; *Sims v. BB & T Corp.*, 2017 WL 3730552, at *6 (M.D.N.C. Aug. 28, 2017); *Cryer*, 2017 WL 4023149 at *6; *Harris v. Koenig*, 271 F.R.D. 383, 394 (D.D.C. 2010); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009); *Taylor v. United Techs. Corp.*, 2008 WL 2333120, at *5-6 (D. Conn. Jun. 3, 2008).

          b.    *Actions by Individual Class Members Would Risk Adjudications that Would Be Dispositive of the Interests of Other Class Members*

Both Classes are certifiable under Rule 23(b)(1)(B) because this Court's rulings here would likely be dispositive of the interests of the members of both proposed Classes who subsequently seek to cure the same harm alleged by Plaintiffs here. Indeed, numerous courts have noted that a "classic example" of a Rule 23(b)(1)(B) action is one alleging "a breach of trust by [a] … fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *E.g., Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *8 (S.D.N.Y Sept. 5, 2017) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999)).

This is especially true for ERISA claims brought under § 1132(a)(2), which are "with respect to a plan [or trust]" and are intended to collectively protect the interests of all participants and beneficiaries of such plans. *Urakhchin* at *8; *In re Northrop Grumman Corp.*, 2011 WL 3505264 at *18 (certifying ERISA 1132(a)(2) claims under Rule 23(b)(1)(B)); *Harris*, 271 F.R.D. 383 (same); *In re: Schering Plough Corp. ERISA Litig.*, 589 F.3d at 604 (affirming certification of ERISA 1132(a)(2) claims under Rule 23(b)(1)(B)). Likewise, here, Plaintiffs bring their § 1132(a)(2) claims to protect the interest of the BlackRock Plan as a whole, and all plans invested in the BlackRock CTIs.[25]

For example, both Classes challenge the securities lending fees and STIF-related cash management fees taken from trust assets. ECF No. 154, SAC ¶¶ 508, 534-35, 596-601. BTC's conduct in taking fees from commingled trust assets is the same for every retirement plan invested in each of the BlackRock CTIs. Accordingly, if this Court were to determine that BTC's 50% lending fee charged to the BlackRock CTIs is excessive, this would be dispositive of a similar claim by another participant the BlackRock Plan or any other plan invested in the BlackRock CTIs. Similarly, if the Court were to hold here that BTC's purchase and holding of Subprime Securities violated ERISA and the CTI Plan Documents, those holdings would be dispositive of subsequent claims by other participants whose ERISA plans invested in the BlackRock CTIs.  As discussed previously, because the BlackRock CTIs are ERISA-governed trusts which hold commingled plan assets belonging to all the ERISA plan investors together, *Koresko*, 884 F. Supp. 2d at 287, Plaintiffs' claims are dispositive of all CTI Class members' claims seeking to enforce the trust duties BTC owes to the CTIs as a whole. Ex. 19 at BAIRD_0049092 (§ 4.2); Ex. 20 at BAIRD_0051840 (§ 6.2) ████████████████████ ██████████████████████████████████████████████████████ Indeed, the "structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan," including by "structur[ing] relief in terms of the plan and its accounts, rather than directly for the individual participants." *Moreno*, 2017 WL 3868803 at *8 (internal quote omitted).

---

[25] *See also* Fed. R. Civ. P. 23, Advisory Committee notes (1966 Amendment) (Rule 23(b)(1)(B) certification is appropriate when "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.").

Similarly, Plaintiffs' claims on behalf of the BlackRock Plan are brought on behalf of the Plan as a whole, and "are not based on 'unique facts' and 'individual relationships' with the [D]efendants." *In re: Schering Plough*, 589 F.3d at 604. For example, adjudication of Plaintiffs' claim that the BlackRock Defendants and Mercer breached the fiduciary duties owed to the BlackRock Plan by selecting and maintaining the underperforming proprietary LifePath funds in the Plan, without considering any non-BlackRock alternatives, would decide the issue for all other participants in the BlackRock Plan. Thus, this case will, as a practical matter, dispose of the interests of other participants, or impact their ability to protect their interests. Accordingly, Rule 23(b)(1)(B) certification is appropriate. *Id.* at 604-05 (affirming Rule 23(b)(1)(B) certification of claims brought on behalf of a plan for defendants' "alleged breaches of fiduciary duty … that will, if true, be the same with respect to every class member[.]"); *Moreno*, 2017 WL 3868803 at *8 (certifying Rule 23(b)(1)(B) class where plaintiffs sought damages, removal of plan fiduciaries, and other equitable relief which, "if ordered, would … dispose of the interests of non-party participants."). As courts have routinely recognized, Plan fiduciaries "cannot manage the Plan in an individualized fashion for each Plan participant[.]" *Urakhchin*, 2017 WL 2655678 at *8; *Krueger*, 304 F.R.D. at 578 (same).

