# Exhibit 22

1  BRIAN D. BOYLE (S.B. #126576)
   bboyle@omm.com
2  MEAGHAN VERGOW (admitted *pro hac vice*)
   mvergow@omm.com
3  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
4  Washington, DC 20006-4061
   Telephone:    +1 202 383 5300
5  Facsimile:    +1 202 383 5414

6  RANDALL W. EDWARDS (S.B. #179053)
   redwards@omm.com
7  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
8  San Francisco, California  94111-3823
   Telephone:    +1 415 984 8700
9  Facsimile:    +1 415 984 8701

10  Attorneys for Defendants

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15  Charles Baird and Lauren Slayton,          Case No. 17-cv-01892-HSG
    individually, and on behalf of all others
16  similarly situated, and on behalf of the    **BLACKROCK'S SUPPLEMENTAL**
    BlackRock Retirement Savings Plan,          **OBJECTIONS AND RESPONSES TO**
17                                               **PLAINTIFFS' SIXTH SET OF**
                     Plaintiffs,                 **REQUESTS FOR ADMISSION TO**
18                                               **ALL DEFENDANTS**
           v.
19
    BlackRock Institutional Trust Company, N.A.,
20  *et al.*

21                   Defendants.

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | |

Propounding Party:      Plaintiffs Charles Baird and Lauren Slayton

Responding Parties:     Defendants BlackRock Institutional Trust Company, N.A., BlackRock, Inc., the BlackRock, Inc. Retirement Committee, the Investment Committee of the Retirement Committee, Catherine Bolz, Chip Castille, Paige Dickow, Daniel A. Dunay, Jeffrey A. Smith, Anne Ackerley, Amy Engel, Nancy Everett, Joseph Feliciani Jr., Ann Marie Petach, Michael Fredericks, Corin Frost, Daniel Gamba, Kevin Holt, Chris Jones, Philippe Matsumoto, John Perlowski, Andy Phillips, Kurt Schansinger, and Tom Skrobe

Set Number:              Six

Pursuant to Federal Rule of Civil Procedure 36 and Civil Local Rule 36-1, Defendants

BlackRock Institutional Trust Company, N.A. ("BTC"); BlackRock, Inc.; the BlackRock, Inc.

Retirement Committee; and the Investment Committee of the Retirement Committee

(collectively, "BlackRock"), and Defendants Catherine Bolz, Chip Castille, Paige Dickow, Daniel

A. Dunay, Jeffrey A. Smith, Anne Ackerley, Amy Engel, Nancy Everett, Joseph Feliciani Jr.,

Ann Marie Petach, Michael Fredericks, Corin Frost, Daniel Gamba, Kevin Holt, Chris Jones,

Philippe Matsumoto, John Perlowski, Andy Phillips, Kurt Schansinger, and Tom Skrobe

(collectively, the "Individual Defendants") (together with BlackRock, "Defendants"), by and

through their attorneys, hereby supplement their objections and responses to Plaintiffs' Sixth Set

of Requests for Admission to All Defendants (the "Requests"), served on the BlackRock

Defendants on August 3, 2018.

Defendants' responses are without prejudice to the right to challenge the relevance and

admissibility, at trial or in any other proceeding, of any information provided in these responses.

Defendants' prior objections and responses fully and completely answered the Requests.  This

further supplementation should not be construed as an admission that Defendants' prior responses

were deficient or that any objection was improper.

Defendants expressly reserve the right to continue their discovery and investigation for

facts, documents, witnesses, and data that may reveal information that, if presently within

Defendants' knowledge, would have been included in these responses.  Defendants specifically

reserve the right to amend, supplement, or modify these objections and responses at any time in

2

1  light of subsequently discovered information.

2  **PRELIMINARY STATEMENT**

3  Defendants make the following threshold objections to the Requests:

4  1.  Defendants object to each Request calling for the disclosure of material or

5  information that is subject to the attorney-client privilege, the work-product doctrine, the joint-

6  defense privilege, grand jury, or any other applicable privilege or immunity recognized by the

7  Federal Rules of Civil Procedure, federal statute, or any other applicable federal or state rule of

8  law.  Defendants decline to provide such materials or information in response to any Request, and

9  do not waive any such privilege or protection.

10  2.  Defendants object to each Request insofar as the Requests purport to impose

11  burdens on Defendants that are inconsistent with, or not otherwise authorized by, the Federal

12  Rules of Civil Procedure, the Local Rules for the Northern District of California, or any order of

13  this Court.

14  3.  Defendants object to each Request to the extent it seeks information that is not

15  within Defendants' knowledge, possession, custody, or control and not reasonably available to

16  Defendants.  Defendants will only respond with information within their knowledge.

17  4.  The Individual Defendants object to each Request as irrelevant, unreasonably

18  burdensome, and not proportional to the needs of the case because it seeks an admission from the

19  Individual Defendants, whose individual knowledge and information varies and is in all events no

20  greater than BlackRock's.  Because BlackRock's responses to these Requests is sufficient,

21  Defendants are not specifically identifying for each Request whether each Individual Defendant's

22  knowledge is the same as BlackRock's or whether particular Individual Defendants lack or cannot

23  readily obtain information to enable the Individual Defendant to admit or deny.

24  5.  By responding to these Requests, Defendants do not adopt any characterizations

25  made by Plaintiffs concerning the information Plaintiffs seek or facts that are inaccurate or

26  disputed.

27

28

3

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

6.      Defendants object to Instruction Nos. 2 and 3, regarding any supplementation of Defendants' response to these Requests, insofar as it seeks to impose obligations on Defendants that exceed the requirements of the Federal Rules of Civil Procedure, the Court's standing orders, or any other applicable requirements.  Defendants will comply with their obligations to supplement their responses as necessary under Federal Rule of Civil Procedure 26(e).

7.      Defendants object to Instruction No. 4, regarding the meaning and interpretation of words used in the Requests, as vague and ambiguous, particularly with respect to the phrases "usual and customary dictionary definition" and "custom and usage definition in your trade or industry."

8.      Defendants object to Definition B insofar as the definition of "BTC" inaccurately describes BlackRock Institutional Trust Company's subsidiary relationships during the Applicable Time Period.

9.      Defendants object to Definition C insofar as the definition of "Class Period" extends through to the present.  Defendants will construe "Class Period" as covering the period of April 11, 2011, through June 30, 2017.  Defendants further object to the term "Class Period" to the extent it suggests that a class can be certified and that Plaintiffs' claims can be subject to a common class period.  By using this term to respond to Plaintiffs' requests, Defendants do not waive or limit their ability to argue later that a different time period is relevant to Plaintiffs' claims or that no common class period exists.

10.     Defendants object to Definition D insofar as the definition of "Relevant Period" encompasses periods outside the statute of repose applicable to this case.  29 U.S.C. § 1113(1). Defendants will construe "Relevant Period" as covering the period of January 1, 2011, to February 21, 2019.

1

## SPECIFIC OBJECTIONS AND RESPONSE TO REQUESTS FOR ADMISSION

2

### REQUEST FOR ADMISSION NO. 197

3   Admit that during the Class Period, every participant in the BlackRock Retirement

4   Savings Plan invested directly or indirectly, at one time in the Class Period, in at least one of the

5   BlackRock CTIs where "directly or indirectly" has the same meaning as at BAIRD 0001609

6   ("Collective Funds may invest insecurities and other instruments directly or indirectly through

7   investment in units of other Collective Funds maintained by BTC.").

