Michelle C. Yau (admitted *Pro Hac Vice*)
Mary J. Bortscheller (admitted *Pro Hac Vice*)
Daniel Sutter (admitted *Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison St. ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| Charles Baird and Lauren Slayton, as individuals, and on behalf of all others similarly situated, and on behalf of the BlackRock Retirement Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>BlackRock Institutional Trust Company, N.A., et al.,<br><br>Defendants. | Case No: 4:17-cv-01892-HSG-KAW<br><br>**PLAINTIFFS' RESPONSE TO BLACKROCK'S SUPPLEMENTAL BRIEF REGARDING DOCUMENT NUMBERS 305, 346, 351, 535, AND 536**<br><br>Re: Dkt. No. 282 |

Plaintiffs continue to challenge BlackRock's assertion of attorney-client privilege with respect to Document Nos. 305,[1] 346, 351, 535, and 536. The documents at issue appear to reflect legal advice made to ERISA-protected trusts regarding trust administration, and therefore are subject to the fiduciary exception to attorney-client privilege. BlackRock's argument, which turns on its reliance on an inapposite case, fails to persuade. The documents and information are not properly withheld and should be produced.

In the ERISA context, "the fiduciary exception provides that 'an employer acting in the capacity of an ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration.'" *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999) (quoting *Becher v. Long Is. Lighting Co. (In re Long Is. Lighting Co.)*, 129 F.3d 268, 272 (2d Cir. 1997)). In other words, when an ERISA fiduciary seeks legal advice regarding administration of an ERISA-governed plan or trust, that information may not be withheld from trust beneficiaries—like Plaintiffs—under the attorney-client privilege. Two distinct theories underly the fiduciary exception. Under the first theory, "the attorney-client privilege is subordinated to the fiduciary's disclosure obligation" under ERISA. *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 931 (9th Cir. 2012). Pursuant to the second theory, an "ERISA fiduciary is [merely] 'a representative for the beneficiaries of the trust which he is administering'" and the plan *beneficiary*, rather than the plan fiduciary, "is the 'real client'" of the attorney. *Stephan*, 697 F.3d at 931 (quoting *Mett*, 178 F.3d at 1063) (emphasis added); *see also In re Grand Jury Proceedings Grand Jury No. 97-11-8*, 162 F.3d 554, 556 (9th Cir. 1998). As shown below and in Plaintiffs' submission at Dkt. No. 262, Plaintiffs are entitled to the withheld information under both theories.

BlackRock has redacted or withheld Document Nos. 305, 346, 351, 535, and 536 on the basis

---

[1] Plaintiffs respectfully request that the Court also review *in camera* Document No. 305, as this challenged document involves the same legal issues as the others for which the Court requested *in camera* review. Dkt. No. 282.

Case No: 4:17-cv-01892-HSG-KAW: PLAINTIFFS' RESPONSE TO BLACKROCK'S SUPPLEMENTAL BRIEF
Page 1 of 6

of attorney-client privilege. *See* BlackRock's Feb. 14, 2019 Privilege Log, Dkt. No. 262-1, at 8–10, 18. Each of these documents discusses interpretation of, or revisions to, the STIF Guidelines and CTI Plan Documents. The STIF Guidelines document the internal rules, guidelines, and protocols for the management of short-term investment funds, or STIFs, and address topics such as credit and risk standards; the appropriate structure for funds engaged in securities lending; the investment objectives of particular funds; the liquidity and interest rate exposures for particular funds; and eligible investments for particular funds. *See* Dkt. No. 181–6, Ex. K (Short-Term Investment Funds: Overview and Guidelines, effective from 2011 to 2012). The CTI Plan Documents are the trust documents which set forth the requirements for management of the ERISA-governed collective trust funds. *See, e.g.*, Dkt. No. 180-5, Ex. I (Plan of BlackRock Institutional Trust Company, N.A. Investment Funds for Employee Benefit Trusts, dated December 31, 2011) (filed under seal).

BlackRock contends that the fiduciary exception to attorney-client privilege does not apply to the withheld documents and relies heavily on *Santomenno v. Transamerica Life Insurance Company* in support of this argument. *See* Dkt. No. 284 at 1–2 (citing 883 F.3d 833, 838 (9th Cir. 2018)). In *Santomenno*, the Ninth Circuit adopted a body of caselaw from other circuits to find that "a plan administrator is not an ERISA fiduciary when negotiating its compensation with a prospective customer." 883 F.3d at 837; *see also McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998 (8th Cir. 2016) (affirming dismissal of breach of fiduciary duty claim after finding that defendant, which was hired by plaintiff retirement plan to provide investment options to the plan, was not acting as a fiduciary when it negotiated its service fees with an ERISA plan fiduciary in an arms-length transaction); *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284 (3d Cir. 2014) (same).

Attempting to make this dispute analogous to *Santomenno*, BlackRock argues that clients retain discretionary control over proposed amendments to the STIF Guidelines and the CTI Plan

**REDACTED VERSION OF SEALED DOCUMENT**

Documents and thus BlackRock was not acting in a fiduciary capacity when it communicated with its counsel regarding those amendments. However, BlackRock's position is at odds with the plain text of ███████████████████████████████████████████████████████████████████ Dkt. No. 180-5, Ex. I at BAIRD_0049109. Likewise, investing clients have no power to change the STIF Guidelines. *See* Dkt. No. 181–6, Ex. K at BAIRD_0071397 ("BlackRock's Global Cash Investment Oversight Committee has ultimate credit and risk management responsibility for the STIFs. Representatives from this group generally meet on a monthly basis and have responsibility for approving changes to the guidelines for the STIFs."). Indeed, the agreements entered into with clients confirm that BTC was granted "full discretionary authority" over all decisions regarding the CTIs. *See, e.g.*, Investment Management Agreement, Dkt. No. 79-3, Ex. T to Edwards Decl. ISO BlackRock Mot. to Dismiss, at BAIRD_0000347 ("The Manager [BTC] is granted full discretionary investment authority to invest the Account, subject to ERISA's fiduciary standards, in investments of any kind including one or more collective investment funds maintained by the Manager," subject to Guideline and Fee Agreement (GLFA)).

