# Exhibit B

Page 1

```
             UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
                SAN FRANCISCO DIVISION


 _____
                                )
 Charles Baird and Lauren       )
 Slayton, Individually, and on  )
 behalf of all others similarly )
 situated, and on behalf of the )
 BlackRock Retirement Savings   )
 Plan,                          )
                                )
           Plaintiffs,          )
                                )
 vs.                            ) No. 17-cv-01892-HSG
                                )
 BlackRock Institutional Trust  )
 Company, N.A., et al.,         )
                                )
           Defendants.          )
 _____)
```

VIDEOTAPED DEPOSITION OF CHARLES "CHAZ" ROBERT BAIRD
San Francisco, California
Wednesday, November 7, 2018
Volume I

Reported by:
CATHERINE A. RYAN, RMR, CRR
CSR No. 8239
Job No. 3107164
VERITEXT LEGAL SOLUTIONS
MID-ATLANTIC REGION
1250 Eye Street NW - Suite 350
Washington, D.C.  20005

Page 70

1  Q  Have you been involved in any of the
2  decisions regarding what types of discovery to seek
3  in this lawsuit?
4      MS. WASOW: Objection. Calls for a legal
5  conclusion.
6      THE WITNESS: I don't believe so.
7  BY MR. McCARTHY:
8  Q  Okay. Did you have any role in the
9  drafting of any of the motions that were filed by
10 your counsel in this litigation?
11     MS. WASOW: Object to the form.
12     THE WITNESS: No.
13 BY MR. McCARTHY:
14 Q  Okay. Were you involved in the decision
15 as to which parties to name as defendants in this
16 case?
17     MS. WASOW: Again, I'd caution the witness
18 not to reveal the contents of any conversations with
19 counsel.
20     THE WITNESS: Not to my knowledge.
21 BY MR. McCARTHY:
22 Q  Okay. Without going into your
23 communications with counsel, were you involved in
24 the decision for Ms. Slayton to join the case as a
25 co-defendant?

Page 71

1      MS. WASOW: Object to the form.
2      THE WITNESS: No.
3      MS. WASOW: Sorry. I think you mean
4  co-plaintiff.
5      MR. McCARTHY: Co-plaintiff. What did I
6  say? "Co-defendant"?
7      MS. WASOW: You said "co-defendant."
8      MR. McCARTHY: I apologize.
9  Q  I assume the answer is still "No"?
10 A  (Witness nods head.)
11 Q  Okay.
12 A  Yes, correct.
13     MS. WASOW: Just trying to make a clean
14 record.
15     MR. McCARTHY: I do appreciate it.
16 Q  Who will make decisions in this case going
17 forward: You or your lawyers?
18     MS. WASOW: Objection. Calls for
19 speculation.
20     THE WITNESS: I'd like to think it's a
21 joint effort.
22 BY MR. McCARTHY:
23 Q  Okay. As you sit here today, can you
24 identify any decision in the case so far in which
25 you have had an active role?

Page 72

1      MS. WASOW: Object to the form.
2      THE WITNESS: No.
3  BY MR. McCARTHY:
4  Q  Do you understand that you may be required
5  to testify if this case goes to trial?
6  A  Yes.
7      MR. McCARTHY: Okay. I am going to hand
8  you a document which I believe is going to be marked
9  Exhibit 511. That may be the only one I get right.
10     (Exhibit 511 was marked for
11     identification by the court reporter.)
12     MS. WASOW: Thank you.
13 BY MR. McCARTHY:
14 Q  Mr. Baird, I want to explain that if you
15 look at this document, you'll notice that it's --
16 this exhibit is actually two documents. There is a
17 -- the first document with the caption is Defendant
18 BlackRock, Inc.'s First Set of Requests for
19 Production and Documents to Charles Baird. And then
20 about ten pages in there is Plaintiffs' Objections
21 and Responses to Defendants' Request for Production.
22     MS. WASOW: Did you mean to produce a copy
23 that says "Privileged and Confidential Attorney Work
24 Product 8/21/2017 Discussion Draft" at the top of
25 the first page?

