# Exhibit D

Page 1

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   Charles Baird and Lauren
     Slayton, individually, and on
 5   behalf of all others similarly
     situated, and on behalf of the
 6   BlackRock Retirement Savings
     Plan,
 7
              Plaintiffs,
 8
       vs.                          CASE NO. 17-cv-01892-HSG
 9
10   BlackRock Institutional Trust
     Company, N.A., et. al.,
11
              Defendants.
12   _____/
13
14        VIDEOTAPED DEPOSITION OF LAUREN SLAYTON
15                San Francisco, California
16              Tuesday, November 6, 2018
17
18
19
20
21
22   Reported by:
     LORI STOKES
23              Veritext Legal Solutions
                  Mid-Atlantic Region
                1250 Eye Street NW - Suite 350
24                Washington, D.C.  20005
25
```

Page 26

1      MS. WASOW: Objection. Asked and
2  answered.
3      THE WITNESS: Participants that hold the
4  CTIs. I don't know.
5  BY MR. McCARTHY:
6    Q   Participants in what?
7    A   I can't say.
8    Q   Okay. What exactly are you seeking from
9  BlackRock as a result of this lawsuit?
10   A   A correction in how the fees are
11 structured in the Plan and to recoup any losses
12 that may have incurred by mismanagement of those
13 plans -- of the Plan, sorry.
14   Q   And by mismanagement of the Plan, you're
15 referring once again to the fees?
16   A   Yes.
17   Q   Okay. Do you want to force BlackRock to
18 offer different investment options in the Plan?
19      MS. WASOW: Object to the form.
20      THE WITNESS: I -- I don't have -- no.
21 BY MR. McCARTHY:
22   Q   Okay. Do you want to prevent BlackRock
23 from offering the LifePath Funds in the Plan?
24   A   No.
25   Q   Do you want to force BlackRock to pay for

Page 27

1  someone else to be a fiduciary of the Plan?
2      MS. WASOW: Objection. Calls for legal
3  conclusion.
4      THE WITNESS: I don't understand that.
5  BY MR. McCARTHY:
6    Q   Okay. Do you want to force BlackRock to
7  pay for someone else to manage the Plan?
8    A   I can't say.
9    Q   Okay.
10   A   I don't have an opinion.
11   Q   Do you have an opinion about
12 whether -- strike that.
13      Do you want to force BlackRock to pay
14 someone else to be responsible for the Plan?
15   A   I don't know.
16   Q   Okay. Do you think everyone in the
17 BlackRock plan class wants the same things that you
18 do?
19   A   I don't know.
20      MS. WASOW: Objection. Calls for
21 speculation.
22 BY MR. McCARTHY:
23   Q   Who are you suing in this case?
24   A   There's multiple parties named in the
25 complaint.

Page 28

1    Q   Can you name any?
2    A   BlackRock and Mercer. And there's a
3  number of people that are associated with
4  BlackRock, and I cannot name them off the top of my
5  head.
6    Q   Okay. So you're unable to name the
7  individuals?
8    A   Correct.
9    Q   For BlackRock, what corporate entities
10 are you referring to?
11   A   There's several. I can't name them all
12 off the top of my head.
13   Q   Can you name any?
14      MS. WASOW: Objection. Counsel, it's not
15 a memory test. If you want her to look at the
16 complaint and testify about it, she will.
17      THE WITNESS: Am I allowed to see the
18 complaint?
19 BY MR. McCARTHY:
20   Q   Just answer the question, please.
21   A   So I can't see the complaint?
22   Q   If you'd like to see the complaint, you
23 sure can.
24      But before showing you the complaint,
25 though, the question is: Can you -- as we sit here

Page 29

1  today, can you -- do you know which BlackRock
2  defendants are being sued?
3    A   BlackRock Trust, I think BTC and there's
4  a few others. I'd like to refresh my memory by
5  looking at the complaint.
6    Q   Sure.
7      MR. McCARTHY: We'll add this as Exhibit
8  1. Or no -- actually, could I go off the record
9  very briefly?
