UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES BAIRD, et al.,

          Plaintiffs,

    v.

BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., et al.,

          Defendants.

Case No.  17-cv-01892-HSG

**ORDER GRANTING PRELIMINARY SETTLEMENT APPROVAL**

Re: Dkt. No. 471

      Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs.  Dkt. No. 471 ("Motion").  The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval.  For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

**I.    BACKGROUND**

    **A.    Procedural Background**

      As detailed in the Motion, this class action has a long litigation history, spanning more than four years and including numerous filings before the Court.  Mot. at 6-7.  Plaintiff Baird filed his original complaint on April 5, 2017 challenging Defendants' management of the BlackRock Retirement Savings Plan.  Dkt. No. 1.  Plaintiffs and Defendants engaged in several rounds of motions to dismiss and amendment.  Dkt. Nos. 75, 79, 154, 181.  Eventually, the Court granted in part and denied in part Defendants' motion to dismiss the second amended complaint.  Dkt. No. 340.

      The Parties engaged in extensive discovery regarding the claims and defenses in this case. Mot. at 6.  For example, Class Counsel took fourteen fact depositions and four expert depositions, reviewed over 250,000 pages of documents and emails, and exchanged hundreds of pages of

written discovery.  *Id.*  The Parties also had a substantial number of discovery disputes that required joint letter briefing before Magistrate Judge Westmore to resolve.  *Id.*  In total, the Parties submitted eleven discovery disputes to Judge Westmore.

Plaintiffs moved to certify two classes.  Dkt. No. 292.  One class, the BlackRock Plan Class, consisted of only current and former participants in the BlackRock Plan.  *Id.*  The other class, the putative CTI Class, consisted of participants in numerous retirement plans whose retirement savings were invested in certain BlackRock collective trust investment vehicles that engaged in securities lending.  *Id.*  On February 11, 2020, the Court certified the BlackRock Plan Class but denied Plaintiffs' motion to certify the CTI Class.  Dkt. No. 360.  Plaintiffs sought but were denied a Rule 23(f) appeal of the Court's denial of the CTI Class certification.  Dkt. Nos. 367, 373.

Following class certification, the parties engaged in expert discovery.  Plaintiffs' two merits experts provided reports concerning damages and fiduciary process.  Mot. at 7.  In addition, Class Counsel deposed Defendants' three expert witnesses, and Plaintiffs' experts submitted rebuttal reports addressing three of Defendants' expert reports. *Id*.  After expert discovery closed, Plaintiffs moved for partial summary judgment and Defendants moved for summary judgment on all claims.  Dkt. No. 396. The Court denied both motions on January 12, 2021.  Dkt. No. 455.  In preparation for trial, Plaintiffs filed numerous papers and motions, including two motions *in limine* and a trial brief and pre-trial conference statement.  Dkt. Nos. 453, 459, 464.  Shortly before trial was scheduled to begin, the Court referred the Parties to a magistrate judge settlement conference.  Dkt. No. 445.  At a February 5, 2021 settlement conference facilitated by Magistrate Judge Ryu, the Parties reached a settlement in principle.  Dkt. No. 468.

### B.    Settlement Agreement

This proposed Settlement releases the claims of the BlackRock Plan Class (and only the BlackRock Plan Class) in this case in return for a payment of $9,650,000.  Mot. at 1.  That money will be distributed by a Settlement Administrator according to a Plan of Allocation that allocates settlement funds proportional to the assets each Class Member held in BlackRock-managed funds

in the BlackRock Retirement Savings Plan ("Plan").  *Id.* at 2.  The Settlement will be reviewed for fairness by an Independent Fiduciary.  *Id.*

### i.    The BlackRock Plan Class

The Settlement Agreement resolves all the claims asserted by the certified BlackRock Plan Class (the "Class"), defined as follows: "All participants (and their beneficiaries) in the BlackRock Retirement Savings Plan during the Class Period."  Dkt. No. 360; Dkt. No. 471-2 ("Settlement Agreement") ¶ 1.8.  Excluded from the Class are the individuals named in the case at any time as Defendants.  Mot. at 2.  The Class Period is the time period from April 5, 2011 through the date of the entry of a Preliminary Approval Order in this case.  Settlement Agreement ¶ 1.14.  There are approximately 17,000 Class Members.  Mot. at 2.  Based on data through year-end 2019, about 70% of those Class Members are current Plan participants and 30% are former participants who no longer have an Active Account in the Plan.  *Id.*

### ii.    Monetary Relief and Plan of Allocation

Under the Settlement Agreement, Defendants will pay $9,650,000 into an escrow account established for the benefit of the Class by Class Counsel and trusteed by an escrow agent (the "Qualified Settlement Fund" or "QSF").  Mot. at 2.  Following deductions for (i) any Court-approved Attorneys' Fees and Expenses; (ii) any Court-approved Class Representative Service Awards; and (iii) Administrative Expenses, the Net Settlement Amount will be distributed to the Class in accordance with the Plan of Allocation attached to the Settlement Agreement as Exhibit E.  *Id.*; Settlement Agreement.

