Michelle C. Yau (*Admitted Pro Hac Vice*)
Mary J. Bortscheller (*Admitted Pro Hac Vice*)
Daniel R. Sutter (*Admitted Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St. ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

Charles Baird, *et al.*,

            Plaintiffs,

    vs.

BlackRock Institutional Trust Company, N.A., *et al.*,

            Defendants.

Case No. 4:17-cv-01892-HSG

**PLAINTIFFS' NOTICE OF AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM IN SUPPORT**

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 21, 2021 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland California 94612, before the Honorable Haywood S. Gilliam, Jr., Plaintiffs Charles Baird and Lauren Slayton, individually and on behalf of all others similarly situated and on behalf of the BlackRock Retirement Savings Plan ("Plaintiffs"), will and hereby do move the Court to finally approve the submitted proposed Class Action Settlement. Plaintiffs respectfully submit that they are amenable to the Court deciding this Motion on the papers, without oral argument, if the Court deems it appropriate.

Plaintiffs make this Motion pursuant to Federal Rule of Civil Procedure 23(e)(2) and Civil Local Rule 7-2. This Motion is based on the Notice of Motion and Motion; the accompanying Memorandum in support and all Exhibits appended thereto; the concurrently filed Declaration of Mary J. Bortscheller; all evidence, records, and pleadings in this action; oral argument that may be presented at any hearing of this Motion; and all other matters that the Court deems proper.

Dated: September 7, 2021

By:     /s/ *Mary J. Bortscheller*
Mary J. Bortscheller (admitted *Pro Hac Vice*)
Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, D.C. 20005

Nina Wasow (Cal. Bar No. 242047)
Todd Jackson (Cal. Bar No. 202598)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704

*Class Counsel*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

    A.   Summary of Litigation.............................................................................. 2

    B.   Settlement Negotiations ............................................................................ 3

    C.   The Proposed Settlement .......................................................................... 4

    D.   Preliminary Approval and Class Notice ................................................... 7

    E.   The Notice Plan......................................................................................... 7

    F.   Independent Fiduciary Approval .............................................................. 8

    G.   The Lack of Objections............................................................................. 9

III.  THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE
    AND THUS WARRANTS APPROVAL UNDER FEDERAL RULE OF CIVIL
    PROCEDURE 23 ............................................................................................. 10

    A.   The Class Was Adequately Represented ................................................ 11

    B.   The Proposal Was Negotiated at Arm's-Length...................................... 12

    C.   The Relief Provided to the Class Is Adequate ........................................ 13

        (1)   *The Settlement is adequate given the costs, risks, delay of trial and
            appeal, and the strength of Plaintiffs' case* ................................... 14

        (2)   *The Settlement is adequate because it will effectively distribute relief
            to the Class*.................................................................................... 16

        (3)   *The Settlement is adequate because it provides that reasonable
            attorneys' fees would be awarded from the common fund* ............ 16

        (4)   *The Settlement is adequate because there are no side agreements* ............... 17

    D.   The Proposal Treats Class Members Equitably ...................................... 18

    E.   All Other Relevant Factors Support Approval........................................ 18

IV.   CONCLUSION................................................................................................ 19

i

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ......................................................................17

*Baird v. BlackRock Inst. Tr. Co., N.A.*,
2021 WL 105619 (N.D. Cal. Jan. 12, 2021) ...................................................15

*Baird v. BlackRock Inst. Tr. Co., N.A.*,
2021 WL 681468 (N.D. Cal. Jan. 28, 2021) ................................................1, 14

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................................13, 17

*Boley v. Universal Health Servs., Inc.*,
498 F. Supp. 3d 715 (E.D. Pa. 2020), *appeal docketed*, No. 21-2014 (3rd Cir. May
26, 2021) ........................................................................................................19

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................................................15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ....................................................................10, 18

*Elkies v. Johnson & Johnson Servs., Inc.*,
2020 WL 10055593 (C.D. Cal. June 22, 2020) ...............................................18

*In re Facebook Biometric Info. Priv. Litig.*,
2021 WL 757025 (N.D. Cal. Feb. 26, 2021), *appeal dismissed*, 2021 WL 2660668
(9th Cir. June 22, 2021) ...........................................................................14, 16

*In re Google LLC St. View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ...........................................11, 12

*Hochstadt v. Bos. Sci. Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ..............................................................15

*In re Illumina, Inc. Sec. Litig.*,
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ...........................................11, 12

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020), *appeal dismissed* (9th Cir. Feb. 16,
2021) ..............................................................................................................15

ii

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................18

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .......................................................18

*Pfeifer v. Wawa, Inc.*,
    2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ........................................................18

*Quiruz v. Specialty Commodities, Inc.*,
    2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ........................................................19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................12, 14

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) ..................................................................12, 13

*Scott v. ZST Digit. Networks, Inc.*,
    2013 WL 12126744 (C.D. Cal. Aug. 5, 2013) .......................................................18

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) .......................................................15

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..............................................................................10

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods.*
    *Liab. Litig.*,
    2013 WL 3224585 (C.D. Cal. June 17, 2013) ......................................................16

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) .................................................................19

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) .........................................................18

*Uschold v. NSMG Shared Servs., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) ..................................................................12, 13

**Statutes**

26 U.S.C. § 3405(c)(1)(B) .......................................................................................6

28 U.S.C. § 1715 .....................................................................................................8

29 U.S.C. § 1109 ...................................................................................................15

iii

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................7

**Other Authorities**

68 Fed. Reg. 75,632, 75,635 (Jan. 1, 1975) .................................................................9

Fed. R. Civ. P. 12(h)(3)...............................................................................................19

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6)................................................................................................3

iv

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

# MEMORANDUM OF LAW

Plaintiffs Charles Baird and Lauren Slayton ("Plaintiffs") submit this Memorandum in support of their Motion for Final Approval of the Settlement Agreement dated March 9, 2021, which memorializes the settlement in principle the Parties reached following a settlement conference with the Honorable Judge Donna M. Ryu on February 5, 2021. Plaintiffs respectfully seek an Order finally approving the Settlement[1] under Federal Rule of Civil Procedure 23(e).

