UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES BAIRD, et al., | Case No. 17-cv-01892-HSG |
| Plaintiffs, | **ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** |
| v. | |
| BLACKROCK INSTITUTIONAL TRUST COMPANY, N.A., et al., | |
| Defendants. | Re: Dkt. Nos. 481, 482 |

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award. Dkt. Nos. 481, 482. The Court held a final fairness hearing on October 21, 2021. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

I.    **BACKGROUND**

A.    **Procedural Background**

Plaintiff Baird filed his original complaint on April 5, 2017, challenging Defendants' management of the BlackRock Retirement Savings Plan (the "Plan"). Dkt. No. 1. Plaintiffs and Defendants engaged in several rounds of motions to dismiss and amendment, concluding in the Court's order granting in part and denying in part Defendants' motion to dismiss the second amended complaint. Dkt. Nos. 75, 79, 154, 181, 340. The parties then engaged in extensive discovery regarding the claims and defenses in this case, including a substantial number of discovery disputes that required joint letter briefing before Magistrate Judge Westmore. *See* Dkt. No 482 (or "Mot.") at 2-3.

Plaintiffs then moved to certify two classes. Dkt. No. 292. One class, the BlackRock Plan

1    Class, consisted of only current and former participants in the BlackRock Plan.  *Id.*  The other

2    class, the putative CTI Class, consisted of participants in numerous retirement plans whose

3    retirement savings were invested in certain BlackRock collective trust investment vehicles that

4    engaged in securities lending.  *Id.*  On February 11, 2020, the Court certified the BlackRock Plan

5    Class but denied Plaintiffs' motion to certify the CTI Class.  Dkt. No. 360.  Plaintiffs sought but

6    were denied a Rule 23(f) appeal of the Court's denial of certification of the CTI Class.  Dkt. Nos.

7    367, 373.

8           Following class certification, the parties engaged in expert discovery.  Plaintiffs' two

9    merits experts provided reports concerning damages and fiduciary process.  Mot. at 3.  In

10   addition, Class Counsel deposed Defendants' three expert witnesses, and Plaintiffs' experts

11   submitted rebuttal reports addressing three of Defendants' expert reports.  *Id.*  After expert

12   discovery closed, Plaintiffs moved for partial summary judgment and Defendants moved for

13   summary judgment on all claims.  Dkt. Nos. 385, 396.  The Court denied both motions on January

14   12, 2021.  Dkt. No. 455.  In preparation for trial, Plaintiffs submitted numerous filings, including

15   two motions *in limine* and a trial brief and pre-trial conference statement.  Dkt. Nos. 453, 459,

16   464.  Shortly before trial was scheduled to begin, the Court referred the Parties to a magistrate

17   judge settlement conference.  Dkt. No. 450.  At a February 5, 2021 settlement conference

18   facilitated by Magistrate Judge Ryu, the parties reached a settlement in principle.  *See* Dkt. No.

19   468.  Plaintiffs then moved for preliminary approval of the class action settlement on April 23,

20   2021.

21          Following the hearing on the motion for preliminary approval, and in response to the

22   Court's concerns about the Settlement Agreement's proposed method of communication with

23   current and former Plan participants, Defendants filed a supplemental declaration.  *See* Dkt. No.

24   475.  That declaration explained that Plan participants affirmatively choose their communication

25   delivery preference to be either email or U.S. mail, and that 88 percent of Plan participants have

26   affirmatively elected to have legal and plan notices communicated to them via email.  *Id.* ¶¶ 3-6.

27   With this concern addressed, the Court granted Plaintiffs' motion for preliminary approval of the

28   Settlement on July 12, 2021 and ordered the parties to implement the proposed class notice plan

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    and seek independent fiduciary review.  *See* Dkt. No. 476.