### 2. The Proposed Classes Also Meet, in the Alternative, the Rule 23(b)(3) Requirements of Predominance and Superiority

This Court need not decide Rule 23(b)(3) certification if the Classes are certified under Rule 23(b)(1). *Cryer*, 2017 WL 4023149 at *7. However, in the alternative, Plaintiffs seek Rule 23(b)(3) certification of the proposed Classes, which has two requirements: predominance and superiority.

#### a. *Predominance*

The first prong of the Rule 23(b)(3) requirement is that "questions of law or fact predominate over any questions affecting only individual members." The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This requires the Court to assess the common and individual questions at issue. A question is common where "the issue is susceptible to generalized, class-wide proof," while an individual question is one where class members "will need to present evidence that varies from member to member." *Tyson Foods, Inc.*, 136 S.Ct. at 1045 (internal

quotation, citation omitted). Common questions predominate where they are "more prevalent or important than the non-common, aggregation-defeating individual issues." *Id*.

(1)     Common Issues Predominate for the CTI Class

As described above (*supra* at V.A.2), the CTI Class claims turn almost entirely on common questions because they concern how BTC, as trustee, misused the trust assets held in the BlackRock CTIs and the six STIFs in which the BlackRock CTI cash collateral was reinvested. And the BlackRock CTIs and the STIFs are uniformly governed by the CTI Plan Documents, ██████████ ████████████████████████████████████████████. Thus, the Court's interpretation of the CTI Plan Documents will dispose of most of the key questions in this case. *Supra* III.B; *see also Glass Dimensions*, 285 F.R.D. at 177 (commonality found where relevant "funds are governed by a 'Declaration of Trust,'" dictating how funds are managed, and trustee's duties). While BTC has argued that other fiduciaries had discretion over its securities lending and cash management fees, and thus BTC had no fiduciary responsibility to ensure that the fees it took from the trust assets in the BlackRock CTI were reasonable, ECF No. 181 at 16-17, the CTI Plan Documents undermine this argument for all CTI Class members alike. █████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████.[26] Moreover, the CTI Plan documents expressly state ███████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████.[27]

_____

[26] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████

[27] Importantly, though BlackRock contends that "independent plan fiduciaries appoint BTC … [and] approved the terms of BTC's compensation" purportedly by contract, this argument is easily rejected. ECF No. 181, BlackRock MTD at 16. Any contract provision that purports to relieve BTC of its duty, under ERISA and the CTI Plan Documents, to ensure its fees are reasonable would be "void as against public policy" under 29 U.S.C. § 1110(a).

21

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    All liability questions are answered by common sources of proof applicable to all members of

2   the CTI Class as a whole. For example, whether the securities lending and cash management fees BTC

3   paid itself from the BlackRock CTIs are permissible are class-wide questions which will be answered

4   by financial documents for the BlackRock CTIs.[28] A core set of documents show that BTC was aware

5   that ███████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████

8   ███████████). Finally, the reasonableness of BTC's fees must be answered by reference to the

9   CTI Plan Documents, which require ████████████████████████████████████

10  ███████████████████████████████████████████████████████████████

11  ████████████████████; *see also* Ex. 21 at 84:11-85:6; OCC Handbook at 16 (trustee of

12  collective fund must "evaluate[] fees to ensure they are reasonable."). And the BlackRock CTIs here

13  are ██████████ (Sutter Decl. ¶ 3); BTC as the trustee therefore should have leveraged the ███ of the

14  CTIs to command a much lower fee for securities lending and cash management services.

15    Certification of the CTI Class under Rule 23(b)(3) is also consistent with *Glass Dimensions,*

16  which certified a very similar class. 285 F.R.D. at 179-81 (certifying a class of ERISA plan investors

17  alleging excessive securities lending fees charged by State Street to its collective trust investment

18  funds). In *Glass Dimensions*, the central issues were the same as found here: whether State Street owed

19  a fiduciary duty to the class, and whether that duty was breached when State Street "negotiate[d] an

20  unreasonable fee split for the lending funds." *Id.* at 180. Like here, the plaintiff's claims "rest only on

21  federal law, ERISA, intended to establish standards of conduct, responsibility, and obligations for

22  fiduciaries," and were "subject to common proof" because they rest on trust documents that were

23  "applicable to all the lending funds in question." *Id.* (citation omitted). The court found that "[b]ecause

24  the reasonableness of the fee split itself is the central issue … common issues predominate,"

25  notwithstanding individual "differences between the [lending] funds." *Id.* The same is true for the

---

26  [28] *E.g.*, Ex. 10 at BAIRD_0002863 (████████████████████████████████████████

27  ██████████████████████████████████████████████████████████);
    Ex. 13 at BAIRD_0036240; Ex. 14 at BAIRD_0017511 (█████████████████████████

28  ███████████████████████████████████████████████████).