8   ### RESPONSE

9   Defendants incorporate by reference the objections stated above.  Defendants further

10   object to this request's reference to participants in the BlackRock Retirement Savings Plan

11   ("RSP") as being "invested . . . in at least one of the BlackRock CTIs"; it is the RSP that "invests"

12   in CTIs.  Defendants also object to the incorporation of a term ("directly or indirectly") that, as

13   used in the cited document, does not apply to plan investments or participant account allocations.

14   Defendants further object to the request's reference to "at one time in the Class Period" as vague

15   and ambiguous.  Defendants construe this request as seeking an admission that every RSP

16   participant's account was allocated, for at least some of the Class Period, to at least one of the

17   BlackRock CTIs, or to a CTI that itself directly or indirectly invested in a BlackRock CTI.

18   Subject to and without waiving these objections, Defendants respond as follows:  Denied.

19   ### REQUEST FOR ADMISSION NO. 198

20   Admit that throughout the Relevant Period, BTC had full power and authority with respect

21   to all securities or property at any time received or held for the following funds, where the

22   phrases "full power and authority," and "securities or property at any time received or held" have

23   the same meaning as used in BAIRD_0049092 at Section 4.3:

24   a) Cash Equivalent Fund II
     b) Euro Cash Collateral
25   c) Term Fund 11
     d) Term Fund 215
26   e) Money Market Funds, where "Money Market Funds" has the same meaning as used in
27      BAIRD_0049048
     f) Active Stock Fund E
28   g) BlackRock MSCI Canada Small Cap Equity Index Fund

5

h) BlackRock MSCI EAFE Small Cap Equity Index Fund
i) BlackRock MSCI U.S. Real Estate Index Fund E
j) Commodity Index Daily Fund E
k) Developed ex-U.S. Real Estate Index Fund
l) EAFE Equity Index Fund
m) EAFE Equity Index Fund F
n) Emerging Markets Equity Index Master Fund
o) Equity Index Fund
p) Extended Equity Market Fund
q) Intermediate Term Credit Bond Index Fund
r) Intermediate Term Government Bond Index Fund
s) Long Term Credit Bond Index Fund
t) Long Term Government Bond Index Fund
u) Mortgage-Backed Securities Index Fund
v) MSCI Equity Index Fund-Canada
w) MSCI Equity Index Fund-Mexico
x) MSCI Equity Index Fund-Philippines
y) MSCI Equity Index Fund-Turkey
z) Russell 1000 Index Fund
aa) Russell 2000 Index Fund
bb) U.S. Treasury Inflation Protected Securities Fund E

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants also object to this request for admission as vague and ambiguous insofar as it can be construed to seek an admission that BTC's exercise of power and authority as provided in the cited collective trust fund plan document is not subject to other statutory and contractual constraints.  Defendants further object to this request as vague and ambiguous insofar as it is unclear whether "Money Market Funds" encompasses only the Money Market Funds explicitly referenced in BAIRD_0049048.  Defendants will construe this term as referring only to the Money Market Funds explicitly referenced in BAIRD_0049048.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the Plan of BlackRock Institutional Trust Company, N.A. Investment Funds for Employee Benefit Trusts granted BTC "full power and authority with respect to any and all securities or property at any time received or held for a Collective Fund or any liquidating account to do and perform all such acts and things, and take all such proceedings and exercise all such rights and privileges as could be done, performed, taken or exercised by the absolute owner

6

thereof . . . ," and that BTC's exercise of such "power and authority" is subject to applicable law as provided in 12 C.F.R. § 9.2(b), including (but not limited to) BTC's investment management agreements with its clients and the documents incorporated therein.

**REQUEST FOR ADMISSION NO. 199**

Admit that for each of the funds listed below, BTC did not delegate any of its power or authority to any Person(s), for any period of time between January 1, 2011 to the present, where "power" and "authority" have the same meaning as used in BAIRD_0049092 at Section 4.3:

a) Cash Equivalent Fund II
b) Euro Cash Collateral
c) Term Fund 11
d) Term Fund 215
e) Money Market Funds, where "Money Market Funds" has the same meaning as used in BAIRD_0049048
f) Active Stock Fund E
g) BlackRock MSCI Canada Small Cap Equity Index Fund
h) BlackRock MSCI EAFE Small Cap Equity Index Fund
i) BlackRock MSCI U.S. Real Estate Index Fund E
j) Commodity Index Daily Fund E
k) Developed ex-U.S. Real Estate Index Fund
l) EAFE Equity Index Fund
m) EAFE Equity Index Fund F
n) Emerging Markets Equity Index Master Fund
o) Equity Index Fund
p) Extended Equity Market Fund
q) Intermediate Term Credit Bond Index Fund
r) Intermediate Term Government Bond Index Fund
s) Long Term Credit Bond Index Fund
t) Long Term Government Bond Index Fund
u) Mortgage-Backed Securities Index Fund
v) MSCI Equity Index Fund-Canada
w) MSCI Equity Index Fund-Mexico
x) MSCI Equity Index Fund-Philippines
y) MSCI Equity Index Fund-Turkey
z) Russell 1000 Index Fund
aa) Russell 2000 Index Fund
bb) U.S. Treasury Inflation Protected Securities Fund E

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further

7

1   object that the undefined term "delegate" is vague and ambiguous.  Defendants will interpret

2   "delegate" to mean a transfer of power or authority over securities or property within the meaning

3   of BAIRD_0049092 at Section 4.3 to an individual or entity outside of BlackRock, Inc. (inclusive

4   of its subsidiaries and affiliates).  Defendants further object to this request as vague and

5   ambiguous insofar as it is unclear whether "Money Market Funds" encompasses only the Money

6   Market Funds explicitly referenced in BAIRD_0049048.  Defendants will construe this term as

7   referring only to the Money Market Funds explicitly referenced in BAIRD_0049048.  Defendants

8   further object to this request to the extent it encompasses a period of time that extends beyond the

9   Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

10          Subject to and without waiving these objections, Defendants respond as follows:

11   Defendants admit that BTC did not delegate any of its discretionary power or authority for the

12   listed funds, but deny that BTC did not delegate other, non-discretionary functions for the funds,

13   such as custody, consistent with 12 C.F.R. § 9.18(b)(2) and as described on BAIRD_0001780.

14

15   **REQUEST FOR ADMISSION NO. 200**

16          Admit that for the Relevant Period, BTC had full power and authority with respect to any

17   and all securities or property at any time received or held for the following funds where "full

18   power and authority" and "securities and property at any time received or held" have the same

19   meaning as used in BAIRD_0051841 at Section 6.5:

20       a)  Cash Equivalent Fund B
    b)  Money Market Fund A/B

21       c)  Money Market Funds B, where "Money Market Funds B" has the same meaning as used

22          in BAIRD_0051988
    d)  Asset-Backed Securities Index Fund B

23       e)  BlackRock MSCI Equity Index Fund B-Morocco
    f)  Commercial Mortgage-Backed Securities Index Fund B

24       g)  MSCI Equity Index Fund B-Brazil

25       h)  MSCI Equity Index Fund B-Chile
    i)  MSCI Equity Index Fund B-China

26       j)  MSCI Equity Index Fund B-Colombia
    k)  MSCI Equity Index Fund B-Czech Republic

27       l)  MSCI Equity Index Fund B-Egypt
    m)  MSCI Equity Index Fund B-Hungary

28

8

n) MSCI Equity Index Fund B-India
o) MSCI Equity Index Fund B-Indonesia
p) MSCI Equity Index Fund B-Malaysia
q) MSCI Equity Index Fund B-Peru
r) MSCI Equity Index Fund B-Poland
s) MSCI Equity Index Fund B-Russia
t) MSCI Equity Index Fund B-S. Korea
u) MSCI Equity Index Fund B-South Africa
v) MSCI Equity Index Fund B-Taiwan
w) MSCI Equity Index Fund B-Thailand

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to this request as vague and ambiguous insofar as it is unclear whether "Money Market Funds B" encompasses only the Money Market Funds explicitly referenced in BAIRD_0051988. Defendants will construe this term as referring only to the Money Market Funds B explicitly referenced in BAIRD_0051988. Defendants also object to this request for admission as vague and ambiguous insofar as it can be construed to seek an admission that BTC's exercise of power and authority as provided in the cited collective trust fund plan document is not subject to other statutory and contractual constraints.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the Plan of Blackrock Institutional Trust Company, N.A. Investment Funds for Tax Exempt and Foreign Organizations "Group B" granted BTC "full power and authority with respect to any and all securities or property at any time received or held for a Collective Fund or any liquidating account to do and perform all such acts and things, and take all such proceedings and exercise all such rights and privileges as could be done, performed, taken or exercised by the absolute owner thereof . . . ," and that BTC's exercise of such "power and authority" is subject to applicable law as provided in 12 C.F.R. § 9.2(b), including (but not limited to) BTC's investment management agreements with its clients and the documents incorporated therein.