BlackRock attaches client letters which purport to give investing clients the ability to approve, through "negative consent," changes to the STIF Guidelines and CTI Plan Documents. Dkt. No. 284, Ex. A. But review of the letter reveals that BlackRock only sought "negative consent" to annual disclosure documents like "16 Things" and "Managing ERISA Assets." *Id*. By contrast, the section of the letter referring to the STIF Guidelines and CTI Plan Documents merely advises that "BTC also makes [such] document available to clients[,]" and notes that BTC "recently updated the STIF Guidelines." *Id*. There is no mention of or request for consent to the changes to the STIF Guidelines, in direct contrast to the request for consent to the changes to "16 Things" and "Managing ERISA

Assets." *Id*. Further, the Department of Labor ("DOL") Advisory Opinion BlackRock cites in support of "negative consent" is inapposite: the language quoted in the supplemental brief is a summary of the terms of a *particular* 401(k) program, not the opinion of the DOL. *See* DOL Adv. Op. 97-16A (May 22, 1997) (assessing whether receipt of fees by the subsidiary of a life insurance and annuity company violates ERISA § 406(b)(3)).

BlackRock also argues that it was not a fiduciary when it was revising the investment guidelines for the STIFs or the CTI Plan Documents, because clients could have rejected the revisions by "terminating their investments." Dkt. No. 284 at 2. But BlackRock cannot duck fiduciary status on that premise. At the time that the amendments were made to the STIF Guidelines and CTI Plan Document, BTC already owed a fiduciary duty to the investing plans. *Santomenno* therefore is also distinguishable on this basis, as in that case, the service provider was "negotiating its compensation with a *prospective* customer," not an existing customer. 883 F.3d at 837 (emphasis added). Thus, BTC used its unfettered discretionary authority to set the terms of the CTIs' governing documents and cannot plausibly argue otherwise. *See Varity Corp. v. Howe*, 516 U.S. 489, 502–03 (1996) (explaining that a retirement plan administrator acts as a fiduciary when "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation"). At bottom, BlackRock does not and cannot plausibly argue that it was not acting as an ERISA fiduciary when it sought legal advice regarding the alteration of the very documents which delineate its responsibilities to the ERISA-protected trusts at issue, and the ERISA plans invested in them.[2]

Finally, BlackRock has not clearly argued that the communications at issue were about settlor functions, such as terminating or amending the trust. *See Ronches v. Dickerson Emp. Benefits, Inc.*,

---

[2] Indeed, BlackRock has previously admitted that "BTC *did* act as a fiduciary in managing the cash collateral STIFs[.]" Dkt. No. 181 at 16 (emphasis added).

2009 WL 10669571, at *11 (C.D. Cal. Oct. 30, 2009) (explaining that an entity acting in a settlor capacity is not an ERISA fiduciary to the extent it is engaged in settlor functions, such as "deciding to amend or terminate a welfare benefits plan"). And in response to the Court's invitation to supply legal authority for such an argument (Dkt. No. 282 at 1), BlackRock only cites one Seventh Circuit case, *King v. National Human Resource Committee, Inc.*, which found a retirement service provider does not act as a fiduciary when developing the terms for a new 401(k) plan. 218 F.3d 719, 723 (7th Cir. 2000). Dkt. No. 284 at 3. *King* is not analogous here, where BlackRock and BTC were not developing a new retirement plan, but instead were seeking advice regarding the administration of existing, ERISA-protected trust funds, which already held the retirement assets of the trust beneficiaries to whom BlackRock owed ERISA fiduciary duties. Indeed, *King* acknowledges that a plan administrator *is* a fiduciary "when the question involves the administration of the plan"—the exact function the BlackRock Defendants performed with respect to the documents at issue. *King*, 218 F.3d at 724. Defendants have failed "to provide legal authority in support" of this argument and have not—and could not—demonstrate that BlackRock was engaged in a settlor function when it sought the legal advice it seeks to protect in Document Nos. 305, 346, 351, 535, and 536. Dkt. No. 282 at 1.

BlackRock consulted with its lawyers to obtain advice on matters of trust administration, clearly implicating its fiduciary duties to the ERISA-protected collective trusts at issue. Here, "the ultimate clients of the attorney" are the beneficiaries of the trust: Plaintiffs and the members of the classes they seek to represent. *In re Grand Jury Proceedings*, 162 F.3d at 556. Because the fiduciary exception to the attorney-client privilege applies to the challenged documents and information, BlackRock should be required to produce Document Nos. 305, 346, 351, 535, and 536 in full. Plaintiffs respectfully request this Court to order BlackRock to produce the withheld documents.

Respectfully submitted,

Dated:  May 15, 2019

**COHEN MILSTEIN SELLERS & TOLL, PLLC**

By:     /s/ *Michelle C. Yau*
Michelle C. Yau (admitted *Pro Hac Vice*)

Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
Mary J. Bortscheller (admitted *Pro Hac Vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
mbortscheller@cohenmilstein.com

**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
Nina Wasow (Cal. Bar No. 242047)
Todd Jackson (Cal. Bar No. 202598)
2030 Addison St.
Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
nina@feinbergjackson.com
todd@feinbergjackson.com

*Attorneys for Plaintiffs*