Page 73

1      MR. McCARTHY: I do not think that I did,
2  although I believe it's identical, but, you know
3  something? Let me be -- in an abundance of caution,
4  may I see the exhibit?
5      MS. WASOW: Hand it -- hand it back to
6  him.
7      THE WITNESS: Sure.
8      MR. McCARTHY: I'm going to remove those
9  pages, and I thank counsel.
10     MS. WASOW: You're welcome.
11     MR. McCARTHY: As I said before, it's my
12 understanding that this is identical to the
13 discovery that was served.
14     MS. WASOW: You probably need to have the
15 court reporter re-mark it.
16     MR. McCARTHY: I'm afraid the Certificate
17 of Service will have to remain since it was produced
18 double-sided, but -- yeah.
19     MS. WASOW: You keep that one. Thank you.
20 BY MR. McCARTHY:
21 Q  So, Mr. Baird, I'm going to direct you to
22 what is now the second page of the exhibit.
23     Have you ever seen this document before?
24 A  I don't believe so.
25 Q  Okay. Do you have an understanding that

Page 110

1      THE WITNESS: My investment style changes
2 over time, so it would -- if you were going to ask
3 me as of my perspective today, I'd say I have a
4 pretty healthy risk appetite.
5 BY MR. McCARTHY:
6   Q   So as we sit here today, you have a
7 healthy risk appetite. And why is that?
8   A   I'm a gambling man.
9   Q   Okay. And is your healthy risk appetite
10 related to any expectation of a relationship between
11 risk and potential reward?
12   A   There's always a relationship between risk
13 and reward.
14   Q   What is that relationship?
15   A   I believe it can be summed with the
16 phrase, "high risk, high reward."
17   Q   And is it also fair to say that low risk
18 usually equates to low reward?
19   A   That's a fair statement.
20   Q   Okay. So as we sit here today, you're
21 willing to tolerate a very high level of risk in
22 order to get some potentially very high level of
23 performance?
24   A   Correct.
25   Q   Okay. Recognizing that you could also

Page 111

1 have a high level of underperformance?
2      MS. WASOW: Object to the form.
3      THE WITNESS: Yes.
4 BY MR. McCARTHY:
5   Q   In fact, you might lose all the value or a
6 substantial amount of the value by taking a risky
7 investment option?
8   A   That's true with most investment vehicles
9 even though it's considered low risk.
10   Q   Mm-hmm. So what other factors are
11 important to you when making investment decisions?
12      MS. WASOW: Object to the form.
13      THE WITNESS: If I'm investing in
14 companies, I want to -- you know, I have to have a
15 warm and fuzzy feeling about the company. I want to
16 make sure that, you know, they have long-term
17 potential.
18 BY MR. McCARTHY:
19   Q   Could you explain further what you mean by
20 "warm and fuzzy" feelings?
21   A   Yes. Essentially, that they're either
22 bettering humanity or bettering the planet,
23 environmental reasons, humanitarian reasons.
24   Q   So there's a moral element to your
25 investment choices?

Page 112

1   A   Yes, very much so.
2   Q   Okay. Is that an -- how important a
3 factor is that for you in your decision-making?
4   A   I'm quite passionate about it.
5      MR. McCARTHY: Okay. May I ask the court
6 reporter to read back the response when he first
7 mentioned the warm and fuzzy feelings.
8      (Record read by the reporter as follows:
9         "THE WITNESS: If I'm investing in
10         companies, I want to -- you know, I have
11         to have a warm and fuzzy feeling about the
12         company. I want to make sure that, you
13         know, they have long-term potential.")
14 BY MR. McCARTHY:
15   Q   Okay. Mr. Baird, what do you mean by
16 "long-term potential"?
17   A   Mostly that I feel that they have sound
18 basis in their -- both their financials, their
19 leadership and their overall mission.
20   Q   Are you familiar with the concept of a
21 growth investment?
22   A   Yes, I am.
23   Q   Okay. And I believe that is in contrast
24 to a value investment, growth and value.
25   A   There's semantics in play there, but