10      THE VIDEOGRAPHER: We're going off the
11 record. The time is 10:59 a.m.
12      (Short break taken.)
13      THE VIDEOGRAPHER: We are back on the
14 record. The time is 11:04 a.m.
15 BY MR. McCARTHY:
16   Q   Ms. Slayton, do you know, as we sit here
17 today, the legal distinctions between the various
18 BlackRock corporate entities that are named in the
19 complaint?
20      MS. WASOW: Objection. Calls for a legal
21 conclusion.
22      THE WITNESS: I don't know.
23 BY MR. McCARTHY:
24   Q   Okay. I believe you testified earlier
25 that you did not know the names of the individuals

Page 38

1  were represented by Ms. Wasow and by Cohen
2  Milstein, correct?
3     A   Correct.
4     Q   Okay.  Did you believe that during this
5  very first initial call?
6     A   No.
7     Q   Okay.  What was said during this very
8  first initial call?
9     A   He explained to me, basically, the
10 contents of the notice that was -- that I had
11 responded to on LinkedIn and -- you know, I can't
12 recall the specifics of that conversation.  It was
13 brief.
14    Q   Uh-huh.
15    A   And asked if I would be willing to speak
16 further with them.  And I said yes.  That initial
17 call was very brief.
18    Q   Okay.  Do you have an understanding of
19 what your duties are as a named plaintiff?
20    A   I might.  I'm not -- can you give me
21 more -- rephrase the question or --
22    Q   Well, what do you think that your
23 responsibilities are as a plaintiff that is
24 bringing a putative class action?
25    A   That I have to make decisions that are

Page 39

1  not just in my own best interest but the interest
2  of anyone that's participating in the Plan.
3     Q   Okay.  What steps have you taken to keep
4  track of the progress of this lawsuit?
5     A   To keep track of the progress?  I am in
6  contact with my lawyers and I have my -- any
7  communications that we've had via email are saved,
8  and that's it.
9     Q   So over the course of this litigation,
10 roughly how often do you speak to your lawyers?
11    A   Over the entire --
12    Q   Uh-huh.
13    A   Maybe ten times.
14    Q   Okay.  What -- strike that.
15        Have you made any decisions yourself with
16 regard to the steps taken in this lawsuit?
17        MS. WASOW:  Objection.  Vague.
18        THE WITNESS:  I don't -- can you -- I
19 don't understand.
20 BY MR. McCARTHY:
21    Q   Sure.  I mean, the decision of what to
22 state in the complaint.
23    A   No.
24    Q   Okay.  Strategic decisions, such as
25 motions to bring or --

Page 40

1     A   No.
2     Q   -- discovery.  Okay.
3         Who do you think is making those
4  decisions?
5         MS. WASOW:  Objection.  Calls for
6  speculation.
7         THE WITNESS:  Several people --
8  BY MR. McCARTHY:
9     Q   Okay.
10    A   -- on both sides of the complaint.
11    Q   You are a plaintiff in this case?
12    A   Correct.
13    Q   And there's only one other plaintiff?
14    A   Correct.
15    Q   So someone is making decisions with
16 regard to this litigation, correct?
17    A   Correct.
18    Q   Okay.  So if it's not you, who do you
19 think is making decisions?
20        MS. WASOW:  Same objection.
21        THE WITNESS:  I can't say.
22 BY MR. McCARTHY:
23    Q   Okay.  Are your attorneys making
24 decisions in this case?
25    A   I believe they make some decisions in

Page 41

1  this case.
2     Q   Okay.  Are you aware of any decisions
3  that have been made by Mr. Baird as opposed to by
4  counsel?
5     A   No.
6     Q   Okay.
7     A   May I have a break soon?
8     Q   Let me just ask one more question, and
9  you can have a break.
10        And do you understand that you may be
11 required to testify in this case goes forward to
12 trial?
13    A   Okay.
14        MR. McCARTHY:  All right.  We can take a
15 break.
16        THE VIDEOGRAPHER:  We're going off the
17 record.  The time is 11:16 a.m.
18        (Short break taken.)
19        THE VIDEOGRAPHER:  We are back on the
20 record.  The time is 11:24 a.m.