The Plan of Allocation provides that each Class Member will receive a share of the Net Settlement Amount that is proportionate to the value of her individual account allocations to BlackRock-managed investments relative to the aggregate value of *all* Class Members' allocations to BlackRock-managed investments.  *Id.*  Specifically, each Class Member's Distribution shall be calculated as follows:

    a.   First, the Settlement Administrator shall determine the aggregate value of the portion of each Class Member's account allocated to BlackRock-managed investments during the Class Period by summing the value of the Class Member's positive (greater than

United States District Court
Northern District of California

zero) account balance allocations to BlackRock-managed investments at the end of each quarter during the Class Period.

b.  Second, the Settlement Administrator shall determine the aggregate value of the Plan's investment in BlackRock-managed funds across all quarters of the Class Period by summing the aggregate values of all Class Members' positive account balance allocations to BlackRock-managed investments.

c.  Third, the Settlement Administrator shall, for each Class Member, divide the aggregate value of each Class Member's account balance allocations to BlackRock-managed investments by the Plan's aggregate investment in BlackRock-managed funds across all quarters of the Class Period; this is the Pro Rata Share.

d.  A Class Member's settlement payment is equal to the product of the Pro Rata Share value and the Net Settlement Amount value.

Settlement Agreement Ex. E at Part B.

Current Participants with a greater than zero ($0) account balance on the date settlement payments are made will have their Plan accounts credited with their share of the Net Settlement Amount.  Settlement Agreement ¶ 6.6.2.  The settlement payment will be invested in accordance with and proportionate to the investment elections then on file for each Current Participant.  *Id*. ¶¶ 6.6, 6.6.3.  If the Current Participant does not have an investment election on file, then the settlement payment will be invested in the Plan's Qualified Default Investment Alternative.  *Id*. ¶ 6.6.3.

Former Participants will receive a check sent to the address on file with the Plan's Recordkeeper.  Settlement Agreement ¶ 6.8.2.  To increase uptake of the settlement payments, Former Participants will not be required to submit a claim form to receive their settlement payment.  Mot. at 3.  For each check issued to a Former Participant, the Settlement Administrator will calculate and withhold applicable taxes associated with the payment and will issue necessary tax forms to the Former Participant.  Settlement Agreement ¶ 6.8.2(a).  Further, the Settlement Administrator will advise the Former Participant: first, that the settlement payment

4

United States District Court
Northern District of California

is rollover eligible;[1] and second, that if a Qualified Domestic Relations Order applies to the payment, they are responsible for complying with such Order.  *Id.* ¶¶ 6.8.2(b)-(c).  Similarly, the Settlement Administrator will issue checks to any Current Participants who have a greater than zero-dollar ($0) account balance as of the date settlement payments are made (e.g., Current Participants who close their Plan account before settlement payments are made shall receive a check), with appropriate taxes withdrawn.  *Id.* ¶¶ 6.7, 6.7.1.

### iii.    Independent Fiduciary

In addition, the Settlement Agreement provides that the Plan Administrator shall, on behalf of the Plan, retain an Independent Fiduciary.  Settlement Agreement ¶ 3.2.  The Independent Fiduciary shall determine whether to approve and authorize the settlement of the Released Claims on behalf of the Plan and shall comply with all relevant conditions of Prohibited Transaction Exemption 2003-39 ("PTE 2003-39").  *Id.* ¶ 3.2.1.  Further, the Independent Fiduciary will notify the Plan Administrator, as well as Class Counsel and Defense Counsel, of its conclusions by no later than forty-eight (48) days prior to the Fairness Hearing.  *Id.* ¶ 3.2.2.

### iv.    Release of Claims

In exchange for the relief provided in the Settlement, the Class will release the Released Parties from the Released Claims:

   a.  That were asserted in the Complaint or Action, or that arise out of the conduct alleged in the Complaint whether or not pleaded in the Complaint;

   b.  That arise out of, relate to, are based on, or have any connection with (1) the selection, oversight, retention, or performance of the Plan's investment options and service providers; (2) fees, costs, or expenses charged to, paid by, or reimbursed by the Plan, directly or indirectly, including, without limitation, all fees charged against collective trust fund assets, including fees for managing securities lending cash collateral and fees

---

[1] The settlement payments to Former Participants are intended to be eligible rollover distributions within the meaning of Internal Revenue Code § 3405(c), which requires that distributions shall be subject to a 20% withholding tax. 26 U.S.C. § 3405(c)(1)(B).  The Class Notice will advise the Former Participants that if the payment is rolled over (i.e. deposited) into a qualified retirement savings account within a specific time of receipt, no additional early distribution tax penalty will be assessed on the payment.