## I.    INTRODUCTION

After more than four years of hard-fought litigation against BlackRock, the world's largest asset manager, Plaintiffs reached a $9,650,000 Settlement with Defendants on the eve of trial. The Court granted preliminary approval of the Settlement on July 12, 2021. ECF No. 476. After being preliminarily approved, an Independent Fiduciary reviewed the Settlement and determined it was fair and reasonable for the Class. Ex. A at 1 (Report of the Independent Fiduciary for the Settlement in *Baird v. BlackRock Institutional Trust Company, N.A.*; hereinafter "Independent Fiduciary Report"). All of the Court's reasons for preliminarily approving the Settlement still hold true today: the Settlement is procedurally and substantively fair, adequate, and reasonable. ECF No. 476 at 8-10.

Under this significant Settlement, Defendants will pay nearly 30% of the damages that Plaintiffs sought to prove at trial, based on modeling by Plaintiffs' expert. Such a result is in line with other settlements of similar cases. The Settlement is carefully structured to distribute Settlement funds efficiently and equitably. Class members do not need to take any action to receive their Settlement payment: the Settlement Administrator will automatically remit a "restorative" payment (i.e., eligible for favorable tax treatment) either directly to the Class members' accounts in the BlackRock 401(k) Plan or in a form that may be invested in a retirement account (or simply cashed). Class members' recovery will be proportional to their exposure to the at-issue BlackRock investments, so that those participants who suffered the greatest alleged harm will receive the greatest recovery.

The Parties reached this Settlement only after engaging in extensive discovery, preparing for

---

[1] Unless otherwise specified, capitalized terms shall have the same meaning as provided in the Settlement Agreement filed at ECF No. 471-2.

an impending trial, and participating in a full day settlement conference facilitated by Judge Ryu. The Settlement avoids the risks inherent in proceeding to trial, chief among them the risk of delay through future appeals, and the material risk that Plaintiffs could ultimately recover nothing for the Class. The fairness and adequacy of this Settlement is further reflected in the fact that, to date, no Class member has filed an objection with the Court. Decl. of Mary J. Bortscheller in Supp. of Pls.' Mot. ("Bortscheller Decl.") ¶ 20.

For these reasons, and as explained in greater detail below, the Settlement satisfies all the requirements of Federal Rule of Civil Procedure 23(e) and should be finally approved.

## II.    BACKGROUND

### A.    Summary of Litigation

Though the Court is very familiar with this ERISA class action, Plaintiffs summarize the litigation history of the case here for ease of reference. Plaintiff Baird filed his original Complaint on April 5, 2017 challenging Defendants' management of the BlackRock Retirement Savings Plan (the "Plan"). ECF No. 1. Defendants moved to dismiss the Complaint on June 1, 2017. ECF No. 35. After the Parties completed their briefing on the motion to dismiss, Plaintiff Baird amended his Complaint on October 18, 2017 to add Plaintiff Slayton and assert additional claims concerning BlackRock Institutional Trust Company, N.A.'s compensation and management of certain commingled investment vehicles. ECF No. 75. Defendants moved to dismiss Plaintiffs' Amended Complaint on November 8, 2017, ECF No. 79, and, after the Parties finished briefing their renewed motion to dismiss arguments, Plaintiffs amended their Complaint a second time on August 27, 2018 to plead additional allegations and name, based on discovery, the Plan's investment consultant, Mercer Investment Consulting ("Mercer"), as a defendant. ECF No. 154. Defendants and Mercer moved to dismiss Plaintiffs' Second Amended Complaint on October 22, 2018. ECF No. 181. The Court denied Defendants' Motion in part and dismissed Mercer on September 3, 2019, after the Parties submitted their respective written and oral arguments. ECF No. 340.

The Parties engaged in extensive discovery into the claims and defenses in this case. *E.g.*, Bortscheller Decl. ¶ 4. Among other things, Class Counsel took fourteen fact depositions and four expert depositions, received and reviewed over 250,000 pages of documents and emails, and

2

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

exchanged hundreds of pages of written discovery. *Id.* ¶ 4. The Parties had a substantial number of discovery disputes that required joint letter briefing before Magistrate Judge Kandis A. Westmore to resolve. *Id.* ¶ 5. In total, the Parties submitted eleven discovery disputes to Judge Westmore, concerning matters ranging from untimely disclosure of trial witnesses to inadequately prepared Federal Rule of Civil Procedure 30(b)(6) witnesses. *Id.* Plaintiffs prevailed, in whole or in part, on all eleven disputes. ECF Nos. 114; 115; 116; 117; 119; 209; 238; 240; 241; 252; 262**.**

Plaintiffs moved to certify two classes on June 3, 2019. ECF No. 292. One class, the BlackRock Plan Class, consisted of only current and former participants in the BlackRock Plan. *Id.* at 3. The other class, the putative CTI Class, consisted of participants in numerous retirement plans whose retirement savings were invested in certain BlackRock collective trust investment vehicles that engaged in securities lending. *Id.* at 2. On February 11, 2020, the Court certified the BlackRock Plan Class under Federal Rule of Civil Procedure 23(b)(1), but denied Plaintiffs' motion to certify the larger CTI Class. ECF No. 360. Plaintiffs sought but were denied a Federal Rule of Civil Procedure 23(f) appeal of the Court's denial of the CTI Class certification. ECF Nos. 367, 373.