2          **B.     Settlement Agreement**

3          The proposed Settlement releases the claims of the BlackRock Plan Class (and only the

4    BlackRock Plan Class) in this case in return for a payment of $9,650,000.  Mot. at 4.  That money

5    will be distributed by the Settlement Administrator, Settlement Services, Inc. ("SSI"), according to

6    a Plan of Allocation that allocates settlement funds proportional to the assets each Class member

7    held in BlackRock-managed funds in the Plan.  *Id.*

8                **i.     The BlackRock Plan Class**

9          The Settlement Agreement resolves all the claims asserted by the certified BlackRock Plan

10   Class (the "Class"), which is defined as follows: "All participants (and their beneficiaries) in the

11   BlackRock Retirement Savings Plan during the Class Period."  Dkt. No. 471-2 ("Settlement

12   Agreement") ¶ 1.8.  Excluded from the Class are the individuals named in the case at any time as

13   Defendants.  *Id.*  The Class Period is the period from April 5, 2011 through the date of the entry of

14   the Preliminary Approval Order in this case (July 12, 2021).  Settlement Agreement ¶ 1.14.  There

15   are 18,289 Class members.  Mot. at 4.

16               **ii.    Monetary Relief and Plan of Allocation**

17         Under the Settlement Agreement, Defendants will pay $9,650,000 into an escrow account

18   established for the benefit of the Class by Class Counsel and trusteed by an escrow agent (the

19   "Qualified Settlement Fund" or "QSF").  Mot. at 4-5.  Following deductions for (i) any Court-

20   approved Attorneys' Fees and Expenses; (ii) any Court-approved Class Representative Service

21   Awards; and (iii) Administrative Expenses, the Net Settlement Amount will be distributed to

22   the Class in accordance with the Plan of Allocation attached to the Settlement Agreement as

23   Exhibit E.  *Id.* at 5.

24         The Plan of Allocation provides that each Class member will receive a share of the Net

25   Settlement Amount that is proportionate to the value of her individual account allocations to

26   BlackRock-managed investments relative to the aggregate value of all Class members' allocations

27   to BlackRock-managed investments.  *Id.*  Specifically, each Class member's Distribution shall be

28   calculated as follows:

United States District Court
Northern District of California

a.  First, the Settlement Administrator shall determine the aggregate value of the portion of each Class Member's account allocated to BlackRock-managed investments during the Class Period by summing the value of the Class Member's positive (greater than zero) account balance allocations to BlackRock-managed investments at the end of each quarter during the Class Period.

b.  Second, the Settlement Administrator shall determine the aggregate value of the Plan's investment in BlackRock-managed funds across all quarters of the Class Period by summing the aggregate values of all Class Members' positive account balance allocations to BlackRock-managed investments.

c.  Third, the Settlement Administrator shall, for each Class Member, divide the aggregate value of each Class Member's account balance allocations to BlackRock-managed investments by the Plan's aggregate investment in BlackRock-managed funds across all quarters of the Class Period; this is the Pro Rata Share.

d.  A Class Member's settlement payment is equal to the product of the Pro Rata Share value and the Net Settlement Amount value.

Settlement Agreement, Ex. E at Part B.

Current Participants with a greater than zero ($0) account balance on the date settlement payments are made will have their Plan accounts credited with their share of the Net Settlement Amount.  Settlement Agreement ¶ 6.6.2.  The settlement payment will be invested in accordance with and proportionate to the investment elections then on file for each Current Participant.  *Id*. ¶¶ 6.6, 6.6.3.  If the Current Participant does not have an investment election on file, then the settlement payment will be invested in the Plan's Qualified Default Investment Alternative.  *Id*. ¶ 6.6.3.

Former Participants will receive a check sent to the address on file with the Plan's Recordkeeper.  *Id.* ¶ 6.8.2.  To increase uptake of the settlement payments, Former Participants will not be required to submit a claim form to receive their settlement payment.  Mot. at 6.  For each check issued to a Former Participant, the Settlement Administrator will calculate and withhold applicable taxes associated with the payment and will issue necessary tax forms to the

4

1    Former Participant.  Settlement Agreement ¶ 6.8.2(a).  Further, the Settlement Administrator will

2    advise the Former Participant: first, that the settlement payment is rollover eligible; and second,

3    that if a Qualified Domestic Relations Order applies to the payment, they are responsible for

4    complying with such Order.  *Id*. ¶¶ 6.8.2(b)-(c).  Similarly, the Settlement Administrator will issue

5    checks to any Current Participants who have a greater than zero-dollar ($0) account balance as of

6    the date settlement payments are made (e.g., Current Participants who close their Plan account

7    before settlement payments are made shall receive a check), with appropriate taxes withdrawn.  *Id*.