1   proposed Classes here—Plaintiffs' claims revolve around ERISA's requirements as well as the CTI

2   Plan documents, ███████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████. Significantly,

5   the challenged fees "remain the same even though other fees connected to the lending funds may

6   vary[,]" so that any variation – such as with respect to the investment management fees paid by

7   individual retirement plans invested in the BlackRock CTIs – does not defeat the common, aggregable

8   questions regarding the reasonableness of the securities lending or cash management fees paid out of

9   the CTIs. *Glass Dimensions*, 285 F.R.D. at 177, 180; *see also* Ex. 10 at BAIRD_0002863.

10                        (2)      Common Issues Predominate for the BlackRock Plan Class

11          With respect to the BlackRock Plan Class, questions of whether the fiduciaries who picked the

12   funds for the BlackRock Plan violated their fiduciary duties by giving preferential treatment to

13   BlackRock funds are answered entirely by reference to the fiduciary defendants' actions, and thus

14   apply to the Class as a whole. For example, whether the BlackRock Plan fiduciaries engaged in a

15   prudent and loyal process when adding virtually all BlackRock proprietary CTIs which engaged in

16   securities lending (Sutter Decl. ¶ 5) to the Plan menu without adequately considering non-BlackRock

17   funds, is a question common to all members of the Class. Indeed, there are no individualized factual

18   or legal issues here, because the Plan fiduciaries' actions and omissions—in selecting and maintaining

19   investment options for the Plan, and in failing to evaluate, or to disclose to participants, the securities-

20   lending relating fees—were actions taken with respect to the BlackRock Plan as a whole. As explained

21   above, the Plan fiduciaries cannot act on an individual basis for any participant in the Plan. As such,

22   the BlackRock Plan claims are suitable for class treatment. *Haddock v. Nationwide Fin. Servs., Inc*.,

23   293 F.R.D. 272, 281-86 (D. Conn. 2013) (granting 23(b)(3) certification in ERISA case where

24   challenged actions were uniform at the Plan level).

25                        (3)      Damages Are Calculable on a Class-Wide Basis

26          The proposed Classes each seek to restore losses caused by Defendants' breaches of fiduciary

27   duty and prohibited transactions under § 1132(a)(2), and alternatively under § 1132(a)(3).

28   Accordingly, Plaintiffs' expert, Dr. Charles Cowan, opined that he could reliably calculate damages

1    "on a classwide basis" using a common set of documents and data for both proposed Classes, and that

2    the damages he modeled were "traceable to the same injurious course of conduct underlying

3    [Plaintiffs'] legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting

4    *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)); Ex. 35, Cowan Rep. ¶¶ 6-9. First, Dr. Cowan

5    describes a methodology to calculate damages arising out of Plaintiffs' claims that BTC paid itself

6    impermissible securities lending fees and cash management fees from CTI assets over which BTC had

7    control. Cowan Rep. ¶¶ 30-36, 45-57 (explaining that the differences resulting from the Court-

8    determined reasonable fees and the fees paid by the BlackRock CTIs will be used to calculate damages

9    for securities lending-related fees). Simply put, where BlackRock charged impermissible fees to the

10   CTIs, the damages methodology would return a pro-rata share of those fees to the retirement plans,

11   who then would return those fees to plan participants. Second, Dr. Cowan provides a methodology to

12   calculate damages from losses related to BTC's retention of the ███████████████ for CEF II and

13   CEF B. *Id*. ¶¶ 37-9, 58-64. Third, the Cowan Report sets forth a methodology for calculating

14   underperformance damages for the entire BlackRock Plan Class. *Id*. ¶¶ 40-43, 65-68 (stating

15   underperformance damages can be calculated using a comparator or benchmark, set by the Court, for

16   each challenged fund). Thus, Dr. Cowan shows that damages are calculable and the methodology to

17   calculate damages is the same for all members of the proposed Classes. This is sufficient to meet the

18   Rule 23(b)(3) standard. *Just Film*, 847 F.3d at 1120.

19                        b.     *Superiority*

20        "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives

21   of the particular class action procedure will be achieved in the particular case[,]" which "necessarily

22   involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d

23   at 1023 (considering burden on judiciary of individual claims, recoveries available under state laws,

24   and costs of litigation compared to potential recovery).

25        The superiority requirement is easily satisfied here. Judicial economy weighs in favor of class

26   certification due to the multiplicity of individual cases that could arise if class certification is denied.