9

1

**REQUEST FOR ADMISSION NO. 201**

2

      Admit that for each of the funds listed below, BTC did not delegate any of its power or

3

authority to any Person(s), for any period of time between January 1, 2011 to the present, where

4

"power" and "authority" have the same meaning as used in BAIRD_0051841 at Section 6.5:

5
6
7
8
9
10
11
12
13
14
15
16
17
18

    a)  Cash Equivalent Fund B
    b)  Money Market Fund A/B
    c)  Money Market Funds B, where "Money Market Funds B" has the same meaning as used in BAIRD_0051988
    d)  Asset-Backed Securities Index Fund B
    e)  BlackRock MSCI Equity Index Fund B-Morocco
    f)  Commercial Mortgage-Backed Securities Index Fund B
    g)  MSCI Equity Index Fund B-Brazil
    h)  MSCI Equity Index Fund B-Chile
    i)  MSCI Equity Index Fund B-China
    j)  MSCI Equity Index Fund B-Colombia
    k)  MSCI Equity Index Fund B-Czech Republic
    l)  MSCI Equity Index Fund B-Egypt
    m)  MSCI Equity Index Fund B-Hungary
    n)  MSCI Equity Index Fund B-India
    o)  MSCI Equity Index Fund B-Indonesia
    p)  MSCI Equity Index Fund B-Malaysia
    q)  MSCI Equity Index Fund B-Peru
    r)  MSCI Equity Index Fund B-Poland
    s)  MSCI Equity Index Fund B-Russia
    t)  MSCI Equity Index Fund B-S. Korea
    u)  MSCI Equity Index Fund B-South Africa
    v)  MSCI Equity Index Fund B-Taiwan
    w)  MSCI Equity Index Fund B-Thailand

19

**RESPONSE**

20

      Defendants incorporate by reference the objections stated above.  Defendants further

21

object that the undefined term "delegate" is vague and ambiguous.  Defendants will interpret

22

"delegate" to mean a transfer of power or authority over securities or property within the meaning

23

of BAIRD_0051841 at Section 6.5 to an individual or entity outside of BlackRock, Inc. (inclusive

24

of its subsidiaries and affiliates).  Defendants further object to this request as vague and

25

ambiguous insofar as it is unclear whether "Money Market Funds B" encompasses only the

26

Money Market Funds explicitly referenced in BAIRD_0051988.  Defendants will construe this

27

term as referring only to the Money Market Funds B explicitly referenced in BAIRD_0051988.

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1   Defendants further object to this request to the extent it encompasses a period of time that extends

2   beyond the Relevant Period.  Defendants will construe this request as being limited to the

3   Relevant Period.

4        Subject to and without waiving these objections, Defendants respond as follows:

5   Defendants admit that BTC did not delegate any of its discretionary power or authority for the

6   listed funds, but deny that BTC did not delegate other, non-discretionary functions, such as

7   custody, consistent with 12 C.F.R. § 9.18(b)(2) and as described on BAIRD_0001780.

8

9   **REQUEST FOR ADMISSION NO. 202**

10       Admit that, throughout the Relevant Period, the Plan of BlackRock Institutional Trust

11  Company, N.A. Investment Funds for Employee Benefit Trusts sets forth the terms and

12  conditions pursuant to which BTC did and does hold, administer, invest and deal with all money

13  and property received or purchased by BTC on behalf of the "A" Funds, where "Plan of

14  BlackRock Institutional Trust Company, N.A. Investment Funds for Employee Benefit Trusts"

15  has the same meaning as used at BAIRD 0049004 and "hold, administer, invest and deal with all

16  money and property" has the same meaning as used at BAIRD_0049009 and "terms and

17  conditions" has the same meaning as used at BAIRD_0049009.

18  **RESPONSE**

19       Defendants incorporate by reference the objections stated above.  Defendants further

20  object to this request as vague and ambiguous insofar as it is unclear whether the request concerns

21  only some of the terms and conditions applicable to BTC, or whether it seeks an admission that

22  BTC is not subject to other statutory and contractual constraints.  Defendants will construe this

23  interrogatory as seeking an admission that the referenced plan document contains terms and

24  conditions with which BTC must comply, without foreclosing the applicability of other statutory

25  and contractual obligations to BTC.

26       Subject to and without waiving these objections, Defendants respond as follows:

27  Defendants admit that the Plan of BlackRock Institutional Trust Company, N.A. Investment

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1  Funds for Employee Benefit Trusts sets forth "the terms and conditions pursuant to which BTC

2  did and does hold, administer, invest and deal with all money and property received or purchased

3  by BTC on behalf of the 'A' Funds," and that such activity is subject to applicable law as

4  provided in 12 C.F.R. § 9.2(b), including (but not limited to) BTC's investment management

5  agreements with its clients and the documents incorporated therein.

6

7  **REQUEST FOR ADMISSION NO. 203**

8      Admit that the Plan of BlackRock Institutional Trust Company, N.A. Investment Funds

9  for Tax Exempt and Foreign Organizations "Group B" sets forth the terms and conditions

10  pursuant to which BTC did and does hold, administer, invest and deal with all money and

11  property received or purchased by BTC on behalf of the "B" Funds, where "Plan of BlackRock

12  Institutional Trust Company, N.A. Investment Funds for Tax Exempt and Foreign Organizations

13  'Group B'" has the same meaning as used at BAIRD 0051775 and "hold, administer, invest and

14  deal with all money and property" has the same meaning as used at BAIRD_0051780 and "terms

15  and conditions" has the same meaning as used at BAIRD_0051780.

16  **RESPONSE**

17      Defendants incorporate by reference the objections stated above.  Defendants further

18  object to this request as vague and ambiguous, insofar as it is unclear whether the request

19  concerns only some of the terms and conditions applicable to BTC, or whether it seeks an

20  admission that BTC is not subject to other statutory and contractual constraints.  Defendants will

21  construe this request as seeking an admission that the referenced plan document contains terms

22  and conditions with which BTC must comply, without foreclosing the applicability of other

23  statutory and contractual obligations to BTC.  Defendants further object to this request to the

24  extent that there is no time period specified.  Defendants will construe this request as being

25  limited to the Relevant Period.

26      Subject to and without waiving these objections, Defendants respond as follows:

27  Defendants admit that the Plan of Blackrock Institutional Trust Company, N.A. Investment Funds

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1  for Tax Exempt and Foreign Organizations "Group B" sets forth "the terms and conditions

2  pursuant to which BTC did and does hold, administer, invest and deal with all money and

3  property received or purchased by BTC on behalf of the 'B' Funds", and that such activity is

4  subject to applicable law as provided in 12 C.F.R. § 9.2(b), including (but not limited to) BTC's

5  investment management agreements with its clients and the documents incorporated therein.