Page 113

1 overall ...
2   Q   Okay. But is that what you -- is that
3 related to your factor that you're considering when
4 you talk about a strong leadership and potential
5 longevity?
6      MS. WASOW: Object to the form.
7      THE WITNESS: No. It's a little harder to
8 put your finger on -- on what I mean by that.
9 There's -- there's an element of personality within
10 the leadership. There's an element of past success,
11 for instance, just to give a couple examples.
12 BY MR. McCARTHY:
13   Q   Is it fair to say that it's a kind of
14 subjective decision-making on your part?
15   A   Fair.
16   Q   Okay. What other considerations are at
17 play when you decide -- when you make your
18 investment choices?
19   A   Company fundamentals, their track record,
20 as a couple of examples. There's a number of
21 analytics that go into it, of course.
22   Q   Without going too deeply into it, could
23 you explain a little bit more about what you mean by
24 "company fundamentals"?
25   A   Yeah, their books, profit-loss statements,

Page 166

1  Q  And why do you characterize them as
2  informal?
3  A  They were -- they were done over the phone
4  just as -- as part of the whole QDRO proceedings.
5  Q  Okay. Just so I clarify, was the
6  distribution -- did the -- your distribution take
7  place at the same time that money was taken out as
8  part of your wife's share of the marital property --
9  your former wife's?
10 A  It was roughly the same time.
11 Q  Okay. So was the at ML representatives
12 giving you any advice -- any investment advice about
13 your decision to remove the funds?
14 A  No.
15 Q  Was it mostly sort of logistical
16 information about how to effectuate the
17 distribution?
18 A  And some expectations around the QDRO,
19 yeah, administration.
20 Q  So this may have been covered by our
21 earlier testimony, but have you ever spoken to a
22 financial advisor about your participation in the
23 BlackRock 401K plan?
24    MS. WASOW: Objection. Asked and
25 answered.

Page 167

1     THE WITNESS: No.
2  BY MR. McCARTHY:
3  Q  Okay. While you were still at BlackRock,
4  did you receive any disclosures or other information
5  about the 401K plan?
6     MS. WASOW: Objection. Asked and
7  answered.
8     THE WITNESS: I don't recall specifically
9  information regarding disclosures.
10 BY MR. McCARTHY:
11 Q  Do you recall any disclosures?
12 A  Not specifically.
13 Q  Do you recall any disclosures generally?
14 A  I'm guessing they -- there was some
15 legalese that I ignored in the statements that may
16 have contained disclosures.
17 Q  Well, you know, I get nervous when you say
18 "I'm guessing."
19    Do you recall seeing legalese and ignoring
20 it?
21 A  Yes. I think that's pretty typical with
22 statements.
23 Q  Okay. So I take it that, to the extent
24 you received disclosures that looked like legalese
25 to you, that you did not read them?

Page 168

1     MS. WASOW: Object to the form.
2     THE WITNESS: Yeah. Kind of like end user
3  licensing requirements.
4  BY MR. McCARTHY:
5  Q  Do you have any idea what information --
6  well, let me strike that.
7     I take it, therefore, that you do not have
8  any clear idea of what information would have been
9  in those disclosures?
10    MS. WASOW: Object to the form.
11    THE WITNESS: Fair statement.
12 BY MR. McCARTHY:
13 Q  Okay. I'd like to show you a document
14 which was previously introduced in a prior
15 deposition as Exhibit 504.
16    THE VIDEOGRAPHER: 504.
17    MR. McCARTHY: Counsel, you still have it.
18 I'm not giving it back. I'm keeping it.
19 Q  Do you recall ever seeing this document
20 before?
21 A  Not with certainty.
22 Q  Okay. Do you recall receiving documents
23 like this during your time at BlackRock?
24 A  Yes.
25 Q  Okay. Did you remember receiving them on