21 BY MR. McCARTHY:
22    Q   Ms. Slayton, I'm going to hand you a
23 document that I'm going to ask the court reporter
24 to label Exhibit 501.
25

Page 66

1  about the investment options that were offered
2  under the BGI retirement plan?
3     A   Not specifically.
4     Q   Okay. What, generally, do you remember?
5     A   About --
6     Q   The BGI retirement plan options?
7     A   I don't -- I can't give a specific
8  recollection.
9     Q   Okay. You have no recollection about
10 what was offered under the BGI plan?
11    A   No. I can't say.
12    Q   Okay. Do you recall what investment
13 option you had selected or had been selected for
14 you under the BGI plan?
15    A   I can't recall.
16    Q   Do you recall making a decision when you
17 joined BGI as to where your balances would go?
18    A   No.
19    Q   Is it your understanding that there may
20 have been some default --
21    A   Yes.
22    Q   -- selection?
23        That is your understanding?
24    A   That is my understanding.
25    Q   Okay. And it's your understanding,

Page 67

1  therefore, that you were invested in whatever the
2  default option was for the BGI plan?
3     A   Yes.
4     Q   Okay. When the Plan was converted to a
5  BlackRock plan, did you actively choose which
6  investment option your balance would go to?
7     A   I do not believe so.
8     Q   Okay. Is it your understanding that
9  there was a default option under the BlackRock
10 plan?
11    A   Yes.
12    Q   And is that -- is it your understanding
13 that you were just put into the default option
14 under the BlackRock plan?
15    A   Yes.
16    Q   Okay. Did you make -- do you recall
17 making monthly contributions to the BlackRock plan?
18    A   Yes.
19    Q   Okay. Do you remember -- strike that.
20        How did you decide what percentage of
21 your income to put into that plan?
22    A   I don't recall.
23    Q   Okay. Do you recall making an active
24 choice, or do you think that it was also some sort
25 of a default selection?

Page 68

1     A   I can't recall.
2     Q   Okay. Do you recall ever changing the
3  amount of income that you put into that plan?
4     A   I don't recall.
5     Q   Okay. When the BGI plan converted to a
6  BlackRock plan, what types of -- strike that.
7        Do you recall what types of investment
8  options were made available?
9     A   I don't recall.
10    Q   Okay. Do you have any recollection one
11 way or another?
12    A   No.
13    Q   Okay. Did you -- do you recall putting
14 any thought into which investment option your
15 balance would go into?
16    A   I -- I don't recall.
17    Q   Okay. Do you recall making a decision to
18 go into -- choose the LifePath Funds?
19    A   No.
20    Q   Okay. Do you recall reviewing any
21 documents in terms of considering what investment
22 options to choose in the Plan?
23    A   I may have.
24    Q   But do you recall doing so, as you sit
25 here today?

Page 69

1     A   I don't recall.
2     Q   At any point during your BlackRock
3  employment, do you recall reviewing documents about
4  which investment option to choose in the BlackRock
5  plan?
6     A   I don't recall.
7     Q   Okay. Can you explain why you did not
8  devote attention into which investment option to be
9  involved in?
10    A   I -- it was, I believe, defaulted, chosen
11 for me, and I -- I accepted that.
12    Q   Okay. Is it fair to say that it wasn't a
13 priority for you at the time?
14    A   Can you rephrase.
15    Q   Sure. Was it -- did you consider it
16 worth your time to examine all of the investment
17 options and make a choice that was not the default
18 choice?
19        MS. WASOW: Objection. Relevance. And
20 object to the form.
21        But you can answer.
22        THE WITNESS: I do not recall spending --
23 or any specific amount of time or how I reviewed
24 the documents that may have been presented to me in
25 the process of the acquisition. I don't recall.

Page 78

1  A   That it makes up my retirement plan with
2  BlackRock.
3  Q   Okay.  So even after this lawsuit
4  initiated and after you joined this lawsuit as a
5  plaintiff, did you investigate the investment
6  options that are offered in the 401(k) plan?