United States District Court
Northern District of California

1    expressed as a share of net securities lending returns; (3) disclosures or failures to

2    disclose information regarding the Plan's investment options, fees, costs, expenses, or

3    service providers;

4    c.   That would be barred by *res judicata* based on entry of the Final Approval Order;

5    d.   That relate to the direction to calculate, the calculation of, and/or the method or manner

6         of allocation of the Qualified Settlement Fund to the Plan or any member of the Class

7         in accordance with the Plan of Allocation; or

8    e.   That relate to the approval by the Independent Fiduciary of the Settlement Agreement,

9         unless brought against the Independent Fiduciary alone.

10   Excluded from Released Claims are:

11   a.   Any rights or duties arising out of the Settlement Agreement, including the

12        enforcement of the Settlement Agreement;

13   b.   Claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §

14        1132(a)(1)(B) that do not fall within sections (a)-(e) above;

15   c.   Wages, labor, or employment claims unrelated to the Plan;

16   d.   Any claims which were or may be asserted on behalf of the non-certified CTI Class

17        other than the claims belonging to the BlackRock Plan Class; or

18   e.   Claims arising exclusively from conduct after the close of the Class Period.

19   Settlement Agreement ¶ 1.45.6.  Further, the Settlement Agreement specifically does not release

20   any claim whatsoever brought on behalf of any person or entity other than a member of the

21   BlackRock Plan Class against the Released Parties.  *Id*. ¶ 1.45.7.

22        **v.    Class Notice**

23        Each member of the Class will be sent a notice of the Settlement ("Settlement Notice")

24   through either email consisting of the long form Settlement Notice (Settlement Agreement Ex. C)

25   or through both email and direct mail of a postcard notice (Settlement Agreement Ex. C.1).  Mot.

26   at 5.  The email and postcard notice both shall direct Class Members to the Settlement Website.[2]

27   _____

28   [2] The Settlement Website (www.BR401kSettlement.com) shall contain the Notice, the Settlement
     Agreement and its exhibits, the entered Preliminary Approval Order, the operative Second

*Id.* The Settlement Notice will provide information to the Class regarding, among other things: (1) the nature of the claims; (2) the scope of the settlement class; (3) the terms of the Settlement; (4) Class Members' right to object to the Settlement and the deadline for doing so; (5) the class-wide release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the amount of any Service Awards requested for Class Representatives; (8) the date, time, and location of the Fairness Hearing; and (9) Class Members' right to appear at the Fairness Hearing.

The Plan Recordkeeper maintains updated email and physical mailing addresses for all Class Members who are Current Participants and will provide those email addresses to the Settlement Administrator for purposes of the Notice program. Mot. at 5. Further, the Plan Recordkeeper has last known email and physical addresses for Former Participants. *Id.* For Current Participants, the Settlement Notice will be sent via email where possible, but where current email addresses are not available, the Settlement Administrator will send postcard notice via U.S. mail.

## II.    DISCUSSION

### A.    Class Certification

Because no facts have changed that would affect the Court's certification of the BlackRock Plan Class since the Court certified that class on February 11, 2020, this order incorporates by reference its prior analysis as set forth in the class certification order. Dkt. 360 at 23-26.

### B.    Preliminary Settlement Approval

#### i.    Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re*

---

Amended Complaint, and the Motions for Preliminary Approval and Final Approval (when filed); the Motion for Attorneys' Fees and Expenses (when filed); any other Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Parties.

1    *Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court

2    approves a class action settlement, it must conclude that the settlement is "fundamentally fair,

3    adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

4        Courts may preliminarily approve a settlement and notice plan to the class if the proposed

5    settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

6    not grant improper preferential treatment to class representatives or other segments of the class;

7    (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

8    *Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)

9    (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain

10    provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d

11    1011, 1026 (9th Cir. 1998).

12        **ii.   Analysis**

13          **a.   Settlement Process**

14        The first factor the Court considers is the means by which the parties settled the action.

15    "An initial presumption of fairness is usually involved if the settlement is recommended by class

16    counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL

17    1627973, at *8 (N.D. Cal. Apr. 29, 2011).

18        This settlement was reached after considerable arms-length bargaining between the parties,

19    including a full-day, Court-ordered settlement conference with Judge Ryu. Mot. at 10. This

20    process weighs in favor of granting preliminary settlement approval. *See also Satchell v. Fed.*

21    *Exp. Corp.,* No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The

22    assistance of an experienced mediator in the settlement process confirms that the settlement is

23    non-collusive.").