Following class certification, the Parties engaged in expert discovery. Plaintiffs' two merits experts provided reports concerning damages and fiduciary process. Bortscheller Decl. ¶ 6. In addition, Class Counsel deposed Defendants' three expert witnesses and Plaintiffs' experts submitted rebuttal reports addressing three of Defendants' expert reports. *Id*.

After expert discovery closed, Plaintiffs moved for partial summary judgment and Defendants moved for summary judgment on all claims, on September 24, 2020. ECF No. 396. The Court denied both motions on January 12, 2021. ECF No. 450. With trial on the horizon, Plaintiffs filed numerous papers and motions in preparation of trial, including two motions *in limine* on January 19, 2021, ECF No. 453, and a trial brief and pre-trial conference statement on January 26, 2021, ECF Nos. 459, 461. A few weeks before trial was scheduled to commence, the Court referred the Parties to a magistrate judge settlement conference. ECF No. 445.

B.     <u>Settlement Negotiations</u>

The Parties engaged in two separate mediations during the course of this litigation. First, the Parties engaged a private mediator with JAMS ADR on February 7, 2020, while the motion for class

certification was pending. Bortscheller Decl. ¶ 8. The Parties did not reach a resolution on that day, or in informal negotiations which continued after the February 7 mediation session. *Id*. Second, the Parties participated in a Court-ordered settlement conference occurring on February 5, 2021 and facilitated by Magistrate Judge Ryu. The settlement conference was conducted by virtual means due to the pandemic, and it lasted for seven hours (approximately three more hours than Judge Ryu had initially allocated for the session). *Id.* ¶ 12. During the settlement conference, the Parties extensively discussed the merits of the case and risks of trial in a joint session with Judge Ryu, and thereafter the Parties exchanged multiple offers and counter-offers with Judge Ryu's assistance before arriving at an agreement that evening; the settlement in principle was for the amount of $9,650,000. *Id.* ¶ 11. The entire negotiation was done at arm's-length and with the active supervision and assistance of Judge Ryu. *Id.* ¶ 13.

      C.    <u>The Proposed Settlement</u>

The proposed Settlement releases the claims of the BlackRock Plan Class (and only the BlackRock Plan Class) in this case in return for a payment of $9,650,000. That money will be distributed by the Settlement Administrator, Settlement Services, Inc. ("SSI"), according to a Plan of Allocation that allocates settlement funds proportional to the assets each Class member held in BlackRock-managed funds in the Plan. The Settlement required an Independent Fiduciary to review the Settlement for fairness.

**The BlackRock Plan Class**. The Settlement Agreement resolves all the claims asserted by the certified BlackRock Plan Class (the "Class"), defined as follows: "All participants (and their beneficiaries) in the BlackRock Retirement Savings Plan during the Class Period." ECF No. 360; ECF No. 471-2 ("Settlement Agreement") ¶ 1.8. Excluded from the Class are the individuals named in the case at any time as Defendants. The Class Period is the time period from April 5, 2011 through the date of the entry of a Preliminary Approval Order in this case (July 12, 2021). Settlement Agreement ¶ 1.14. There are 18,289 Class members. Decl. of Robert Hyte RE: Notice Mailing ("Hyte Decl.") ¶ 5.

**Monetary Relief and Plan of Allocation**. Under the Settlement Agreement, Defendants will pay $9,650,000 into an escrow account established for the benefit of the Class by Class Counsel and

4

trusteed by an escrow agent (the "Qualified Settlement Fund" or "QSF"). Following deductions for (i) any Court-approved Attorneys' Fees and Expenses, (ii) any Court-approved Class Representative Service Awards, and (iii) Administrative Expenses, the Net Settlement Amount will be distributed to the Class according to the Plan of Allocation attached to the Settlement Agreement as Exhibit E.

The Plan of Allocation provides that each Class member will receive a share of the Net Settlement Amount that is proportionate to the value of her individual account allocations to BlackRock-managed investments relative to the aggregate value of *all* Class members' allocations to BlackRock-managed investments. Specifically, each Class member's Distribution shall be calculated as follows:

a. First, the Settlement Administrator shall determine the aggregate value of the portion of each Class member's account allocated to BlackRock-managed investments during the Class Period by summing the value of the Class member's positive (greater than zero) account balance allocations to BlackRock-managed investments at the end of each quarter during the Class Period.

b. Second, the Settlement Administrator shall determine the aggregate value of the Plan's investment in BlackRock-managed funds across all quarters of the Class Period by summing the aggregate values of all Class members' positive account balance allocations to BlackRock-managed investments.

c. Third, the Settlement Administrator shall, for each Class member, divide the aggregate value of each Class member's account balance allocations to BlackRock-managed investments by the Plan's aggregate investment in BlackRock-managed funds across all quarters of the Class Period; this is the Pro Rata Share.

d. A Class member's Settlement payment is equal to the product of the Pro Rata Share value and the Net Settlement Amount value.