8    ¶¶ 6.7, 6.7.1.

9                    **iii.    Release of Claims**

10         In exchange for the relief provided in the Settlement, the Class releases the Released

11   Parties from the following Released Claims:

12         a.    That were asserted in the Complaint or Action, or that arise out of the conduct alleged

13               in the Complaint whether or not pleaded in the Complaint;

14         b.    That arise out of, relate to, are based on, or have any connection with (1) the selection,

15               oversight, retention, or performance of the Plan's investment options and service

16               providers; (2) fees, costs, or expenses charged to, paid by, or reimbursed by the Plan,

17               directly or indirectly, including, without limitation, all fees charged against collective

18               trust fund assets, including fees for managing securities lending cash collateral and fees

19               expressed as a share of net securities lending returns; (3) disclosures or failures to

20               disclose information regarding the Plan's investment options, fees, costs, expenses, or

21               service providers;

22         c.    That would be barred by *res judicata* based on entry of the Final Approval Order;

23         d.    That relate to the direction to calculate, the calculation of, and/or the method or manner

24               of allocation of the Qualified Settlement Fund to the Plan or any member of the Class

25               in accordance with the Plan of Allocation; or

26         e.    That relate to the approval by the Independent Fiduciary of the Settlement Agreement,

27               unless brought against the Independent Fiduciary alone.

28         Excluded from Released Claims are:

United States District Court
Northern District of California

5

1       a.   Any rights or duties arising out of the Settlement Agreement, including the

2            enforcement of the Settlement Agreement;

3       b.   Claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. §

4            1132(a)(1)(B) that do not fall within sections (a)-(e) above;

5       c.   Wages, labor, or employment claims unrelated to the Plan;

6       d.   Any claims which were or may be asserted on behalf of the non-certified CTI Class

7            other than the claims belonging to the BlackRock Plan Class; or

8       e.   Claims arising exclusively from conduct after the close of the Class Period.

9  Settlement Agreement ¶ 1.45.6.  Further, the Settlement Agreement does not release any claim

10  brought on behalf of any person or entity other than a member of the BlackRock Plan Class

11  against the Released Parties.  *Id*. ¶ 1.45.7.

## II.   DISCUSSION

### A.   Final Settlement Approval

#### i.   Class Certification

15  Final approval of a class action settlement requires, as a threshold matter, an assessment of

16  whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and

17  (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that

18  would affect these requirements have changed since the Court preliminarily approved the class on

19  July 12, 2021, this order incorporates by reference the Court's prior analysis under Rules

20  23(a) and (b) as set forth in the order granting preliminary approval.  *See* Dkt. No. 476 at 7.

#### ii.   The Settlement

22  "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

23  approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a

24  hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers*

25  *for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th

26  Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill

27  the objectives outlined above.  In other words, the court's intrusion upon what is otherwise a

28  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

2    overreaching by, or collusion between, the negotiating parties . . . .").  To assess whether a

3    proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the

4    following factors:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely

5    duration of further litigation; (3) the risk of maintaining class action status throughout the trial;

6    (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the

7    proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

8    participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v.*

9    *West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026.  "The

10   relative degree of importance to be attached to any particular factor" is case specific.  *Officers for*

11   *Justice*, 688 F.2d at 625.

12          In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule

13   23(e)."  *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed

14   settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

15                              **a.  Adequacy of Notice**

16          Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

17   manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

18   Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including

19   individual notice to all members who can be identified through reasonable effort."  The notice

20   must "clearly and concisely state in plain, easily understood language" the nature of the action, the

21   class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ.

22   P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class

23   members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*,

24   18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable"

25   notice, not "actually received" notice).