27   *See Wit v. United Behavioral Health*, 317 F.R.D. 106, 141 (N.D. Cal. 2016). Additionally, due to the

28   complex legal theories at issue and the sheer size of BlackRock—which touts itself as the largest asset

1   manager in the world (*see, e.g.* ECF No. 181 at 2)—litigation costs and risks would strongly deter

2   individuals from litigating these claims on a personal basis. *See Hanlon*, 150 F.3d at 1023; *Wolin v.*

3   *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (where individual recovery

4   would be "dwarfed" by cost of litigating on individual basis, class certification warranted).

5        Moreover, class resolution does not present any particular difficulties. *See* Fed. R. Civ. P.

6   23(b)(3)(D). Rather, Plaintiffs seek recovery on behalf of the BlackRock Plan Class and on behalf of

7   participants in retirement plans invested in the BlackRock CTIs and seek to return ill-gotten gains to

8   the plans as a whole, rendering a class action superior to the litigation of individual claims. *Id.* at

9   23(b)(3)(A). The claims of the entire class may be adjudicated in the Northern District of California,

10  under the same body of federal law. *Id.* at 23(B)(3)(C). Finally, Plaintiffs are not aware of other

11  litigation between Defendants and proposed Class members regarding the claims in this case. Yau

12  Decl. ¶27; Fed. R. Civ. P. 23(B)(3)(B).

13        C.      Plaintiffs' Counsel Should Be Appointed Class Counsel Pursuant to Rule 23(g)

14        If the proposed Classes are certified, the Court may appoint class counsel after considering the

15  factors identified in Rule 23(g)(1)(A) and (B). Plaintiffs' counsel are manifestly qualified to represent

16  the interests of the proposed Classes. Cohen Milstein first identified and investigated the claims

17  asserted in the Complaint more than two years ago and has been diligently prosecuting this contentious

18  and complex action, together with Feinberg Jackson, since April 2017. Yau Decl. ¶ 25. Moreover,

19  Plaintiffs' counsel are all highly versed in ERISA class action litigation. *Id.* ¶¶ 6-14, 21-23; Wasow

20  Decl. ¶¶ 3-4, 7-12. Plaintiffs' counsel have demonstrated their commitment to devoting substantial

21  resources, in attorney time and advanced costs, to the case. Yau Decl. ¶26, Wasow Decl. ¶14. There

22  can be no doubt that Rule 23(g) is satisfied here. *Glass Dimensions*, 285 F.R.D. at 181 (appointing

23  class counsel where plaintiff's counsel was "vigorous in pursuing the litigation up to this point.").

24                                **VI.     CONCLUSION**

25        For the above reasons, Plaintiffs respectfully request certification of the CTI Class and the

26  BlackRock Plan Class pursuant to Rules 23(a) and 23(b)(1)(A) and (B), or alternatively, Rule 23(b)(3),

27  appoint Plaintiffs as Class representatives, and appoint Class Counsel pursuant to Rule 23(g).

28

1    Dated:      June 3, 2019                    /s/  Michelle C. Yau
2                                                Michelle C. Yau (admitted *Pro Hac Vice*)
                                                 Mary J. Bortscheller (admitted *Pro Hac Vice*)
3                                                Daniel R. Sutter (admitted *Pro Hac Vice*)
                                                 COHEN MILSTEIN SELLERS & TOLL PLLC
4                                                1100 New York Ave., NW, Suite 500
                                                 Washington, D.C. 20005
5                                                Telephone: (202) 408-4600
                                                 Facsimile: (202) 408-4699
6                                                myau@cohenmilstein.com
                                                 mbortscheller@cohenmilstein.com
7                                                dsutter@cohenmilstein.com

8
                                                 Nina Wasow
9                                                Todd Jackson
                                                 FEINBERG, JACKSON, WORTHMAN
10                                               & WASOW, LLP
                                                 2030 Addison Street, Suite 500
11                                               Berkeley, CA 94704
                                                 Telephone: (510) 269-7998
12                                               Facsimile: (510) 269-7994
                                                 nina@feinbergjackson.com
13                                               todd@feinbergjackson.com
14

15                                               *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

2                        **CERTIFICATE OF SERVICE**

3          I hereby certify that on June 3, 2019, I served this document via electronic mail on all

4   Counsel of Record.

5

    Dated: June 3, 2019                        /s/Mary J. Bortscheller
6                                              Mary J. Bortscheller
7                                              mbortscheller@cohenmilstein.com
                                               COHEN MILSTEIN SELLERS & TOLL PLLC
8                                              1100 New York Ave., NW
                                               Suite 500
9                                              Washington, D.C. 20005
                                               Telephone: (202) 408-4600
10                                             Facsimile: (202) 408-4699

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 17-cv-01892-HSG/KAW                           Plaintiffs' Motion for Class Certification