6

7  **REQUEST FOR ADMISSION NO. 204**

8      Admit that each of the following funds was an "A" Fund during the Relevant Period:

9   a) Cash Equivalent Fund II
    b) Euro Cash Collateral
10  c) Term Fund 11
    d) Term Fund 215
11  e) Money Market Funds, where "Money Market Funds" has the same meaning as used in
12     BAIRD_0049048
    f) Russell 2000 Index Fund
13

14 **RESPONSE**

15     Defendants incorporate by reference the objections stated above.  Defendants further

16 object to this request as vague and ambiguous insofar as it is unclear whether "Money Market

17 Funds" encompasses only the Money Market Funds explicitly referenced in BAIRD_0049048.

18 Defendants will construe this term as referring only to the Money Market Funds explicitly

19 referenced in BAIRD_0049048.  Defendants also object to this request as vague and ambiguous

20 in its reference to "during the Relevant Period."  Defendants will construe this request to seek an

21 admission that each referenced fund was an "A" fund throughout the Relevant Period.

22     Subject to and without waiving these objections, Defendants respond as follows:

23 Defendants state that Term Fund 215 was terminated on August 28, 2014, with an effective date

24 of December 31, 2014, and Euro Cash Collateral Fund was terminated on November 30, 2015,

25 with an effective date of December 31, 2015.  Defendants otherwise admit this Request.

26 **REQUEST FOR ADMISSION NO. 205**

27     Admit that each of the following funds was a "B" Fund during the Relevant Period:

28

13

a) Cash Equivalent Fund B
b) Money Market Fund A/B
c) Money Market Funds B, where "Money Market Funds B" has the same meaning as used in BAIRD_0051988

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to this request as vague and ambiguous insofar as it is unclear whether "Money Market Funds B" encompasses only the Money Market Funds explicitly referenced in BAIRD_0051988. Defendants will construe this term as referring only to the Money Market Funds B explicitly referenced in BAIRD_0051988.  Defendants also object to this request as vague and ambiguous in its reference to "during the Relevant Period."  Defendants will construe this request to seek an admission that each referenced fund was a "B" fund throughout the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants state that Money Market Fund A/B was renamed Cash Collateral Reinvestment Fund B on May 30, 2014, and was terminated on August 31, 2017, with an effective date of December 31, 2017.  Defendants otherwise admit the Request.

**REQUEST FOR ADMISSION NO. 206**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Active Stock Fund E was a direct or indirect transfer of the assets of Active Stock Fund E to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on

14

1    BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

2    of time that extends beyond the Relevant Period.  Defendants will construe this request as being

3    limited to the Relevant Period.

4           Subject to and without waiving these objections, Defendants respond as follows:

5    Defendants admit that the share of earnings from securities lending retained by BTC, as defined

6    in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

7    BTC, or use by or for the benefit of BTC, of the assets of Active Stock Fund E, but deny that such

8    transfer or use is a nonexempt prohibited transaction.

9

10   **REQUEST FOR ADMISSION NO. 207**

11          Admit that from January 1, 2011 to the present, each payment of compensation that BTC

12   received for acting as the lending agent to Asset-Backed Securities Index Fund B was a direct or

13   indirect transfer of the assets of Asset-Backed Securities Index Fund B to BTC, where "direct,"

14   "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

15   § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

16   **RESPONSE**

17          Defendants incorporate by reference the objections stated above.  Defendants further

18   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

19   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

20   derived from the share of earnings from securities lending that is retained by BTC as described on

21   BAIRD_0001789, exclusive of cash collateral management fees as described on

22   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

23   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

24   limited to the Relevant Period.

25          Subject to and without waiving these objections, Defendants respond as follows:

26   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

27   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

BTC, or use by or for the benefit of BTC, of the assets of Asset-Backed Securities Index Fund B, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 208**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to BlackRock MSCI Canada Small Cap Equity Index Fund was a direct or indirect transfer of the assets of BlackRock MSCI Canada Small Cap Equity Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period. Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of BlackRock MSCI Canada Small Cap Equity Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 209**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC

1   received for acting as the lending agent to BlackRock MSCI EAFE Small Cap Equity Index Fund

2   was a direct or indirect transfer of the assets of BlackRock MSCI EAFE Small Cap Equity Index

3   Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA

4   § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on

5   BAIRD 0001617.

6   **RESPONSE**

7          Defendants incorporate by reference the objections stated above.  Defendants further

8   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

9   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

10   derived from the share of earnings from securities lending that is retained by BTC as described on

11   BAIRD_0001789, exclusive of cash collateral management fees as described on

12   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

13   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

14   limited to the Relevant Period.

15          Subject to and without waiving these objections, Defendants respond as follows:

16   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

17   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

18   BTC, or use by or for the benefit of BTC, of the assets of BlackRock MSCI EAFE Small Cap

19   Equity Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

20

21   **REQUEST FOR ADMISSION NO. 210**

22          Admit that from January 1, 2011 to the present, each payment of compensation that BTC

23   received for acting as the lending agent to BlackRock MSCI U.S. Real Estate Index Fund E was a

24   direct or indirect transfer of the assets of BlackRock MSCI U.S. Real Estate Index Fund E to

25   BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1),

26   29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

27

28

17

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period. Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of BlackRock MSCI U.S. Real Estate Index Fund E, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 211**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Commodity Index Daily Fund E was a direct or indirect transfer of the assets of Commodity Index Daily Fund E to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on

1   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

2   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

3   limited to the Relevant Period.

4        Subject to and without waiving these objections, Defendants respond as follows:

5   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

6   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

7   BTC, or use by or for the benefit of BTC, of the assets of Commodity Index Daily Fund E, but

8   deny that such transfer or use is a nonexempt prohibited transaction.

9

10   **REQUEST FOR ADMISSION NO. 212**

11        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

12   received for acting as the lending agent to Developed ex-U.S. Real Estate Index Fund was a direct

13   or indirect transfer of the assets of Developed ex-U.S. Real Estate Index Fund to BTC, where

14   "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

15   § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

16   **RESPONSE**

17        Defendants incorporate by reference the objections stated above.  Defendants further

18   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

19   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

20   derived from the share of earnings from securities lending that is retained by BTC as described on

21   BAIRD_0001789, exclusive of cash collateral management fees as described on

22   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

23   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

24   limited to the Relevant Period.

25        Subject to and without waiving these objections, Defendants respond as follows:

26   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

27   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

28

BTC, or use by or for the benefit of BTC, of the assets of Developed ex-U.S. Real Estate Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 213**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to EAFE Equity Index Fund was a direct or indirect transfer of the assets of EAFE Equity Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of EAFE Equity Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 214**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to EAFE Equity Index Fund F was a direct or indirect

transfer of the assets of EAFE Equity Index Fund F to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period. Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of EAFE Equity Index Fund F, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 215**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Emerging Markets Equity Index Master Fund was a direct or indirect transfer of the assets of Emerging Markets Equity Index Master Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

2  derived from the share of earnings from securities lending that is retained by BTC as described on

3  BAIRD_0001789, exclusive of cash collateral management fees as described on

4  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

5  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

6  limited to the Relevant Period.

7        Subject to and without waiving these objections, Defendants respond as follows:

8  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

9  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

10  BTC, or use by or for the benefit of BTC, of the assets of Emerging Markets Equity Index Master

11  Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

12

13  **REQUEST FOR ADMISSION NO. 216**

14        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

15  received for acting as the lending agent to Equity Index Fund was a direct or indirect transfer of

16  the assets of Equity Index Fund to BTC, where "direct," "indirect," and "transfer" have the same

17  meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the

18  same meaning as on BAIRD 0001617.