Page 169

1  a regular basis?
2  A  Yes. I remember receiving them on an
3  annual basis.
4  Q  Okay. Did you used to read them?
5  A  I would describe it as skimming through
6  them.
7  Q  Okay. Can you -- can I direct your
8  attention to page 5, which has the Bates number
9  BAIRD_0046007. As you can see, this is a page that
10 relates, at least in part, to the retirement plan.
11    Do you recall skimming through this
12 portion of these annual books?
13 A  I don't recall specifically this
14 particular page.
15 Q  Okay. Do you see the -- I'd like to
16 direct your attention to the first paragraph in the
17 second column. It says in the middle of the
18 paragraph: "Some of the BlackRock Retirement
19 Savings Plan investment options are offered to you
20 as collective trust funds with no investment
21 management fees."
22    And there's a footnote and then it says:
23 "This is a significant advantage to our plan."
24    Do you recall seeing a statement like that
25 in the annual reports that you would have received

43 (Pages 166 - 169)

Page 226

1     MS. WASOW: Objection to form.
2     THE WITNESS: I'm not sure what you mean
3  by "series of funds," but, essentially, I was
4  looking to hedge my bets.
5  BY MR. McCARTHY:
6     Q   Okay. Did you place any more attention
7  into the details of the BlackRock Total Return Fund
8  than you did for the other options that you invested
9  in at that time?
10    A   To the best of my recollection, my simple
11 motivation was to spread out the money amongst as
12 many funds as possible.
13    Q   Okay. Do you have any criticism with
14 regard to the BlackRock Total Return Fund?
15        MS. WASOW: Object to the form.
16        THE WITNESS: Not off the top of my head,
17 no.
18 BY MR. McCARTHY:
19    Q   Okay. At the time that you decided to
20 invest in these, I think, nine funds -- we already
21 talked about your objective of diversifying.
22        Did you look at what the expense ratios
23 were of the funds you were choosing?
24    A   I don't recall specifics on the expense
25 ratios.

Page 227

1     Q   Okay. Based on your usual practice, do
2  you think you would have looked at that?
3     A   Based on what I can recall about my
4  objective in terms of investing, I don't think I was
5  too concerned about expense ratios.
6     Q   Okay. As we sit here today, do you think
7  that an expense ratio of 95 basis points is
8  unreasonable to charge in relation to the BlackRock
9  -- in relation to a fund like the BlackRock Total
10 Return Fund?
11        MS. WASOW: Objection. Calls for a legal
12 conclusion. Calls for expert opinion.
13        THE WITNESS: It may or may not depending
14 on a number of factors that I'm not aware -- a
15 number of -- of, you know, measures of quality that,
16 you know, I -- that I can't really speak of in any
17 intelligent detail at this point.
18 BY MR. McCARTHY:
19    Q   Okay. So at this point you can't say one
20 way or another whether it's a fair price or not?
21    A   At this point, no.
22    Q   Okay. For all you know, as we sit here
23 today, it could be?
24        MS. WASOW: Object to the form.
25        THE WITNESS: It could be.

Page 228

1  BY MR. McCARTHY:
2     Q   Okay. Were you aware that in 2016 the
3  BlackRock Plan replaced this version of the Total
4  Return Fund with a CTF version of that fund?
5         MS. WASOW: Object to the form.
6         THE WITNESS: I don't recall being aware
7  of that.
8  BY MR. McCARTHY:
9     Q   Okay. Would that -- if you were aware
10 that the -- in 2016 that the BlackRock Total Return
11 Fund was now being offered as a CTF version with a
12 expense ratio of 2 basis points instead of 90, would
13 that have led you to invest in that fund in 2016?
14        MS. WASOW: Objection to the form.
15        THE WITNESS: Not in and of itself.
16 BY MR. McCARTHY:
17    Q   Okay. Is that because in 2016 you were
18 pursuing a different investment strategy?
19    A   That's one component of it, yes.
20    Q   Okay. What are other components of it?
21    A   Again, it has to do with the -- the
22 quality of the -- the fund performance over time,
23 expected returns, my own gut feelings towards the
24 fund strategy amongst -- those are the things I can
25 think of off the top of my head.