7      MS. WASOW:  Objection.  Asked and
8  answered.
9      THE WITNESS:  I don't know.
10 BY MR. McCARTHY:
11 Q   Okay.  Do you know what the allegations
12 in the complaint are with regard to the LifePath
13 2050 Index Fund, as you sit here today?
14 A   I can't say.
15 Q   Okay.  While you were still employed at
16 BlackRock, did you receive any disclosures or other
17 information about the retirement plan?
18 A   Yes.
19 Q   Okay.  What disclosures do you recall
20 receiving?
21 A   I can't say, specifically.  I know I
22 received information, prospectuses and things that
23 came, either via mail or into the Merrill Lynch
24 in-box.
25 Q   Do you recall reading any of these

Page 79

1  documents?
2  A   I don't recall.
3  Q   Okay.  Do you recall -- well, I think
4  this may be covered by your answer to that
5  question.
6      But if you don't recall reading the
7  documents, do you recall having any questions about
8  the documents?
9  A   I don't recall.
10 Q   Do you recall speaking to anyone about
11 the documents?
12 A   No.
13 Q   Okay.  Do you recall taking any steps as
14 a result of receiving those documents?
15 A   No.
16 Q   Do you know what types of information
17 were conveyed in those documents?
18     MS. WASOW:  Objection.  Asked and
19 answered.  I think you've made your point.
20     THE WITNESS:  I -- I can't say,
21 specifically.
22 BY MR. McCARTHY:
23 Q   Okay. I'm going to hand you a document
24 that I'm going to mark as Exhibit 504.
25

Page 80

1      (Deposition Exhibit 504 was marked for
2      identification by the court reporter.)
3      (Short discussion off the record.)
4  BY MR. McCARTHY:
5  Q   Ms. Slayton, have you ever seen this
6  document before?
7  A   I don't know.
8  Q   This actually -- I think this particular
9  example probably postdates your time at BlackRock,
10 but do you recall receiving documents similar to
11 that during your time -- during your employment?
12 A   I -- I can't be specific.  No, I don't
13 know.
14 Q   Okay.
15     MR. McCARTHY:  I'm going to introduce the
16 next exhibit.
17     (Deposition Exhibit 505 was marked for
18     identification by the court reporter.)
19 BY MR. McCARTHY:
20 Q   And this is a document that was produced
21 in this litigation starting with the Bates Number
22 BAIRD_0045307.
23     Ms. Slayton, do you recognize this
24 document?
25 A   Do I recognize it?  Not particularly, no.

Page 81

1  Q   Do you recall receiving documents like
2  this in connection with the Plan?
3  A   Yes.
4  Q   Okay.  Do you recall ever reading those
5  documents?
6  A   I don't recall.
7  Q   Okay.
8      MR. McCARTHY:  Why don't we go ahead and
9  take a break.
10     THE VIDEOGRAPHER:  We're going off the
11 record.  The time is 12:12 p.m.
12     (Lunch break taken.)
13     THE VIDEOGRAPHER:  Here begins Media
14 Number 2 in the videotaped deposition of Lauren
15 Slayton.  We are back on the record at 1:11 p.m.
16 BY MR. McCARTHY:
17 Q   Good afternoon, Ms. Slayton.
18     We were talking about your investment
19 through the BlackRock plan in the LifePath 2050
20 Index Fund.
21     Do you have any criticism about that
22 fund?
23     MS. WASOW:  Objection.  Vague.
24     THE WITNESS:  I can't say.
25

21 (Pages 78 - 81)

Page 90

1    MS. WASOW: Objection. Vague.
2    THE WITNESS: Could you rephrase the
3 question.
4 BY MR. McCARTHY:
5    Q   Sure. Is it fair to say that if you were
6 dissatisfied with the BlackRock plan and, in
7 particular, your investment in the LifePath 2050
8 Index Fund, that you would take steps to move your
9 balance elsewhere?
10    MS. WASOW: Objection. Improper.
11 Incomplete hypothetical.
12    MR. McCARTHY: An objection to form would
13 suffice, Counsel.