24        **b.   Preferential Treatment**

25        The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs

26    that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In*

27    *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). For that reason,

28    courts in this district have consistently stated that preliminary approval of a class action settlement

United States District Court
Northern District of California

is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement Agreement provides that each Class Member will receive a payment in proportion to the size of their BlackRock-managed retirement investments in the BlackRock Plan. *See* Mot. at 14; Ex. E to the Settlement Agreement.  This approach distributes the proceeds of the Settlement among the Plan's current and former participants in proportion to their harm, or risk of harm, from the ERISA violations alleged in this case.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").  Such an approach has been approved in similar circumstances.  *See, e.g., Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (approving a plan of allocation that provided for a pro rata distribution of settlement funds).  The Court preliminarily finds that the proportionate distribution of settlement payments does not improperly grant preferential treatment to Class Representatives.

Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Such awards are "fairly typical" but "discretionary."  *Id.* at 958.  Plaintiffs must provide sufficient evidence to allow the Court to "evaluate [the named plaintiff's] award[] individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation omitted).  Courts in this district have routinely stated that a $5,000 award is "presumptively reasonable."  *See Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009).

The Settlement Agreement authorizes the Class Representatives to seek service awards of up to $15,000 each for their roles in this lawsuit.  *See* Settlement Agreement ¶ 1.47.  And the

United States District Court
Northern District of California

1    Agreement provides that if the Court approves a reduced award, the remainder will be distributed

2    to members of the Class.  *See id.*  The Court finds that at the preliminary approval stage, the intent

3    to seek incentive awards does not suggest preferential treatment to any segment of the class,

4    particularly because any portion of the award that the Court declines to grant will be distributed to

5    Class members.

6                    **c.   Settlement within Range of Possible Approval**

7           The third factor that the Court considers is whether the settlement is within the range of

8    possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily

9    consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re*

10   *Tableware*, 484 F. Supp. 2d at 1080.  This requires the Court to evaluate the strength of Plaintiff's

11   case.

12          Here, the settlement amount of $9,650,000 is nearly one-third of the Class's potential

13   damages.  Mot. at 10.  This is well within the range of other similar ERISA settlements.  *See, e.g.,*

14   *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858, at *5 (C.D. Cal. July 30, 2018)

15   (approving settlement amounting to 17-54% of potential damages).

16          As Plaintiffs argue, they would also face significant costs, risks, and delay if the case

17   proceeded to trial.  Mot. at 10.  This is a complex ERISA class action involving difficult legal and

18   factual issues.  *Id.*  Even if the Plaintiffs prevailed on the issue of liability, there was a significant

19   risk that they would not have recovered a significant monetary amount.  *Id.*  In light of the

20   significant settlement amount and the risks and challenges faced by Plaintiffs in a potential trial,

21   the Court finds that the settlement is within the range of possible approval.

22                    **d.   Obvious Deficiencies**

23          The fourth and final factor that the Court considers is whether there are obvious

24   deficiencies in the settlement agreement.  The Court finds no obvious deficiencies, and therefore

25   finds that this factor weighs in favor of preliminary approval.

26          Having weighed the relevant factors, the Court preliminarily finds that the settlement

27   agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

28

United States District Court
Northern District of California

### III.    PROPOSED CLASS NOTICE PLAN

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B).  The "best notice . . . practicable under the circumstances[] includ[es] individual notice to all [class] members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

At the preliminary approval hearing, the Court asked the parties to provide details regarding the settlement agreement's proposed method of communication with current and former Plan participants.  Dkt. No. 474.  At the Court's direction, Defendants filed a supplemental declaration explaining that Plan participants affirmatively choose their communication delivery preference to be either email or U.S. mail.  Dkt. No. 475 ¶ 3.  When participants close their Plan accounts, the plan's recordkeeper retains records of their last known U.S. mail and email addresses.  *Id.* ¶ 7.  The declaration also stated that 88 percent of Plan participants have affirmatively elected to have legal and plan notices communicated to them via email.  *Id.* ¶ 6.

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;
(ii)     the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)     that a class member may enter an appearance through an attorney if the member so desires;
(v)      that the court will exclude from the class any member who requests exclusion;
(vi)     the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the Parties' proposed notice plan, described in detail above, is the best practicable form of notice under the circumstances and satisfies Rule 23 requirements.

### IV.    CONCLUSION

The Court **GRANTS** Plaintiff's motion for preliminary approval of class action.  The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates, with calendar dates rather than contingent dates, for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

11

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail, email Notice to Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 30 days after the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:  July 12, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

12