Settlement Agreement Ex. E at Part B.

Current Participants with a greater than zero ($0) account balance on the date Settlement payments are made will have their Plan accounts credited with their share of the Net Settlement Amount. Settlement Agreement ¶ 6.6.2. The Settlement payment will be invested in accordance with and proportionate to the investment elections then on file for each Current Participant. *Id*. ¶ 6.6.3. If the Current Participant does not have an investment election on file, then the Settlement payment will be invested in the Plan's Qualified Default Investment Alternative. *Id*. ¶ 6.6.3.

Former Participants will receive a check sent to the address on file with the Plan's

Recordkeeper. Settlement Agreement ¶ 6.8.2. In order to increase uptake of the Settlement payments, Former Participants have not been required to submit a claim form in order to receive their Settlement payment. Bortscheller Decl. ¶ 22. For each check issued to a Former Participant, the Settlement Administrator will calculate and withhold applicable taxes associated with the payment and will issue necessary tax forms to the Former Participant. Settlement Agreement ¶ 6.8.2(a). Further, the Settlement Administrator will advise the Former Participant: first, that the Settlement payment is rollover eligible;[2] and second, that if a Qualified Domestic Relations Order applies to the payment, they are responsible for complying with such Order. *Id*. ¶¶ 6.8.2(b)-(c). Similarly, the Settlement Administrator will issue checks to any Current Participants who have a greater than zero ($0) account balance as of the date Settlement payments are made (e.g., Current Participants who close their Plan account before Settlement payments are made shall receive a check), with appropriate taxes withdrawn. *Id*. ¶¶ 6.7, 6.7.1.

**Release of Claims**. In exchange for the relief provided in the Settlement, the Class will release the Released Parties from the Released Claims:

a. That were asserted in the Complaint or Action, or that arise out of the conduct alleged in the Complaint whether or not pleaded in the Complaint;

b. That arise out of, relate to, are based on, or have any connection with (1) the selection, oversight, retention, or performance of the Plan's investment options and service providers; (2) fees, costs, or expenses charged to, paid by, or reimbursed by the Plan, directly or indirectly, including, without limitation, all fees charged against collective trust fund assets, including fees for managing securities lending cash collateral and fees expressed as a share of net securities lending returns; (3) disclosures or failures to disclose information regarding the Plan's investment options, fees, costs, expenses, or service providers;

c. That would be barred by *res judicata* based on entry of the Final Approval Order;

d. That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any member of the Class in accordance with the Plan of Allocation; or

---

[2] The Settlement payments to Former Participants are intended to be eligible rollover distributions within the meaning of Internal Revenue Code § 3405(c), which requires that distributions shall be subject to a 20% withholding tax. 26 U.S.C. § 3405(c)(1)(B). The Class Notice will advise the Former Participants that if the payment is rolled over (i.e. deposited) into a qualified retirement savings account within a specific time of receipt, no additional early distribution tax penalty will be assessed on the payment.

e. That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*Excluded* from Released Claims are:

a. Any rights or duties arising out of the Settlement Agreement, including the enforcement of the Settlement Agreement;

b. Claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that do not fall within sections (a)-(e) above;

c. Wages, labor, or employment claims unrelated to the Plan;

d. Any claims which were or may be asserted on behalf of the non-certified CTI Class other than the claims belonging to the BlackRock Plan Class; or

e. Claims arising exclusively from conduct after the close of the Class Period.

Settlement Agreement ¶ 1.45.6. Further, the Settlement Agreement specifically does not release any claim whatsoever brought on behalf of any person or entity other than a member of the BlackRock Plan Class against the Released Parties. *Id*. ¶ 1.45.7.

### D. Preliminary Approval and Class Notice

On July 12, 2021, this Court granted Plaintiffs' motion to preliminarily approve the Settlement. ECF No. 476. In its order, the Court observed that (1) "settlement was reached after considerable arms-length bargaining between the parties;" (2) "the proportionate distribution of settlement payments does not improperly grant preferential treatment to Class Representatives;" (3) "[i]n light of the significant settlement amount and the risks and challenges faced by Plaintiffs in a potential trial, the Court finds that the settlement is within the range of possible approval;" and (4) there were "no obvious deficiencies" with the Settlement. *Id.* at 8-10. Further, the Court ordered that the Parties implement the proposed class notice plan and Independent Fiduciary review. *Id.* at 5, 12.

### E. The Notice Plan

The Court's preliminary approval order required the Settlement Administrator to send a notice of the Settlement ("Settlement Notice") through either an email consisting of the long form Settlement Notice (Settlement Agreement Ex. C) or through both email and direct mail of a postcard notice

(Settlement Agreement Ex. C.1). ECF No. 476 at 6.

In accordance with the Court's order, Plaintiffs provided notice to Class members about the proposed terms of the Settlement.[3] Specifically, starting on August 11, 2021, the Settlement Administrator executed the Notice Plan. The Settlement Administrator determined that there are 18,289 Class members. Hyte Decl. ¶ 5. In connection with the Notice Plan, the Settlement Administrator sent long-form notice via email to 86% of the 12,107 Current Participants in the Class and sent postcard notice to the remaining 14% of Current Participants in the Class for which the Plan's recordkeeper did not have an email address on file. *Id.* ¶¶ 8-9. The Settlement Administrator also issued postcard notice to 100% of the 6,182 Former Participants in the Class. *Id.* ¶ 9.