26          The Court's preliminary approval order required the Settlement Administrator to send

27   notice of the settlement ("Settlement Notice") through either an email consisting of the long form

28   Settlement Notice (Settlement Agreement Ex. C) or through both email and direct mail of a

7

United States District Court
Northern District of California

1    postcard notice (Settlement Agreement Ex. C.1).  *See* Dkt. No. 476 at 6.  Beginning on August 11,

2    2021, the Settlement Administrator executed the Notice Plan and ultimately determined that there

3    are 18,289 Class members.  Mot. at 8.  The Settlement Administrator then sent long-form notice

4    via email to 86% of the 12,107 Current Participants in the Class and sent postcard notice to the

5    remaining 14% of Current Participants in the Class for which the Plan's recordkeeper did not have

6    an email address on file.  *Id.*  The Settlement Administrator also issued postcard notice to 100% of

7    the 6,182 Former Participants in the Class.  *Id.*  The Settlement Administrator advised that 325

8    notices sent to the 12,107 Current Participants, and 572 notices sent to 6,182 Former Participants,

9    were undeliverable.  *Id.*  Ultimately, however, the Settlement Administrator traced and re-issued

10   postcard notice to all but 69 Current and Former Participants.  *Id.*

         In light of the Settlement Administrator's finding that "Class notice was successfully

11

12   transmitted to 99.6% of Class members,"  the Court finds that the notice plan previously approved

13   by the Court was well-implemented and complies with Rule 23(c)(2)(B).  *See id*.  The Court

14   further finds that the parties have sufficiently provided the best practicable notice to the Class

15   Members.

16                    **b.  Fairness, Adequacy, and Reasonableness**

17        Having found the notice procedures adequate under Rule 23(e), the Court next considers

18   whether the entire settlement comports with Rule 23(e).

19                    **1.  Strength of Plaintiff's Case and Litigation Risk**

20        Approval of a class settlement is appropriate when plaintiffs must overcome significant

21   barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D.

22   Cal. 2010).  Courts "may presume that through negotiation, the Parties, counsel, and mediator

23   arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

24   *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

25   Cal. Apr. 22, 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a

26   class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly

27   inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

28   uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4

United States District Court
Northern District of California

1   (N.D. Cal. June 27, 2014) (quotations omitted).

2   The Court finds that the amount offered in settlement is reasonable considering the

3   complexity of this litigation and the risk that Plaintiffs would face in litigating the case.  This is a

4   complex ERISA class action involving difficult legal and factual issues that have resulted in four

5   years of protracted and extensive litigation.  Even if the Plaintiffs were to ultimately prevail on the

6   issue of liability, they still expected Defendants to vigorously challenge the extent of liability, as

7   previewed by the parties' varying interpretations of Plaintiffs' burden of proving "loss causation"

8   under ERISA.  *See* Mot. at 15.  And had Plaintiffs prevailed at trial on these issues, Class Counsel

9   still reasonably anticipated an appeal, which would cause further delay and entail a risk that any

10  damages award could be reversed.  *See id.*  Moreover, as further discussed below, Plaintiffs have

11  ensured a favorable recovery for the class.  Accordingly, these factors weigh in favor of approving

12  the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2.   Risk of Maintaining Class Action Status

14  The Court next looks to the risk of maintaining class certification if the litigation were to

15  proceed.  Here, Plaintiffs moved to certify two classes, but the Court ultimately only certified the

16  BlackRock Plan Class, which consists of current and former participants in the BlackRock Plan.

17  *See* Dkt. No. 360.  Noting a legal issue percolating in the circuit courts concerning whether a plan

18  participant has Article III standing to challenge the selection and monitoring of plan investments

19  in which they did not invest, *see Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715 (E.D.

20  Pa. 2020), *appeal docketed*, No. 21-2014 (3rd Cir. May 26, 2021), Plaintiffs contend that there is a

21  risk that the BlackRock Plan Class could be decertified if the case proceeded through trial and was

22  subject to appeal.  *See* Mot. at 18-19.  Though this risk appears relatively remote, the Court

23  recognizes that Plaintiffs would face at least some risk of class decertification if litigation were to

24  proceed.  This factor's impact is modest but weighs in favor of settlement approval.

### 3.   Settlement Amount

26  The amount offered in the Settlement is another factor that weighs in favor of approval in

27  this case.  The settlement amount of $9,650,000 represents approximately 28.4% of the damages

28  Class Counsel intended to prove at trial.  *See* Mot. at 15.  This is within the range of other similar

9

1    ERISA settlements.  *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *2 (C.D. Cal.

2    Sept. 18, 2020), *appeal dismissed* (9th Cir. Feb. 16, 2021) (approving settlement that represented

3    approximately 29% of damages in ERISA case); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,

4    2018 WL 8334858, at *5 (C.D. Cal. July 30, 2018) (approving settlement amounting to 17-54% of

5    potential damages).  The Court finds that this settlement amount falls "within the range of

6    reasonableness" considering the risks and costs of litigation.