19  **RESPONSE**

20        Defendants incorporate by reference the objections stated above.  Defendants further

21  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

22  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

23  derived from the share of earnings from securities lending that is retained by BTC as described on

24  BAIRD_0001789, exclusive of cash collateral management fees as described on

25  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

26  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

27  limited to the Relevant Period.

28

1        Subject to and without waiving these objections, Defendants respond as follows:

2   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

3   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

4   BTC, or use by or for the benefit of BTC, of the assets of Equity Index Fund, but deny that such

5   transfer or use is a nonexempt prohibited transaction.

6

7   **REQUEST FOR ADMISSION NO. 217**

8        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

9   received for acting as the lending agent to Extended Equity Market Fund was a direct or indirect

10  transfer of the assets of Extended Equity Market Fund to BTC, where "direct," "indirect," and

11  "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

12  "lending agent" has the same meaning as on BAIRD 0001617.

13  **RESPONSE**

14       Defendants incorporate by reference the objections stated above.  Defendants further

15  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

16  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

17  derived from the share of earnings from securities lending that is retained by BTC as described on

18  BAIRD_0001789, exclusive of cash collateral management fees as described on

19  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

20  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

21  limited to the Relevant Period.

22       Subject to and without waiving these objections, Defendants respond as follows:

23  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

24  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

25  BTC, or use by or for the benefit of BTC, of the assets of Extended Equity Market Fund, but deny

26  that such transfer or use is a nonexempt prohibited transaction.

27

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REQUEST FOR ADMISSION NO. 218**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Intermediate Term Credit Bond Index Fund was a direct or indirect transfer of the assets of Intermediate Term Credit Bond Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period. Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Intermediate Term Credit Bond Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 219**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Intermediate Term Government Bond Index Fund was a direct or indirect transfer of the assets of Intermediate Term Government Bond Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

24

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period. Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Intermediate Term Government Bond Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 220**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Long Term Credit Bond Index Fund was a direct or indirect transfer of the assets of Long Term Credit Bond Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above. Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous. Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on

1  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

2  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

3  limited to the Relevant Period.

4      Subject to and without waiving these objections, Defendants respond as follows:

5  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

6  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

7  BTC, or use by or for the benefit of BTC, of the assets of Long Term Credit Bond Index Fund,

8  but deny that such transfer or use is a nonexempt prohibited transaction.

9

10  **REQUEST FOR ADMISSION NO. 221**

11      Admit that from January 1, 2011 to the present, each payment of compensation that BTC

12  received for acting as the lending agent to Long Term Government Bond Index Fund was a direct

13  or indirect transfer of the assets of Long Term Government Bond Index Fund to BTC, where

14  "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

15  § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

16  **RESPONSE**

17      Defendants incorporate by reference the objections stated above.  Defendants further

18  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

19  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

20  derived from the share of earnings from securities lending that is retained by BTC as described on

21  BAIRD_0001789, exclusive of cash collateral management fees as described on

22  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

23  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

24  limited to the Relevant Period.

25      Subject to and without waiving these objections, Defendants respond as follows:

26  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

27  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

BTC, or use by or for the benefit of BTC, of the assets of Long Term Government Bond Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 222**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Mortgage-Backed Securities Index Fund was a direct or indirect transfer of the assets of Mortgage-Backed Securities Index Fund to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Mortgage-Backed Securities Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 223**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund-Canada was a direct or

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

indirect transfer of the assets of MSCI Equity Index Fund-Canada to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund-Canada, but deny that such transfer or use is a nonexempt prohibited transaction.


**REQUEST FOR ADMISSION NO. 224**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund-Mexico was a direct or indirect transfer of the assets of MSCI Equity Index Fund-Mexico to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

1  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

2  derived from the share of earnings from securities lending that is retained by BTC as described on

3  BAIRD_0001789, exclusive of cash collateral management fees as described on

4  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

5  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

6  limited to the Relevant Period.

7      Subject to and without waiving these objections, Defendants respond as follows:

8  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

9  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

10  BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund-Mexico, but

11  deny that such transfer or use is a nonexempt prohibited transaction.

12

13  **REQUEST FOR ADMISSION NO. 225**

14      Admit that from January 1, 2011 to the present, each payment of compensation that BTC

15  received for acting as the lending agent to MSCI Equity Index Fund-Philippines was a direct or

16  indirect transfer of the assets of MSCI Equity Index Fund-Philippines to BTC, where "direct,"

17  "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

18  § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

19  **RESPONSE**

20      Defendants incorporate by reference the objections stated above.  Defendants further

21  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

22  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

23  derived from the share of earnings from securities lending that is retained by BTC as described on

24  BAIRD_0001789, exclusive of cash collateral management fees as described on

25  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

26  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

27  limited to the Relevant Period.

28

29

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund-Philippines, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 226**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund-Turkey was a direct or indirect transfer of the assets of MSCI Equity Index Fund-Turkey to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund-Turkey, but deny that such transfer or use is a nonexempt prohibited transaction.

1    **REQUEST FOR ADMISSION NO. 227**

2         Admit that from January 1, 2011 to the present, each payment of compensation that BTC

3    received for acting as the lending agent to Russell 1000 Index Fund was a direct or indirect

4    transfer of the assets of Russell 1000 Index Fund to BTC, where "direct," "indirect," and

5    "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

6    "lending agent" has the same meaning as on BAIRD 0001617.

7    **RESPONSE**

8         Defendants incorporate by reference the objections stated above.  Defendants further

9    object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

10   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

11   derived from the share of earnings from securities lending that is retained by BTC as described on

12   BAIRD_0001789, exclusive of cash collateral management fees as described on

13   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

14   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

15   limited to the Relevant Period.

16        Subject to and without waiving these objections, Defendants respond as follows:

17   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

18   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

19   BTC, or use by or for the benefit of BTC, of the assets of Russell 1000 Index Fund, but deny that

20   such transfer or use is a nonexempt prohibited transaction.

21

22   **REQUEST FOR ADMISSION NO. 228**

23        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

24   received for acting as the lending agent to Russell 2000 Index Fund was a direct or indirect

25   transfer of the assets of Russell 2000 Index Fund to BTC, where "direct," "indirect," and

26   "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

27   "lending agent" has the same meaning as on BAIRD 0001617.

28

31

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Russell 2000 Index Fund, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 229**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to U.S. Treasury Inflation Protected Securities Fund E was a direct or indirect transfer of the assets of U.S. Treasury Inflation Protected Securities Fund E to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on

BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of U.S. Treasury Inflation Protected Securities Fund E, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 230**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to BlackRock MSCI Equity Index Fund B-Morocco was a direct or indirect transfer of the assets of BlackRock MSCI Equity Index Fund B-Morocco to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined

in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of BlackRock MSCI Equity Index Fund B-Morocco, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 231**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to Commercial Mortgage-Backed Securities Index Fund B was a direct or indirect transfer of the assets of Commercial Mortgage-Backed Securities Index Fund B to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Commercial Mortgage-Backed Securities Index Fund B, but deny that such transfer or use is a nonexempt prohibited transaction.

1

**REQUEST FOR ADMISSION NO. 232**

2

Admit that from January 1, 2011 to the present, each payment of compensation that BTC

3

received for acting as the lending agent to MSCI Equity Index Fund B-Brazil was a direct or

4

indirect transfer of the assets of MSCI Equity Index Fund B-Brazil to BTC, where "direct,"

5

"indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

6

§ 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

7

**RESPONSE**

8

Defendants incorporate by reference the objections stated above.  Defendants further

9

object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

10

as vague and ambiguous.  Defendants will construe these terms as referring to compensation

11

derived from the share of earnings from securities lending that is retained by BTC as described on

12

BAIRD_0001789, exclusive of cash collateral management fees as described on

13

BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

14

of time that extends beyond the Relevant Period.  Defendants will construe this request as being

15

limited to the Relevant Period.