Page 229

1     Q   In 2016 did you have an opinion about the
2  performance of the BlackRock Total Return Fund?
3     A   Not that I can recall.
4     Q   Okay. Did you know what it's -- do you
5  recall knowing, really, anything about the total
6  return fund at that time?
7         MS. WASOW: Object to the form.
8         THE WITNESS: Not any specifics.
9  BY MR. McCARTHY:
10    Q   Okay. And did you have a gut feeling with
11 regard to the BlackRock Total -- Total Return Fund
12 in 2016?
13        MS. WASOW: Object to the form.
14        THE WITNESS: Not that I recall.
15 BY MR. McCARTHY:
16    Q   Well, in 2016 you were fully invested in
17 the BlackRock Russell 1000 Fund Class F?
18    A   (Witness nods head.)
19    Q   Did you have a gut feeling about the
20 BlackRock Russell 1000 Fund Class F at that time?
21    A   Not about the fund itself, only about the
22 under- -- underlying index that it was attempting to
23 reproduce.
24    Q   Okay. And was that a positive feeling?
25    A   Yes.

```
                                                        Page 290                                                          Page 292
 1  try to sort of -- well --                                       1  options offered in the fund compared to market
 2       MS. WASOW: Can we go off the record for a                  2  alternatives?
 3  moment?                                                         3     A   No.
 4       MR. McCARTHY: Sure.                                        4     Q   Okay. Do you have any personal knowledge
 5       THE VIDEOGRAPHER: Going off the record.                    5  about how investment expenses were disclosed to plan
 6  The time is 4:51 p.m.                                           6  participants?
 7       (Discussion Off the Record.)                               7       MS. WASOW: Object to the form.
 8       THE VIDEOGRAPHER: Back on the record.                      8       THE WITNESS: No.
 9  The time is 4:56 p.m.                                           9  BY MR. McCARTHY:
10  BY MR. McCARTHY:                                               10     Q   Okay. Do you have any personal knowledge
11     Q   Mr. Baird, do you have any direct                       11  regarding Mercer's role in relation to the plan?
12  knowledge on how or why investment options were                12     A   It's my understanding that they acted as
13  selected or monitored for the BlackRock Retirement             13  the investment consulting.
14  Plan?                                                          14     Q   What is the basis of that knowledge?
15     A   No.                                                     15     A   Discussion -- I just recently found this
16     Q   Do you have any direct knowledge about                  16  out within the last few days.
17  what facts the investment committee did or did not             17     Q   Okay. Is that information that someone
18  consider?                                                      18  told you, without going into who told you that
19       MS. WASOW: Object to the form.                            19  information?
20       THE WITNESS: No.                                          20     A   Yes.
21  BY MR. McCARTHY:                                               21     Q   Okay. Putting that aside, do you have any
22     Q   Do you have any direct knowledge about the              22  personal knowledge about Mercer's role in relation
23  impact of securities lending fees on fund                      23  to the plan?
24  performance?                                                   24       MS. WASOW: Object to the form.
25       MS. WASOW: Object to the form.                            25       THE WITNESS: No.

                                                        Page 291                                                          Page 293
 1       THE WITNESS: Not directly. Not                             1  BY MR. McCARTHY:
 2  quantifiably.                                                   2     Q   Okay. Do you have any personal knowledge
 3  BY MR. McCARTHY:                                                3  about any other allegation in the complaint
 4     Q   Well, what would be the basis of your                    4  concerning the plan class claims aside from your own
 5  knowledge?                                                      5  personal participation in the BlackRock Plan?
 6     A   Can you be more specific?                                6       MS. WASOW: Object to the form.
 7     Q   Well, what -- you said that you don't have               7       THE WITNESS: I don't think I understand
 8  any personal knowledge in a quantifiable sense; is              8  your question.
 9  that correct?                                                   9       MR. McCARTHY: Sure.
10     A   Yes.                                                    10     Q   I'm trying to figure out which, if any, of
11     Q   Is your testimony that you have personal                11  the allegations in the complaint you have direct
12  knowledge in a qualitative sense?                              12  personal knowledge of as opposed to that being
13     A   I'm not sure what you're getting at.                    13  information that was told to you or that someone
14     Q   Okay. As we sit here today, do you,                     14  else perceived. It could be that you don't have any
15  yourself, know anything about what type of                     15  direct knowledge about any of the facts in the
16  securities fees were charged to BlackRock? And just            16  complaint. But if you do have direct knowledge
17  to clarify, when I use the term "personal                      17  about any of the facts in the complaint, that's what
18  knowledge," that does not include something that               18  I'm trying to find out.
19  someone had told you. It means something that you,             19     A   Can you clarify "personal knowledge"?
20  yourself, directly perceived.                                  20     Q   Sure.
21       MS. WASOW: Object to the form.                            21       Personal knowledge, once again, would be
22       THE WITNESS: I don't think so.                            22  information that you have because you directly
23  BY MR. McCARTHY:                                               23  perceived it, in that you saw it or you spoke with
24     Q   Okay. Do you have any personal knowledge                24  one of the key people that are mentioned in the
25  on -- with regard to the performance of investment             25  complaint and they told you something about it or
```