14    THE WITNESS: I don't know.
15 BY MR. McCARTHY:
16    Q   You don't know?
17    Well, you're alleging in the complaint
18 that the BlackRock plan's fees were excessive --
19    A   Yes.
20    Q   -- correct?
21    Do you believe that there are
22 alternatives in the market that did not offer
23 excessive fees?
24    A   Possibly.
25    Q   You don't know one way or another?

Page 91

1    A   I don't know.
2    Q   Have you taken any steps to explore
3 that -- whether there are alternatives in the
4 market that charge less fees than the BlackRock
5 plan?
6    A   No.
7    Q   Okay. So what is your basis, therefore,
8 putting aside -- well, putting aside your
9 communications with counsel, for alleging that the
10 fees in the BlackRock plan were excessive?
11    MS. WASOW: Objection. Asked and
12 answered. Argumentative.
13    THE WITNESS: That is my basis, is what I
14 understand --
15 BY MR. McCARTHY:
16    Q   Okay.
17    A   -- through that.
18    Q   Do you have any plans in the future to
19 transfer your balance out of the BlackRock plan?
20    A   Not currently.
21    Q   Okay.
22    MR. McCARTHY: Let me introduce another
23 document as an exhibit.
24    (Deposition Exhibit 506 was marked for
25     identification by the court reporter.)

Page 92

1 BY MR. McCARTHY:
2    Q   Ms. Slayton, I'm -- have you ever seen
3 this document?
4    A   I'm not sure. Can I have a moment to
5 look at it?
6    Q   Of course.
7    A   I don't -- I don't know.
8    Q   Okay. My question is actually quite
9 limited. I'd like you to look at the names that
10 are identified on pages 1 through 5.
11    A   Okay.
12    Q   Let's start with the names that are on
13 pages 2 through 5.
14    A   Okay.
15    Q   I think this is probably -- some of this
16 question is encompassed by your prior testimony.
17    But have you spoken to -- well, let me
18 take a step back.
19    We previously discussed Ms. Frost and
20 Mr. Gamba?
21    A   Corin is a man.
22    Q   Oh, Corin is a man, I'm sorry.
23    We've discussed those two individuals.
24    A   Yes.
25    Q   Other than those two individuals -- well,

Page 93

1 actually, let me take another step back.
2    I believe your testimony was that you had
3 never actually spoken to Mr. Frost?
4    A   Not that I'm aware of.
5    Q   Okay. Have you -- do you recall ever
6 speaking with any of the individuals identified on
7 pages 2 through 5?
8    Feel free to take your time looking
9 through.
10    A   Other than Daniel Gamba, I don't believe
11 I've ever spoken to anyone in pages 2 through 5.
12    Q   Okay. Do you know the other named
13 plaintiff in this action?
14    A   No.
15    Q   Have you ever -- his name, just for the
16 record, is Charles Baird.
17    Have you ever met Mr. Baird?
18    A   Not that I'm aware of.
19    Q   Okay. And I take it from your previous
20 answer that you've never communicated with
21 Mr. Baird?
22    A   I have been on one phone call that he was
23 participating in, as well.
24    Q   Okay. Who else was participating in that
25 phone call?

Page 150

REDACTED

Page 151

REDACTED

Page 152

1        EXAMINATION
2   BY MR. RUSSELL:
3      Q   Ms. Slayton, we've met off the record,
4   but my name is Matt Russell, and I represent Mercer
5   in this case.
6           As that statement might have just given
7   away, but are you aware that Mercer is a defendant
8   in the case?
9      A   I am.
10     Q   Do you have any understanding about what
11  Mercer's role either is today or has been with
12  respect to the BlackRock plan?
13     A   I believe they're a consulting firm to
14  the Plan, to the BlackRock plan.
15     Q   And when did you obtain that
16  understanding of Mercer's role?
17     A   Sometime in the last six months.
18     Q   But after the lawsuit was filed?
19     A   I have heard of Mercer before, and I
20  don't recall where.  So in memory recall, I've
21  heard the word -- the name Mercer before, so I
22  can't say it's the first time I've ever thought
23  about or heard about them.  But in thinking about
24  this, yes, as it pertains to this, it would be
25  through the lawsuit.