The Settlement Administrator advised that 325 notices sent to the 12,107 Current Participants were undeliverable. *Id.* ¶¶ 10-11. The Settlement Administrator also advised that 572 notices sent to 6,182 Former Participants were undeliverable. *Id.* The Settlement Administrator traced and re-issued postcard notice to all but 69 Current and Former Participants. *Id.* Current Participants will still have any recovery to which they are entitled deposited into their Plan account. Settlement Agreement Ex. E at 4-5. Through this Notice Plan, Class notice was successfully transmitted to 99.6% of Class members.

F.    Independent Fiduciary Approval

The Settlement Agreement provides that the Plan Administrator shall, on behalf of the Plan, retain an Independent Fiduciary to ensure that the Plan's claims were only released in exchange for a reasonable settlement. Settlement Agreement ¶ 3.2. The Plan Administrator retained Fiduciary Counselors to review the Settlement after seeking and obtaining consent from Class Counsel to the selection of Fiduciary Counselors. Bortscheller Decl. ¶ 17. A team at Fiduciary Counselors reviewed the Settlement of the Released Claims on behalf of the Plan to ensure it complied with all relevant conditions of Prohibited Transaction Exemption 2003-39 ("PTE 2003-39"). Settlement Agreement ¶ 3.2.1. PTE 2003-39 generally requires that a settlement be "reasonable, in light of the plan's

---

[3] Further, in accordance with their obligations under the Class Action Fairness Act ("CAFA"), Defendants – through the Settlement Administrator, Settlement Services, Inc. ("SSI") – mailed notices to the requisite officials. 28 U.S.C. § 1715. Hyte Decl. ¶ 2; *see also* Settlement Agreement ¶ 10.6.

8

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, 68 Fed. Reg. 75,632, 75,635 (Jan. 1, 1975). As part of its investigation, a team from Fiduciary Counselors spoke at length with Class Counsel about the litigation and the proposed Settlement, among other things. Bortscheller Decl. ¶ 18; *see also* Independent Fiduciary Report at 1-2.

After conducting a review of the Settlement, Fiduciary Counselors on September 3, 2021 issued a written report which approved and authorized the Settlement on behalf of the Plan in accordance with PTE 2003-39. Independent Fiduciary Report at 1. When approving the Settlement, Fiduciary Counselors determined the following:

- The Court has certified the Litigation as a class action, and in any event, there is a genuine controversy involving the Plan.

- The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

- The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances.

- The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

- The transaction is not described in Prohibited Transaction Exemption ("PTE") 76-1.

- All terms of the Settlement are specifically described in the written settlement agreement.

- The Plan is receiving no assets other than cash in the Settlement.

*Id*. at 4 – 9.

G.      The Lack of Objections

To date, Class Counsel has received 24 inquiries by telephone and by email from individuals about the Settlement. Bortscheller Decl. ¶ 19. Several Class members asked to update their contact information, and Class Counsel passed this information along to the Settlement Administrator. *Id*. Others wanted to gain a clearer understanding about the lawsuit and the Settlement, and Class Counsel responded to each of their questions. *Id*. As of the date of this filing, no Class member has filed an objection to the Settlement with the Court. *Id*. ¶ 20. Moreover, in all of the contacts with Class

9

members to date, no Class member has expressed concerns with any aspect of the Settlement to Class Counsel. *Id.* ¶ 21.

## III. THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND THUS WARRANTS APPROVAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). In order to be approved, the settlement must be "fair, reasonable, and adequate." *Id.* Settlement of complex matters such as this is favored in this District. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

Whether a settlement is "fair, reasonable, and adequate" depends on whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

In addition, the Ninth Circuit developed a series of factors to evaluate a settlement before the Federal Rules were amended in 2018 to codify the current Federal Rule of Civil Procedure 23(e)(2) standard. Most of the Ninth Circuit's factors are co-extensive with the Federal Rule of Civil Procedure 23(e)(2) factors. They include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As explained in detail below and as reflected in the Court's preliminary approval opinion and the Independent Fiduciary's report, the Settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2) and the Ninth Circuit's standard, and should be approved. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (stating that preliminary approval "establishes an initial presumption of fairness") (citation omitted).

A.    The Class Was Adequately Represented

A class is adequately represented during a settlement when the class's representatives and counsel have fully informed themselves about the case's strengths and weaknesses during litigation before negotiating a settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (explaining adequacy is a "procedural" element "looking to the conduct of the litigation," and noting that "the nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base."); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *3 (S.D. Cal. Mar. 17, 2021) (finding adequate representation where counsel "vigorously prosecute[d] this action on behalf of the class through significant motion practice and discovery efforts"); *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *10 (N.D. Cal. Mar. 18, 2020) (similar).

Class Counsel adequately represented the Class. The Parties reached this Settlement after more than four years of active litigation. During that time, Class Counsel conducted thorough discovery of the Class's claims: requesting and reviewing over 250,000 documents, deposing 14 fact witnesses and four experts, and engaging three experts to support their claims. Bortscheller Decl. ¶ 4. This process was extremely contentious and caused the Parties to seek Court intervention in discovery disputes at least 11 times. *Id.* ¶ 5. In addition, the Parties' legal positions were thoroughly fleshed out both through these discovery disputes and through the Parties' briefings for multiple motions to dismiss, class certification, and summary judgment. *See, e.g.*, ECF No. 181 (Mot. to Dismiss Second Am. Compl.); ECF No. 210-3 (Opp. to Mot. To Dismiss Second Am. Compl.); ECF No. 292 (Mot. to Certify Class); ECF No. 303 (Opp. to Mot. to Certify Class); ECF No. 385 (Pls.' Mot. for Summ. J.); ECF No. 396 (Defs.' Mot. for Summ. J.). In short, Class Counsel diligently and vigorously litigated this action,

which provided a comprehensive understanding of the merits of the case, their opponents' defense, and the risks of proceeding to trial. *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *3; *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *10.