7                  **4.    Extent of Discovery Completed and Stage of Proceedings**

8           The Court finds that Class Counsel had sufficient information to make an informed

9    decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

10   (9th Cir. 2000).  As Plaintiffs explain, the Parties reached this Settlement after more than four

11   years of active litigation, which included requesting and reviewing over 250,000 documents,

12   deposing 14 fact witnesses and four experts, numerous discovery disputes and briefings for

13   multiple motions to dismiss, class certification, and summary judgment.  *See* Mot. at 11.  The

14   Court is persuaded that the Class Counsel entered the settlement discussions with sufficient

15   understanding of the factual and legal issues to allow them to assess the likelihood of success on

16   the merits.  This factor weighs in favor of approval.

17                      **5.    Experience and Views of Counsel**

18          The Court next considers the experience and views of counsel.  "[P]arties represented by

19   competent counsel are better positioned than courts to produce a settlement that fairly reflects each

20   party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (quotations omitted).  Here,

21   Class Counsel has substantial experience in similar class actions.  *See* Mot. at 19.  The Court

22   recognizes, however, that courts have diverged on the weight to assign counsel's opinions.

23   *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010)

24   ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852

25   ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . .").  This factor's

26   impact is modest but favors approval.

27

28                          **6.    Reaction of Class Members**

United States District Court
Northern District of California

1    "[T]he absence of a large number of objections to a proposed class action settlement raises

2    a strong presumption that the terms of a proposed class settlement action are favorable to the class

3    members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal.

4    2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number

5    of opt-outs and objections in comparison to class size is typically a factor that supports settlement

6    approval.").

7         This factor supports final approval because no Class Member has filed an objection to the

8    Settlement.  *See* Mot. at 9

9                                  \*       \*       \*

10        After considering and weighing the above factors, the Court finds that the settlement

11   agreement is fair, adequate, and reasonable, and that the settlement Class Members received

12   adequate notice.  Accordingly, Plaintiff's motion for final approval of the class action settlement is

13   **GRANTED**.

14        **B.    Attorneys' Fees, Costs and Expenses, and Incentive Award**

15        Class Counsel also asks the Court to approve: (1) an award of attorneys' fees in the amount

16   of $2,798,500 to Class Counsel; (2) a reimbursement of $641,557.58 in litigation expenses

17   advanced by Class Counsel; and (3) service awards in the amount of $15,000 to each of the

18   Named Plaintiffs as Class Representatives.  *See* Dkt. No. 481 (or "Fees Mot.") at 1.

19            **i.    Attorneys' Fees**

20                 **a.  Legal Standard**

21        Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of

22   litigation expenses from the common fund they created for the benefit of a class.  *See* Fed. R. Civ.

23   P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).  The purpose of the "common

24   fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of

25   the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re*

26   *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  The district court

27   has discretion over the amount of attorney fees to award.  *Vizcaino v. Microsoft Corp.*, 290 F.3d

28   1043, 1048 (9th Cir. 2002).

United States District Court
Northern District of California

1    In a common fund case, the Court may choose either (1) the lodestar method or (2) the

2    percentage-of-the-fund to calculate reasonable attorneys' fees. *Id.* at 1047. Under the percentage-

3    of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees

4    awards. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)

5    ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,

6    providing adequate explanation in the record of any 'special circumstances' justifying a

7    departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

8    Whether the Court awards the benchmark amount or some other rate, the award must be supported

9    "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at

10   1048.