16

Subject to and without waiving these objections, Defendants respond as follows:

17

Defendants admit that the share of earnings from securities lending retained by BTC, as defined

18

in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

19

BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Brazil, but

20

deny that such transfer or use is a nonexempt prohibited transaction.

21

22

**REQUEST FOR ADMISSION NO. 233**

23

Admit that from January 1, 2011 to the present, each payment of compensation that BTC

24

received for acting as the lending agent to MSCI Equity Index Fund B-Chile was a direct or

25

indirect transfer of the assets of MSCI Equity Index Fund B-Chile to BTC, where "direct,"

26

"indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

27

§ 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1    **RESPONSE**

2          Defendants incorporate by reference the objections stated above.  Defendants further

3    object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

4    as vague and ambiguous.  Defendants will construe these terms as referring to compensation

5    derived from the share of earnings from securities lending that is retained by BTC as described on

6    BAIRD_0001789, exclusive of cash collateral management fees as described on

7    BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

8    of time that extends beyond the Relevant Period.  Defendants will construe this request as being

9    limited to the Relevant Period.

10         Subject to and without waiving these objections, Defendants respond as follows:

11   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

12   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

13   BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Chile, but

14   deny that such transfer or use is a nonexempt prohibited transaction.

15

16   **REQUEST FOR ADMISSION NO. 234**

17         Admit that from January 1, 2011 to the present, each payment of compensation that BTC

18   received for acting as the lending agent to MSCI Equity Index Fund B-China was a direct or

19   indirect transfer of the assets of MSCI Equity Index Fund B-China to BTC, where "direct,"

20   "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

21   § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

22   **RESPONSE**

23         Defendants incorporate by reference the objections stated above.  Defendants further

24   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

25   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

26   derived from the share of earnings from securities lending that is retained by BTC as described on

27   BAIRD_0001789, exclusive of cash collateral management fees as described on

28

                                                    36

1   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

2   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

3   limited to the Relevant Period.

4        Subject to and without waiving these objections, Defendants respond as follows:

5   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

6   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

7   BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-China, but

8   deny that such transfer or use is a nonexempt prohibited transaction.

9

10   **REQUEST FOR ADMISSION NO. 235**

11        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

12   received for acting as the lending agent to MSCI Equity Index Fund B-Colombia was a direct or

13   indirect transfer of the assets of MSCI Equity Index Fund B-Colombia to BTC, where "direct,"

14   "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

15   § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

16   **RESPONSE**

17        Defendants incorporate by reference the objections stated above.  Defendants further

18   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

19   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

20   derived from the share of earnings from securities lending that is retained by BTC as described on

21   BAIRD_0001789, exclusive of cash collateral management fees as described on

22   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

23   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

24   limited to the Relevant Period.

25        Subject to and without waiving these objections, Defendants respond as follows:

26   Defendants admit that the share of earnings from securities lending retained by BTC, as defined

27   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

28

BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Colombia, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 236**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Czech Republic was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Czech Republic to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Czech Republic, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 237**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Egypt was a direct or

indirect transfer of the assets of MSCI Equity Index Fund B-Egypt to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Egypt, but deny that such transfer or use is a nonexempt prohibited transaction.


**REQUEST FOR ADMISSION NO. 238**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Hungary was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Hungary to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

2  derived from the share of earnings from securities lending that is retained by BTC as described on

3  BAIRD_0001789, exclusive of cash collateral management fees as described on

4  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

5  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

6  limited to the Relevant Period.

7        Subject to and without waiving these objections, Defendants respond as follows:

8  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

9  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

10  BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Hungary,

11  but deny that such transfer or use is a nonexempt prohibited transaction.

12

13  **REQUEST FOR ADMISSION NO. 239**

14        Admit that from January 1, 2011 to the present, each payment of compensation that BTC

15  received for acting as the lending agent to MSCI Equity Index Fund B-India was a direct or

16  indirect transfer of the assets of MSCI Equity Index Fund B-India to BTC, where "direct,"

17  "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

18  § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

19  **RESPONSE**

20        Defendants incorporate by reference the objections stated above.  Defendants further

21  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

22  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

23  derived from the share of earnings from securities lending that is retained by BTC as described on

24  BAIRD_0001789, exclusive of cash collateral management fees as described on

25  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

26  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

27  limited to the Relevant Period.

28

40

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-India, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 240**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Indonesia was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Indonesia to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Indonesia, but deny that such transfer or use is a nonexempt prohibited transaction.

41

**REQUEST FOR ADMISSION NO. 241**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Malaysia was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Malaysia to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Malaysia, but deny that such transfer or use is a nonexempt prohibited transaction.


**REQUEST FOR ADMISSION NO. 242**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Peru was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Peru to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

1

**RESPONSE**

2      Defendants incorporate by reference the objections stated above.  Defendants further

3  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

4  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

5  derived from the share of earnings from securities lending that is retained by BTC as described on

6  BAIRD_0001789, exclusive of cash collateral management fees as described on

7  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

8  of time that extends beyond the Relevant Period.  Defendants will construe this request as being

9  limited to the Relevant Period.

10      Subject to and without waiving these objections, Defendants respond as follows:

11  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

12  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

13  BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Peru, but

14  deny that such transfer or use is a nonexempt prohibited transaction.

15

16  **REQUEST FOR ADMISSION NO. 243**

17      Admit that from January 1, 2011 to the present, each payment of compensation that BTC

18  received for acting as the lending agent to MSCI Equity Index Fund B-Poland was a direct or

19  indirect transfer of the assets of MSCI Equity Index Fund B-Poland to BTC, where "direct,"

20  "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

21  § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

22  **RESPONSE**

23      Defendants incorporate by reference the objections stated above.  Defendants further

24  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

25  as vague and ambiguous.  Defendants will construe these terms as referring to compensation

26  derived from the share of earnings from securities lending that is retained by BTC as described on

27  BAIRD_0001789, exclusive of cash collateral management fees as described on

28

43

1   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period
2   of time that extends beyond the Relevant Period.  Defendants will construe this request as being
3   limited to the Relevant Period.
4       Subject to and without waiving these objections, Defendants respond as follows:
5   Defendants admit that the share of earnings from securities lending retained by BTC, as defined
6   in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to
7   BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Poland, but
8   deny that such transfer or use is a nonexempt prohibited transaction.
9
10  **REQUEST FOR ADMISSION NO. 244**
11      Admit that from January 1, 2011 to the present, each payment of compensation that BTC
12  received for acting as the lending agent to MSCI Equity Index Fund B-Russia was a direct or
13  indirect transfer of the assets of MSCI Equity Index Fund B-Russia to BTC, where "direct,"
14  "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.
15  § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.
16  **RESPONSE**
17      Defendants incorporate by reference the objections stated above.  Defendants further
18  object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"
19  as vague and ambiguous.  Defendants will construe these terms as referring to compensation
20  derived from the share of earnings from securities lending that is retained by BTC as described on
21  BAIRD_0001789, exclusive of cash collateral management fees as described on
22  BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period
23  of time that extends beyond the Relevant Period.  Defendants will construe this request as being
24  limited to the Relevant Period.
25      Subject to and without waiving these objections, Defendants respond as follows:
26  Defendants admit that the share of earnings from securities lending retained by BTC, as defined
27  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to
28

44

BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Russia, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 245**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-S. Korea was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-S. Korea to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-S, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 246**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-South Africa was a direct

or indirect transfer of the assets of MSCI Equity Index Fund B-South Africa to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent" as vague and ambiguous.  Defendants will construe these terms as referring to compensation derived from the share of earnings from securities lending that is retained by BTC as described on BAIRD_0001789, exclusive of cash collateral management fees as described on BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the share of earnings from securities lending retained by BTC, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-South Africa, but deny that such transfer or use is a nonexempt prohibited transaction.