Page 294

1  you were -- you know, you -- you were walking down
2  the hallway and you heard two of the individuals
3  that are defendants in the complaint having a
4  conversation and you overheard that or they wrote to
5  you or you were involved in any of the decisions
6  that are at issue in the -- in the complaint, if you
7  were -- did any work as part of the group that was
8  involved in making decisions about investment
9  decisions, if you were involved in any of those
10 decisions.  Those would all be examples of
11 situations of where you would have personal
12 knowledge.
13     If on the other hand, you only know the
14 information because that is what your counsel told
15 you or that is what you've read in a newspaper or,
16 you know, you heard second-hand through somebody
17 else who wasn't one of the direct people that
18 supposedly said something, then that's not personal
19 knowledge.
20    A   Okay.
21        MS. WASOW:  Object to the form.  Object to
22 the definition of personal knowledge.  Objection.
23 BY MR. McCARTHY:
24    Q   If you --
25        MS. WASOW:  Go ahead.  You can answer.

Page 295

1  BY MR. McCARTHY:
2     Q   Does that -- does that explanation provide
3  you assistance in answering the question?
4     A   As described, I have no personal
5  knowledge.
6     Q   Okay.  How would you describe BlackRock's
7  reputation in the market?
8         MS. WASOW:  Object to the form.  Vague.
9         THE WITNESS:  I'm not sure what you mean
10 by "market."
11 BY MR. McCARTHY:
12    Q   Well, what does that word mean to you?
13    A   I'm not sure if it refers to competitors,
14 to -- to other financial institutions besides
15 competitors.  Perhaps the -- the employees employed
16 by BlackRock.
17    Q   Well, let's first ask:  How would you
18 describe BlackRock's reputation among its
19 competitors?
20    A   Large buy-side firm.
21    Q   Okay.  Do you think that Vanguard and
22 Schwab, for example, have a positive opinion of
23 BlackRock and their capabilities in the market or a
24 negative opinion?
25        MS. WASOW:  Objection.  Calls for

Page 296

1  speculation.
2         THE WITNESS:  Yeah.  I have no insight on
3  -- on how those firms view BlackRock.
4  BY MR. McCARTHY:
5     Q   Okay.  Do you have any perception on how
6  investors view BlackRock?
7     A   Individual investors or institutional
8  investors?
9     Q   Well, individual investors?
10        MS. WASOW:  Objection.  Calls for
11 speculation.
12        THE WITNESS:  I -- I have no knowledge.
13 BY MR. McCARTHY:
14    Q   Okay.  Do you have any knowledge of what
15 institutional investors think about BlackRock?
16        MS. WASOW:  Same objection.
17        THE WITNESS:  I think institutional
18 investors pretty much have to get along with
19 BlackRock so --
20 BY MR. McCARTHY:
21    Q   Why is that?
22    A   They're the biggest -- they're one of the
23 biggest players in the industry.  So ...
24    Q   Why do you think they're one of the
25 biggest players in the industry?