Page 153

1      Q   On the prior occasions when you might
2   have heard of Mercer, was that with respect to the
3   BlackRock plan or just Mercer, generally?
4      A   It could have been.  I'm not sure.  I
5   don't recall.
6      Q   Do you have any personal recollection of
7   learning about Mercer's role with respect to the
8   BlackRock plan, specifically, while you were
9   employed at BlackRock?
10     A   I don't recall.
11     Q   Do you, sitting here today, have any --
12  any personal understanding of what you are
13  contending Mercer did wrong with respect to the
14  BlackRock plan?
15     A   Can you say that again?
16     Q   Sure.  What do you -- if you have an
17  understanding, what do you contend that Mercer did
18  wrong with respect to the BlackRock plan?
19     A   I believe it's possible that they
20  neglected their duties in their capacity of
21  consulting with BlackRock to allow these fees to be
22  charged at a rate that was too high.
23     Q   And what's the basis for your -- for that
24  understanding?
25         MS. WASOW:  Objection.  Calls for

Page 154

1 attorney-client privileged information.
2 BY MR. RUSSELL:
3     Q   I can ask -- I can rephrase.
4         Do you have any understanding for the
5 testimony you just provided outside of something
6 you've discussed with your counsel?
7     A   I don't think so.
8     Q   Okay. Did you have any involvement at
9 all about the decision to add Mercer as a defendant
10 to the case?
11    A   No.
12        MR. RUSSELL: I don't have any further
13 questions.
14        MR. McCARTHY: Before we close, I'd just
15 like to say for the record that counsel for
16 plaintiffs has rather helpfully pointed out that
17 plaintiffs have not produced the retainer agreement
18 that we're subject to a request for a document
19 request, and we would like to repeat that request.
20 And I think the case law is on our side that it is
21 discoverable, and we are happy to meet and confer
22 with that in due course.
23        Otherwise, I have no further questions.
24        THE VIDEOGRAPHER: We are going off the
25 record at 3:25 p.m., and this concludes today's

Page 155

1 testimony given by Lauren Slayton.
2         The total number of media units was two
3 and will be retained by Veritext Legal Solutions.
4         THE REPORTER: Would you like a copy?
5         MS. WASOW: Yes, but not of the video.
6         THE REPORTER: And do you need a rough or
7 an expedite?
8         MS. WASOW: No.
9         THE REPORTER: And how about you?
10        MR. RUSSELL: No, neither.
11        THE REPORTER: No copy?
12        And I will send you a rough in about five
13 minutes.
14        MR. McCARTHY: Thank you.
15        MS. WASOW: I don't need a hard copy,
16 just electronic.
17        THE REPORTER: Okay.
18        MR. RUSSELL: I would like just an
19 electronic copy. I don't need an expedited or a
20 rough. I thought that's what you were asking.
21        THE REPORTER: Okay. No problem.
22        (TIME NOTED: 3:27 p.m.)
23
24
25

Page 156

1
2
3
4     I, LAUREN SLAYTON, do hereby declare under
5 penalty of perjury that I have read the foregoing
6 transcript; that I have made any corrections as
7 appear noted, in ink, initialed by me, or attached
8 hereto; that my testimony as contained herein, as
9 corrected, is true and correct.
10       EXECUTED this_____ day of_____,
11 20____, at_____, _____.
         (City)           (State)
12
13
14       _____
             LAUREN SLAYTON
15
16
17
18
19
20
21
22
23
24
25

Page 157

1     I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
4     That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were duly sworn; that a record
8 of the proceedings was made by me using machine
9 shorthand, which was thereafter transcribed under
10 my direction; further, that the foregoing is a true
11 record of the testimony given.
12    I further certify I am neither financially
13 interested in the action nor a relative or employee
14 of any attorney or party to this action.
15    IN WITNESS WHEREOF, I have this date
16 subscribed my name.
17
18 Dated: _____
19
20    _Lori Stokes_
21    _____
         LORI STOKES
22    CSR No. 12732
23
24
25