Similarly, Plaintiffs Baird and Slayton took their role as class representatives very seriously. ECF No. 481-3 ¶ 6; ECF No. 481-4 ¶ 6; Bortscheller Decl. ¶ 7. They directly participated in the discovery process by turning over documents relevant to the case and sitting for in-person depositions. ECF No. 481-3 ¶¶ 7-9; ECF No. 481-4 ¶¶ 7-9. They also stayed informed about the case, and its strengths and weaknesses, throughout the litigation. *E.g.*, ECF No. 481-3 ¶ 12; ECF No. 481-4 ¶ 11. Moreover, they were active participants in the February 5, 2021 settlement conference which prepared them to evaluate the Settlement and conclude it was in the Class's best interest. ECF No. 481-3 ¶ 15; ECF No. 481-4 ¶ 14. As such, the Named Plaintiffs adequately represented the Class's interests. *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *10 (holding a plaintiff adequately represented a class when they provide evidence for the case). The Class had adequate representation here, which weighs in favor of final approval of the Settlement.

B.     The Proposal Was Negotiated at Arm's-Length

A settlement borne of an arm's-length negotiation ensures that the outcome was not influenced by a conflict of interest. *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600 (N.D. Cal. 2020). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Indicia of an arm's-length negotiation include (1) understanding the case's strengths and weaknesses before reaching settlement; (2) not negotiating fees in connection with the settlement in principle; (3) the presence of a neutral third-party overseeing the settlement process; and (4) only negotiating about the settlement of a single case. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment; *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169-72 (N.D. Cal. 2019); *Schneider*, 336 F.R.D. at 600.

The negotiation that led to this Settlement was conducted entirely at arm's-length and was wholly non-collusive. Bortscheller Decl. ¶ 13. *First*, the Parties agreed to settle only after extensive litigation and discovery into each of Plaintiffs' claims over more than four years. *Supra* Part II.A. This

12

litigation was markedly contentious, and the claims well discovered. *Id.* As a result, this Settlement was only reached after Class Counsel had substantial information about the strengths and weaknesses of the case. *See Schneider*, 336 F.R.D. at 600 (finding settlement was "not tainted by collusion or conflicts of interest" given, *inter alia*, "the amount of discovery completed [and] the extensive motion practice"). *Second*, the fee award Class Counsel is seeking as compensation for its work in securing this Settlement was not negotiated with Defendants in connection with the $9.65 million Settlement, and it will revert to the Class if not approved by the Court. *See* Settlement Agreement ¶¶ 1.32; 1.37; Bortscheller Decl. ¶ 15. Moreover, there was no agreement that Defendants would consent to the attorneys' fees requested. Bortscheller Decl. ¶ 15. These features indicate that the potential fee award did not create a conflict for Class Counsel that influenced the negotiation. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *Third*, Magistrate Judge Ryu facilitated the settlement conference in which the Settlement was reached, and only after the Parties had failed to reach agreement during a private mediation facilitated through JAMS ADR over a year earlier. *Supra* Part II.B. *Finally*, the Settlement was reached on behalf of the BlackRock Plan Class and only released the claims asserted in the Complaint on behalf of the BlackRock Plan Class. Settlement Agreement ¶ 1.45.7. No other cases were discussed in connection with the negotiation of this Settlement. Bortscheller Decl. ¶ 14. Therefore, all indicia of an arm's-length negotiation are present here. *Uschold*, 333 F.R.D. at 169-72; *Schneider*, 336 F.R.D. at 600.

For the above reasons, the Settlement process was procedurally sound and therefore should be approved. Class Counsel aggressively litigated this case and only reached Settlement at arm's-length after carefully considering the benefits and risks to the Class in light of the likelihood of success at trial.

### C. The Relief Provided to the Class Is Adequate

In addition to being procedurally sound, the Settlement is substantively sound. Federal Rule of Civil Procedure 23(e)(2)(C) ensures a settlement is substantively adequate by weighing "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3)[.]" Each factor supports a finding that the relief provided for the Class is adequate and the Settlement should therefore be approved.

### (1) The Settlement is adequate given the costs, risks, delay of trial and appeal, and the strength of Plaintiffs' case

The adequacy of the relief provided to the Class is measured using "an amalgam of delicate balancing, gross approximations and rough justice" rather than a mathematical formula. *In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *6 (N.D. Cal. Feb. 26, 2021), *appeal dismissed*, 2021 WL 2660668 (9th Cir. June 22, 2021) (quoting *Rodriguez*, 563 F.3d at 965). This requires a context specific assessment of the "overall risks and rewards of a trial." *Id.* at *6-7. For this reason, the Ninth Circuit emphasizes the importance of "an arms-length, non-collusive, negotiated resolution" to a settlement's adequacy. *Id.* As noted above, the Settlement was procedurally robust, only occurring after more than four years of intense litigation and through a settlement conference facilitated by Judge Ryu. *Supra* Part IV.B. In addition, the Settlement amount reflects the risks that the Class would receive no recovery if the case was to proceed to trial, and the costs and delay to the Class if an appeal followed a trial verdict.