11   Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

12   hours the prevailing party reasonably expended on the litigation (as supported by adequate

13   documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

14   *In re Bluetooth*, 654 F.3d at 941 (citations omitted). "[T]he established standard when determining

15   a reasonable hourly rate is the rate prevailing in the community for similar work performed by

16   attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin.*, Inc., 523

17   F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the

18   forum in which the district court sits." *Id.* (citations omitted). Typically, "affidavits of the

19   plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

20   determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United*

21   *Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to

22   affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits

23   from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt*

24   *v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

25   Although the choice between lodestar and percentage calculation depends on the

26   circumstances, either method may have its place in determining reasonable compensation for

27   creating a common fund. *Six Mexican Workers*, 904 F.2d at 1311.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b. Analysis**

Here, Class Counsel's request of an award of attorneys' fees in the amount of $2,798,500.00 represents about 29% of the gross settlement fund.  This is higher than the presumptively reasonable benchmark amount of 25%, but in this case, the Court finds that the higher percentage is reasonable and justified for the following reasons.  *See Staton*, 327 F.3d at 963 ("Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'").

First, the monetary recovery for the class members represents a significant result for the class members.  Class Members will receive a substantial amount in settlement funds with no reversion to Defendant, and each class members' recovery is proportional to the magnitude of their injury based on the size of their investment.  Moreover, no Class Member objected to the settlement and none have requested exclusion, suggesting support for the settlement's outcome.  Although the requested fee percentage is higher than the benchmark percentage, the actual amount of $2,798,500.00 is reasonable because this complex case, settled on the eve of trial after more than four years of extensive litigation, demanded a substantial amount of motion practice, investigation, discovery, and mediation.  Further, Class Counsel ran the risk of receiving nothing if the case was unsuccessful because they operated on a contingent-fee basis and advanced all litigation costs.  *See* Fees Mot. at 9.  And finally, the Court notes that Class Counsel are experienced ERISA practitioners who performed their work here competently, shepherding this complicated case through summary judgment before reaching settlement.  *See id.* at 8-9.

Using the lodestar method to cross-check, the Court notes that Class Counsel's various hourly rates multiplied by the 17,733 attorney and paralegal hours billed to date results in approximately $10,586,183.75 in billable hours, though the Court recognizes that further hours will be spent in the final settlement and disbursement process.  *See* Dkt. No. 481-1, Declaration of Mary Bortscheller ("Bortscheller Decl.") ¶ 4.  The Court finds the hourly rates reasonable given Class Counsel's experience.  As to the number of hours billed, Class Counsel states that she removed erroneously attributed time entries and "exercised billing judgment" to remove all time

13

1    entries associated with Plaintiffs' Rule 23(f) petition on the denial of class certification for the

2    putative CTI Class. *See id.* Thus, Class Counsel's fee request of $2,798,500.00 amounts to only

3    approximately 26% of the $10,586,183.75 lodestar. This is a reasonable request. In recognition

4    of the favorable settlement, the substantial risks of litigation, and the financial burden assumed,

5    the Court **GRANTS** attorneys' fees of $2,798,500.00.

6                          **ii.    Costs and Expenses**

7          An attorney who has created a common fund for the benefit of the class is entitled to

8    reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16,

9    19 (9th Cir. 1994) (quotations omitted). Class Counsel is thus entitled to recover "those out-of-

10   pocket expenses that would normally be charged to a fee paying client." *Id.*

11         Having reviewed the submissions of Class Counsel, the Court finds that their requests for

12   unreimbursed expenses are reasonable. Class Counsel requests reimbursement of $641,557.58 in

13   costs and expenses incurred in connection with the litigation. Fees Mot. at 12. Much of this

14   request is the $414,988.75 dedicated to expert witness and consultant fees. Bortscheller Decl. ¶

15   32. Other expenses include costs associated with depositions and court hearings, online legal

16   research, document database hosting, travel, mediation fees, court fees, telephone, postage, meals,

17   and printing. *Id.* Class Counsel's request for reimbursement of expenses does not include the

18   "Administrative Expenses" defined in the Settlement Agreement, which include, among other

19   things, the costs of the Settlement Administrator and the Independent Fiduciary. *Id.* ¶ 34. The

20   Settlement Administrator will request an amount not to exceed $60,000 to reimburse costs

21   associated with issuing Class Notice and distributing funds, and the Class will only bear the cost

22   of the Independent Fiduciary's fee up to $25,000.

23         The Court finds that Class Counsel's request reflect the type of expenses routinely charged

24   to paying clients. *See, e.g.*, *Torres v. Pick-A-Part Auto Wrecking*, 2018 WL 3570238, at *9 (E.D.