**REQUEST FOR ADMISSION NO. 247**

Admit that from January 1, 2011 to the present, each payment of compensation that BTC received for acting as the lending agent to MSCI Equity Index Fund B-Taiwan was a direct or indirect transfer of the assets of MSCI Equity Index Fund B-Taiwan to BTC, where "direct," "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

46

1    as vague and ambiguous.  Defendants will construe these terms as referring to compensation

2    derived from the share of earnings from securities lending that is retained by BTC as described on

3    BAIRD_0001789, exclusive of cash collateral management fees as described on

4    BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

5    of time that extends beyond the Relevant Period.  Defendants will construe this request as being

6    limited to the Relevant Period.

7          Subject to and without waiving these objections, Defendants respond as follows:

8    Defendants admit that the share of earnings from securities lending retained by BTC, as defined

9    in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

10   BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Taiwan,

11   but deny that such transfer or use is a nonexempt prohibited transaction.

12

13   **REQUEST FOR ADMISSION NO. 248**

14         Admit that from January 1, 2011 to the present, each payment of compensation that BTC

15   received for acting as the lending agent to MSCI Equity Index Fund B-Thailand was a direct or

16   indirect transfer of the assets of MSCI Equity Index Fund B-Thailand to BTC, where "direct,"

17   "indirect," and "transfer" have the same meaning as in ERISA § 406(a)(1), 29 U.S.C.

18   § 1106(a)(1) and where "lending agent" has the same meaning as on BAIRD 0001617.

19   **RESPONSE**

20         Defendants incorporate by reference the objections stated above.  Defendants further

21   object to undefined terms "payment" and "compensation" for BTC's "acting as the lending agent"

22   as vague and ambiguous.  Defendants will construe these terms as referring to compensation

23   derived from the share of earnings from securities lending that is retained by BTC as described on

24   BAIRD_0001789, exclusive of cash collateral management fees as described on

25   BAIRD_0001772.  Defendants further object to this request to the extent it encompasses a period

26   of time that extends beyond the Relevant Period.  Defendants will construe this request as being

27   limited to the Relevant Period.

28

1    Subject to and without waiving these objections, Defendants respond as follows:

2  Defendants admit that the share of earnings from securities lending retained by BTC, as defined

3  in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to

4  BTC, or use by or for the benefit of BTC, of the assets of MSCI Equity Index Fund B-Thailand,

5  but deny that such transfer or use is a nonexempt prohibited transaction.

6

7  **REQUEST FOR ADMISSION NO. 249**

8    Admit that from January 1, 2011 to the present, each payment of cash collateral

9  management fees to BTC for management of the Cash Equivalent Fund II was a direct or indirect

10  transfer of the assets of Cash Equivalent Fund II to BTC, where "direct," "indirect," and

11  "transfer" has the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

12  "cash collateral management fees" has the same meaning as BAIRD 0001617 and "management"

13  has the same meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over

14  management of the Funds.").

15  **RESPONSE**

16    Defendants incorporate by reference the objections stated above.  Defendants further

17  object to this interrogatory on the grounds that the undefined term "payment" and the defined

18  terms "cash collateral management fees" and "management" are ambiguous in this context.

19  Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash

20  collateral fund used in connection with securities lending, as described on BAIRD_0001617.

21  Defendants further object to this request to the extent it encompasses a period of time that extends

22  beyond the Relevant Period.  Defendants will construe this request as being limited to the

23  Relevant Period.

24    Subject to and without waiving these objections, Defendants respond as follows:

25  Defendants admit that the fees paid to BTC out of the assets of Cash Equivalent Fund II, as

26  defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect

27  transfer to BTC, or use by or for the benefit of BTC, of the assets of Cash Equivalent Fund II, but

28

1   deny that such transfer or use is a nonexempt prohibited transaction.

2

3   **REQUEST FOR ADMISSION NO. 250**

4       Admit that from January 1, 2011 to the present, each payment of cash collateral

5   management fees to BTC for management of the Cash Equivalent Fund B was a direct or indirect

6   transfer of the assets of Cash Equivalent Fund B to BTC, where "direct," "indirect," and

7   "transfer" has the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

8   "cash collateral management fees" has the same meaning as BAIRD 0001617 and "management"

9   has the same meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over

10  management of the Funds.").

11  **RESPONSE**

12      Defendants incorporate by reference the objections stated above.  Defendants further

13  object to this interrogatory on the grounds that the undefined term "payment" and the defined

14  terms "cash collateral management fees" and "management" are ambiguous in this context.

15  Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash

16  collateral fund used in connection with securities lending, as described on BAIRD_0001617.

17  Defendants further object to this request to the extent it encompasses a period of time that extends

18  beyond the Relevant Period.  Defendants will construe this request as being limited to the

19  Relevant Period.

20      Subject to and without waiving these objections, Defendants respond as follows:

21  Defendants admit that the fees paid to BTC out of the assets of Cash Equivalent Fund B, as

22  defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect

23  transfer to BTC, or use by or for the benefit of BTC, of the assets of Cash Equivalent Fund B, but

24  deny that such transfer or use is a nonexempt prohibited transaction.

25

26  **REQUEST FOR ADMISSION NO. 251**

27      Admit that from January 1, 2011 to the present, each payment of cash collateral

28

1  management fees to BTC for management of the Euro Cash Collateral Fund was a direct or

2  indirect transfer of the assets of Euro Cash Collateral Fund to BTC, where "direct," "indirect,"

3  and "transfer" has the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

4  "cash collateral management fees" has the same meaning as BAIRD 0001617 and "management"

5  has the same meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over

6  management of the Funds.").

7  **RESPONSE**

8        Defendants incorporate by reference the objections stated above.  Defendants further

9  object to this interrogatory on the grounds that the undefined term "payment" and the defined

10  terms "cash collateral management fees" and "management" are ambiguous in this context.

11  Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash

12  collateral fund used in connection with securities lending, as described on BAIRD_0001617.

13  Defendants further object to this request to the extent it encompasses a period of time that extends

14  beyond the Relevant Period.  Defendants will construe this request as being limited to the

15  Relevant Period.

16        Subject to and without waiving these objections, Defendants respond as follows:

17  Defendants admit that the fees paid to BTC out of the assets of Euro Cash Collateral Fund, as

18  defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect

19  transfer to BTC, or use by or for the benefit of BTC, of the assets of Euro Cash Collateral Fund,

20  but deny that such transfer or use is a nonexempt prohibited transaction.

21

22  **REQUEST FOR ADMISSION NO. 252**

23        Admit that from January 1, 2011 to the present, each payment of cash collateral

24  management fees to BTC for management of the Money Market Fund A/B was a direct or

25  indirect transfer of the assets of Money Market Fund A/B to BTC, where "direct," "indirect," and

26  "transfer" has the same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where

27  "cash collateral management fees" has the same meaning as BAIRD 0001617 and "management"

28

1    has the same meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over

2    management of the Funds.").

3    **RESPONSE**

4         Defendants incorporate by reference the objections stated above.  Defendants further

5    object to this interrogatory on the grounds that the undefined term "payment" and the defined

6    terms "cash collateral management fees" and "management" are ambiguous in this context.