Page 297

1     A   They have grown through acquisitions.  So
2  they've -- you know, especially with their
3  acquisition of Barclays Global Investors to become
4  the largest money manager in the world.  So the --
5  it's hard to play in the markets without dealing
6  with BlackRock.
7     Q   Is BlackRock successful in its business?
8         MS. WASOW:  Object to the form.
9         THE WITNESS:  As measured by revenue and
10 profits, yes.
11 BY MR. McCARTHY:
12    Q   Okay.  Did -- do you understand BlackRock
13 investment options to be popular in the market among
14 investors?
15        MS. WASOW:  Object to the form.
16        THE WITNESS:  I have no knowledge on that.
17 BY MR. McCARTHY:
18    Q   Okay.  If you were told that the BlackRock
19 fund options were popular among institutional
20 investors, would that make it more likely for you to
21 invest in those options?
22        MS. WASOW:  Object to the form.  Calls for
23 speculation.
24        THE WITNESS:  I don't generally base my
25 investment decisions on popularity.

Page 306

1  precise.
2  Q  Okay. Do you have any personal knowledge
3  regarding BlackRock's management of cash collateral
4  received in connection with securities lending?
5      MS. WASOW: Object to form.
6      THE WITNESS: No.
7  BY MR. McCARTHY:
8  Q  Do you have any personal knowledge of
9  BlackRock's disclosures with regards to investments
10 of cash collateral?
11     MS. WASOW: Object to the form.
12     THE WITNESS: No.
13 BY MR. McCARTHY:
14 Q  Do you have any personal knowledge
15 regarding BlackRock's conformance with CTI plan
16 documents?
17     MS. WASOW: Object to the form.
18     THE WITNESS: No.
19 BY MR. McCARTHY:
20 Q  Do you have any personal knowledge
21 regarding the extent to which other retirement plans
22 are informed of or participate in decisions relating
23 to the securities lending business of BlackRock?
24     MS. WASOW: Object to the form.
25     THE WITNESS: No.

Page 307

1  BY MR. McCARTHY:
2  Q  Do you have any personal knowledge
3  regarding how any retirement plans negotiate with
4  BlackRock about compensation?
5  A  No.
6  Q  Do you have any personal knowledge
7  regarding the returns of short-term investment
8  funds?
9      MS. WASOW: Object to the form.
10     THE WITNESS: No.
11 BY MR. McCARTHY:
12 Q  Okay. Do you have any personal regarding
13 -- knowledge regarding any other allegation in the
14 complaint relating to the CTI class claims?
15     MS. WASOW: Object to the form.
16     THE WITNESS: No.
17 BY MR. McCARTHY:
18 Q  Can you describe the similarities or
19 dissimilarities in how the fiduciaries of other
20 retirement plans negotiate with BlackRock?
21     MS. WASOW: Object to the form.
22     THE WITNESS: No.
23 BY MR. McCARTHY:
24 Q  Do you have any knowledge one way or
25 another of how any plan -- any plan fiduciary

Page 308

1  negotiates with BlackRock?
2      MS. WASOW: Object to the form.
3      THE WITNESS: I don't know.
4      MS. WASOW: Assumes facts not in evidence.
5  BY MR. McCARTHY:
6  Q  Your testimony earlier today was that you
7  reviewed the Second Amended Complaint to prepare for
8  this deposition?
9  A  I just, yeah, skimmed it.
10 Q  Okay. When did you first see that
11 document?
12 A  I don't recall. I do recall receiving it
13 shortly after it was filed.
14 Q  Okay. You did not see it before it was
15 filed; is that correct?
16 A  I don't believe so.
17 Q  Okay. Did you provide any assistance in
18 drafting that complaint?
19     MS. WASOW: Objection. Asked and
20 answered.
21     THE WITNESS: No.
22 BY MR. McCARTHY:
23 Q  Okay. Did you provide any assistance in
24 drafting any of the complaints that were filed in
25 this case?