Although Plaintiffs were confident in the merits of the case, there was a material risk that Plaintiffs would be unable to prevail at trial. Throughout litigation, Defendants maintained that the Class was provided "world-class" investment options on financial terms more favorable than those negotiated by fiduciaries of plans with much greater bargaining power than the Plan. ECF No. 181 at 1; ECF No. 396 at 1. Defendants further contended that, throughout the Class Period, the Plan's decisions were informed and approved by an unaffiliated third-party investment consultant. *Id.* In addition, there was little applicable case law for certain of Plaintiffs' claims concerning securities lending compensation and collateral management. In the absence of clear case law, success on these claims likely would have turned on a battle of the experts. *See Baird v. BlackRock Inst. Tr. Co., N.A.*, 2021 WL 681468, at *1 (N.D. Cal. Jan. 28, 2021) (denying Defendants' motion to reconsider summary judgment). This created a substantial risk for the Class because the outcome of such a battle is unpredictable and could not be informed by the outcomes in other cases.

Moreover, if Plaintiffs prevailed on the merits, there was a risk that they would be unable to

establish damages. The Parties disagreed about whether ERISA § 409, 29 U.S.C. § 1109, imposed on Plaintiffs a burden of proving "loss causation" and what the standard for causation was in this District. *Compare* ECF No. 396 at 15 *with* ECF No. 423 at 18-19. The Court's summary judgment decision did not reach this issue. *See Baird v. BlackRock Inst. Tr. Co., N.A.*, 2021 WL 105619, at *2-*4 (N.D. Cal. Jan. 12, 2021). As such, there was a risk that the Court would agree with Defendants' interpretation of ERISA § 409, 29 U.S.C. § 1109, and related arguments if Plaintiffs established liability at trial, thereby eliminating many recoverable damages. *See, e.g.*, ECF No. 396 at 17 (describing Defendants' view that the Class suffered "negative damages"). Assuming Plaintiffs prevailed at trial on this issue, Class Counsel anticipated Defendants would appeal, causing significant delay and creating the risk that any damages award by this Court could be reversed on appeal.

The Settlement avoids these risks and provides a sizable recovery for the Class representing approximately 30% of damages Class Counsel intended to prove at trial. This is within the range of recovery deemed adequate in similar cases. *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *2 (C.D. Cal. Sept. 18, 2020), *appeal dismissed* (9th Cir. Feb. 16, 2021) (approving settlement that represented approximately 29% of damages in similar ERISA matter); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *2, *5 (M.D.N.C. May 6, 2019) (approving settlement that represented 19% of estimated damages in connection with similar ERISA claims); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (approving settlement that represented 10% of maximum damages); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 109 (D. Mass. 2010) (noting that recovery of approximately 27% of conservatively estimated damages was "plainly reasonable").

Finally, by reaching a Settlement before trial, the Class avoided substantial costs and ensured that members would timely receive their recovery. Proceeding to trial would require substantial additional expense, including the costs of preparing and presenting two expert witnesses, trial technology, and travel for the litigation team and Plaintiffs' witnesses, among other things. Moreover, given the likelihood that any trial outcome would be appealed, a substantial delay in the Class's receipt of a recovery likely was avoided through settlement. As such, the Settlement is adequate because the substantial amount recovered properly reflects the risk that the Class would recover nothing if the case proceeded to trial and ensured a timely and cost-sensitive resolution to this case.

(2)     *The Settlement is adequate because it will effectively distribute relief to the Class*

A settlement adequately distributes relief when the claims procedure "facilitates filing legitimate claims" and is not "unduly demanding." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment; *see In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *8. The Settlement here is structured to limit the administrative burden for Class members to receive recovery and increase the likelihood that Class members will receive their distribution of Settlement proceeds. The Plan of Allocation is highly efficient and effective because it automatically remits payment either directly to a Class member's 401(k) Plan account or issues a check that is eligible be invested in a retirement account (or simply cashed). There are 12,107 Current Participants in the Plan – that is, Class members who have money invested through the BlackRock Plan. These 12,107 Class members will have a Pro Rata Share of the Settlement credited to their Plan account, without having to take any action. *Supra* Part II.C. There are also 6,180 Former Participants of the Plan – that is, Class members who no longer have an open 401(k) account in the Plan or who have an account balance of zero ($0). These Class members will receive a check for their share of the Settlement, without having to take any action. *Supra* Part II.C. This will automatically increase the uptake of Settlement proceeds by Class members.

Courts routinely approve as adequate distribution methods that are *less* efficient and *more* burdensome for class members; the Settlement distribution method here thus is more than adequate. *E.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *8 (finding adequate a distribution method that required class members to fill out a claim form and receive payment by check or online options); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

(3)     *The Settlement is adequate because it provides that reasonable attorneys' fees would be awarded from the common fund*

The Settlement terms that relate to Class Counsel's fees also demonstrate that the relief the Class will receive is adequate. A settlement is fair, reasonable, and adequate when it does not award