25   Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and

26   transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and

27   overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and

28   investigators; and (9) mediation fees"); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166,

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1   1177 (S.D. Cal. 2007) (same).  The amount requested is also within range of approval.  *See, e.g.*,

2   *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) (reimbursing

3   $823,904.04 for costs including filing fees, copying, postage, document storage, depositions,

4   travel, experts, transcripts, computer research, the cost of the mediator, and common-fund

5   contributions).  The Court is satisfied that these costs were reasonably incurred and **GRANTS** the

6   motion for costs in the amount of $641,557.58.

7                    **iii.    Class Representative Service Award**

8           Class Counsel requests an incentive award of $15,000 for each named plaintiff.  Fees Mot.

9   at 1.  Incentive awards are "intended to compensate class representatives for work done on behalf

10  of the class, to make up for financial or reputational risk undertaken in bringing the action, and,

11  sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563

12  F.3d at 958-59.  Such payments must be "scrutinize[d] carefully . . . so that they do not undermine

13  the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d

14  1157, 1163 (9th Cir. 2013) (*citing Staton*, 327 F.3d at 977).  District courts "must evaluate [the

15  service] awards individually, using 'relevant factors including the actions the plaintiff has taken to

16  protect the interests of the class, the degree to which the class has benefitted from those actions,

17  the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears

18  of [ ] retaliation.'"  *Staton*, 327 F.3d at 977 (alterations and citations omitted).  In the Ninth

19  Circuit, courts have found that $5,000 is a presumptively reasonable service award.  *See Harris v.*

20  *Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. 2012) ("Several courts in this District

21  have indicated that incentive payments of $ 25,000 are quite high and/or that, as a general matter,

22  $ 5,000 is a reasonable amount.").

23          Here, Class Counsel maintain that the two named class plaintiffs, Charles Baird and

24  Lauren Slayton, both "expended diligent effort over four years to protect the interests of the

25  Class."  Fees Mot. at 13.  Among other things, both spent time communicating with counsel and

26  responding to discovery requests.  *See id.*  At the hearing on Plaintiffs' motion for final approval,

27  the Court directed Plaintiffs to file a supplemental declaration from each named plaintiff detailing

28  the approximate number of hours they spent per task on this case.  *See* Dkt. No. 487.  Their

United States District Court
Northern District of California

1    supplemental declarations state that Mr. Baird and Ms. Slayton spent approximately 61 and 51.25

2    hours, respectively, on tasks regarding this case. *See* Dkt. Nos. 488, 489.  The declarations also

3    detail the reputational risk both undertook to participate in a lawsuit against their prior employer

4    and colleagues. *Id.*  Although both spent the bulk of their careers in the financial industry, they

5    have not found work in the financial industry since involving themselves with this case, and they

6    are understandably concerned that their ability to return to work in the financial industry is now

7    impaired. *Id.*

8            Mr. Baird and Ms. Slayton are entitled to compensation for their work on behalf of the

9    class and for the financial or reputational risk they undertook to litigate this case.  After reviewing

10   Plaintiffs' declarations, and considering the circumstances of this lengthy ERISA case, the Court

11   finds that a $10,000 service award is reasonable to compensate Plaintiffs for their efforts.  The

12   Court therefore **GRANTS** the request for an incentive award, but in the amount of $10,000.

13   **III.    CONCLUSION**

14           Accordingly, the Court **GRANTS** the motion for final approval of class action settlement

15   and **GRANTS IN PART AND DENIES IN PART** the motion for attorneys' fees, costs, and

16   incentive awards.  The Court approves the settlement amount of $9,650,000; an award of

17   attorneys' fees in the amount of $2,798,500.00 to Class Counsel; a reimbursement of $641,557.58

18   in litigation expenses advanced by Class Counsel; and service awards in the amount of $10,000 to

19   each of the Named Plaintiffs as Class Representatives.

20           The parties and settlement administrator are directed to implement this Final Order and the

21   settlement agreement in accordance with the terms of the settlement agreement. The parties are

22   further directed to file a short stipulated final judgment of two pages or less within 14 days from

23   the date of this order.  The judgment need not, and should not, repeat the analysis in this Order.

24           **IT IS SO ORDERED.**

25   Dated:   11/3/2021

26   _____

27   HAYWOOD S. GILLIAM, JR.
     United States District Judge

28

16