7    Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash

8    collateral fund used in connection with securities lending, as described on BAIRD_0001617.

9    Defendants further object to this request to the extent it encompasses a period of time that extends

10   beyond the Relevant Period.  Defendants will construe this request as being limited to the

11   Relevant Period.

12        Subject to and without waiving these objections, Defendants respond as follows:

13   Defendants admit that the fees paid to BTC out of the assets of Money Market Fund A/B, as

14   defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect

15   transfer to BTC, or use by or for the benefit of BTC, of the assets of Money Market Fund A/B,

16   but deny that such transfer or use is a nonexempt prohibited transaction.

17

18   **REQUEST FOR ADMISSION NO. 253**

19        Admit that from January 1, 2011 to the present, each payment of cash collateral

20   management fees to BTC for management of the Term Fund 11 was a direct or indirect transfer of

21   the assets of Money Market Fund A/B to BTC, where "direct," "indirect," and "transfer" has the

22   same meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "cash collateral

23   management fees" has the same meaning as BAIRD 0001617 and "management" has the same

24   meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over management of

25   the Funds.").

26   **RESPONSE**

27        Defendants incorporate by reference the objections stated above.  Defendants further

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

1   object to this interrogatory on the grounds that the undefined term "payment" and the defined

2   terms "cash collateral management fees" and "management" are ambiguous in this context.

3   Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash

4   collateral fund used in connection with securities lending, as described on BAIRD_0001617.

5   Defendants further object to this request to the extent it encompasses a period of time that extends

6   beyond the Relevant Period.  Defendants will construe this request as being limited to the

7   Relevant Period.  Defendants further object to this interrogatory on the grounds that contains an

8   apparent scrivener's error by requesting an admission that each payment of cash collateral

9   management fees to BTC for management of the Term Fund 11 was a direct or indirect transfer of

10  the assets of Money Market Fund A/B to BTC.  Defendants will construe this request as asking

11  whether each payment of cash collateral management fees to BTC for management of the Term

12  Fund 11 was a direct or indirect transfer of the assets of Term Fund 11 to BTC.

13          Subject to and without waiving these objections, Defendants respond as follows:

14  Defendants admit that the fees paid to BTC out of the assets of Term Fund 11, as defined in the

15  preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC,

16  or use by or for the benefit of BTC, of the assets of Term Fund 11, but deny that such transfer or

17  use is a nonexempt prohibited transaction.

18

19  **REQUEST FOR ADMISSION NO. 254**

20          Admit that from January 1, 2011 to the present, each payment of cash collateral

21  management fees to BTC for management of the Term Fund 215 was a direct or indirect transfer

22  of the assets of Term Fund 215 to BTC, where "direct," "indirect," and "transfer" has the same

23  meaning as in ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and where "cash collateral

24  management fees" has the same meaning as BAIRD 0001617 and "management" has the same

25  meaning as on BAIRD 0001606 ("BTC, as trustee, has exclusive authority over management of

26  the Funds.").

27

28

DEFS.' SUPPLE. OBJ. & RESP. TO SIXTH RFAS
CASE NO. 4:17-CV-01892-HSG

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to this interrogatory on the grounds that the undefined term "payment" and the defined terms "cash collateral management fees" and "management" are ambiguous in this context. Defendants will construe this request as referring to fees paid to BTC out of the assets of a cash collateral fund used in connection with securities lending, as described on BAIRD_0001617. Defendants further object to this request to the extent it encompasses a period of time that extends beyond the Relevant Period.  Defendants will construe this request as being limited to the Relevant Period.

Subject to and without waiving these objections, Defendants respond as follows: Defendants admit that the fees paid to BTC out of the assets of Term Fund 215, as defined in the preceding paragraph and to the extent it occurred, constitutes a direct or indirect transfer to BTC, or use by or for the benefit of BTC, of the assets of Term Fund 215, but deny that such transfer or use is a nonexempt prohibited transaction.

**REQUEST FOR ADMISSION NO. 255**

Admit that during the Class Period, every participant in the BlackRock Retirement Savings Plan invested, at one time in the Class Period, in at least one of the BlackRock collective trust funds listed as the "Plan Layer Investments" in Defendants' Responses and Objections to Interrogatory No. 2 of Plaintiffs' First Set of Interrogatories to All Defendants dated June 27, 2018.

**RESPONSE**

Defendants incorporate by reference the objections stated above.  Defendants further object to this request's reference to participants in the BlackRock Retirement Savings Plan ("RSP") as being "invested . . . in at least one of the BlackRock CTIs"; it is the RSP that "invests" in CTIs.  Defendants also object to the incorporation of a term ("directly or indirectly") that, as used in the cited document, does not apply to plan investments or participant account allocations.

1    Defendants further object to the request's reference to "at one time in the Class Period" as vague

2    and ambiguous.   Defendants further object to the request's reference to "Plan Layer

3    Investments," a term to which Defendants objected as vague, ambiguous, and overbroad in their

4    Responses and Objections to Interrogatory No. 2 in Plaintiffs' First Set of Interrogatories to All

5    Defendants.  As they did in their objections and response to that interrogatory, Defendants will

6    construe "Plan Layer Investments" to mean Affiliated Investment Vehicles in which the RSP

7    directly invests, with "Affiliated Investment Vehicles" construed to mean common/collective

8    trusts, pooled separate accounts, master trust investment accounts, and 103-12 investment entities

9    that are managed or advised by BlackRock, Inc. or a direct or indirect subsidiary of BlackRock,

10   Inc., excluding the BlackRock, Inc. and PNC Financial Services Group, Inc. common stock

11   funds.  Defendants therefore construe this request as seeking an admission that every RSP

12   participant's account was allocated, for at least some of the Class Period, to at least one of the

13   CTIs that Defendants identified as "Plan Layer Investments" in their objections and response to

14   Plaintiffs' Second Set of Interrogatories.

15         Subject to and without waiving these objections, Defendants respond as follows:  Denied.

16

17         Dated: April 16, 2019                    O'MELVENY & MYERS LLP

18

19                                                  By:    /s/ Meaghan VerGow
                                                          Meaghan VerGow

20                                                  Attorneys for Defendants

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

I, Michael J. McCarthy, declare as follows:

3

I am a citizen of the United States and employed in Washington, District of Columbia.  I

4

am over the age of eighteen years and not a party to the within action.  My business address is

5

1625 Eye Street, NW, Washington, District of Columbia, 20006-4001.  On April 16, 2019, I

6

served a true and correct copy of the following document:

7

8

BLACKROCK'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO
PLAINTIFFS' SIXTH SET OF REQUESTS FOR ADMISSION TO ALL
DEFENDANTS

9

10

by causing the document to be emailed to the persons at the email addresses set forth below,

11

pursuant to an agreement of the parties to accept service by email or electronic submission.

12

13

14

15

16

17

Michelle C. Yau
Mary J. Bortscheller
Daniel Sutter
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC  20005
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com
dsutter@cohenmilstein.com

Matthew A. Russell
Brian T. Ortelere
Jasmine Chang
Morgan, Lewis & Brockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, IL  60601
matthew.russell@morganlewis.com
brian.ortelere@morganlewis.com
jasmine.chang@morganlewis.com

18

19

20

Nina Wasow
Feinberg Jackson Worthman & Wasow
2030 Addison Street, Suite 500
Berkeley, CA  94704
nina@feinbergjackson.com

21

22

I declare under penalty of perjury under the laws of the United States that the above is true

23

and correct.

24

Executed on this sixteenth day of April, 2019, at Washington, District of Columbia.

25

26

*/s/ Michael J. McCarthy*
Michael J. McCarthy

27

28

55