Page 309

1      MS. WASOW: Objection. Asked and
2  answered.
3      THE WITNESS: No.
4      MS. WASOW: I think you did this page
5  already.
6      MR. McCARTHY: Not today.
7      MS. WASOW: Sure.
8      MR. McCARTHY: What?
9      MS. WASOW: Go ahead.
10 BY MR. McCARTHY:
11 Q  Can I show you the document that has been
12 previously marked as Exhibit 509?
13 A  Thanks.
14     MR. McCARTHY: I'm sorry. You have it.
15 Counsel, would you like a copy?
16     MS. WASOW: No, thank you.
17 BY MR. McCARTHY:
18 Q  Mr. Baird, have you ever seen this
19 document before?
20 A  I believe so.
21 Q  Did you have any involvement in
22 investigating or drafting the responses that are in
23 this document?
24 A  I'm not certain how to answer since I'm
25 not certain what sort of conversation and --

Page 338

```
 1  I, the undersigned, a Certified Shorthand
 2  Reporter of the State of California, do hereby
 3  certify:
 4      That the foregoing proceedings were taken
 5  before me at the time and place herein set forth;
 6  that any witnesses in the foregoing proceedings,
 7  prior to testifying, were administered an oath; that
 8  a record of the proceedings was made by me using
 9  machine shorthand which was thereafter transcribed
10  under my direction; that the foregoing is a true
11  record of the testimony given.
12      Further, that if the foregoing pertains to the
13  original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [ ] was not requested.
16      I further certify that I am neither
17  financially interested in the action nor a relative
18  or employee of any attorney or any party to this
19  action.
20      IN WITNESS WHEREOF, I have this date
21  subscribed my name.
22  Dated:  11/16/18
23
                  Catherine A. Ryan
24
            Catherine A. Ryan, RMR, CRR
25          CSR No. 8239
```

Page 339

```
 1  Baird v. Blackrock
 2  Charles "Chaz" Robert Baird
 3      INSTRUCTIONS TO THE WITNESS
 4      Please read your deposition over
 5  carefully and make any necessary corrections.
 6  You should state the reason in the
 7  appropriate space on the errata sheet for any
 8  corrections that are made.
 9      After doing so, please sign the errata
10  sheet and date it.
11      You are signing same subject to the
12  changes you have noted on the errata sheet,
13  which will be attached to your deposition.
14      It is imperative that you return the
15  original errata sheet to the deposing
16  attorney within thirty (30) days of receipt
17  of the deposition transcript by you.  If you
18  fail to do so, the deposition transcript may
19  be deemed to be accurate and may be used in
20  court.
21
22
23
24
25  3107164
```

Page 340

```
 1  Baird v. Blackrock
 2  Charles "Chaz" Robert Baird
 3         E R R A T A
 4         - - - - -
 5  PAGE   LINE   CHANGE
 6  ___ ___ _____
 7  Reason:_____
 8  ___ ___ _____
 9  Reason:_____
10  ___ ___ _____
11  Reason:_____
12  ___ ___ _____
13  Reason:_____
14  ___ ___ _____
15  Reason:_____
16  ___ ___ _____
17  Reason:_____
18  ___ ___ _____
19  Reason:_____
20  ___ ___ _____
21  Reason:_____
22  ___ ___ _____
23  Reason:_____
24  ___ ___ _____
25  3107164
```

Page 341

```
 1  Baird v. Blackrock
 2  Charles "Chaz" Robert Baird
 3      ACKNOWLEDGMENT OF DEPONENT
 4      I, _____, do
 5  hereby certify that I have read the foregoing
 6  pages and that the same is a correct
 7  transcription of the answers given by
 8  me to the questions therein propounded,
 9  except for the corrections or changes in form
10  or substance, if any, noted in the attached
11  Errata Sheet.
12
13  _____    _____
14  DATE         SIGNATURE
15
16
17
18
19
20
21
22
23
24
25  3107164
```

86 (Pages 338 - 341)