16

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

Class Counsel a disproportionately large fee that would affect its judgment when recommending a settlement. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 (noting fee requests are suspect where counsel "receive[s] a disproportionate distribution of the settlement;" negotiates a "'clear sailing' arrangement;" or agrees to let fees not awarded revert to defendant) (citation omitted); *see also Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that the fee "award exceeds the maximum possible amount of class monetary relief by a factor of three" and remanding for more careful judicial scrutiny of the proposed settlement and fee award). Class Counsel's request for attorneys' fees is subject to a separate pending motion. ECF No. 481. As detailed at length in that motion, the Settlement's terms regarding fees and the related request for fees are eminently reasonable. *Id.* Namely, the Settlement specifically required Class Counsel to seek Court approval of a fee award not exceeding 29% of the Gross Settlement Amount. Settlement Agreement ¶ 7.1. Because the Settlement is structured so that 100% of the Net Settlement Amount (i.e., the Gross Settlement Amount after fees and expenses) would be distributed to the Class, there is no possibility that the fee award would exceed 29% of the Class's ultimate recovery. Moreover, any requested fee not awarded to Class Counsel would revert to the Class (and not Defendants) and there was no agreement that Defendants would consent to Plaintiffs' fee request. Bortscheller Decl. ¶ 15. Therefore, the Settlement provides adequate relief to the Class because it does not disproportionately award Class Counsel.

### (4) The Settlement is adequate because there are no side agreements

Federal Rule of Civil Procedure 23(e)(3) requires Class Counsel to identify "any agreement made in connection with the proposal." The Settlement Agreement reflects the only agreement amongst the Parties, and there are no separate or "side" agreements made in connection with the Settlement. Bortscheller Decl. ¶ 15. As such, there are no agreements outside of the Settlement Agreement that would negatively affect the value of the Settlement to the Class. Therefore, the Settlement provides adequate relief to the Class because it reflects the costs and risks of proceeding through trial, would effectively and efficiently distribute funds to the Class, does not improperly reward Class Counsel, and represents the entire agreement between the Parties.

### D. The Proposal Treats Class Members Equitably

Finally, Federal Rule of Civil Procedure 23(e)(2)(D) mandates that a settlement must "treat[] class members equitably relative to each other." "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (citation omitted); *see also Perks v. Activehours, Inc.*, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021). As described above, the Plan of Allocation provides that each Class member will receive a payment in proportion to the size of their BlackRock-managed retirement investments in the BlackRock Plan. *See supra* Part II.C; Settlement Agreement Ex. E. This approach distributes the proceeds of the Settlement broadly amongst the Plan's Current and Former Participants, and it recognizes that the Class members with the largest investments in BlackRock-managed funds in the Plan were those most harmed by the ERISA violations alleged in the case. Courts commonly accept this type of settlement allocation method. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (approving a plan of allocation that provided for a *pro rata* distribution of settlement funds); *Scott v. ZST Digit. Networks, Inc.*, 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (same); *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *6 (E.D. Pa. Aug. 31, 2018) (same).[4]

For the foregoing reasons, the Settlement is "fair, reasonable, and adequate" and should be approved. Fed. R. Civ. P. 23(e)(2).

### E. All Other Relevant Factors Support Approval

In addition to satisfying the standard for approval under Federal Rule of Civil Procedure 23(e)(2), the Settlement satisfies all non-overlapping *Churchill* factors relevant to this Settlement. *First,* there is a risk that the class could be de-certified if the case proceeded through trial and was delayed by appeal. Namely, there is a legal issue percolating in the circuit courts concerning whether a plan participant has Article III standing to challenge the selection and monitoring of plan investments

---

[4] Plaintiffs have each requested $15,000 Service Awards for their efforts in this litigation. That request is pending and subject to the Court's approval. ECF No. 481. "Those awards are well-established as legitimate in the Ninth Circuit, and there is no decision post-dating the amendments to Rule 23 which suggest that they are no longer appropriate due to Rule 23(e)(2)(D)." *Elkies v. Johnson & Johnson Servs., Inc.*, 2020 WL 10055593, at *7 (C.D. Cal. June 22, 2020).

18

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

in which they did not invest. *See Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715 (E.D. Pa. 2020), *appeal docketed*, No. 21-2014 (3rd Cir. May 26, 2021). BlackRock unsuccessfully asserted this very argument at the motion to dismiss stage. ECF No. 181 at 8 n.6. But because Article III challenges can be raised at any time, *see* Fed. R. Civ. P. 12(h)(3), there is a risk of de-certification or dismissal if binding authority were to change. *Second,* the experience and view of counsel weighs in favor of Settlement. Class Counsel has over 80 collective years of experience litigating complex class actions and ERISA matters. Bortscheller Decl. ¶ 16. During this time, Class Counsel has received numerous accolades for their ERISA expertise and success in litigating ERISA actions. *Id.* Class Counsel fully endorses the proposed Settlement as a highly favorable result for the Class. *Id.* Class Counsel is best suited to make this judgment as they have litigated this case for over four years. Their endorsement weighs in favor of final approval of the Settlement. *See, e.g.*, *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015). *Finally*, the reaction of Class members also weighs in favor approving the Settlement and to date, there have been no objections to the Settlement. *Id.* Therefore, the settlement is "fair, reasonable, and adequate."

**IV.    CONCLUSION**

For the foregoing reasons, the Settlement should be approved because it is fair, reasonable, and adequate.

19

Mem. in Supp. Of Mot. for Final Approval of Class Action Settlement
Case No. 4:17-cv-01892

Dated: September 7, 2021

By:     /s/ *Mary J. Bortscheller*

Mary J. Bortscheller (admitted *Pro Hac Vice*)
Michelle C. Yau (admitted *Pro Hac Vice*)
Daniel R. Sutter (admitted *Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W., Suite 500 West
Washington, D.C. 20005

Nina Wasow (Cal. Bar No. 242047)
Todd Jackson (Cal. Bar No. 202598)
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704

*Class Counsel*